Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

-and-

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone: (804) 644-1700
Facsimile: (804) 783-6192

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
| Debtors. | ) | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF LIEN CLAIMANTS, IMPORT CLAIMANTS, AND 503(B)(9) CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state as follows in support of this motion (this "Motion"):

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* filed contemporaneously herewith. The location of the Debtors' service address is One Geoffrey Way, Wayne, NJ 07470.

[2] A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in (i) the *Declaration of David A. Brandon, Chairman of the Board and Chief Executive Officer of Toys "R" Us, Inc., in Support of Chapter 11 Petitions and First*

**Relief Requested**

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final Order," respectively) (a) authorizing, but not directing, the Debtors to pay in the ordinary course all prepetition and postpetition amounts owing on account of (i) certain shippers, warehousemen, and other non-merchant lienholders, (ii) certain import claimants, and (iii) certain Bankruptcy Code section 503(b)(9) claimants; (b) confirming the administrative expense priority status of Outstanding Orders (as defined herein); and (c) granting related relief.[3] In addition, the Debtors request that the Court schedule a final hearing within 21 days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.[4]

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Eastern District of Virginia (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated August 16, 1984. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by

---

*Day Motions* (the "Brandon Declaration") and (ii) the *Declaration of Michael J. Short, Chief Financial Officer of Toys "R" Us, Inc., in Support of First Day Motions* (the "Short Declaration" and together with the Brandon Declaration, the "First Day Declarations"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on September 18, 2017 (the "Petition Date"). Capitalized terms used, but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declarations.

3 For the avoidance of doubt, the Debtors are seeking relief related to all Foreign Vendors (as defined herein) payments pursuant to *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Foreign Vendors and (II) Granting Related Relief* filed contemporaneously herewith.

4 The relief requested herein does not apply to any claims against, or lienholders, 503(b)(9) claimants, shippers, and warehousemen of, Debtor Toys "R" Us (Canada) Ltd. ("Toys Canada"), which will be addressed in Toys Canada's Companies' Creditors Arrangement Act (Canada) proceedings ("CCAA").

the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and rules 6004-2 and 9013-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Bankruptcy Rules").

**The Lien Claimants**

5. The Debtors' business depends on the uninterrupted flow of inventory and other goods through its supply chain and distribution network, including the purchase, import, warehousing, and shipment of the Debtors' merchandise and other personal property (the "Merchandise"). Generally, the Debtors source inventory from third-party toy, game, and product manufacturers, which are located in North America (the "Domestic Vendors") and abroad (the "Foreign Vendors," and together with the Domestic Vendors, the "Vendors").

6. The Foreign Vendors and the United States-based Debtors utilize the services of APL Logistics ("APLL") to coordinate all steps of the inventory purchase process related to imports from Southern China, from which 90% of the Debtors' foreign imports are shipped. When an order is ready for delivery, the Foreign Vendors utilize APLL's online platform to inform APLL that the product is ready for shipment. APLL then analyzes relevant information to determine how the product needs to be distributed and provides the Foreign Vendor instructions regarding how to get the product to the port, such as whether the product should be delivered directly to the port in a shipping container or trucked to a consolidator to build a container that is then delivered to the port. Within, on average, 48 hours of a shipping container

arriving at port, it is boarded on a ship for delivery to the United States. The Debtors do not take title of the product until it crosses the bow of the ship. After leaving the port, the product is delivered to a destination port where it is unloaded before arriving at the Debtors' warehouses and distribution centers located in North America (collectively, the "Warehousemen"). These warehouses are predominantly operated by the Debtors themselves, with the exception of certain warehouses that are operated by third-party Warehousemen. Additionally, the flow from the Debtors' Vendors to the Warehousemen, and ultimately to stock the Debtors' brick and mortar stores and fulfill online orders, depends on the services provided by, among others, various freight forwarders, common or contract carriers, and customs brokers (collectively, the "Shippers").

7. The United States-based Debtors also purchase certain products from American manufacturers. Of these purchases, approximately 80% are "collect," meaning that the Debtors contract with trucking companies to pick up the product at the vendors' facilities and deliver it to the Debtors' warehouses. The Debtors take title of such product when it is placed on the trucking company's vehicles. The remaining 20% of such purchases are "prepaid," meaning that the vendor is responsible for delivery (or arranging for third-party delivery) of the product directly to the Debtors' warehouses, in which case the Debtors only take title of such product upon delivery.

