Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:     (804) 644-1700
Facsimile:     (804) 783-6192

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TOYS "R" US, INC., *et al.*,[1] | ) Case No. 17-34665 (KLP) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |

## INTERIM ORDER (I) AUTHORIZING THE NORTH AMERICAN DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE NORTH AMERICAN DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* filed contemporaneously herewith.  The location of the Debtors' service address is One Geoffrey Way, Wayne, NJ 07470

Upon the motion (the "**Motion**")[2] of Toys "R" Us, Inc. (the "**Parent**"), Toys "R" Us Delaware, Inc. (the "**US Borrower**" or the "**Company**"), Toys "R" Us (Canada) Ltd./Toys "R" Us (Canada) Ltee (the "**Canadian ABL/FILO Borrower**," and together with the US Borrower, the "**Borrowers**") and their affiliated debtors, each as a debtor and debtor-in-possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2002-1, 4001(a)-1, 6004-2, 9013-1 and 9014-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "**Local Bankruptcy Rules**") seeking, among other things:

> (i)    authorization for (w) the Borrowers to obtain postpetition financing as set forth in the ABL/FILO DIP Documents (as defined below) (the "**ABL/FILO DIP Financing**"), and for the ABL/FILO DIP Guarantors[3] to guaranty the obligations (the "**ABL/FILO DIP Obligations**") of the Borrowers in connection with the ABL/FILO DIP Financing (the ABL/FILO DIP Guarantors together with the Borrowers, the "**ABL/FILO DIP Loan Parties**"); (x) the US Borrower to obtain postpetition financing as set forth in the Term DIP Documents (as defined below) (the "**Term DIP Financing**"), and for the Term DIP Guarantors[4] to guaranty the obligations (the "**Term DIP Obligations**") of the US Borrower in connection with the Term DIP Financing (the Term DIP Guarantors together with the Borrowers, the "**Term DIP Loan Parties**"); (y) subject to entry of the Final Order, the US Borrower to obtain postpetition financing as set forth in the Canadian Intercompany DIP Documents (as defined below) (the "**Canadian Intercompany DIP Financing**"), and for the Term DIP Guarantors to guaranty the obligations (the "**Canadian Intercompany**

---

[2]    Capitalized terms used herein and not herein defined have the meaning ascribed to such terms in the Motion.

[3]    The "**ABL/FILO DIP Guarantors**" shall mean, collectively, Giraffe Holdings, LLC, Geoffrey Holdings, LLC, Geoffrey, LLC, Geoffrey International, LLC, Toys Acquisition, LLC, TRU-SVC, Inc., and TRU of Puerto Rico, Inc.

[4]    The "**Term DIP Guarantors**" shall mean, collectively, Wayne Real Estate Parent Company, LLC and each of the ABL/FILO DIP Guarantors.

**DIP Obligations**") of the US Borrower in connection with the Canadian Intercompany DIP Financing (the Term DIP Guarantors in such capacity, the "**Canadian Intercompany DIP Guarantors**" and together with the US Borrower, the "**Canadian Intercompany DIP Loan Parties**"); and (z) subject to entry of the Final Order, the US Borrower to obtain postpetition financing as set forth in the Wayne DIP Documents (as defined below) (the "**Wayne DIP Financing**," and together with the ABL/FILO DIP Financing, the Term DIP Financing, the Canadian Intercompany DIP Financing, the "**DIP Financing**"), and for the Term DIP Guarantors to guaranty the obligations (the "**Wayne DIP Obligations**," and together with the ABL/FILO DIP Obligations, Term DIP Obligations and Canadian Intercompany DIP Obligations, the "**DIP Obligations**") of the US Borrower in connection with the Wayne DIP Financing (the Term DIP Guarantors in such capacity, the "**Wayne DIP Guarantors**" and together with the US Borrower, the "**Wayne DIP Loan Parties**" (together with the ABL/FILO DIP Loan Parties, the Term DIP Loan Parties and the Canadian Intercompany DIP Loan Parties, the "**DIP Loan Parties**")); the DIP Financing consisting of:

(I)     a superpriority debtor-in-possession asset-based revolving credit facility made available to the Borrowers in an aggregate principal amount of up to $1,850,000,000 (of which $300,000,000 is to be made available for borrowing by the Canadian ABL/FILO Borrower) (the "**ABL/FILO Revolving DIP Facility**") and a superpriority debtor-in-possession term loan facility made available to the Borrowers in an aggregate principal amount of up to $450,000,000 (of which $250,000,000 is to be made available for borrowing by the US Borrower and $200,000,000 is to be made available for borrowing by the Canadian ABL/FILO Borrower) (the "**ABL/FILO Term DIP Facility**," and collectively with the ABL/FILO Revolving DIP Facility, the "**ABL/FILO DIP Facility**"), subject to the terms and conditions thereof, with JP Morgan Chase Bank, N.A. ("**JPMorgan**"), acting as Administrative Agent and Collateral Agent (in such capacities, the "**ABL/FILO DIP Agent**"), for itself and a syndicate of financial institutions (together with JPMorgan, the "**ABL/FILO DIP Lenders**," and together with the ABL/FILO DIP Agent, the "**ABL/FILO DIP Secured Parties**"), in each case to be arranged by JPMorgan (the "**ABL/FILO DIP Lead Arranger**");

(II)    a superpriority term loan facility made available to the US Borrower in an aggregate principal amount of up to $450,000,000 (the "**Term DIP Facility**,"), with NexBank SSB as Administrative Agent (in such capacity, the "**Term DIP Agent**" and, together with the ABL/FILO DIP Agent, the "**DIP Agents**"), for itself and a syndicate of financial institutions (the "**Term DIP**

**Lenders**" and, together with the Term DIP Agent, the "**Term DIP Secured Parties**");

(III)    subject to entry of the Final Order, one or more superpriority revolving or term loan facilities made available to the US Borrower in an aggregate principal amount of up to $75,000,000 (the "**Canadian Intercompany DIP Facilities**"), with the Canadian ABL/FILO Borrower as lender (the "**Canadian Intercompany DIP Lender**"); and

(IV)    subject to entry of the Final Order, one or more superpriority revolving or term loan facilities made available to the US Borrower in an aggregate principal amount to be determined prior to entry of the Final Order (the "**Wayne DIP Facilities**" and together with the ABL/FILO DIP Facility, the Term DIP Facility and the Canadian Intercompany DIP Facilities, the "**DIP Facilities**"), with Wayne Real Estate Parent Company, LLC as lender (the "**Wayne DIP Lender**," and together with the ABL/FILO DIP Secured Parties, the Term DIP Secured Parties and the Canadian Intercompany DIP Lender, the "**DIP Secured Parties**");

(ii)    authorization for:

(I)    (I)  the Canadian Intercompany DIP Lender to provide the Canadian Intercompany DIP Financing (as defined below) to the US Borrower in an aggregate principal amount not to exceed $75,000,000; and

(II)    (II)  the Wayne DIP Lender to provide the Wayne DIP Financing (as defined below) to the US Borrower in an aggregate principal amount to be determined prior to entry of the Final Order.

(iii)    authorization for:

(I)    the Borrowers and the ABL/FILO DIP Guarantors to execute and enter into the Superpriority Secured Debtor-in-Possession Credit Agreement, among the Borrowers, the ABL/FILO DIP Guarantors and the ABL/FILO DIP Secured Parties, substantially in the form attached to the Final Order (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**ABL/FILO DIP Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection therewith, the "**ABL/FILO DIP Documents**") and to perform all such other and further acts as may be required in connection with the ABL/FILO DIP Documents;

(II)    the US Borrower and the Term DIP Guarantors to execute and enter into the Debtor-in-Possession Credit Agreement, among the US Borrower, the Term DIP Guarantors and the Term DIP Secured Parties, substantially in the form attached to the Final Order (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**Term DIP Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection therewith, the "**Term DIP Documents**") and to perform all such other and further acts as may be required in connection with the Term DIP Documents;

(III)    subject to entry of the Final Order, the US Borrower and the Canadian Intercompany DIP Guarantors to execute and enter into one or more loan agreements (consistent with the US Borrower's prepetition intercompany cash management arrangements) among the US Borrower, the Canadian Intercompany DIP Guarantors and the Canadian Intercompany DIP Lender (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**Canadian Intercompany DIP Credit Agreements**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection therewith, the "**Canadian Intercompany DIP Documents**") and to perform all such other and further acts as may be required in connection with the Canadian Intercompany DIP Documents; *provided* that the Canadian Intercompany DIP Documents and the Canadian Intercompany DIP Financing shall be in all respects consistent with any requirements related thereto set forth in the ABL/FILO DIP Documents and/or the Term DIP Documents; and

(IV)    subject to entry of the Final Order, the US Borrower and the Wayne DIP Guarantors to execute and enter into one or more loan agreements (consistent with the US Borrower's prepetition intercompany cash management arrangements) among the US Borrower, the Wayne DIP Guarantors and the Wayne DIP Lender (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**Wayne DIP Credit Agreements**" (together with the ABL/FILO DIP Credit Agreement, the Term DIP Credit Agreement and the Canadian Intercompany DIP Credit Agreements, the "**DIP Credit Agreements**") and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection therewith, the "**Wayne DIP Documents**" (together with the ABL/FILO DIP

Documents, the Term DIP Documents and the Canadian Intercompany DIP Documents, the "**DIP Documents**") and to perform all such other and further acts as may be required in connection with the Wayne DIP Documents; *provided* that the Wayne DIP Documents and the Wayne DIP Financing shall be in all respects consistent with any requirements related thereto set forth in the ABL/FILO DIP Documents and/or the Term DIP Documents

(iv)    (x) authorization for the DIP Loan Parties to immediately use proceeds of the ABL/FILO DIP Financing and Cash Collateral (as defined below) to, simultaneously with the initial draw under the ABL/FILO DIP Facility, (i) refinance all of the Prepetition ABL/FILO Debt (as defined below) in full, including interest and fees through the date of repayment (at the non-default contract rate), which refinancing shall be indefeasible upon the occurrence of the ABL/FILO Discharge[5], and (ii) issue backstop letter(s) of credit under the ABL/FILO DIP Facility for the benefit of the issuer(s) of any Existing Letters of Credit (as defined in the ABL/FILO DIP Credit Agreement) and any existing secured agreements (collectively, the "**Continuing Prepetition ABL/FILO Obligations**") outstanding under the Prepetition ABL/FILO Credit Agreement (as defined below) and (y) approval of the form and substance of, and authorization for the ABL/FILO DIP Loan Parties to execute and perform under, the Termination Agreement, by and between the Borrowers, the Prepetition ABL/FILO Guarantors (as defined below), and the Prepetition ABL/FILO Agent (as defined below) in the form attached to the Final Order (the "**Prepetition ABL/FILO Payoff Letter**");

(v)    until the occurrence of the ABL/FILO Discharge, the granting of adequate protection and contingent liens to the Prepetition ABL/FILO Agent (as defined below) and the Prepetition ABL/FILO Lenders (as defined below) under or in connection with that certain Third Amended and Restated Credit Agreement, dated as of March 21, 2014, by and among the Company, as the lead borrower for the borrowers party thereto, the facility guarantors party thereto (the "**Prepetition ABL/FILO Guarantors**"), Bank of America, N.A., as administrative agent (the "**Prepetition ABL/FILO Agent**"), Bank of America, N.A., acting through its Canada branch, as

---

[5]    "**ABL/FILO Discharge**" means the indefeasible refinancing of the Prepetition ABL/FILO Debt in full, including interest and fees through the date of repayment (at the non-default contract rate), which shall be deemed to have occurred if no adversary proceeding or contested matter is timely and properly asserted in accordance with the Final Order (as defined below) with respect to the Prepetition ABL/FILO Debt or against the Prepetition ABL/FILO Agent or the Prepetition ABL/FILO Lenders, or if an adversary proceeding or contested matter is timely and properly asserted, upon the final disposition of such adversary proceeding or contested matter in favor of the Prepetition ABL/FILO Secured Parties by order of a court of competent jurisdiction; provided that, for the avoidance of doubt, interest shall cease to accrue on the Prepetition ABL/FILO Debt upon the repayment from the initial draw under the ABL/FILO DIP Facility as provided in the Final Order unless the Prepetition ABL/FILO Debt is reinstated.

Canadian agent, Bank of America, N.A. and Wells Fargo Bank, National Association, as co-collateral agents, the lenders party thereto (the "**Prepetition ABL/FILO Lenders,**" and together with the Prepetition ABL/FILO Agent, the "**Prepetition ABL/FILO Secured Parties**") and the other agents party thereto (as amended by the First Amendment thereto, dated as of October 24, 2014, and as further amended, supplemented, restated or otherwise modified and as in effect on the Petition Date, the "**Prepetition ABL/FILO Credit Agreement**" and the facilities thereunder, the "**Prepetition ABL/FILO Credit Facility**") and the Security Documents (as defined in the Prepetition ABL/FILO Credit Agreement and, collectively with the Prepetition ABL/FILO Credit Agreement, and the mortgages (if any) and all other documentation executed in connection therewith (including, for the avoidance of doubt, any "Security Documents" as defined in the Prepetition ABL/FILO Credit Agreement), the "**Prepetition ABL/FILO Agreements**");

(vi)     the granting of adequate protection to the Prepetition Term Loan Agent (as defined below) and the Prepetition Term Loan Lenders (as defined below) under or in connection with the Amended and Restated Credit Agreement, dated as of August 24, 2010, by and among the Company, as the borrower, the lenders party thereto from time to time (collectively, in such capacities, the "**Prepetition Term Loan Lenders**"), Bank of America, N.A., as the administrative agent (the "**Prepetition Term Loan Agent**" and together with the Prepetition Term Loan Lenders, the "**Prepetition Term Loan Secured Parties,**" and together with the Prepetition ABL/FILO Secured Parties, the "**Prepetition Secured Parties**") and certain other lenders and agents party thereto (as amended by that certain Amendment No. 1, dated as of September 20, 2010, as further amended by that certain Incremental Joinder Agreement dated as of May 24, 2011, as further amended by that certain Incremental Joinder Agreement No. 2, dated as of April 10, 2012, as further amended by that certain Amendment No. 2, dated as of April 10, 2012, as amended by that certain Amendment No. 3, dated as of October 24, 2014, and as further amended, supplemented, restated or otherwise modified and as in effect on the Petition Date, the "**Prepetition Term Loan Credit Agreement**"[6] and together with the Prepetition ABL/FILO Credit Agreement, the "**Existing Agreements**") and each other document executed in connection with the Prepetition Term Loan Credit Agreement (collectively, the "**Prepetition Term Loan Agreements,**" and together with the Prepetition ABL/FILO Agreements, the "**Prepetition Secured Debt Documents**");

(vii)    authorization for the DIP Loan Parties to continue to use Cash Collateral and all other collateral in which any of the Prepetition Secured Parties

---

[6]    "**Prepetition Term Loan Credit Facility**" refers to the facilities under the Prepetition Term Loan Credit Agreement.

have an interest, and the granting of adequate protection to any of the Prepetition Secured Parties (collectively, the "**Adequate Protection Parties**") with respect to, *inter alia*, such use of their Cash Collateral and all use of and diminution in the value of the Prepetition Collateral (as defined below), including the Cash Collateral;

(viii)   approval of certain stipulations by the Debtors with respect to the Existing Agreements and the liens and security interests arising therefrom;

(ix)   subject to the Carve-Out, the granting to the DIP Secured Parties of allowed *pari passu* superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code payable from and having recourse to all assets of the DIP Loan Parties;

(x)   the granting to the DIP Secured Parties of liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the DIP Loan Parties' estates (other than the Excluded Assets (as defined below)) and all proceeds thereof, including, subject only to and effective upon entry of the Final Order, any Avoidance Proceeds (as defined below)), subject to the Carve-Out (as defined below), in each case with the relative priorities set forth on **Exhibit A** hereto;

(xi)   subject only to and effective upon entry of a final order granting such relief and such other relief as provided herein and in such final order (the "**Final Order**"), the limitation of the Debtors' right to surcharge against the Prepetition Collateral and the DIP Collateral[7] pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(xii)   modification of the automatic stay to the extent set forth herein and in the DIP Documents;

(xiii)   the scheduling of an interim hearing (the "**Interim Hearing**") on the Motion pursuant to Bankruptcy Rule 4001 to be held before this Court to consider entry of the proposed interim order annexed to the Motion:

(a) authorizing the Borrowers, on an interim basis, to forthwith borrow or obtain letters of credit from the ABL/FILO DIP Lenders under the ABL/FILO DIP Documents up to an aggregate principal or face amount not to exceed (i) $1,300 million under the ABL/FILO Revolving DIP Facility, and (ii) $450 million under the ABL/FILO Term DIP Facility (each such borrowing subject to any limitations under the DIP Documents) and to use such borrowings for general corporate purposes, including refinancing borrowings and other extensions of credit under the

---

[7]   "**Collateral**" means, collectively, the Prepetition Collateral and the DIP Collateral.