8. Significantly, the Vendors or the Shippers may refuse to release Merchandise or other goods for delivery to the Debtors' warehouses if the Debtors are not paid current. Further, the Warehousemen at the warehouses that are managed by third parties may refuse to release the Merchandise or other goods for shipment to the Debtors' brick and mortar stores or to fulfill online orders if they are not paid current.

9. Additionally, the Debtors employ various general contractors and vendors to assist with remodels and on-site construction and repairs at the corporate headquarters, warehouses, and retail stores (the "Non-Merchant Lienholders" and, together with the Shippers and Warehousemen, the "Lien Claimants"). In particular, the Non-Merchant Lienholders provide renovation and repair services or delivery and installation of various furniture and fixtures in the Debtors' corporate headquarters, warehouses, or retail stores. Some of the Non-Merchant Lienholders are not required to perform future services, but rather perform work and related services on an order-by-order basis. It is imperative that the Non-Merchant Lienholders continue providing these services. Otherwise, the Debtors' uncompleted remodeling and construction projects may grind to a halt, and the Non-Merchant Lienholders may not make necessary repairs to such essentials as the lighting and air conditioning in the Debtors' corporate headquarters, warehouses, and retail stores.

10. Under certain nonbankruptcy laws, the Lien Claimants may be able to assert liens on the goods in their possession to secure payment of the charges or expenses incurred in connection with the Lien Charges (as defined herein).[5] Accordingly, in the event the Lien Charges remain unpaid, the Lien Claimants are likely to attempt to assert such possessory liens, and may refuse to deliver or release goods in their possession until their claims are satisfied and their liens redeemed. The Lien Claimants' retention of the Debtors' goods and supplies would disrupt the Debtors' operations at a time when they are sourcing Merchandise for the important holiday season and affect the Debtors' ability to efficiently administer these chapter 11 cases.

[5] For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that "[a] carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law." *See* U.C.C. § 7-307(a) (2003).

With approximately $243.2 million worth of Merchandise currently in transit, the cost of such disruption to the Debtors' estates would likely be greater than the applicable Lien Charges. Further, pursuant to section 363(e) of the Bankruptcy Code, the Lien Claimants may be entitled to adequate protection of any valid possessory lien, which would drain estate assets.

11. Collectively, the Debtors estimate approximately $51.2 million of third-party shipping, storage, and other charges (collectively, the "Lien Charges") are due and owing as of the Petition Date, of which approximately $35.9 million may become due and owing during the interim period.

**The Import Claimants**

12. As described in greater detail above, in the ordinary course of their business, the Debtors import inventory and related materials (collectively, the "Imported Goods") from the Vendors. Timely receipt or transmittal, as applicable, of the Imported Goods is critical to both the Debtors' domestic and foreign business operations. Any disruption or delay would adversely affect the Debtors' business operations and affect the Debtors' ability to efficiently administer these chapter 11 cases. The Debtors are currently a tier 3 importer into the United States, allowing them to submit entry documentation to the United States Customs and Border Control prior to a ship's arrival. The Debtors generally receive customs clearance on their shipping cargo 24 hours prior to a ship docking at port.

13. In connection with the import and export of goods, the Debtors may be required to pay various charges (the "Import Charges"), including customs duties, detention and demurrage fees, tariffs and excise taxes, freight forwarding, and other similar obligations. Non-compliance with obligations related to the Import Charges could jeopardize their status as a tier 3 importer. The Debtors seek authority to pay any and all necessary and appropriate Import Charges incurred on account of prepetition transactions. Absent such payment, parties to whom

the Debtors owe Import Charges (the "Import Claimants") may interfere with the transportation of the Imported Goods. If the flow of Imported Goods were to be interrupted, the Debtors may be deprived of the inventory necessary to stock the shelves in their stores, which means the Debtors would not have inventory to sell to their customers. The ultimate value of such sales is worth far more to the Debtors (both in terms of future receipts and the maintenance of valuable customer goodwill) than the aggregate amount of incurred, but unpaid, Import Charges.

14. The Debtors estimate that approximately $200,000 in Import Charges is outstanding as of the Petition Date, all of which may become due and owing during the interim period.