Prepetition ABL/FILO Credit Agreement and provide working capital to the Debtors and their subsidiaries;

(b) authorizing the US Borrower, on an interim basis, to forthwith borrow from the Term DIP Lenders under the Term DIP Documents up to an aggregate principal or face amount not to exceed $350,000,000 under the Term DIP Facility to provide working capital to the Debtors and their subsidiaries (including payment of fees and expenses in connections with the transactions contemplated by the Term DIP Credit Agreement);

(c) authorizing the Debtors' use of Cash Collateral and all other collateral and

(d) granting the adequate protection described herein; and

(xiv)    the scheduling of a final hearing (the "**Final Hearing**") to be held within 30 days of the entry of this Interim Order (the "**Interim Order**") to consider entry of the Final Order authorizing the balance of the borrowings and letter of credit issuances under the DIP Documents on a final basis, as set forth in the Motion and the DIP Documents filed with this Court;

and due and appropriate notice of the Motion and the Interim Hearing having been served by the Debtors as set forth in the affidavit of service filed with this Court [Docket No. 50], and it appearing that no other or further notice need be provided; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having reviewed the Motion; and the Interim Hearing having been held by this Court on September 19, 2017; and the relief requested in the Motion being in the best interests of the Debtors, their creditors and their estates and all other parties-in-interest in these Chapter 11 Cases; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record made by the Debtors in the Motion, the Kurtz Declaration, the First Day Declarations and at the Interim Hearing, and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Disposition.*  The relief requested in the Motion is GRANTED ON AN INTERIM

BASIS in accordance with the terms of this Interim Order.  Any objections to the Motion with

respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all

reservations of rights included therein, are hereby denied and overruled on the merits.  This

Interim Order shall become effective immediately upon its entry.

2.      *Jurisdiction.*  This Court has core jurisdiction over the Chapter 11 Cases, the

Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334

and the *Standing Order of Reference from the United States District Court for the Eastern

District of Virginia*, dated August 15, 1984.  Venue is proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409.

3.      *Notice*.  Proper, timely, adequate and sufficient notice of the Motion has been

provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local

Bankruptcy Rules, and no other or further notice of the Motion or the entry of this Interim Order

shall be required, except as set forth in paragraph 16 below. The interim relief granted herein is

necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the

Final Hearing.

4.      *Debtors' Stipulations*.  Without prejudice to the rights of the Debtors, as and to

the extent such rights are set forth in paragraph 23 below, or any other party in interest (but

subject to the limitations thereon contained in paragraphs 23 and 24 below), the Debtors admit,

stipulate and agree that:

(a)      (i) as of the date (the "**Petition Date**") of the filing of the Chapter 11

Cases, (A) the US Borrower and the Prepetition ABL/FILO Guarantors were justly and lawfully

indebted and liable to the Prepetition ABL/FILO Secured Parties, without defense, counterclaim

or offset of any kind, in the aggregate principal amount of not less than $1,103,000,000.00 in

respect of loans made to the US Borrower and $90,692,807.77 in respect of letters of credit

issued to the US Borrower by the Prepetition ABL/FILO Lenders pursuant to, and in accordance

with the terms of, the Prepetition ABL/FILO Agreements, and Canadian ABL/FILO Borrower

and the Prepetition ABL/FILO Guarantors were justly and lawfully indebted and liable to the

Prepetition ABL/FILO Secured Parties, without defense, counterclaim or offset of any kind, in

the aggregate principal amount of not less than $202,124,285.00 in respect of loans made to the

Canadian ABL/FILO Borrower and $1,160,198.49[8] in respect of letters of credit issued to the

Canadian ABL/FILO Borrower by the Prepetition ABL/FILO Lenders pursuant to, and in

accordance with the terms of, the Prepetition ABL/FILO Agreements, plus, in each case, accrued

and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers'

and financial advisors' fees, in each case, that are chargeable or reimbursable under the

Prepetition ABL/FILO Agreements), charges, indemnities and other obligations, in each case

including unliquidated and contingent amounts, incurred in connection therewith (whether

arising before or after the Petition Date) as provided in the Prepetition ABL/FILO Agreements

(collectively, the "**Prepetition ABL/FILO Debt**"), which Prepetition ABL/FILO Debt has been

guaranteed on a joint and several basis by all of the Prepetition ABL/FILO Guarantors, and (B)

the US Borrower and the Prepetition Term Loan Guarantors (as defined below) were justly and

lawfully indebted and liable to the Prepetition Term Loan Secured Parties without defense,

counterclaim or offset of any kind, in the aggregate principal amount of not less than

---

[8]    Canadian Borrowings under the Canadian ABL/FILO have been converted into U.S. dollars using
an exchange rate of 0.8253:1 based on the rate used in the Debtors' last borrowing base certificate, dated September
8, 2017.  Amounts in this order are expressed in United States currency for convenience only, and the exchange rate
used shall not be binding on any party.

approximately $1,182 million in respect of loans made by the Prepetition Term Loan Lenders

pursuant to, and in accordance with the terms of, the Prepetition Term Loan Agreements, plus

accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants',

appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under

the Prepetition Term Loan Agreements), charges, indemnities and other obligations incurred in

connection therewith as provided in the Prepetition Term Loan Agreements (collectively, the

"**Prepetition Term Loan Debt**," and collectively with the Prepetition ABL/FILO Debt, the

"**Prepetition Debt**"),which Prepetition Term Loan Debt has, as to the Term B-4 Loans (as

defined in the Prepetition Term Loan Credit Agreement) and related obligations constituting

Prepetition Term Loan Debt, been guaranteed on a joint and several basis by all of the guarantors

thereunder and,  as to the Term B-2 Loans and Term B-3 Loans (each as defined in the

Prepetition Term Loan Credit Agreement) and related obligations constituting Prepetition Term

Loan Debt, been guaranteed on a joint and several basis by all of the guarantors thereunder other

than Wayne Real Estate Parent Company, LLC (the "**Prepetition Term Loan Guarantors**";

such term being understood to exclude Wayne Real Estate Parent Company, LLC insofar as the

term B-2 Loans, Term B-3 Loans and related Prepetition Term Loan Debt are concerned); (ii) the

Prepetition ABL/FILO Debt constitutes the legal, valid and binding obligations of the Borrowers

and the Prepetition ABL/FILO Guarantors, enforceable in accordance with its terms (other than

in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and the

Prepetition Term Loan Debt constitutes the legal, valid and binding obligations of the US

Borrower and the Prepetition Term Loan Guarantors, enforceable in accordance with its terms

(other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy

Code); and (iii) no portion of the Prepetition Debt or any payments made to the Prepetition

Secured Parties or applied to or paid on account of the obligations owing under the Existing

Agreements prior to the Petition Date is subject to any contest, attack, rejection, recovery,

recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization,

avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy

Code or applicable non-bankruptcy law;

(b)      the liens and security interests granted to the Prepetition ABL/FILO

Secured Parties (the "**Prepetition ABL/FILO Liens**") pursuant to and in connection with the

Prepetition ABL/FILO Agreements, are: (i) valid, binding, perfected, enforceable, first-priority

liens and security interests in the Prepetition ABL/FILO Priority Collateral;[9] (ii) valid, binding,

perfected, enforceable, second-priority liens and security interests in the Prepetition Term Loan

Priority Collateral[10] (together with the Prepetition ABL/FILO Priority Collateral, the

"**Prepetition Collateral**"); (iii) not subject to avoidance, recharacterization, subordination,

recovery, attack, counterclaim, defense or Claim under the Bankruptcy Code or applicable non-

bankruptcy law; and (iv) as of the Petition Date subject and subordinate only to (A) in the case of

the Prepetition Term Loan Priority Collateral, the liens and security interests in favor of the

Prepetition Term Loan Secured Parties and (B) in the case of the Prepetition ABL/FILO Priority

Collateral, valid, perfected and unavoidable liens permitted under the Prepetition ABL/FILO

Agreements to the extent that such permitted liens are senior to or *pari passu* with the liens of the

Prepetition ABL/FILO Agent on the Prepetition ABL/FILO Priority Collateral;

(c)      the liens and security interests granted to the Prepetition Term Loan

Secured Parties (the "**Prepetition Term Liens**") pursuant to and in connection with the

---

[9]    "**Prepetition ABL/FILO Priority Collateral**" means "ABL Collateral" as defined in the Prepetition ABL/TL
ICA.

[10]    "**Prepetition Term Loan Priority Collateral**" means (i) Canadian Pledged Collateral (as defined in the
Prepetition ABL/TL ICA) and (ii) the Geoffrey Collateral (as defined in the Prepetition ABL/TL ICA).

Prepetition Term Loan Agreements are: (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the Prepetition Term Loan Priority Collateral; (ii) valid, binding, perfected, enforceable, second-priority liens and security interests in the Prepetition ABL/FILO Priority Collateral that is not the Canadian ABL/FILO Collateral[11] (the "**Term Loan ABL Priority Collateral**"); (iii) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or Claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iv) as of the Petition Date are subject and subordinate only to (A) in the case of the Term Loan ABL Priority Collateral, the liens and security interests in favor of the Prepetition ABL/FILO Secured Parties and (B) valid, perfected and unavoidable liens permitted under the Prepetition Term Loan Agreements to the extent that such permitted liens are senior to or *pari passu* with the liens of the Prepetition Term Loan Secured Parties on the Prepetition Term Loan Priority Collateral;

(d)    the aggregate value of the Prepetition ABL/FILO Priority Collateral exceeds the aggregate amount of the Prepetition ABL/FILO Debt;

(e)    none of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Existing Agreements;

(f)    no claims or causes of action exist against, or with respect to, the Prepetition Secured Parties under any agreements by and among the Debtors and any such party that is in existence as of the Petition Date;

---

[11]    "**Canadian ABL/FILO Collateral**" means all Prepetition ABL/FILO Priority Collateral held by the Canadian ABL/FILO Borrower.

(g)      effective as of the date of entry of this Interim Order, the Debtors hereby

absolutely and unconditionally release and forever discharge and acquit the Prepetition Secured

Parties and their respective Representatives (as defined below) (collectively, the "**Released**

**Parties**") from any and all obligations and liabilities to the Debtors (and their successors and

assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts,

liabilities, actions and causes of action arising prior to the Petition Date (collectively, the

"**Released Claims**") of any kind, nature or description, whether known or unknown, foreseen or

unforeseen or liquidated or unliquidated, arising in law or equity or upon contract or tort or under

any state or federal law or otherwise, arising out of or related to (as applicable) the Existing

Agreements, the obligations owing and the financial obligations made thereunder, the

negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations

made thereunder, in each case that the Debtors at any time had, now have or may have, or that

their successors or assigns hereafter can or may have against any of the Released Parties for or

by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior

to the date of this Interim Order, whether such Released Claims are matured or unmatured or

known or unknown;

(h)      that certain Amended and Restated Intercreditor Agreement dated

August 24, 2010 between the Prepetition ABL/FILO Agent and the Prepetition Term Loan Agent

(as amended, supplemented or otherwise modified prior to the date hereof, including by that

certain Amendment No. 1 to Amended and Restated Intercreditor Agreement dated as of October

24, 2014, the "**Prepetition ABL/TL ICA**") is binding and enforceable against the Borrowers

and the Prepetition Guarantors[12] party thereto in accordance with its terms, and the Borrowers

---

[12]    "**Prepetition Guarantors**" means, collectively, the Prepetition ABL/FILO Guarantors and the Prepetition
Term Loan Guarantors.

and the Prepetition Guarantors are not entitled to take any action that would be contrary to the provisions thereof; and

(i)      all cash, securities or other property of the DIP Loan Parties (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the DIP Loan Parties in any account or accounts with any depository institution (collectively, the "**Depository Institutions**") were subject to rights of set-off and valid, perfected, enforceable, first priority liens under the Existing Agreements and applicable law, for the benefit of the Prepetition Secured Parties.  All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

5.      *Findings Regarding the DIP Financing and Use of Cash Collateral.*

(a)      Good and sufficient cause has been shown for the entry of this Interim Order.

(b)      The DIP Loan Parties have an immediate need to obtain the DIP Financing and continue to use the Prepetition Collateral (including Cash Collateral) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, to repay the Prepetition ABL/FILO Debt, to provide a replacement letter of credit in respect of the Continuing Prepetition ABL/FILO Obligations and to satisfy other working capital and operational needs.  The access of the DIP Loan Parties to sufficient working capital

16

and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the DIP Loan Parties and to a successful reorganization of the DIP Loan Parties.

(c)     The DIP Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders[13] under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The DIP Loan Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the DIP Loan Parties granting to the DIP Secured Parties, subject to the Carve-Out, the DIP Liens and the DIP Superpriority Claims (as defined below) and, subject to the Carve-Out, incurring the Adequate Protection Obligations, in each case, under the terms and conditions set forth in this Interim Order and in the DIP Documents.

(d)     Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing, the terms of the DIP Financing and the terms on which the DIP Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Documents are fair and reasonable, reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     To the extent such consent is required, a majority of Prepetition Secured Parties have consented or are deemed under the Prepetition ABL/TL ICA to have consented to

---

[13]    **"DIP Lenders"** means, collectively, the ABL/FILO DIP Lenders, the Term DIP Lenders, the Canadian Intercompany DIP Lender and the Wayne DIP Lender.

the DIP Loan Parties' use of Cash Collateral and the other Prepetition Collateral, and the DIP

Loan Parties' entry into the DIP Documents in accordance with and subject to the terms and

conditions in this Interim Order and the DIP Documents.

     (f)  The DIP Financing and the use of the Prepetition Collateral (including

Cash Collateral) have been negotiated in good faith and at arm's length among the DIP Loan

Parties, the DIP Agents, and the DIP Lenders (including the members of the Ad Hoc Group of

B-4 Lenders) and all of the Loan Parties' obligations and indebtedness arising under, in respect

of, or in connection with, the DIP Financing and the DIP Documents, including, without

limitation: (i) all loans made to and guarantees issued by the Loan Parties pursuant to the DIP

Documents (the "**DIP Loans**"); any "**Obligations**" (as defined in the DIP Credit Agreements);

and any "**Cash Management Services**" (as defined in the ABL/FILO DIP Credit Agreement),

shall be deemed to have been extended by the DIP Agents and the DIP Lenders and their

respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code

and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code,

and the DIP Agents and the DIP Lenders (and the successors and assigns thereof) shall be

entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this

Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

The Adequate Protection Parties (including the Ad Hoc Group of B-4 Lenders) have acted in

good faith regarding the DIP Financing and the DIP Loan Parties' continued use of the

Prepetition Collateral (including the Cash Collateral) to fund the administration of the DIP Loan

Parties' estates and continued operation of their businesses (including the incurrence and

payment of the Adequate Protection Obligations and the granting of the Adequate Protection

Liens (as defined below)), in accordance with the terms hereof, and the Adequate Protection

Parties (and the successors and assigns thereof) shall be entitled to the full protection of section

363(m) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is

vacated, reversed or modified, on appeal or otherwise.