**The 503(b)(9) Claimants**

15. The Debtors may have received certain inventory, goods, or materials from various foreign and domestic vendors (collectively, the "503(b)(9) Claimants") within the 20-day period immediately preceding the Petition Date, thereby giving rise to claims that are accorded administrative priority under section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Claims" and, together with the Lien Charges and the Import Charges, the "Obligations"). Many of the Debtors' relationships with the 503(b)(9) Claimants are not governed by long-term contracts. Rather, the Debtors obtain inventory, goods, or other materials from such claimants on an order-by-order basis. As a result, a 503(b)(9) Claimant may refuse to supply new orders without payment of its 503(b)(9) Claims. Such refusal could negatively affect the Debtors' estates as the Debtors' business is dependent on the steady flow of inventory to stock their stores.

16. Further, substantially all of the 503(b)(9) Claimants are Vendors that supply goods, materials, or services to the Debtors that are crucial to the Debtors' ongoing operations—including Merchandise necessary to fill the shelves in the Debtors' stores and fulfill online orders. Moreover, even though the manufacture of certain Merchandise is completed in

anticipation of the holiday season, the Vendors are still able to exercise control of the product until the Debtors have taken control of such product as set forth above. Accordingly, Foreign Vendors will be unlikely to allow the Debtors to take possession of their Merchandise unless the Debtors pay some or all of the claims owing to such vendors. In light of the fact that such vendors are rightfully entitled to payments on account of 503(b)(9) Claims, the Debtors believe it is prudent to seek administrative status of such claims now.

17. Additionally, if left unpaid, the Foreign Vendors may take action against the Debtors based upon an erroneous belief that Foreign Vendors are not subject to the automatic stay provisions of section 362(a) of the Bankruptcy Code. Although as a matter of law, the automatic stay applies to the Debtors' assets wherever they are in the world, attempting to enforce the Bankruptcy Code in foreign countries is often challenging and would consume substantial resources. Any such dispute would additionally result in a delay of the Debtors procuring the purchased product, which delay the Debtors cannot afford given the looming holiday season. In light of these consequences, the Debtors have concluded that payment of the Foreign Vendor 503(b)(9) Claimants is essential to avoid disruptions to the Debtors' operations. The estimated amounts owing to the 503(b)(9) Claimants set forth below pales in comparison to the potential damage to the Debtors' business if the Debtors' operations were to experience significant disruption.

18. By this motion, the Debtors seek authority, but not direction, to pay up to $25 million during the interim period and up to $100 million on a final basis on account of the 503(b)(9) Claims.

**Payment of Outstanding Orders**

19. Prior to the Petition Date and in the ordinary course of business, the Debtors may have ordered goods that will not be delivered until after the Petition Date (the "Outstanding

Orders"). To avoid becoming general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) with respect to such Outstanding Orders unless the Debtors issue substitute purchase orders postpetition. To prevent any disruption to the Debtors' business operations, and given that goods delivered after the Petition Date are afforded administrative expense priority under section 503(b) of the Bankruptcy Code, the Debtors seek an order (a) granting administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed obligations of the Debtors arising from the acceptance of goods subject to Outstanding Orders and (b) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

## Basis for Relief

### I. The Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.

20. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

21. Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs Inc.*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business

justification); *see also James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

22.      Furthermore, section 105(a) of the Bankruptcy Code codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re United Am., Inc.*, 327 B.R. 776, 781 (Bankr. E.D. Va. 2005) (acknowledging the doctrine of necessity "is a necessary deviation because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim"); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("Under [section 105(a)] the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *see also In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *Ionosphere*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

23. The relief requested herein is appropriate and warranted under the circumstances. The authority to satisfy the Obligations in the initial days of these cases without disrupting the Debtors' operations will maintain the integrity of the Debtors' supply chain, facilitate the sale of inventory and the Debtors' accounts receivable collection, and allow the Debtors to efficiently administer these chapter 11 cases. Failure to pay the Obligations could potentially destroy value that would otherwise inure to the benefit of the Debtors' estates. Where, as here, debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this district and other jurisdiction have routinely authorized payments to lien claimants. *See, e.g.*, *In re Gymboree Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017) (approving payment of prepetition claims of lien claimants); *In re Penn Virginia Corp.*, No. 16-32395 (KLP) (Bankr. E.D. Va. Jun. 9, 2016) (same); *In re Alpha Nat. Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Sept. 3, 2015) (same); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. June 4, 2015) (same); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Oct. 15, 2015) (approving the payment of prepetition claims of shipper and warehousemen claimants on the basis that shippers and warehousemen could refuse to deliver or return the debtors' goods if prepetition claims were not satisfied).[6]

24. Allowing the Debtors to pay the Obligations is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11—preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust Savs. Ass'n v. 203 N. LaSalle St. P'Ship.*, 526 U.S. 434, 453 (1999). Based on these circumstances, the Debtors submit that the relief requested herein represents a sound

6 Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.