(g)    The Adequate Protection Parties are entitled to the adequate protection

provided in this Interim Order as and to the extent set forth herein pursuant to §§ 361, 362, 363

and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court,

the terms of the proposed adequate protection arrangements and of the use of the Prepetition

Collateral (including the Cash Collateral) are fair and reasonable, reflect the DIP Loan Parties'

prudent exercise of business judgment and constitute reasonably equivalent value and fair

consideration for the use of Cash Collateral; *provided* that nothing in this Interim Order or the

DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition

Secured Parties for the use of Cash Collateral other than on the terms set forth in this Interim

Order and in the context of the DIP Financing authorized by this Interim Order, (y) be construed

as a consent by any party to the terms of any other financing or any other lien encumbering the

Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or otherwise impair the

rights of any of the Prepetition Secured Parties, subject to any applicable provisions of the

Prepetition ABL/TL ICA, to seek new, different or additional adequate protection or assert the

interests of any of the Prepetition Secured Parties and the rights of any other party in interest to

object to such relief are hereby preserved.

(h)    Payment of the Prepetition ABL/FILO Debt reflects the DIP Loan Parties'

exercise of prudent business judgment consistent with their fiduciary duties.

(i)    The Debtors have requested immediate entry of this Interim Order

pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief set forth in

19

this Interim Order, the DIP Loan Parties' estates will be immediately and irreparably harmed.

Consummation of the DIP Financing and the use of Prepetition Collateral, including Cash

Collateral, in accordance with this Interim Order and the DIP Documents are therefore in the best

interests of the DIP Loan Parties' estates and consistent with the DIP Loan Parties' exercise of

their fiduciary duties.

6.     *Authorization of the DIP Financing and the DIP Documents.*

(a)     The DIP Loan Parties are hereby authorized to execute, enter into and, as

applicable, perform all DIP Documents.  The Borrowers are hereby authorized to forthwith

borrow money and obtain letters of credit pursuant to the ABL/FILO DIP Credit Agreement, and

the ABL/FILO DIP Guarantors are hereby authorized to guaranty ABL/FILO DIP Obligations,

in each case up to an aggregate principal or face amount equal to $1.85 billion under the

ABL/FILO Revolving DIP Facility and $450 million under the ABL/FILO Term DIP Facility,

subject in each case to any limitations on borrowing under the DIP Documents, which shall be

used for all purposes permitted under the DIP Documents, including, without limitation, to

refinance the Prepetition ABL/FILO Debt as provided herein and to issue backstop letter(s) of

credit in respect of the Continuing Prepetition ABL/FILO Obligations, to provide working

capital for the DIP Loan Parties and to pay interest, fees and expenses in accordance with this

Interim Order and the DIP Documents; *provided, however*, that for the avoidance of doubt, the

Canadian ABL/FILO Borrower and its subsidiaries (if any) shall not guaranty or otherwise be

obligated with respect to the amounts borrowed by the US Borrower.  The US Borrower is

hereby authorized to forthwith borrow money pursuant to the Term DIP Credit Agreement, and

the Term DIP Guarantors are hereby authorized to guaranty the US Borrower's Term DIP

Obligations with respect to such borrowings, in each case up to an aggregate principal amount

equal to $350 million on an interim basis and, subject to entry of the Final Order, $450 million,

subject to any limitations on borrowing under the DIP Documents, which shall be used for all

purposes permitted under the DIP Documents, including, without limitation, to provide working

capital for the DIP Loan Parties and to pay interest, fees and expenses in accordance with this

Interim Order and the DIP Documents.  The US Borrower is hereby authorized, subject to entry

of the Final Order, to borrow money pursuant to the Canadian Intercompany DIP Credit

Agreements, and the Canadian Intercompany DIP Guarantors are hereby authorized, subject to

the entry of the Final Order, to guaranty the US Borrower's Canadian Intercompany DIP

Obligations with respect to such borrowings, up to an aggregate principal amount equal to $75

million under the Canadian Intercompany DIP Facility, subject to any limitations on borrowing

under the DIP Documents, which shall be used for all purposes permitted under the DIP

Documents, including, without limitation, to provide working capital for the DIP Loan Parties

and to pay interest, fees and expenses in accordance with this Interim Order and the DIP

Documents. The US Borrower is hereby authorized, subject to the entry of the Final Order, to

borrow money pursuant to the Wayne DIP Credit Agreement, and the Wayne DIP Guarantors are

hereby authorized, subject to the entry of the Final Order, to guaranty the US Borrower's Wayne

DIP Obligations with respect to such borrowings, up to an aggregate principal amount to be

determined prior to entry of the Final Order, under the Wayne DIP Facility, subject to any

limitations on borrowing under the DIP Documents, which shall be used for all purposes

permitted under the Wayne DIP Documents, including, without limitation, to provide working

capital for the DIP Loan Parties and to pay interest, fees and expenses in accordance with this

Interim Order and the DIP Documents.

(b)    In furtherance of the foregoing and without further approval of this Court,

each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and

documents (including, without limitation, the execution or recordation of security agreements,

mortgages and financing statements), and to pay all fees that may be reasonably required or

necessary for the DIP Loan Parties' performance of their obligations under the DIP Financing,

including, without limitation:

(i)    the execution and delivery of, and performance under, each of the

DIP Documents;

(ii)    the execution and delivery of, and performance under, one or more

amendments, waivers, consents or other modifications to and under the DIP Documents, in each

case, in such form as the DIP Loan Parties, the DIP Agents and the requisite DIP Lenders may

agree, it being understood that no further approval of this Court shall be required for

authorizations, amendments, waivers, consents or other modifications to and under the DIP

Documents (and any fees paid in connection therewith) that (A) do not (I) shorten the maturity of

the extensions of credit thereunder or increase the aggregate commitments or the rate of interest

payable thereunder, (II) increase existing fees or add new fees thereunder (excluding, for the

avoidance of doubt, any amendment, consent or waiver fee), (III) modify Section 2.23 of the

ABL/FILO DIP Credit Agreement or 3.01 of the Term DIP Credit Agreement in a manner

adverse to the DIP Loan Parties, (IV) modify the definition of "Borrowing Base" (or the

definitions used therein in a manner that materially modifies the terms of the Borrowing Base) in

the ABL/FILO DIP Agreement (it being understood and agreed that this clause (IV) shall not

affect the ABL/FILO DIP Agent's rights to implement reserves in accordance with the DIP

Documents), or (V) shorten the case milestones set forth in the DIP Documents (such

22

authorizations, amendments, waivers, consents or other modifications not requiring further

approval of the Court, "**Immaterial Amendments**") or (B) are implemented at any time on or

prior to the date that is 90 days after the Closing Date (as defined in the ABL/FILO DIP Credit

Agreement) as contemplated by the separate letter agreements entered into in connection with

the DIP Financing and filed under seal with the Court (permitting modifications to the DIP

Credit Agreements necessary or advisable to ensure successful syndication or if successful

syndication cannot occur).  Notwithstanding anything to the contrary herein, any other

modifications or amendments to the DIP Documents may be executed without further approval

of the Court, *provided*, *however*, that notice of any material modification or amendment to the

DIP Documents shall be provided to counsel to any official committee appointed in these cases

and the U.S. Trustee, each of whom shall have seven (7) business days from the date of such

notice within which to object, in writing, to such material modification or amendment.  If any

official committee or the U.S. Trustee timely objects to any material modification or amendment

to the DIP Documents, such modification or amendment shall only be permitted pursuant to an

order of the Court.  The foregoing shall be without prejudice to the DIP Loan Parties' right to

seek approval from the Court of any material modification or amendment on an expedited basis;

(iii)      the non-refundable payment to the DIP Agents or the DIP Lenders,

as the case may be, of all reasonable and documented fees (which fees shall be, and shall be

deemed to have been, approved upon entry of this Interim Order, and upon payment thereof,

shall not be subject to any contest, attack, rejection, recoupment, reduction, defense,

counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action

or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy

law or otherwise) and any amounts due (or that may become due) in respect of the

indemnification obligations, in each case referred to in the ABL/FILO DIP Credit Agreement or

the Term DIP Credit Agreement (and in any separate letter agreements between any or all DIP

Loan Parties, on the one hand, and any of the DIP Agents and/or DIP Lenders, on the other, in

connection with the DIP Financing) and the costs and expenses as may be due from time to time,

including, without limitation, reasonable and documented fees and expenses of the professionals

retained by any of the DIP Agents or DIP Lenders, in each case, as provided for in the DIP

Documents, without the need to file retention motions or fee applications or to provide notice to

any party; and

(iv)    the performance of all other acts required under or in connection

with the DIP Documents.

(c)    Upon execution and delivery of the DIP Documents, the DIP Documents

shall constitute valid, binding and unavoidable obligations of the DIP Loan Parties, enforceable

against each DIP Loan Party thereto in accordance with the terms of the DIP Documents and this

Interim Order.  No obligation, payment, transfer or grant of security under the DIP Documents or

this Interim Order to the DIP Agents and/or the DIP Lenders shall be stayed, restrained, voidable

or recoverable under the Bankruptcy Code or under any applicable law (including, without

limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code), or subject to any defense,

reduction, setoff, recoupment, claim or counterclaim.

(d)    Subject to entry of the Final Order, the Canadian Intercompany DIP

Lender is authorized to execute, enter into and perform all of its obligations as a lender under the

Canadian Intercompany DIP Facility, including, but not limited to (i) executing, delivering and

performing under each of the Canadian Intercompany DIP Documents, (ii) providing the

Canadian Intercompany DIP Financing and (ii) entering into delivering and performing under

24

one or more amendments, waivers, consents or other modifications to the Canadian

Intercompany DIP Documents to the extent any such amendment, waiver, consent or

modification constitutes an Immaterial Amendment.  Subject to entry of the Final Order, the

Wayne DIP Lender is authorized to execute, enter into and perform all of its obligations as a

lender under the Wayne DIP Facility, including, but not limited to (x) executing, delivering and

performing under each of the Wayne DIP Documents, (y) providing the Wayne DIP Financing

and (z) entering into delivering and performing under one or more amendments, waivers,

consents or other modifications to the Wayne DIP Documents to the extent any such amendment,

waiver, consent or modification constitutes an Immaterial Amendment.   Notwithstanding

anything to the contrary herein, the authorization contained in this paragraph 6(d) shall be

subject in all respects to any requirements set forth in the ABL/FILO DIP Documents and the

Term DIP Documents with respect to the Canadian Intercompany DIP Financing and the Wayne

DIP Financing.

    7.    The DIP Loan Parties are hereby authorized to execute, enter into and perform

under the Intercreditor Agreement by and between the ABL/FILO DIP Agent and the Term DIP

Agent, substantially in the form to be attached to the Final Order (the "**DIP ICA**").

Notwithstanding anything in the DIP ICA to the contrary, the Canadian Intercompany DIP

Lender and the Wayne DIP Lender shall be deemed parties to the DIP ICA with respect to the

Canadian Intercompany DIP Obligations, the Wayne DIP Obligations, the Canadian

Intercompany DIP Liens[14] and the Wayne DIP Liens[15].  For the avoidance of doubt, the DIP ICA

shall be deemed a DIP Document hereunder.

---

[14]    The "**Canadian Intercompany DIP Liens**" shall mean all such liens and security interests granted to the
Canadian Intercompany DIP Lender, pursuant to this Interim Order and the Canadian Intercompany DIP
Documents.

8.      *Payment of the Prepetition ABL/FILO Debt*.  The DIP Loan Parties are hereby

authorized and directed to (x) execute the Prepetition ABL/FILO Payoff Letter and perform the

transactions and undertakings set forth therein, which are hereby approved in all respects, and (y)

use proceeds of the ABL/FILO DIP Financing and Cash Collateral to, at the initial closing of the

ABL/FILO DIP Financing, pay in cash in full the Prepetition ABL/FILO Debt.  The Prepetition

ABL/FILO Liens shall be automatically released and terminated upon the ABL/FILO Discharge.

Until then, subject to the terms and conditions contained in this Interim Order (including, without

limitation, the DIP Liens (as defined below) granted hereunder and the Carve-Out (as defined

below)), any and all prepetition or postpetition liens and security interests (including, without

limitation, any adequate protection replacement liens at any time granted to the Prepetition

ABL/FILO Secured Parties by this Court) that the Prepetition ABL/FILO Secured Parties have

or may have in the Prepetition ABL/FILO Priority Collateral shall (a) continue to secure the

unpaid portion of any Prepetition ABL/FILO Debt (including, without limitation, any Prepetition

ABL/FILO Debt subsequently reinstated after the repayment thereof because such payment (or

any portion thereof) is required to be returned or repaid to the DIP Loan Parties or the

ABL/FILO DIP Lenders and the liens securing the Prepetition ABL/FILO Debt shall not have

been avoided) and (b) be junior and subordinate in all respects to the Carve-Out and the

ABL/FILO DIP Liens, and otherwise ordered in the priorities set forth on **<u>Exhibit A</u>** attached

hereto (such junior liens and security interests of the Prepetition ABL/FILO Lenders are

hereinafter referred to as the "**Contingent ABL/FILO Liens**", and any such unpaid or reinstated

---

[15]    The "**Wayne DIP Liens**" shall mean all such liens and security interests granted to the Wayne DIP Lender,
pursuant to this Interim Order and the Wayne DIP Documents.  The Term DIP Liens, the Canadian
Intercompany DIP Liens and the Wayne DIP Liens are, collectively, the "**Term DIP Group Liens**," and
together with the ABL/FILO DIP Liens, the "**DIP Liens**."

Prepetition ABL/FILO Debt described in clause (a) of this sentence is hereinafter referred to as

the "**Contingent Prepetition ABL/FILO Debt**").

9.    *Carve-Out.*

(a)    The "**Carve-Out**" means the sum of:

(i)    (i) all fees required to be paid to the Clerk of this Court and to the Office
of the United States Trustee (the "**U.S. Trustee**") under section 1930(a) of
title 28 of the United States Code plus interest at the statutory rate
(without regard to the notice set forth in (iii) below);

(ii)    all reasonable fees and expenses up to $150,000 incurred by a trustee
under section 726(b) of the Bankruptcy Code (without regard to the notice
set forth in (iii) below);

(iii)    (iii) to the extent allowed at any time, whether by interim order,
procedural order, or otherwise, all unpaid fees and expenses (the "**Allowed
Professional Fees**") incurred by persons or firms retained by the Debtors
pursuant to section 327, 328 or 363 of the Bankruptcy Code (the "**Debtor
Professionals**") and the creditors' committee  (the "**Creditors'
Committee**") pursuant to section 328 or 1103 of the Bankruptcy Code
(the "**Committee Professionals**" and, together with the Debtor
Professionals, the "**Professional Persons**") (other than any restructuring,
sale or other success fee of any investment bankers or financial advisors of
the Debtors or any committee) (but excluding fees and expenses of third
party professionals employed by Creditors' Committee members) at any
time before or on the first business day following delivery by a DIP Agent
of a Carve-Out Trigger Notice (as defined below), whether allowed by this
Court prior to or after delivery of a Carve-Out Trigger Notice; and

(iv)    Allowed Professional Fees of Professional Persons in an aggregate amount
not to exceed $20,000,000 incurred after the first business day following
delivery by a DIP Agent of the Carve-Out Trigger Notice, to the extent
allowed at any time, whether by interim order, procedural order or
otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve-
Out Trigger Notice Cap**").

For purposes of the foregoing, "**Carve-Out Trigger Notice**" means a written notice delivered by

email (or other electronic means) by the ABL/FILO DIP Agent or the Term DIP Agent to the

Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors'

Committee, which notice may be delivered following the occurrence and during the continuation

27

of an Event of Default (as defined in and under the ABL/FILO DIP Credit Agreement or the

Term DIP Credit Agreement) and acceleration of the obligations under the ABL/FILO Revolving

DIP Facility or the Term DIP Credit Agreement stating that the Post-Carve-Out Trigger Notice

Cap has been invoked.