## II. Failure to Make Timely Payment of the Lien Charges Would Threaten the Debtors' Ability to Operate and May Subject the Debtors' Assets to the Perfection of Liens.

25. As noted above, certain Lien Claimants may be entitled under applicable nonbankruptcy law to assert certain possessory liens on the Debtors' goods or equipment in their possession (notwithstanding the automatic stay under section 362 of the Bankruptcy Code) in an attempt to secure payment of their prepetition claim. Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay.[7] As a result, the Debtors anticipate that certain of the Lien Claimants may assert or perfect liens, simply refuse to turn over goods in their possession, or stop performing their ongoing obligations. Even absent a valid lien, to the extent certain Lien Claimants have possession of the Debtors' inventory, equipment, or products, mere possession or retention would disrupt the Debtors' operations.

26. Furthermore, paying the Lien Charges should not impair unsecured creditor recoveries in these chapter 11 cases. In instances where the amount owed to a Lien Claimant is less than the value of the goods that could be held to secure a Shipper, Warehouse, or Non-Merchant Lienholder claim, such parties may be fully-secured creditors of the Debtors' estates. In such instances, payment now only provides such parties with what they might be entitled to receive under a plan of reorganization, only without any interest costs that might otherwise accrue during these chapter 11 cases. Conversely, all creditors will benefit from the

[7] *See* 11 U.S.C. § 546(b)(1)(A) (providing that a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection").

seamless transition of the Debtors' operations into bankruptcy and the ultimate delivery and sale of inventory in the Debtors' stores and e-commerce channels.

27.     Where debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this district and other jurisdictions have routinely authorized payments to shippers and warehousemen under similar circumstances.  *See, e.g.*, *In re Gymboree Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017) (authorizing payment to certain shippers, warehousemen, and other lien claimants); *In re James River Coal Co.*, No. 14-31848 (KRH) (Bankr. E.D. Va. May 9, 2014) (authorizing payment of shipper and warehouseman claims); *In re Movie Gallery, Inc.*, No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010) (authorizing payment to certain shippers, warehousemen, and other lien claimants); *In re Circuit City Stores, Inc.*, No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 12, 2008) (authorizing debtor to pay up to $10 million for certain shipping claims); *In re Movie Gallery, Inc.*, No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 17, 2007) (authorizing payment to certain shippers, warehousemen, and other lien claimants).

## III.    The Court Should Authorize the Payment of Import Charges.

28.     The Import Charges would likely be paid in full under any plan of reorganization pursuant to Bankruptcy Code section 507(a)(8), which provides eighth priority status to the claims of a governmental unit based on a customs duty arising out of the importation of certain merchandise.  Thus, payment of the Import Charges as proposed in this motion merely accelerates the distribution that the Import Claimants would receive in any event upon confirmation of a plan.  Therefore, granting this Motion with respect to the Import Charges would have no substantial effect on the relative distribution of the estate's assets.

29.     For these reasons, courts have authorized the payment of prepetition import claims under similar circumstances in recent retail chapter 11 cases.  *See e.g.*, *In re Gymboree*

*Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017) (approving payment of customs duties, detention and demurrage fees, tariffs and excise, and related taxes to third party vendors); *In re Pacific Sunwear of Calif. Inc.*, No. 16-10882 (LSS) (Bankr. D. Del. Apr. 8, 2016) (approving payment of charges incurred in connection with the transportation of merchandise); *In re Sports Authority Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Mar. 29, 2016) (approving payment of customs duties, detention and demurrage fees, tariffs and excise, and related taxes to third party vendors); *In re Quiksilver, Inc.*, No. 15-11880 (BLS) (Bankr. D. Del. Sept. 10, 2015) (approving payment of import and export charges to third party administrator); *In re LHI Liquidation Co. f/k/a Loehmann's Holdings Inc.*, No. 13-14050 (MG) (Bankr. S.D.N.Y Jan. 16, 2014) (authorizing payment of customs duties and brokers fees in connection with importing products).