    (b) <u>Carve Out Reserves</u>. On the day on which a Carve-Out Trigger Notice is

given by the ABL/FILO DIP Agent or the Term DIP Agent to the Debtors with a copy to counsel

to the creditors' committee (if any) (the "**Termination Declaration Date**"), the Carve Out

Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date

and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the

then unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such

amounts in a segregated account at the ABL/FILO DIP Agent in trust to pay such then unpaid

Allowed Professional Fees (the "**Pre-Carve Out Trigger Notice Reserve**") prior to any and all

other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also

constitute a demand to the Debtors to utilize all cash on hand as of such date and any available

cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out

Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account at

the ABL/FILO DIP Agent in trust to pay such Allowed Professional Fees benefiting from the

Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and,

together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to

any and all other claims. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used

first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set

forth above (the "**Pre-Carve Out Amounts**"), but not, for the avoidance of doubt, the Post-

Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out

Trigger Notice Reserve has not been reduced to zero, paid to the ABL/FILO DIP Agent for the

benefit of the ABL/FILO DIP Lenders until the obligations under the ABL/FILO Revolving DIP

Facility (excluding any secured hedge obligations, secured cash management obligations, and

contingent obligations) have been indefeasibly paid in full, in cash, and all commitments under

the ABL/FILO Revolving DIP Facility have been terminated, in which case any such excess

shall be paid to the ABL/FILO Revolving DIP Facility for the benefit of Term DIP Lenders in

accordance with their rights and priorities as of the Petition Date. All funds in the Post-Carve

Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the

definition of Carve Out set forth above (the "**Post-Carve Out Amounts**"), and then, to the

extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the

ABL/FILO DIP Agent for the benefit of the ABL/FILO DIP Lenders until the obligations under

the ABL/FILO Revolving DIP Facility (excluding any secured hedge obligations, secured cash

management obligations, and contingent obligations) have been indefeasibly paid in full, in cash,

and all commitments under the ABL/FILO Revolving DIP Facility have been terminated, and

any excess shall be paid to the Term DIP Agent under the Term DIP Facility for the benefit of

the Term DIP Lenders in accordance with their rights and priorities as of the Petition Date.

Notwithstanding anything to the contrary herein, if either of the Carve Out Reserves is not

funded in full in the amounts set forth herein, then, any excess funds in one of the Carve Out

Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts,

respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set

forth herein, prior to making any payments to the ABL/FILO DIP Agent, the Term DIP Agent or

any prepetition secured creditors, as applicable.  Notwithstanding anything to the contrary herein,

following delivery of a Carve Out Trigger Notice, the ABL/FILO DIP Agent, the DIP Term

Agent, and any lender under either facility shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Administrative Agent for application in accordance with this Interim Order.  Further, notwithstanding anything to the contrary in herein, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute loans under the Term DIP Facility or increase or reduce the obligations under the Term DIP Facility, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.

(c)      *Security and Carve-Out.*  For the avoidance of doubt and notwithstanding anything to the contrary herein or in any prepetition secured facilities, the Carve-Out shall be senior to all liens and claims securing the ABL/FILO DIP Facility and the Term DIP Facility, the Canadian Intercompany DIP Facility, the Wayne DIP Facility, Adequate Protection Liens and the 507(b) Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations, or the obligations secured pursuant to any prepetition secured facilities, and provided further that any residual interest in the Carve-Out shall be subject to the DIP Superpriority Claims and the DIP Liens of the ABL/FILO DIP Lenders set forth above.

(d)      *Payment of Allowed Professional Fees Prior to the Termination Declaration Date*.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date (as defined in the ABL/FILO DIP Credit Agreement) in respect of any Allowed Professional Fees shall not reduce the Post-Carve-Out Trigger Notice Cap.

(e)     *Payment of Carve-Out On or After the Termination Declaration*

*Date*.  Any payment or reimbursement made on or after the occurrence of the Termination

Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the

Carve-Out on a dollar-for-dollar basis.  Any funding of the Carve-Out shall be added to, and

made a part of, the ABL/FILO DIP Obligations secured by the Prepetition ABL/FILO Priority

Collateral and shall be otherwise entitled to the protections granted under the order approving the

ABL/FILO DIP Facility, the Bankruptcy Code, and applicable law.

(f)     The Debtors shall not assert or prosecute, and no portion of the proceeds

of the DIP Facilities, the Collateral, including any Cash Collateral, or the Carve-Out, and

no disbursements set forth in the "**DIP Budget**" (as defined in the ABL/FILO DIP Credit

Agreement), may be used for, the payment of professional fees, disbursements, costs, or

expenses incurred by any person in connection with (a) incurring indebtedness except to the

extent permitted under the DIP Documents; (b) preventing, hindering, or delaying any of the DIP

Agents', the DIP Lenders', the Prepetition ABL/FILO Agent's, the Prepetition Term Loan

Agent's, the Prepetition ABL/FILO Lenders' or the Prepetition Term Loan Lenders' (in the case

of each of the foregoing, in their respective capacities as such) enforcement or realization upon,

or exercise of rights in respect of, any of the Collateral once an Event of Default has occurred

and after any remedies notice period; (c) objecting, challenging, or contesting in any manner, or

raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any

of the DIP Obligations, the DIP Liens, the Prepetition ABL/FILO Liens, the Prepetition Term

Liens or any other rights or interests of any of the DIP Agents, the DIP Lenders, or the

Prepetition Secured Parties (in the case of each of the foregoing, in their respective capacities as

such); or (d) asserting, commencing, or prosecuting any claims or causes of action, including,

without limitation, any actions under chapter 5 of the Bankruptcy Code, against any of the DIP

Agents, the DIP Lenders, or the Prepetition Secured Parties (in the case of each of the foregoing,

in their respective capacities as such), or any of their respective agents, attorneys, advisors,

professionals, officers, directors, or employees (in the case of each of the foregoing, in their

respective capacities as such); or (e) (i) asserting, joining, commencing, supporting, investigating,

or prosecuting any action for any claim, counterclaim, action, cause of action, proceeding,

application, motion, objection, defense, or other contested matter seeking any order, judgment,

determination, or similar relief against, or adverse to the material interests of the DIP Agents, the

DIP Lenders or the Prepetition Secured Parties arising out of, in connection with, or relating to

the DIP Facility, the DIP Documents or the transactions contemplated hereunder or thereunder or

(ii) asserting, joining, commencing, supporting, or prosecuting any action for any claim, counter-

claim, action, cause of action, proceeding, application, motion, objection, defense, or other

contested matter seeking any order, judgment, determination, or similar relief against, or

materially adverse to the material interests of the Prepetition Secured Parties arising out of, in

connection with, or relating to the Prepetition Secured Debt Documents or the financing

transactions contemplated thereunder, and in the case of (e)(i) and (e)(ii) of this

paragraph, including, without limitation, (i) any action arising under the Bankruptcy Code with

respect to or relating to the DIP Obligations, the DIP Liens, the DIP Facilities, the Prepetition

ABL/FILO Liens or the Prepetition Term Liens as applicable; (ii) any so-called "lender liability"

claims and causes of action with respect to or relating to the DIP Obligations, the DIP Liens, the

DIP Facilities, the Prepetition ABL/FILO Liens, or the Prepetition Term Liens as applicable; (iii)

any action with respect to the validity and extent of the DIP Obligations, the Prepetition

ABL/FILO Credit Facility, the Prepetition Term Loan Credit Facility,[16] any superiority claims

---

[16]    "**Prepetition Term Loan Credit Facility**" refers to the facilities under the Prepetition Term Loan Credit

granted in connection with the foregoing, or the validity, extent, perfection, and priority of the

DIP Liens, the Prepetition ABL/FILO Liens or the Prepetition Term Liens; (iv) any action

seeking to invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether

equitable, contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-

claims, or counterclaims, or raise any other challenges under the Bankruptcy Code or any other

applicable domestic or foreign law or regulation against, or with respect to, the DIP Liens, the

Prepetition ABL/FILO Liens, the Prepetition Term Liens or any superpriority claims granted in

connection with the foregoing in whole or in part; (v) appeal or otherwise challenge the Interim

Order, the Final Order, the DIP Documents, or any of the transactions contemplated herein or

therein, *provided that* nothing herein shall limit the Creditors' Committee's rights to be

compensated for any objection to the Final Order, and any allowed fees and expenses of the

Committee Professionals with respect thereto may be paid using any of the proceeds of the DIP

Facilities, the Collateral, the Prepetition ABL/FILO Credit Facility, the Prepetition Term Loan

Credit Facility and the Collateral, including Cash Collateral, or the Carve-Out; and/or (vi) any

action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the

DIP Agents or the DIP Lenders in respect of their liens and security interests in the Collateral or

any of their rights, powers, or benefits hereunder or in the DIP Documents anywhere in the

world; *provided, however*, that the Carve-Out and such collateral proceeds and loans under the

DIP Documents may be used for allowed fees and expenses, in an amount not to exceed

$100,000 in the aggregate, incurred solely by the Creditors' Committee in investigating any

potential challenges during any challenge period, in each case in respect of the investigations set

forth in the preceding proviso or in paragraph 23 or 24 of this Interim Order.

---

Agreement.

10.    *DIP Superpriority Claims.*  Pursuant to section 364(c)(1) of the Bankruptcy Code,

all of the DIP Obligations shall constitute allowed superpriority administrative expense claims

against the DIP Loan Parties (without the need to file any proof of claim) with priority over any

and all claims against the DIP Loan Parties, now existing or hereafter arising, of any kind

whatsoever, including, without limitation, all administrative expenses of the kind specified in

sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or

other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c) (subject to entry

of the Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the

Adequate Protection Obligations), whether or not such expenses or claims may become secured

by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the

"**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy

Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy

Code, and which DIP Superpriority Claims shall be payable from and have recourse to all pre-

and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding Avoidance

Actions[17] but including, effective upon entry of the Final Order, Avoidance Proceeds[18]) in

accordance with the DIP Credit Agreements and this Interim Order, subject only to the liens on

such property and the Carve-Out.  The DIP Superpriority Claims shall be entitled to the full

protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any

provision hereof is vacated, reversed or modified, on appeal or otherwise.  The DIP Superpriority

Claims in respect of the ABL/FILO DIP Obligations, the Term DIP Obligations, the Canadian

Intercompany DIP Obligations and the Wayne DIP Obligations shall be *pari passu* in right of

---

[17]    "**Avoidance Actions**" means, collectively, claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code.

[18]    "**Avoidance Proceeds**" means any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise.

payment with one another and senior to the Adequate Protection Claims. Notwithstanding

anything herein to the contrary, the Canadian ABL/FILO Borrower and its subsidiaries (if any)

shall not be liable for any DIP Superpriority Claim with respect to any amounts borrowed by the

US Borrower.

      11.    *ABL/FILO DIP Liens and Term DIP Group Liens.*

      (a)    *ABL/FILO DIP Liens.* As security for the ABL/FILO DIP Obligations,

effective and perfected upon the date of this Interim Order and without the necessity of the

execution, recordation or filing by the ABL/FILO DIP Loan Parties of mortgages, security

agreements, control agreements, pledge agreements, financing statements or other similar

documents, or the possession or control by the ABL/FILO DIP Agent of, or over, any Collateral,

the following security interests and liens are hereby granted to the ABL/FILO DIP Agent for its

own benefit and the benefit of the ABL/FILO DIP Lenders (all property identified in clauses (i)-

(iv) below being collectively referred to as the "**ABL/FILO DIP Collateral**"), subject only to

the payment of the Carve-Out and in each case in accordance with the priorities set forth in

**Exhibit A** hereto (all such liens and security interests granted to the ABL/FILO DIP Agent, for

its benefit and for the benefit of the ABL/FILO DIP Lenders, pursuant to this Interim Order and

the ABL/FILO DIP Documents, the "**ABL/FILO DIP Liens**"):

      (i)    <u>First Lien on Canadian Unencumbered Property</u>. Pursuant to section

364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first

priority senior security interest in and lien upon all tangible and intangible pre- and postpetition

property of the Canadian ABL/FILO Borrower, whether existing on the Petition Date or

thereafter acquired (in each case excluding any property of the same nature, scope and type as

the Prepetition ABL/FILO Priority Collateral or the Prepetition Term Priority Collateral

regardless of whether or not any liens on such assets are voided, avoided, invalidated, lapsed or

unperfected) that, on or as of the Petition Date, is not subject to a valid, perfected and non-

avoidable lien (collectively, "**Canadian Unencumbered Property**"), including, without

limitation, any and all unencumbered cash of the Canadian ABL/FILO Borrower (whether

maintained with the ABL/FILO DIP Agent or otherwise) and any investment of such cash,

inventory, accounts receivable, other rights to payment whether arising before or after the

Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles,

documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit

accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other

intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products,

rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code

or otherwise, of all the foregoing, in each case other than: (i) the Excluded Assets[19], but

including any proceeds of Excluded Assets that do not otherwise constitute Excluded Assets; and

(ii) the Avoidance Actions, but subject to the Carve-Out and effective only upon entry of the

Final Order, including the Avoidance Proceeds; *provided, however*, that such liens shall only

secure the amounts borrowed by the Canadian ABL/FILO Borrower, and for the avoidance of

doubt, such liens shall not secure any amounts borrowed by the US Borrower;

---

[19]    "**Excluded Assets**" means, collectively, (i) if and to the extent invoked pursuant to this Interim Order,
Collateral or proceeds of Collateral in an amount equal to the Carve-Out (provided that Collateral shall include
residual interest in the Carve-Out); (ii) any other property specifically excluded pursuant to this Interim Order;
and (iii) solely with respect to the ABL/FILO DIP Liens (and not, for the avoidance of doubt, the Term DIP
Group  Liens), any "building" or "mobile home" (each as defined in Regulation H as promulgated by the
Federal Reserve Board under the Flood Laws) located on the land comprising part of the real property
associated with Store # 6510 (North Miami, FL), Store # 6465 (Phoenix, AZ), Store # 7016 (Metairie, LA),
Store # 7044 (Slidell, LA), Store # 6518 (Danbury, CT), Store # 6332 (Danbury, CT), Store # 8706 (Plantation,
FL), Store # 6308 (Brooklyn, NY), Store # 6310 (Valley Stream, NY), Store # 6323 (Brooklyn, NY) and Store
# 8722 (De Diego Expressway San Juan, PR) until the ABL/FILO DIP Agent has received the Flood
Documentation in form and substance reasonably satisfactory to the ABL/FILO DIP Agent as described in
Section 4.01(h) of the ABL/FILO DIP Credit Agreement.