**IV. The Court Should Authorize the Payment of 503(b)(9) Claims.**

30. Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business." These 503(b)(9) Claims must be paid in full for the Debtors to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A). Consequently, payment of such claims now only provides such parties with what they would be entitled to receive under a chapter 11 plan. Moreover, the timing of such payments also lies squarely within the Court's discretion. *See In re Global Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court"). The Debtors' ongoing ability to obtain inventory and other goods as provided herein is key to their survival and necessary to preserve the value of their estates. Absent payment of the 503(b)(9) Claims at the outset of these chapter 11 cases—

which merely accelerates the timing of payment without modifying the ultimate treatment of such claims—the Debtors could be denied access to inventory and other goods necessary to maintain their business operations and maximize the value of their estates.

31. Further, as described above, substantially all of the 503(b)(9) Claimants are Foreign Vendors. Without the Foreign Vendors the Debtors would not be able to stock their shelves with the Merchandise necessary to continue operations. If the Debtors do not pay certain of the 503(b)(9) Claims owing to the Foreign Vendors, such Foreign Vendors may simply refuse to do business with the Debtors unless and until they receive payment on account of their prepetition claims. Such Foreign Vendors may also take other precipitous action against the Debtors based on the incorrect belief that they are not bound by the automatic stay.

32. For these reasons, courts in this district and others have regularly authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business. *See, e.g.*, *In re Gymboree Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017) (authorizing debtors to pay claims arising under section 503(b)(9)); *In re Penn Virginia Corp.*, No. 16-32395 (KLP) (Bankr. E.D. Va. June 9, 2016) (same); *In re Alpha Nat. Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Sept. 3, 2015) (same); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. June 4, 2015) (same); *In re James River Coal Company*, No. 14-31848 (KRH) (Bankr. E.D. Va. May 9, 2014) (same); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y. June 3, 2016) (authorizing payment of section 503(b)(9) claims).

## V. The Court Should Confirm that Outstanding Orders Are Administrative Expense Priority Claims and that Payment of Such Claims Is Authorized.

33. Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, are administrative expense priority claims because they benefit the estate

postpetition. *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered postpetition are entitled to administrative priority). Thus, the granting of the relief sought herein with respect to the Outstanding Orders will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted, and will not prejudice any other party in interest.

34. Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide certain suppliers with assurance of such administrative priority status. The attendant disruption to the continuous and timely flow of critical raw materials and other goods to the Debtors would force the Debtors to potentially halt operations, damage the Debtors' business reputation, erode the Debtors' customer base, and ultimately lead to a loss of revenue, all to the detriment of the Debtors and their creditors. Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and should authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

35. The Debtors have sufficient funds to pay any amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Obligations. Accordingly, the Debtors believe there is minimal risk that checks or wire transfer requests that the Court has not authorized will be

inadvertently made. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**The Requirements of Bankruptcy Rule 6003 Are Satisfied**

34. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, the Debtors seek entry of the Interim and Final Order (a) authorizing, but not directing, the Debtors to pay in the ordinary course all prepetition and postpetition amounts owing on account of (i) certain shippers, warehousemen, and other non-merchant lienholders, (ii) certain import claimants, and (iii) certain Bankruptcy Code section 503(b)(9) claimants; (b) confirming the administrative expense priority status of Outstanding Orders (as defined below); and (c) granting related relief. For the reasons discussed above, authorizing the Debtors to pay the Obligations and the Outstanding Orders as well as granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

35. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Waiver of Memorandum of Points and Authorities**

36. The Debtors respectfully request that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Local Bankruptcy Rule 9013-1(G).