(ii)    <u>Third Lien on U.S. Unencumbered Property of ABL/FILO DIP Loan</u>

<u>Parties</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing,

enforceable, fully-perfected third priority (junior and subject only to (x) the Term DIP Group

Liens on U.S. Unencumbered Property (as defined below), (y) to the Prepetition Term Loan

Adequate Protection Liens on U.S. Unencumbered Property, and (z) the Carve-Out) senior

security interest in and lien upon all tangible and intangible pre- and postpetition property

whether existing on the Petition Date or thereafter acquired (in each case excluding any property

of the same nature, scope and type as the Prepetition ABL/FILO Priority Collateral or the

Prepetition Term Priority Collateral regardless of whether or not any liens on such assets are

voided, avoided, invalidated, lapsed or unperfected), that, on or as of the Petition Date, is not

subject to a valid, perfected and non-avoidable lien (collectively, "**U.S. Unencumbered**

**Property**") of  the ABL/FILO DIP Loan Parties other than the Canadian ABL/FILO Borrower

(but not, for the avoidance of doubt, on U.S. Unencumbered Property of the Wayne DIP Lender),

including, without limitation, any and all unencumbered cash of the ABL/FILO DIP Loan Parties

other than the Canadian ABL/FILO Borrower (whether maintained with the ABL/FILO DIP

Agent or the Term DIP Agent or otherwise) and any investment of such cash, inventory,

accounts receivable, other rights to payment whether arising before or after the Petition Date,

contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents,

instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts,

patents, copyrights, trademarks, trade names, rights under license agreements and other

intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products,

rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code

or otherwise, of all the foregoing, in each case other than: (i) the Excluded Assets, but including

any proceeds of Excluded Assets that do not otherwise constitute Excluded Assets; and (ii) the

ABL/FILO DIP Loan Parties' Avoidance Actions, but subject only to and effective upon entry of

the Final Order, including any Avoidance Proceeds; *provided, however*, that such lien shall not

apply to (a) in excess of 65% of the voting stock of (i) any "controlled foreign corporation"

within the meaning of Section 957 of the Internal Revenue Code (a "**CFC**") (other than TRU of

Puerto Rico, Inc.), (ii) any entity that is a U.S. entity for U.S. federal income taxes that has no

material assets other than (A) the equity interests (including, for this purpose, any debt or other

instrument treated as equity for U.S. federal income tax purposes) in (x) one or more non-U.S.

subsidiaries that are CFCs or (y) one or more other CFC Holding Companies and (B) cash and

cash equivalents and other assets being held on a temporary basis incidental to the holding of

assets described in clause (A) of this definition (a "**CFC Holding Company**"); *provided, further*,

that to the extent stock of a CFC or CFC Holding Company was pledged in support of any

Prepetition Secured Debt Documents, any unpledged stock of such CFC or CFC Holding

Company shall not be pledged pursuant to this paragraph;

       (iii)    <u>Liens Priming Certain Prepetition Secured Parties' Liens</u>.  Pursuant to

section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-

perfected first priority priming security interest in and lien upon all pre- and postpetition property

of the ABL/FILO DIP Loan Parties of the same nature, scope and type as the Prepetition

ABL/FILO Priority Collateral, regardless of where located, regardless of whether or not any

liens on such assets are voided, avoided, invalidated, lapsed or unperfected, and for the

avoidance of doubt including assets of the Canadian ABL/FILO Borrower subject to the

Prepetition ABL/FILO Liens, which shall prime the Prepetition ABL/FILO Liens and the

Prepetition Term Liens (the "**ABL/FILO DIP Priming Liens**") *provided, that*, notwithstanding

anything herein to the contrary, the assets of the Canadian ABL/FILO Borrower shall not be

pledged in support of any amount borrowed by the US Borrower. Notwithstanding anything

herein to the contrary, the ABL/FILO DIP Priming Liens (i) shall be subject and junior to the

Carve-Out in all respects, (ii) shall be junior to prepetition liens that are senior to the Prepetition

ABL/FILO Liens (unless such liens are themselves Prepetition ABL/FILO Liens), (iii) shall be

senior in all respects to the Prepetition ABL/FILO Liens, and (iv) shall also be senior to any liens

granted after the Petition Date to provide adequate protection with respect of any of the

Prepetition ABL/FILO Liens.  The Prepetition ABL/FILO Liens and the Prepetition Term Liens

shall be primed by and made subject and subordinate to the Carve-Out and the ABL/FILO DIP

Priming Liens, but the ABL/FILO DIP Priming Liens shall not prime valid, perfected and non-

avoidable liens, if any, to which the Prepetition ABL/FILO Liens are subject at the time of the

commencement of the Chapter 11 Cases or liens to which the Prepetition ABL/FILO Liens are

subject and that are perfected after the commencement of the Chapter 11 Cases to the extent

permitted by section 546(b) of the Bankruptcy Code (in each case, other than the Carve-Out and

any such liens that are themselves Prepetition ABL/FILO Liens); and

(iv)    <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the

Bankruptcy Code, and subject to the Carve-Out, a valid, binding, continuing, enforceable, fully-

perfected junior security interest in and lien upon all pre- and postpetition property of the

ABL/FILO DIP Loan Parties of the same nature, scope and type as the Prepetition Term Loan

Priority Collateral or that, on or as of the Petition Date, is subject to valid, perfected and non-

avoidable liens or valid and unavoidable permitted liens in existence immediately prior to the

Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of

the Bankruptcy Code, in each case other than the Prepetition ABL/FILO Liens.

(b)    *ABL/FILO Revolving DIP Facility and ABL/FILO Term DIP Facility.*

The relative payment priorities and sharing of the value of the ABL/FILO DIP Liens as between

the ABL/FILO Revolving DIP Facility and the ABL/FILO Term DIP Facility shall be as set

forth in the ABL/FILO DIP Documents.

(c)    *Term DIP Group Liens.*  As security for the Term DIP Obligations,

Canadian Intercompany DIP Obligations (only upon entry of the Final Order), and the Wayne

DIP Obligations (only upon entry of the Final Order), effective and perfected upon the date of

this Interim Order and without the necessity of the execution, recordation or filing by the Term

DIP Loan Parties of mortgages, security agreements, control agreements, pledge agreements,

financing statements or other similar documents, or the possession or control by the Term DIP

Agent, the Canadian Intercompany DIP Lender, or the Wayne DIP Lender of, or over, any

Collateral, the following security interests and liens are hereby granted to (x) the Term DIP

Agent for its own benefit and the benefit of the Term DIP Lenders, (y) the Canadian

Intercompany DIP Lender, and (z) the Wayne DIP Lender (all property identified in clauses (i)-

(iv) below being collectively referred to as the "**Term DIP Group Collateral,**" and collectively

with ABL/FILO DIP Collateral, the "**DIP Collateral**"), subject only to the payment of the

Carve-Out and in each case in accordance with the priorities set forth in **Exhibit A** hereto, it

being understood and agreed in particular that the rights in the Term DIP Group Collateral of

each of (x) the Term DIP Agent for its own benefit and the benefit of the Term DIP Lenders, (y)

the Canadian Intercompany DIP Lender, and (z) the Wayne DIP Lender, shall be  *pari passu*

with one another.

(i)    First Lien on U.S. Unencumbered Property of Term DIP Loan Parties.

Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable,

fully-perfected first priority senior security interest in and lien upon all U.S. Unencumbered

Property of the Term DIP Loan Parties (in each case excluding any property of the same nature,

scope and type as the Prepetition ABL/FILO Priority Collateral or the Prepetition Term Priority

Collateral regardless of whether or not any liens on such assets are voided, avoided, invalidated,

lapsed or unperfected), whether existing on the Petition Date or thereafter acquired, including,

without limitation, any and all unencumbered cash of the Term DIP Loan Parties (whether

maintained with the ABL/FILO DIP Agent or the Term DIP Agent or otherwise) and any

investment of such cash, inventory, accounts receivable, other rights to payment whether arising

before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment,

general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real

properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license

agreements and other intellectual property, capital stock of subsidiaries, wherever located, and

the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of

the Bankruptcy Code or otherwise, of all the foregoing, which lien shall for the avoidance of

doubt be senior in priority to (x) the Prepetition Term Loan Adequate Protection Liens on U.S.

Unencumbered Property, (y) the ABL/FILO DIP Lien on U.S. Unencumbered Property of the

ABL/FILO DIP Loan Parties, and (z) the Prepetition ABL/FILO Adequate Protection Liens of

the ABL/FILO DIP Loan Parties; *provided, however*, that such lien shall not apply to (a) in

excess of 65% of the voting stock of (i) any CFC (other than TRU of Puerto Rico, Inc.), (ii) any

CFC Holding Company; *provided, further*, that to the extent stock of a CFC or CFC Holding

Company was pledged in support of any Prepetition Secured Debt Documents, any unpledged

stock of such CFC or CFC Holding Company shall not be pledged pursuant to this paragraph;

(ii)    <u>Liens Priming Certain Prepetition Secured Parties' Liens</u>.  Pursuant to

section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-

perfected security interest in and lien upon all pre- and postpetition property of the Term DIP

Loan Parties of the same nature, scope and type as the Prepetition Term Loan Priority Collateral,

regardless of whether or not any liens on such assets are voided, avoided, invalidated, lapsed or

unperfected, as of the Petition Date, which shall prime the Prepetition Term Liens and the

Prepetition ABL/FILO Liens (the "**Term DIP Group Priming Liens**").  Notwithstanding

anything herein to the contrary, the Term DIP Group Priming Liens (i) shall be subject and

junior to the Carve-Out in all respects, (ii) shall be junior to liens that are senior to the

Prepetition Term Liens (unless such liens are themselves Prepetition Term Liens), (iii) shall be

senior in all respects to the Prepetition Term Liens, and (d) shall also be senior to any liens

granted after the Petition Date to provide adequate protection with respect of any of the

Prepetition Term Liens.  The Prepetition Term Liens and the Prepetition ABL/FILO Liens shall

be primed by and made subject and subordinate to the Carve-Out and the Term DIP Group

Priming Liens, but the Term DIP Group Priming Liens shall not prime perfected liens, if any, to

which the Prepetition Term Liens are subject at the time of the commencement of the Chapter 11

Cases or liens to which the Prepetition Term Liens are subject and that are perfected after the

commencement of the Chapter 11 Cases to the extent permitted by section 546(b) of the

Bankruptcy Code (in each case, other than the Carve-Out and any such liens that are themselves

Prepetition Term Liens);

(iii)    <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the

Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security

interest in and lien upon all pre- and postpetition property of the Term DIP Loan Parties (other

than Wayne Real Estate Parent Company, LLC) of the same nature, scope and type as the

ABL/FILO Priority Collateral or that, on or as of the Petition Date, is subject to valid, perfected

and non-avoidable liens or valid and unavoidable permitted liens in existence immediately prior

to the Petition Date that are perfected subsequent to the Petition Date as permitted by section

546(b) of the Bankruptcy Code, in each case other than the security interests and liens securing

the Prepetition Term Loan Debt;

(iv)    Wayne Liens: (A) Pursuant to section 364(c)(2) of the Bankruptcy Code, a

valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in

and lien upon all tangible and intangible pre- and post-petition property of Wayne Real Estate

Parent Company, LLC, whether existing on the Petition Date or thereafter acquired, that, on or as

of the Petition Date, is not subject to a valid, perfected and non-avoidable lien, and (B) pursuant

to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-

perfected junior security interest in and lien upon all pre- and postpetition property of Wayne

Real Estate Parent Company, LLC that, on or as of the Petition Date, is subject to valid,

perfected and non-avoidable liens or valid and unavoidable permitted liens in existence

immediately prior to the Petition Date that are perfected subsequent to the Petition Date as

permitted by section 546(b) of the Bankruptcy Code; and

(d)    *Relative Priority of Liens*. Notwithstanding anything to the contrary in this

Interim Order or in the DIP Documents, the relative priority of each DIP Lien granted in this

Paragraph 11, the Prepetition Term Liens, the Contingent ABL/FILO Liens, the Prepetition

ABL/FILO Adequate Protection Liens, and the Prepetition Term Loan Adequate Protection

Liens shall be as set forth in **Exhibit A** attached hereto; *provided* that, for the avoidance of doubt,

each such lien shall be subject and subordinate to the Carve-Out in all respects.

43

12.     *Intellectual Property Assets.*  The ABL/FILO DIP Agent shall be permitted to use

DIP Collateral that is intellectual property in the manner and to the extent necessary to enable

and facilitate the ABL/FILO DIP Agent's exercise of its rights and remedies under the

ABL/FILO DIP Documents.

13.     *Protection of DIP Lenders' Rights.*

(a)     So long as there are any DIP Obligations outstanding or any DIP Lenders

have any outstanding Commitments (as defined in the DIP Credit Agreements), in each case that

are secured by DIP Liens that in accordance with **Exhibit A** hereto are senior to any liens held

by Prepetition Secured Parties with respect to any DIP Collateral (the holder of such DIP Liens

the "**Senior DIP Party**"), then with respect to such DIP Collateral, such Prepetition Secured

Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in

connection with, the liens granted thereto pursuant to the Existing Agreements or this Interim

Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP

Collateral, including in connection with the Contingent ABL/FILO Liens or the Prepetition Term

Loan Adequate Protection Liens except to the extent required by an order of this Court; (ii) be

deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP

Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after

payment in cash in full of all DIP Obligations and termination of the Commitments), to the

extent such transfer, disposition, sale or release is authorized under the applicable DIP

Documents; (iii) not file any further financing statements, trademark filings, copyright filings,

mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their

security interests in such Collateral unless, solely as to this clause (iii), any of the applicable

Senior DIP Parties file financing statements or other documents to perfect the liens granted

44

pursuant to this Interim Order, or as may be required by applicable state law to continue the

perfection of valid and unavoidable liens or security interests as of the Petition Date and (iv) with

respect to Prepetition ABL/FILO Priority Collateral, deliver or cause to be delivered, at the DIP

Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor

of the ABL/FILO DIP Agent or the ABL/FILO DIP Lenders or other documents necessary to

effectuate and/or evidence the release, termination and/or assignment of liens on any portion of

such Collateral subject to any sale or disposition or in connection with the ABL/FILO Discharge.

(b)     To the extent any Prepetition Secured Party has possession of the

Collateral or has control with respect to any Collateral that is subject to a DIP Lien that in

accordance with **Exhibit A** hereto is senior to the lien held by such Prepetition Secured Party,

then such Prepetition Secured Party shall be deemed to maintain such possession or exercise

such control as gratuitous bailee and/or gratuitous agent for perfection for the benefit of the

applicable Senior DIP Party and shall comply with the instructions of the applicable Senior DIP

Party with respect to the exercise of such control and the applicable Senior DIP Parties agree,

and shall be deemed, without incurring any liability or duty to any party, to maintain possession

or control of any Collateral in their possession or control as gratuitous bailee and/or gratuitous

agent for perfection for the benefit of the applicable Senior DIP Parties, including with respect to

bank accounts.

(c)     Subject to the right of the Senior DIP Party holding the most senior DIP

Lien on any particular DIP Collateral in accordance with **Exhibit A** hereto to control any actual

exercise of remedies with respect to such DIP Collateral, the automatic stay provisions of section

362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit

the DIP Agents and DIP Lenders to enforce all of their rights under the DIP Documents

(including any cash dominion and/or setting of reserves as provided for in any DIP Documents)
and (i) immediately upon the occurrence of an Event of Default, declare (A) the termination,
reduction or restriction of any further Commitment to the extent any such Commitment remains,
(B) all applicable DIP Obligations to be immediately due and payable, without presentment,
demand, protest, or other notice of any kind, all of which are expressly waived by the DIP Loan
Parties, and (C) the termination of the applicable DIP Documents as to any future liability or
obligation of the applicable DIP Agent or DIP Lender (but, for the avoidance of doubt, without
affecting any of the DIP Liens or the Obligations) and (D) demand cash collateral as provided for
in the applicable DIP Credit Agreement and (ii) unless this Court orders otherwise during the
Remedies Notice Period (as defined below) upon a Remedies Hearing (as defined below), upon
the occurrence of an Event of Default and the giving of five business days' prior written notice
(which shall run concurrently with any notice required to be provided under any DIP Documents)
(the "**Remedies Notice Period**") via email to counsel to the applicable DIP Agent or DIP Lender,
the Prepetition ABL/FILO Agent (prior to the ABL/FILO Discharge), the Prepetition Term Loan
Agent, the Debtors and counsel to the Debtors (and, upon receipt, the Debtors shall promptly
provide a copy of such notice to counsel to the Creditors' Committee and the U.S. Trustee) to (A)
withdraw consent to the DIP Loan Parties' continued use of Collateral (other than Collateral with
respect to which the DIP Liens are junior to other permitted liens) and (B) exercise all other
rights and remedies provided for in the applicable DIP Documents and under applicable law.
During the Remedies Notice Period, the DIP Loan Parties shall be permitted to continue to use
Cash Collateral in the ordinary course of business, including, without limitation, for the purchase
and sale of raw materials and work in process and finished goods inventory from affiliates and to
fund the Carve-Out.  In any hearing regarding any exercise of rights or remedies under any DIP

Documents (a "**Remedies Hearing**"), the only issue that may be raised by any party in

opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing,

and the Debtors and the Prepetition Secured Parties hereby waive their right to and shall not be

entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code,

to the extent that such relief would in any way impair or restrict the rights and remedies of the

Senior DIP Parties set forth in this Interim Order or the applicable DIP Documents.  In no event

shall the Senior DIP Parties or the Prepetition Secured Parties be subject to the equitable doctrine

of "marshaling" or any similar doctrine with respect to the Collateral; *provided*, that the  Term

DIP Lenders will seek to collect the Term DIP Obligations first from the Collateral that is not

property of the estate of Wayne Real Estate Parent Company, LLC (the "**Non-Wayne Term**

**Loan Collateral**") and only after the Non-Wayne Term Loan Collateral has been substantially

exhausted, will the Term DIP Lenders seek to collect the Term DIP Obligations from Collateral

that is property of Wayne Real Estate Parent Company, LLC's estate; *provided that* the property

of the Wayne Real Estate Parent Company, LLC's estate shall not be distributed to any other

stakeholders of Wayne Real Estate Parent Company, LLC or otherwise unless and until the DIP

Term Lenders are repaid in full.  The marshaling provisions set forth in this paragraph shall not

apply to the adequate protection liens and claims of the Prepetition Term Loan Lenders.  Further,

subject only to and effective upon entry of the Final Order, in no event shall the "equities of the

case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the

Prepetition Secured Parties.  Nothing in this Interim Order shall affect the Debtors' rights to

refinance the applicable DIP Credit Agreement.