**Reservation of Rights**

37. Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code, any foreign bankruptcy or insolvency law, including the CCAA, or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or pursuant to the CCAA; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code, the CCAA, or any other applicable law. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Notice**

38.    The Debtors will provide notice of this Motion via first class mail and email (where available) to: (a) the Office of the United States Trustee for the Eastern District of Virginia, Attn: Robert B. Van Arsdale and Lynn A. Kohen; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) DIP ABL Agent and the advisors and counsel thereto; (d) DIP Taj Term Loan Agent and the advisors and counsel thereto; (e) DIP Delaware Term Loan Agent and the advisors and counsel thereto; (f) the indenture trustee for the TRU Taj 12.00% Senior Notes and the advisors and counsel thereto; (g) the administrative agent for the prepetition Secured Revolving Credit Facility and the advisors and counsel thereto; (h) the administrative agent for the prepetition Secured Term Loan B Facility and the advisors and counsel thereto; (i) the prepetition administrative agent for the Propco I Unsecured Term Loan Facility and the advisors and counsel thereto; (j) the agent for the Propco II Mortgage Loan and the advisors and counsel thereto; (k) the agent for the Giraffe Junior Mezzanine Loan and the advisors and counsel thereto; (l) the administrative agent for the prepetition European and Australian Asset-Based Revolving Credit Facility ("Euro ABL") and the advisors and counsel thereto; (m) the administrative agent for the Senior Unsecured Term Loan Facility and the advisors and counsel thereto; (n) the indenture trustee for the Debtors' 7.375% Senior Notes and the advisors and counsel thereto; (o) the indenture trustee for the Debtors' 8.75% Unsecured Notes and the advisors and counsel thereto; (p) counsel to the ad hoc group of the Term B-4 Holders; (q) counsel to the Ad Hoc Committee of Taj Noteholders; (r) the monitor in the CCAA proceeding and counsel thereto; (s) the Debtors' Canadian Counsel, (t) the Internal Revenue Service; (u) the office of the attorneys general for the states in which the Debtors operate; (v) the Securities and Exchange Commission; and (w) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The

Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

39. No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and the Final Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Richmond, Virginia
Dated: September 19, 2017

/s/ *Michael A. Condyles*
**KUTAK ROCK LLP**
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Email: Michael.Condyles@KutakRock.com
Peter.Barrett@KutakRock.com
Jeremy.Williams@KutakRock.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
(*pro hac vice* admission pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: edward.sassower@kirkland.com
joshua.sussberg@kirkland.com

-and-

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C.
(*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.sprayregen@kirkland.com
anup.sathy@kirkland.com
chad.husnick@kirkland.com
robert.britton@kirkland.com
emily.geier@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

# Exhibit A

## Proposed Interim Order

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:     (804) 644-1700
Facsimile:      (804) 783-6192

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY
## PREPETITION CLAIMS OF LIEN CLAIMANTS, IMPORT CLAIMANTS,
## AND 503(B)(9) CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE
## PRIORITY OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"):

(a) authorizing the Debtors to pay prepetition claims held by certain claimants, (b) confirming

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* filed contemporaneously herewith.  The location of the Debtors' service address is One Geoffrey Way, Wayne, NJ 07470.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

the administrative expense of Outstanding Orders, (c) granting related relief, and (d) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District Of Virginia*, dated July 10, 1984; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on an interim basis as set forth herein.

2. The final hearing (the "Final Hearing") on the Motion shall be held on _________, 2017, at__:__ _.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time on _________, 2017, and served on the Notice Parties. In the event no objections to entry of a final

order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.      The Debtors are authorized, but not directed, to pay up to $61.1 million in satisfaction of outstanding prepetition claims on account of Lien Charges, Import Charges, and 503(b)(9) Claims, and are authorized to pay all undisputed amounts related to Outstanding Orders placed in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date; *provided* that only those Debtors that incurred Obligations, or that placed the Outstanding Orders, as applicable, or a Debtor that in the ordinary course of business pays the Obligations or the Outstanding Orders, as applicable, of other Debtor entities, shall be authorized to make payments under this Interim Order; *provided further* that the Debtors shall not pay any amounts on account of Obligations or Outstanding Orders before such Obligation or Outstanding Order, as applicable, comes due.  The Debtors shall not pay any amounts on account of Obligations or Outstanding Orders that do not come due within 21 days after the Petition Date.

4.      Any party that accepts payment from the Debtors on account of an Obligation shall be deemed to have agreed to the terms and provisions of this Interim Order.

5.      Subject to paragraph 3 of this Interim Order, all undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

6.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the

Debtors' designation of any particular check or electronic payment request as approved by this Interim Order, without any duty of further inquiry and without liability for following the Debtors' instructions.

7. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

8. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

9. Nothing in this Interim Order shall alter or limit any authorization or relief contained in, or prevent Debtor Toys "R" Us (Canada) Ltd. ("Toys Canada") from taking any action authorized pursuant to, the Initial Order in respect of Toys Canada issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of Toys Canada pursuant to the Companies' Creditors Arrangement Act (Canada), and to the extent of any inconsistency between this Interim Order and the terms of the Initial Order or any other Order of the CCAA Court, the Order of the CCAA Court shall govern.

10.     Notwithstanding anything to the contrary in this Interim Order, any payment made or action taken by any of the Debtors pursuant to the authority granted in this Interim Order must be in compliance with, and shall be subject to: (i) any orders approving the Debtors' use of cash collateral and/or any postpetition financing facilities (the "DIP Orders"), (ii) the documentation in respect of any such postpetition financing facilities and/or use of cash collateral, and (iii) the budgets governing any such postpetition financing and/or use of cash collateral.

11.     To the extent there is any inconsistency between the terms of any of the DIP Orders and this Interim Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

12.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

13.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is waived.

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

17. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: __________, 2017
Richmond, Virginia

____________________________________
United States Bankruptcy Judge

WE ASK FOR THIS:

/s/ *Michael A. Condyles*

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone: (804) 644-1700
Facsimile: (804) 783-6192

- and -

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL BANKRUPTCY RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ *Michael A. Condyles*

# EXHIBIT B

**Proposed Final Order**

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

-and-

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone: (804) 644-1700
Facsimile: (804) 783-6192

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| TOYS “R” US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
| Debtors. | ) | (Jointly Administered) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF LIEN CLAIMANTS, IMPORT CLAIMANTS, AND 503(B)(9) CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the “Motion”)[2] of the above-captioned debtors and debtors in possession (collectively, the “Debtors”) for entry of a final order (this “Final Order”): (a) authorizing the Debtors to pay prepetition claims held by certain claimants, (b) confirming

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor’s federal tax identification number, are set forth in the *Debtors’ Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* filed contemporaneously herewith. The location of the Debtors’ service address is One Geoffrey Way, Wayne, NJ 07470.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

the administrative expense priority of Outstanding Orders, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District Of Virginia*, dated July 10, 1984; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, to pay up to $151.4 million in satisfaction of outstanding prepetition claims on account of Lien Charges, Import Charges, and 503(b)(9) Claims, and are authorized to pay all undisputed amounts related to Outstanding Orders placed in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date; *provided* that only those Debtors that incurred Obligations, or that placed the Outstanding Orders, as applicable, or a Debtor that in the ordinary course of

business pays the Obligations or the Outstanding Orders, as applicable, of other Debtor entities, shall be authorized to make payments under this Final Order.

3.      Any party that accepts payment from the Debtors on account of an Obligation shall be deemed to have agreed to the terms and provisions of this Final Order.

4.      Subject to paragraph 2 of this Final Order, all undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

5.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order, without any duty of further inquiry and without liability for following the Debtors' instructions.

6.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

7. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

8. Nothing in this Final Order shall alter or limit any authorization or relief contained in, or prevent Debtor Toys "R" Us (Canada) Ltd. ("Toys Canada") from taking any action authorized pursuant to, the Initial Order in respect of Toys Canada issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of Toys Canada pursuant to the Companies' Creditors Arrangement Act (Canada), and to the extent of any inconsistency between this Final Order and the terms of the Initial Order or any other Order of the CCAA Court, the Order of the CCAA Court shall govern.

9. Notwithstanding anything to the contrary in this Final Order, any payment made or action taken by any of the Debtors pursuant to the authority granted in this Final Order must be in compliance with, and shall be subject to: (i) any orders approving the Debtors' use of cash collateral and/or any postpetition financing facilities (the "DIP Orders"), (ii) the documentation in respect of any such postpetition financing facilities and/or use of cash collateral, and (iii) the budgets governing any such postpetition financing and/or use of cash collateral.

10. To the extent there is any inconsistency between the terms of any of the DIP Orders and this Final Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

11. The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is waived.

12. Notice of the Motion as provided therein shall be deemed good and sufficient

notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

13. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

14. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order.

15. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: ___________, 2017
Richmond, Virginia

____________________________________
United States Bankruptcy Judge

WE ASK FOR THIS:

/s/ *Michael A. Condyles*

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone: (804) 644-1700
Facsimile: (804) 783-6192

- and -

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**CERTIFICATION OF ENDORSEMENT UNDER LOCAL BANKRUPTCY RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Michael A. Condyles