(d)      No rights, protections or remedies of the DIP Agents or the DIP Lenders

granted by the provisions of this Interim Order or any DIP Documents shall be limited, modified

or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to

the DIP Loan Parties' authority to continue to use Cash Collateral; (ii) any actual or purported

termination of the DIP Loan Parties' authority to continue to use Cash Collateral; or (iii) the

terms of any other order or stipulation related to the DIP Loan Parties' continued use of Cash

Collateral or the provision of adequate protection to any party.

       (e)     If a Senior DIP Party takes any enforcement action with respect to the

Collateral, the applicable Prepetition Secured Parties and other DIP Loan Parties (i) shall

cooperate with the applicable Senior DIP Party (at the sole cost and expense of the Senior DIP

Party taking such enforcement action, subject to any indemnification or reimbursement available

under the applicable DIP Documents, and subject to the condition that no Prepetition Secured

Party shall have any obligation or duty to take any action, or refrain from taking any action, that

could reasonably be expected to result in the incurrence of any liability or damage to any

Prepetition Secured Party) in its efforts to enforce its security interest in the Collateral and to

finish any work-in-process and assemble such Collateral, and (ii) shall not take or direct any

entity to take any action designed or intended to hinder or restrict in any respect the Senior DIP

Parties from enforcing their security interests in the Collateral or from finishing any work-in-

process or assembling the Collateral *provided*, *however*, that the Prepetition Secured Parties shall

be indemnified and held harmless to the extent provided in any applicable Prepetition Secured

Debt Document for any loss, liability or obligation incurred in connection with any of the

foregoing.

       (f)     Notwithstanding the equal ranking and priority among of the Term DIP

Group Liens as among the DIP Agent for its own benefit and the benefit of the Term DIP

Lenders, the Canadian Intercompany DIP Lender and the Wayne DIP Lender, the Term DIP

Agent shall have sole and exclusive control over the enforcement of such Term DIP Group Liens

and the exercise of any remedies in respect thereof for so long as any Term DIP Obligations

remain outstanding.

14.    *Limitation on Charging Expenses Against Collateral*.  Subject only to and

effective upon entry of the Final Order, except to the extent of the Carve-Out, no costs or

expenses of administration of the Chapter 11 Cases or any future proceeding that may result

therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code,

shall be charged against or recovered from the Collateral (including Cash Collateral) pursuant to

section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written

consent of each of the DIP Agents, the Canadian Intercompany DIP Lender, the Wayne DIP

Lender, the Prepetition ABL/FILO Agent (prior to the ABL/FILO Discharge), or the Prepetition

Term Loan Agent, as the case may be, that holds a lien on the relevant asset, and no such consent

shall be implied from any other action, inaction, or acquiescence by the DIP Agents, the DIP

Lenders, the Prepetition ABL/FILO Agent or the Prepetition Term Loan Agent, and nothing

contained in this Interim Order shall be deemed to be a consent by the DIP Agent, the DIP

Lenders or the Prepetition Secured Parties to any charge, lien, assessment or claim against the

Collateral under section 506(c) of the Bankruptcy Code or otherwise.

15.    *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP

Agents (on behalf of the ABL/FILO DIP Lenders or the Term DIP Lenders), the Canadian

Intercompany DIP Lender, the Wayne DIP Lender, or the Prepetition Secured Parties pursuant to

the provisions of the Interim Order, Final Order or any subsequent order of the Court shall be

irrevocable, received free and clear of any claim, charge, assessment or other liability, including

without limitation, any such claim or charge arising out of or based on, directly or indirectly,

sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors and subject

to the entry of the Final Order approving the waiver of the Debtors' rights under section 506(c)

of the Bankruptcy Code) or 552(b) of the Bankruptcy Code, and solely in the case of payments

made or proceeds remitted after the delivery of a Carve-Out Trigger Notice, subject to the Carve-

Out in all respects.

16.    *Use of Cash Collateral*.  The DIP Loan Parties are hereby authorized, subject to

the terms and conditions of this Interim Order, to use all Cash Collateral and the Prepetition

Secured Parties are directed promptly to turn over to the DIP Loan Parties all Cash Collateral

received or held by them (other than any Cash Collateral received or held by such Prepetition

Secured Party in connection with any Cash Management Service continuing to be provided after

the Petition Date);  provided that (a) the Adequate Protection Parties are granted the adequate

protection as hereinafter set forth and (b) except on the terms and conditions of this Interim

Order, the DIP Loan Parties shall be enjoined and prohibited from at any times using the Cash

Collateral absent further order of the Court.

17.    *Contingent Liens and Adequate Protection of Prepetition ABL/FILO Secured*

*Parties*.  Until the occurrence of the ABL/FILO Discharge, the Prepetition ABL/FILO Secured

Parties are entitled to (a) the Contingent ABL/FILO Liens and (b) pursuant to sections 361, 362,

363(e), 364(d)(1) and 507 of the Bankruptcy Code, adequate protection of their interests in all

Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate

diminution in the value of the Prepetition ABL/FILO Secured Parties' interests in the Prepetition

Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason

provided for under the Bankruptcy Code, including, without limitation, any such diminution

resulting from the depreciation, sale, lease or use by the DIP Loan Parties (or other decline in

value) of the Prepetition Collateral, the priming of the Prepetition ABL/FILO Liens by the DIP

Liens pursuant to the DIP Documents and this Interim Order and the imposition of the automatic

stay pursuant to section 362 of the Bankruptcy Code (the "**Prepetition ABL/FILO Adequate**

**Protection Claim**"); *provided* that the avoidance of any Prepetition ABL/FILO Secured Party's

interests in Prepetition Collateral shall not constitute diminution in the value of such Prepetition

ABL/FILO Secured Party's interests in Prepetition Collateral.  In consideration of the foregoing,

the Prepetition ABL/FILO Secured Parties are hereby granted the following, in each case,

subject to the Carve-Out (collectively, the "**Prepetition ABL/FILO Secured Parties Adequate**

**Protection Obligations**"):

(a)    Contingent ABL/FILO Liens and Prepetition ABL/FILO Adequate

Protection Liens.  The Prepetition ABL/FILO Agent (for itself and for the benefit of the

Prepetition ABL/FILO Lenders) is hereby granted (effective and perfected upon the date of this

Interim Order and without the necessity of the execution of any mortgages, security agreements,

pledge agreements, financing statements or other agreements), (i) in the amount of any

Contingent Prepetition ABL/FILO Debt, the Contingent ABL/FILO Liens, and (ii) in the amount

of the Prepetition ABL/FILO Adequate Protection Claim, a valid, perfected replacement security

interest in and lien (the "**Prepetition ABL/FILO Adequate Protection Liens**") (subject to the

limitations set forth above) upon the Collateral in accordance with the priorities shown in

**Exhibit A** and in each case subject to the Carve-Out; *provided, however*, that no assets of the

Canadian ABL/FILO Borrower shall be subject to the Prepetition ABL/FILO Adequate

Protection Liens;

(b)    Prepetition ABL/FILO Section 507(b) Claim.  The Prepetition ABL/FILO

Secured Parties are hereby granted an allowed superpriority administrative expense claim as

provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition

ABL/FILO Adequate Protection Claim with, except as set forth in this Interim Order, priority in

payment over any and all administrative expenses of the kind specified or ordered pursuant to

any provision of the Bankruptcy Code (the "**Prepetition ABL/FILO 507(b) Claim**"), which

Prepetition ABL/FILO 507(b) Claim shall be payable from and have recourse to all prepetition

and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding Avoidance

Actions but including, without limitation, subject to upon entry of the Final Order, the

Avoidance Proceeds) *provided, however*, that the Prepetition ABL/FILO 507(b) Claim shall not

be allowed against the Canadian ABL/FILO Borrower with respect to any amounts other than

amounts owed by the Canadian ABL/FILO Borrower under the Prepetition Secured Debt

Documents.  The Prepetition ABL/FILO 507(b) Claim shall be subject and subordinate only to

the Carve-Out and the DIP Superpriority Claims granted in respect of the DIP Obligations and

shall sit *pari passu* with the Prepetition Term Loan 507(b) Claim (as defined below).  Except to

the extent expressly set forth in this Interim Order or the DIP Credit Agreements, the Prepetition

ABL/FILO Secured Parties shall not receive or retain any payments, property or other amounts

in respect of the Prepetition ABL/FILO 507(b) Claim unless and until the DIP Obligations (other

than contingent indemnification obligations as to which no claim has been asserted) and any

claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have

indefeasibly been paid in cash in full and all Commitments (as defined in the DIP Credit

Agreements) have been terminated;

(c)      Prepetition ABL/FILO Agent Fees and Expenses.  The Prepetition

ABL/FILO Agent shall receive from the DIP Loan Parties, for the benefit of the Prepetition

ABL/FILO Lenders, current cash payments of the reasonable and documented prepetition and

postpetition fees and expenses incurred prior to the ABL/FILO Discharge payable to the

Prepetition ABL/FILO Agent under the Prepetition ABL/FILO Agreements and the Prepetition

ABL/FILO Payoff Letter, including, but not limited to, the reasonable and documented fees and

disbursements of counsel (including lead counsel, local Canadian counsel, and local Virginia

counsel) promptly upon receipt of invoices therefor, which payments shall be made in the

manner provided for in paragraph 19 below; and

(d)  Contingent Prepetition ABL/FILO Debt.  In the event that the Prepetition

ABL/FILO Agent or any Prepetition ABL/FILO Lender (each in their capacities as such) is

ordered by this Court to disgorge, refund or in any manner repay to any of the Debtors or their

estates any amounts ("**Disgorged Amounts**") leading to Contingent Prepetition ABL/FILO Debt,

the Disgorged Amounts, unless otherwise ordered by the Court, shall be placed in a segregated

interest bearing account, pending a further final, non-appealable order of a court of competent

jurisdiction regarding the distribution of such Disgorged Amounts (either returning the

Disgorged Amounts to the Prepetition ABL/FILO Agent and the Prepetition ABL/FILO Lenders,

distributing such amounts to the Debtors or otherwise); *provided* that, to the extent the Disgorged

Amounts are returned to the Prepetition ABL/FILO Agent or any Prepetition ABL/FILO Lender,

they shall receive such amounts plus any interest accrued at the default rate set forth in the

Prepetition ABL/FILO Agreements.

18.  *Adequate Protection of Prepetition Term Loan Secured Parties.*  The Prepetition

Term Loan Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507

of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, for

and equal in amount to the aggregate diminution in the value of the Prepetition Term Loan

Secured Parties' interests in the Prepetition Collateral from and after the Petition Date, if any,

53

including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the DIP Loan Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition Term Liens by the DIP Liens pursuant to the DIP Documents and this Interim Order and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, (the "**Prepetition Term Loan Parties Adequate Protection Claim**" and together with the Prepetition ABL/FILO Adequate Protection Claim, the "**Adequate Protection Claims**"); *provided*, that the avoidance of any Prepetition Term Loan Secured Parties' interests in Prepetition Collateral shall not constitute diminution in the value of such Prepetition Term Loan Secured Party's interests in Prepetition Collateral.  As adequate protection of the Prepetition Term Loan Parties Adequate Protection Claim, the Prepetition Term Loan Secured Parties are hereby granted the following, in each case subject to the Carve-Out (collectively, the "**Prepetition Term Loan Adequate Protection Obligations**," and together with the Prepetition ABL/FILO Secured Parties Adequate Protection Obligations, the "**Adequate Protection Obligations**"):

(a)      Prepetition Term Loan Adequate Protection Liens.  The Prepetition Term Loan Secured Parties are hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition Term Loan Adequate Parties Protection Claim, a replacement security interest in and lien (the "**Prepetition Term Loan Adequate Protection Liens**" and together with the Prepetition ABL/FILO Adequate Protection Liens, the "**Adequate Protection Liens**") (subject to the limitations set forth above) upon the Collateral in accordance with the priorities shown in **Exhibit A** and in each case subject to the Carve-Out;

(b)      _Prepetition Term Loan Secured Parties Section 507(b) Claim_.  The

Prepetition Term Loan Secured Parties are hereby granted, subject to the Carve-Out, an allowed

superpriority claim as provided for in section 507(b) of the Bankruptcy Code, junior to the DIP

Superpriority Claims (the "**Prepetition Term Loan 507(b) Claim**" and, together with the

Prepetition ABL/FILO 507(b) Claim, the "**507(b) Claims**"); _provided, however_, that the

Prepetition Term Loan 507(b) Claim shall not be allowed against the Canadian ABL/FILO

Borrower with respect to any amounts other than amounts owed by the Canadian ABL/FILO

Borrower under the Prepetition Secured Debt Documents.  The Prepetition Term Loan 507(b)

Claim shall be payable from and have recourse to all prepetition and postpetition property of the

DIP Loan Parties and all proceeds thereof (excluding Avoidance Actions but including, upon

entry of the Final Order, the Avoidance Proceeds).  The Prepetition Term Loan 507(b) Claim

shall be subject and subordinate to only the Carve-Out and the DIP Superpriority Claims granted

in respect of the DIP Obligations and shall sit _pari passu_ with the Prepetition ABL/FILO 507(b)

Claim.  Except to the extent expressly set forth in this Interim Order or the DIP Credit

Agreements, the Prepetition Term Loan Secured Parties shall not receive or retain any payments,

property or other amounts in respect of the Prepetition Term Loan 507(b) Claim unless and until

the DIP Obligations (other than contingent indemnification obligations as to which no claim has

been asserted) and any claims having a priority superior to or _pari passu_ with the DIP

Superpriority Claims have indefeasibly been paid in cash and the Commitments have been

terminated;

(c)      _Prepetition Term Loan Secured Parties Fees and Expenses; Cash_

_Payments_.  The Prepetition Term Loan Agent shall receive from the DIP Loan Parties, for the

benefit of the Prepetition Term Loan Lenders, current cash payments of the reasonable and

documented prepetition and postpetition fees and expenses payable to the Prepetition Term Loan Agent under the Prepetition Term Loan Agreements, including, but not limited to, the reasonable and documented fees and disbursements of counsel to the Prepetition Term Loan Agent.  The DIP Loan Parties shall also pay all reasonable and documented prepetition and postpetition fees and expenses of the Ad Hoc Group of B-4 Lenders, including the reasonable and documented fees and expenses of Wachtell, Lipton, Rosen and Katz, McGuireWoods, LLP, and Osler, Hoskin & Harcourt LLP as counsel to the Ad Hoc Group of B-4 Lenders and the fees and expenses set forth in engagement letters with the Debtors of Houlihan Lokey Capital Inc. as investment banker and financial advisor and Berkeley Research Group, LLC as business advisor and industry consultant, which payments shall be made in the manner provided for in paragraph 19 below; and

(d)     <u>Adequate Protection Payments</u>.  The Prepetition Term Loan Agent, on behalf of the Prepetition Term Loan Lenders, shall receive from the Borrowers monthly adequate protection payments (the "Adequate Protection Payments") equal to half of the interest at the non-default rate that would otherwise be owed to the Prepetition Term Loan Lenders under the Prepetition Term Loan Credit Agreement during such monthly period.  Each Adequate Protection Payment shall be without prejudice, and with a full reservation of rights, as to whether such payment should be recharacterized or reallocated pursuant to section 506(b) of the Bankruptcy Code as payments under the Prepetition Term Loan Credit Agreement (whether as principal, interest or otherwise).  The Prepetition Term Loan Agent and the Prepetition Term Loan Lenders reserve all rights to assert claims for payment of additional interest calculated at any applicable rate, whether as adequate protection or otherwise.

19.     *Payment of Fees and Expenses*. The payment of the fees, expenses and disbursements set forth in paragraphs 17(c) and 18(c) of this Interim Order (to the extent incurred after the Petition Date and not paid upon the refinancing of the Prepetition ABL/FILO Debt) shall be made within fifteen (15) days (which time period may be extended by the applicable professional) after the receipt by the Debtors, the Creditors' Committee and the U.S. Trustee (the "**Review Period**") of invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications, including such amounts arising before or after the Petition Date.  The invoices for such Invoiced Fees shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a reasonably detailed description of services provided and the expenses incurred by the applicable professional; *provided*, *however*, that any such invoice: (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail (*provided*, that such invoice shall contain (except for financial advisors compensated on other than an hourly basis), at a minimum, summary data regarding hours worked by each timekeeper for the applicable professional and such timekeepers' hourly rates).  The Debtors, the Creditors' Committee and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading, on at least ten (10) days' prior written notice of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided*, that payment of any undisputed portion of Invoiced Fees shall not be delayed based on any objections thereto;

20.     *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code,

including section 506(b) thereof, the Court finds that the adequate protection provided herein is

reasonable and sufficient to protect the interests of the Adequate Protection Parties; *provided* that

any of the Prepetition Secured Parties, upon a material change in circumstances, may request

further or different adequate protection, and the Debtors or any other party may, consistent with

the terms of the Prepetition ABL/TL ICA, contest any such request.

21.    *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    The DIP Agents, the DIP Lenders and the Adequate Protection Parties are

hereby authorized, but not required, to file or record (and to execute in the name of the DIP Loan

Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent

permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices

of lien or similar instruments in any jurisdiction, or take possession of or control over cash or

securities, or take any other action in order to validate and perfect the liens and security interests

granted to them hereunder.  Whether or not the DIP Agents (on behalf of the ABL/FILO DIP

Lenders and Term DIP Lenders), the Canadian Intercompany DIP Lender, the Wayne DIP

Lender, or the Adequate Protection Parties shall, in their sole discretion, choose to file such

financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar

instruments, or take possession of or control over any cash or securities, or otherwise confirm

perfection of the liens and security interests granted to them hereunder, such liens and security

interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to

challenge, dispute or subordination, at the time and on the date of entry of this Interim Order.

Upon the request of a DIP Agent, the Canadian Intercompany DIP Lender or the Wayne DIP

Lender, each of the Prepetition Secured Parties and the DIP Loan Parties, without any further

consent of any party, is authorized (in the case of the DIP Loan Parties) and directed (in the case

of the Prepetition Secured Parties) to take, execute, deliver and file such instruments (in each

case, without representation or warranty of any kind) to enable the applicable DIP Agent to

further validate, perfect, preserve and enforce the DIP Liens.  All such documents will be

deemed to have been recorded and filed as of the Petition Date.

(b)    A certified copy of this Interim Order may, in the discretion of the DIP

Agents, be filed with or recorded in filing or recording offices in addition to or in lieu of such

financing statements, mortgages, notices of lien or similar instruments, and all filing offices are

hereby authorized and directed to accept such certified copy of this Interim Order for filing

and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code

shall be modified to the extent necessary to permit the DIP Agents, the Canadian Intercompany

DIP Lender and the Wayne DIP Lender to take all actions, as applicable, referenced in this

subparagraph (b) and the immediately preceding subparagraph (a).

(c)    Notwithstanding anything to the contrary in the Motion, the DIP

Documents, or the Interim Order, for purposes of this Interim Order, in no event shall the DIP

Collateral include or the DIP Liens or Adequate Protection Liens granted under this Interim

Order attach to any lease or other real property right, to which any Debtor is a party or any of

such relevant Debtor's rights or interests thereunder, if and for so long as the grant of such

security interest would constitute or result in: (x) the abandonment, invalidation, unenforceability

or other impairment of any right, title or interest of any Debtor therein, or (y) a breach or

termination pursuant to the terms of, or a default under, any such lease or other real property

right pursuant to any provision thereof, unless, in the case of each of clauses (x) and (y), the

applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy

Code (such leases the "**Specified Lease**"); *provided* that, the foregoing shall not preclude any

counterparty to a Specified Lease from an opportunity to be heard in the Bankruptcy Court on notice with respect to whether applicable non-bankruptcy law or the Bankruptcy Code renders such provision ineffective at a hearing held in conjunction with an Event of Default or sooner if requested by the non-Debtor party to the Specified Lease, and the Bankruptcy Court shall retain jurisdiction to hear and adjudicate issues related thereto..

      22.    *Preservation of Rights Granted Under This Interim Order.*

      (a)    The relative priority of the claims and liens expressly granted by this Interim Order shall be as set forth in **Exhibit A**

      (b)    Other than the Carve-Out and other claims and liens expressly granted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall be granted or allowed while any of the applicable DIP Obligations or Adequate Protection Obligations remain outstanding and the DIP Liens, the Prepetition ABL/FILO Adequate Protection Liens, the Prepetition Term Loan Adequate Protection Liens and the Contingent ABL/FILO Liens shall <u>not</u> be:

      (i)    subject or junior to any lien or security interest that is avoided and preserved for the benefit of the DIP Loan Parties and their estates under section 551 of the Bankruptcy Code;

      (ii)    subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise;

      (iii)    unless otherwise provided for in the DIP Documents or this Interim Order, including **Exhibit A** hereto, subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; and

(iv)    unless otherwise provided for in the DIP Documents or this Interim Order, including **Exhibit A** hereto, subject or junior to any intercompany or affiliate liens or security interests of the DIP Loan Parties.

For the avoidance of doubt, no lien or security interest shall be granted to any other party in any of the Specified Lease without first granting such lien or security interest to the DIP Agents subject to the priority scheme set forth in **Exhibit A**.

(c)    Unless all DIP Obligations shall have been indefeasibly paid in full in cash and the Commitments have been terminated, the Debtors shall not seek, and it shall constitute an Event of Default and terminate the right of the Debtors to use Cash Collateral if any of the DIP Loan Parties, without the prior written consent of the DIP Agents, the Canadian Intercompany DIP Lender and the Wayne DIP Lender seeks, proposes, supports, or consents to or if there is entered or confirmed (in each case, as applicable): (i) any modifications, amendments or extensions of this Interim Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party; (ii) an order converting or dismissing any of the Chapter 11 Cases; (iii) an order appointing a chapter 11 trustee in the Chapter 11 Cases; (iv) an order appointing an examiner with enlarged powers in the Chapter 11 Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); (v) a plan of reorganization that does not provide for payment in full in cash of any obligations outstanding under the ABL/FILO DIP Credit Agreement and the Term DIP Group Credit Agreements,[20] as applicable); or (vi) the sale of all or substantially all of the assets of the DIP Loan Parties (except to the extent permitted under the DIP Documents), which does not provide for the repayment in full in cash of all DIP Obligations (other than any contingent indemnification or expense reimbursement obligations for which no claim has been made) upon the consummation thereof.  Notwithstanding any order that

---

[20]    "**Term DIP Group Credit Agreements**" means, collectively, the Term DIP Credit Agreement, as well as the credit agreements governing the Canadian Intercompany DIP Facility and the Wayne DIP Facility.

may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy

Code or that otherwise is at any time entered: (i) the DIP Superpriority Claims, the DIP Liens,

the 507(b) Claims, the Adequate Protection Liens, the Carve-Out and, prior to the ABL/FILO

Discharge, the Contingent ABL/FILO Liens shall continue in full force and effect and shall

maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate

Protection Obligations shall have been indefeasibly paid in full in cash (and such DIP

Superpriority Claims, DIP Liens, 507(b) Claims and Prepetition Term Loan Adequate Protection

Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the

other rights granted by this Interim Order shall not be affected; and (iii) this Court shall retain

jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and

security interests referred to in this Paragraph and otherwise in this Interim Order.

(d)    If any or all of the provisions of this Interim Order are hereafter reversed,

modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the

validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations

incurred prior to the actual receipt of written notice by each of the DIP Agents, the Prepetition

ABL/FILO Agent or the Prepetition Term Loan Agent as applicable, of the effective date of such

reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP

Liens, the Adequate Protection Liens or the Contingent ABL/FILO Liens.  Notwithstanding any

such reversal, modification, vacation, stay or any use of Cash Collateral, any DIP Obligations or

any Adequate Protection Obligations incurred by the DIP Loan Parties to the DIP Agents, the

DIP Lenders or the Adequate Protection Parties, as the case may be, prior to the actual receipt of

written notice by the DIP Agents, the Prepetition ABL/FILO Agent or the Prepetition Term Loan

Agent, as applicable, of the effective date of such reversal, modification, vacation or stay shall be

governed in all respects by the original provisions of this Interim Order, and the DIP Agents, the

DIP Lenders and the Adequate Protection Parties shall be entitled to all the rights, remedies,

privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and

the DIP Documents.

        (e)       Except as expressly provided in this Interim Order or in the

DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens,

the Contingent ABL/FILO Liens, and the Adequate Protection Obligations and all other rights

and remedies of the DIP Agents, the DIP Lenders and the Adequate Protection Parties granted by

the provisions of this Interim Order and the DIP Documents shall survive, and shall not be

modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11

Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases,

terminating the joint administration of these Chapter 11 Cases or by any other act or omission;

(ii) the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the

Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an

order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section

1141(d)(4) of the Bankruptcy Code, the DIP Loan Parties have waived any discharge as to any

remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this

Interim Order and the DIP Documents shall continue in these Chapter 11 Cases, in any successor

cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7

cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the

Adequate Protection Liens, the Contingent ABL/FILO Liens, the 507(b) Claims and the

Adequate Protection Obligations and all other rights and remedies of the DIP Agents, the DIP

Lenders and the Adequate Protection Parties granted by the provisions of this Interim Order and

the DIP Documents shall continue in full force and effect until the DIP Obligations are

indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the

Commitments have been terminated.

23.    *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions,

agreements and releases contained in this Interim Order, including, without limitation, in

paragraph 4 of this Interim Order, shall be binding upon the Debtors in all circumstances and for

all purposes.   The Debtors' stipulations, admissions, agreements and releases contained in this

Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be

binding upon all other parties in interest, including, without limitation, any statutory or non-

statutory committees appointed or formed in these Chapter 11 Cases (including the Creditors'

Committee, if any) and any other person or entity acting or seeking to act on behalf of the

Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected

for any of the Debtors, in all circumstances and for all purposes unless:

(a)    such committee or any other party in interest (subject in all respects to any

agreement or applicable law that may limit or affect such entity's right or ability to do so), in

each case, with requisite standing granted by the Bankruptcy Court, has timely filed an adversary

proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*,

in this paragraph 23) by no later than a date that is the later of  the date that is the later of (x) 75

days after entry of this Interim Order and (y) 60 days after the appointment of the Creditors'

Committee, if any,  any such later date as has been agreed to, in writing, by the Prepetition

ABL/FILO Agent (with the consent of the Required Lenders (as defined in the Prepetition

ABL/FILO Credit Agreement) and the Prepetition Term Loan Agent, and (III) any such later

date as has been ordered by the Court upon a motion filed and served within any applicable

period of time set forth in this paragraph (the "**Challenge Period**"), (A) objecting to or

challenging the amount, validity, perfection, enforceability, priority or extent of the  Prepetition

Debt, the Prepetition ABL/FILO Liens or the Prepetition Term Liens, or (B) otherwise asserting

or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance

power claims or any other claims, counterclaims or causes of action, objections, contests or

defenses (collectively, a "**Challenge Proceeding**") against the Prepetition Secured Parties or

their respective subsidiaries, officers, directors, managers, principals, employees, agents,

financial advisors, attorneys, accountants, investment bankers, consultants, representatives and

other professionals and the respective successors and assigns thereof, in each case in their

respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**")

in connection with matters related to the Existing Agreements, the  Prepetition Debt, the

Prepetition ABL/FILO Liens, the Prepetition Term Liens or the Prepetition Collateral; and

(b)       there is a final non-appealable order in favor of the plaintiff in any such

Challenge Proceeding;

*provided* that any pleadings filed in any Challenge Proceeding shall set forth with specificity the

basis for such challenge or claim and any challenges or claims not so specified prior to the

expiration of the Challenge Period shall be deemed forever, waived, released and barred; and

*provided further*, nothing contained herein shall preclude or otherwise limit the rights of the

Creditors' Committee or any party to seek to intervene, or to appear and be heard under 11 U.S.C.

§ 1109(b).  For the avoidance of doubt, any informal discovery or examination conducted

pursuant to Bankruptcy Rule 2004 relating to the foregoing matters or claims shall not be

deemed or construed to be a Challenge Proceeding; *provided*, however, that such informal

discovery or examination shall be subject to the Investigation Budget.  If no such Challenge

Proceeding is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then:

(a)    the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be binding on all parties in interest, including, without limitation, the Creditors' Committee;

(b)    the obligations of the DIP Loan Parties under Existing Agreements, including the Prepetition Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Chapter 11 Cases, and any subsequent chapter 7 case(s);

(c)    the Prepetition ABL/FILO Liens and the Prepetition Term Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and

(d)    the Prepetition Term Loan Debt, the Prepetition Term Liens, the Prepetition ABL/FILO Liens and the Prepetition ABL/FILO Debt shall not be subject to any other or further claim or challenge by the Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to the Existing Agreements shall be deemed forever waived, released and barred.

If any such Challenge Proceeding is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Creditors' Committee and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors'

Committee or any non-statutory committees appointed or formed in these Chapter 11 Cases,

standing or authority to pursue any claim or cause of action belonging to the Debtors or their

estates, including, without limitation, Challenge Proceedings with respect to the Existing

Agreement, the Prepetition Debt, the Prepetition ABL/FILO Liens and the Prepetition Term

Liens.

24.     *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding

anything herein or in any other order by this Court to the contrary, no DIP Loans, Cash

Collateral, DIP Collateral, Prepetition Collateral, proceeds of any of the foregoing or the Carve-

Out may be used:

(a)     for professional fees and expenses incurred for (i) any litigation or threatened
litigation (whether by contested matter, adversary proceeding or otherwise,
including any investigation in connection with litigation or threatened litigation)
against any of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties
or for the purpose of objecting to or challenging the validity, perfection,
enforceability, extent or priority of any claim, lien or security interest held or
asserted by any of the DIP Agents, the DIP Lenders or the Prepetition Secured
Parties or (ii) asserting any defense, claim, cause of action, counterclaim, or offset
with respect to the DIP Obligations, the Prepetition Debt (including, without
limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549,
550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise),
the DIP Liens, the Prepetition ABL/FILO Liens or the Prepetition Term Liens or
against any of the Prepetition Secured Parties or their respective Representatives;

(b)     to prevent, hinder or otherwise delay any of the DIP Agents' or the Prepetition
Secured Parties' assertion, enforcement or realization on the Prepetition Collateral
or the Collateral in accordance with the DIP Documents, the Existing Agreements
or this Interim Order other than to seek a determination that an Event of Default
has not occurred or is not continuing;

(c)     to seek to modify any of the rights granted to the DIP Agents, the DIP Lenders or
the Prepetition Secured Parties under this Interim Order or under the DIP
Documents or the Existing Agreements, in each of the foregoing cases without
such parties' prior written consent, which may be given or withheld by such party
in the exercise of its respective sole discretion, subject to any applicable terms of
the Prepetition ABL/TL ICA, if any; or

(d)  pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court (including, without limitation, hereunder) and (ii) permitted under the DIP Documents;

*provided* that, notwithstanding anything to the contrary herein, the Debtors and the Creditors' Committee may use the proceeds of the DIP Loans, Collateral (including Cash Collateral) and/or the Carve-Out (subject to paragraph 9 hereof) to investigate (i) the claims and liens of the Prepetition Secured Parties and (ii) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties; *provided further* that (x) no more than an aggregate of $50,000 of the proceeds of the DIP Loans, DIP Collateral (including Cash Collateral) and/or the Carve-Out may be used by the Creditors' Committee, and (y) no more than an aggregate of $225,000 of the proceeds of the DIP Loans, DIP Collateral (including Cash Collateral) and/or the Carve-Out may be used by the Debtors, in each case, in respect of the investigations set forth in the preceding proviso or in paragraph 9 of this Interim Order (the "**Investigation Budget**"); *provided further* that the Debtors shall not use DIP Loans, DIP Collateral (including Cash Collateral) and/or the Carve-Out to investigate any claims or liens, or claims, counterclaims, causes of action, or defenses against any of the ABL/FILO DIP Secured Parties, the Term DIP Secured Parties, or the Prepetition ABL/FILO Secured Parties.

25.  *Limits to Lender Liability*.  Subject to entry of the Final Order, nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents or any DIP Lender of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  So long as the DIP Agents and the DIP Lenders comply with their DIP Obligations and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agents and the DIP Lenders shall not, in any way or manner, be liable or responsible

for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in

any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or

default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all

risk of loss, damage or destruction of the Collateral shall be borne by the DIP Loan Parties.

26.     *Interim Order Governs*.  In the event of any inconsistency between the provisions

of this Interim Order, the DIP Documents or any other order entered by this Court, the provisions

of this Interim Order shall govern.  Notwithstanding anything to the contrary in any other order

entered by this Court, any payment made, or authorization contained in, any other order entered

by this Court shall be consistent with and subject to the requirements set forth in this Interim

Order and the DIP Documents, including, without limitation, the DIP Budget; *provided that* the

DIP Budget shall not constitute a cap or limitation on any professional fees and shall not affect

the Carve-Out.

27.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions

of this Interim Order, including all findings herein, shall be binding upon all parties in interest in

these Chapter 11 Cases, including, without limitation, the DIP Agents, the DIP Lenders, the

Prepetition Secured Parties, the Creditors' Committee, any non-statutory committees appointed

or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns

(including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of

any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or

any other fiduciary appointed as a legal representative of any of the Debtors or with respect to

the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agents,

the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors

and assigns; *provided* that the DIP Agents, the DIP Lenders and the Prepetition Secured Parties

shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral)
or to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible
person appointed for the estates of the Debtors).

28. *Limitation of Liability*. In determining to make any loan or other extension of
credit under the DIP Credit Agreements, to permit the use of Cash Collateral or in exercising any
rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents,
none of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties shall (i) be deemed
to be in "control" of the operations or participating in the management of the Debtors; (ii) owe
any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and be
deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the
operation or management of the Debtors (as such terms or similar terms are used in the United
States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§
9601, et seq., as amended, or any similar federal or state statute).

29. *Master Proof of Claim*. In order to facilitate the processing of claims, to ease the
burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, each of the
Prepetition ABL/FILO Agent and the Prepetition Term Loan Agent is authorized to file in the
Debtors' lead chapter 11 case *In re Toys "R" Us, Inc., et al.,* Case No. 17-34665 (KLP), a single,
master proof of claim on behalf of the Prepetition ABL/FILO Secured Parties and the Prepetition
Term Loan Secured Parties**,** as applicable, on account of any and all of their respective claims
arising under the applicable Existing Agreements and hereunder (each, a "**Master Proof of
Claim**") against each of the Debtors. Upon the filing of a Master Proof of Claim against each of
the Debtors, the (i) Prepetition ABL/FILO Agent and the Prepetition ABL/FILO Secured Parties
and (ii) Prepetition Term Loan Agent and Prepetition Term Loan Secured Parties, as applicable,

and each of their respective successors and assigns, shall be deemed to have filed a proof of

claim in the amount set forth opposite its name therein in respect of its claims against each of the

Debtors of any type or nature whatsoever with respect to the applicable Existing Agreements,

and the claim of each Prepetition Secured Party (and each of its respective successors and

assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate

proof of claim in each of these Chapter 11 Cases.  The Master Proofs of Claim shall not be

required to identify whether any Prepetition Secured Party acquired its claim from another party

and the identity of any such party or to be amended to reflect a change in the holders of the

claims set forth therein or a reallocation among such holders of the claims asserted therein

resulting from the transfer of all or any portion of such claims.  The provisions of this

paragraph 29 and each Master Proof of Claim are intended solely for the purpose of

administrative convenience and shall not affect the right of each Prepetition Secured Party (or its

successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases.  The

Master Proofs of Claim shall not be required to attach any instruments, agreements or other

documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition

Secured Parties, which instruments, agreements or other documents will be provided upon

written request to counsel to the Prepetition ABL/FILO Agent and Prepetition Term Loan Agent,

as applicable.

30.     *Insurance*.  To the extent that the Prepetition ABL/FILO Agent or  the Prepetition

Term Loan Agent is listed as loss payee under the Borrower's or Prepetition Guarantors'

insurance policies, the DIP Agents are also deemed to be the loss payee under such insurance

policies and shall act in that capacity and distribute any proceeds recovered or received in respect

of any such insurance policies, <u>first</u>, to the payment in full of the DIP Obligations (other than

71

contingent indemnification obligations as to which no claim has been asserted), and second, to the payment of the Prepetition Debt.

31.     *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules, or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

32.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

33.     *Payments Held in Trust*.   Except as expressly permitted in this Interim Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in Collateral, receives any Collateral or any proceeds of Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Agents, and the DIP Lenders,  the Canadian Intercompany DIP Lender and the Wayne DIP Lender (as applicable based on the specific asset at issue) and shall immediately turn over such proceeds to the applicable DIP Agent, the Canadian Intercompany DIP Lender or the Wayne DIP Lender, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

34.    *Credit Bidding*.  Subject to entry of the Final Order, the DIP Agents, the Canadian Intercompany DIP Lender and the Wayne DIP Lender shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the Collateral, and (b) subject to the Prepetition ABL/TL ICA, the Prepetition Secured Parties shall have the right to credit bid up to the full amount of their Prepetition Debt in any sale of the Collateral (other than any Prepetition ABL/FILO Priority Collateral), in each case, as provided for in section 363(k) of the Bankruptcy Code and subject to any successful Challenge, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, but subject in all respects to the DIP ICA and relative lien priorities set forth in **Exhibit A**.

35.    *Cash Management*.  From and after the date of the entry of the Interim Order, and consistent with the ABL/FILO DIP Credit Agreement in all respects: (a) any person or entity providing Cash Management Services (under and as defined in the ABL/FILO DIP Credit Agreement) shall be deemed a Secured Party (as defined in the ABL/FILO DIP Credit Agreement) and an ABL/FILO DIP Secured Party with respect to any claims related to such Cash Management Services or Bank Products to the extent provided for under the ABL/FILO DIP Credit Agreement, and  any such Cash Management Services or Bank Products shall constitute an ABL/FILO DIP Obligation to the same extent such Cash Management Services or Bank Products constitute Other Liabilities (as defined in the ABL/FILO DIP Credit Agreement).

36.    *Canadian Debtor*.  Notwithstanding anything herein to the contrary, neither the Canadian ABL/FILO Borrower, its assets, nor its estate shall be subject to any of the DIP Liens, the Prepetition ABL/FILO Liens, the Prepetition Term Liens, the DIP Superpriority Claims, the

Adequate Protection Claims, the Carve Out, or any other rights or interests created pursuant to

this Interim Order, and any such liens or claims shall be created and governed solely by any

applicable order entered by the Ontario Superior Court of Justice (the "Canadian Court") or any

other court of proper jurisdiction pursuant to the Canadian Companies' Creditors Arrangement

Act, R.S.C. 1985, c. C-36.  Toys Canada is hereby authorized to seek relief in respect of the

granting of claims, liens, or similar interests from the Canadian Court in favor of the DIP Agents,

the DIP Lenders, or any of the Prepetition Secured Parties over its estate and any of its assets that

constitute property that is subject to this Court's jurisdiction, and section 362 of the Bankruptcy

Code is hereby modified solely to the extent necessary to permit such relief.

37.    *Access Rights*.  Notwithstanding anything contained herein to the contrary, and

without limiting any other rights or remedies of the DIP Agents or the DIP Lenders pursuant to

this Order or the DIP Documents, or otherwise available at law or in equity, the rights of the

Prepetition Lenders, the DIP Agents, and the DIP Lenders to enter onto the Debtors' leased

premises shall be limited to (i) any such rights agreed to in writing by the applicable landlord

pursuant to any separate agreement by and between such landlord and the Prepetition Lenders,

the Agent and/or the DIP Lenders, if any, (ii) any rights that the Prepetition Lenders, the DIP

Agents, or the DIP Lenders have under the DIP Documents or the Prepetition Secured Debt

Documents that are valid and enforceable under applicable non-bankruptcy law, if any, and (iii)

such rights as may be granted by the Court on a separate motion with notice to the applicable

landlords of the leased premises and an opportunity for such landlords to respond and be heard.

38.    *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004,

and Local Bankruptcy Rule 9013-1(G), in each case to the extent applicable, are satisfied by the

contents of the Motion.

39.     *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

40.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to implement, interpret and enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

41.     *Final Hearing*.  The Final Hearing is scheduled for October 10, 2017 at 10:00 a.m. prevailing Eastern Time before this Court.  Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon:

(a)     counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022 (Attention: Joshua A. Sussberg), Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654 (Attention:  Chad Husnick and Robert Britton), and Kutak Rock LLP, 901 East Byrd Street, Suite 1000, Richmond, Virginia 23219 (Attention: Michael A. Condyles);

(b)     counsel to the ABL/FILO DIP Agent, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attention: Marshall S. Huebner and Eli Vonnegut), and (ii) Hunton & Williams LLP, Riverfront Plaza, 951 East Byrd Street, Richmond, Virginia 23219 (Attention: Tyler P. Brown);

(c)     counsel to the Term DIP Agent, McGuire Woods LLP, 800 East Canal Street, Richmond, Virginia 23219  (Attention:  Dion W. Hayes, Douglas M. Foley and Sarah B. Boehm) and Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019 (Attention:  Joshua A. Feltman, Emil A. Kleinhaus and Neil K. Chatani);

(d)     counsel to the Prepetition ABL/FILO Secured Parties;

(e)     counsel to the Prepetition Term Loan Agent, if different than counsel to the Ad Hoc Group of B-4 Lenders;

(f)     counsel to the Ad Hoc Group of B-4 Lenders, McGuire Woods LLP, 800 East Canal Street, Richmond, Virginia 23219  (Attention:  Dion W. Hayes, Douglas M. Foley and Sarah B. Boehm) and Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019 (Attention:  Joshua A. Feltman, Emil A. Kleinhaus and Neil K. Chatani);

(g)     counsel to the Prepetition ABL/FILO Secured Parties, (i) Skadden, Arps, Slate, Meagher & Flom, LLP, 4 Times Square, New York, NY 10036 (Attention: Paul Leake, Shana Elberg, and George Howard) and (ii) Troutman Sanders LLP, 222 Central Park Avenue Suite 2000, Virginia Beach, VA 23462 (Attention: Jonathan Hauser);

(h)     counsel to the Creditors' Committee;

(i)     the U.S. Trustee; and

(j)     any other party that has filed a request for notices with this Court,

to allow actual receipt by the foregoing no later than October 3, 2017 at 4:00 p.m., prevailing Eastern Time.

42.     The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Creditors' Committee after the same has been appointed, or such Creditors' Committee's counsel, if the same shall have been appointed. .

Dated: _____, 2017    Sep 20 2017    /s/ Keith L. Phillips
Richmond, Virginia                         United States Bankruptcy Judge

Entered on Docket:Sep 20 2017

WE ASK FOR THIS:

/s/ Jeremy S. Williams

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:      (804) 644-1700
Facsimile:      (804) 783-6192

- and -

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Jeremy S. Williams

# **EXHIBIT A**

**Lien Priority Schedule**

## Lien Priority Schedule[1]

| | Prepetition ABL/FILO Priority Collateral[2] | Prepetition Term Loan Priority Collateral | U.S. Unencumbered Property | Canadian ABL/FILO Collateral | Canadian Unencumbered Property | Intellectual Property Assets[3] |
|---|---|---|---|---|---|---|
| 1 | • ABL/FILO DIP Liens* | • Term DIP Liens <br>• Wayne Lien** <br>• Canadian Intercompany Lien** | • Term DIP Liens <br>• Wayne Lien** <br>• Canadian Intercompany Lien** | • ABL/FILO DIP Liens* | • ABL/FILO DIP Liens* | • Term DIP Liens <br>• Wayne Lien** <br>• Canadian Intercompany Lien** |
| 2 | • Prepetition ABL/FILO Adequate Protection Liens | • Prepetition Term Loan Adequate Protection Liens | • Prepetition Term Loan Adequate Protection Liens | • Prepetition ABL/FILO Adequate Protection Liens | • N/A | • Prepetition Term Loan Adequate Protection Liens |
| 3 | • Contingent ABL/FILO Liens | • Prepetition Term Liens | • ABL/FILO DIP Liens* | • Contingent ABL/FILO Liens | • N/A | • Prepetition Term Liens |
| 4 | • Term DIP Liens <br>• Wayne Lien** <br>• Canadian Intercompany Lien** | • ABL/FILO DIP Liens* | • Prepetition ABL/FILO Adequate Protection Liens | • N/A | • N/A | • ABL/FILO DIP Liens* |
| 5 | • Prepetition Term Loan Adequate Protection Liens | • Prepetition ABL/FILO Adequate Protection Liens | • Contingent ABL/FILO Liens | • N/A | • N/A | • N/A |
| 6 | • Prepetition Term Liens | • Contingent ABL/FILO Liens | • N/A | • N/A | • N/A | • N/A |

[1] The liens securing each DIP Facility shall be granted only on the assets of the obligors under the relevant DIP Credit Agreement.  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Interim Order.

[2] Notwithstanding anything to the contrary herein, the Term DIP Liens, the Wayne Lien, the Canadian Intercompany Lien, the Prepetition Term Loan s Adequate Protection Liens and the Prepetition Term Liens shall not attach to the Canadian ABL/FILO Collateral.

[3] The Intellectual Property Assets are any assets owned by Geoffrey, LLC and Geoffrey International, LLC.

*The relative priority between the ABL DIP Liens and the FILO DIP Liens shall be *pari passu* in all respects; provided that after and during the occurrence of any Cash Dominion Event (as defined in the ABL/FILO DIP Credit Agreement) of any Event of Default (as defined in the ABL/FILO DIP Credit Agreement), all proceeds of the Collateral shall be applied first to the ABL/FILO Revolving DIP Facility and second to the ABL/FILO Term DIP Facility.

**The Wayne Lien and the Canadian Intercompany Lien are *pari passu* with the Term DIP Liens.