Kenneth H. Eckstein (admitted *pro hac vice*)
Robert T. Schmidt (admitted *pro hac vice*)
Stephen D. Zide (admitted *pro hac vice*)
Rachael L. Ringer (admitted *pro hac vice*)
**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

Cullen D. Speckhart (VSB No. 79096)
Olya Antle (VSB No. 83153)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Suite 2010
Richmond, VA 23219
200 Bendix Road, Ste. 300
Virginia Beach, VA 23452
Telephone: (757) 497-6633

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

---

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TOYS "R" US, Inc., *et al.*, | ) | Case No. 17-34665 (KLP) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

---

### APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF ORDER (A) AUTHORIZING EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS ITS INVESTMENT BANKER, NUNC PRO TUNC TO OCTOBER 2, 2017; (B) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS; AND (C) GRANTING RELATED RELIEF

The Official Committee of Unsecured Creditors of Toys "R" Us, Inc. *et al.*, (the

"**Committee**"), appointed on September 26, 2017 in the above-captioned chapter 11 cases (the

"**Chapter 11 Cases**"), submits this application (the "**Application**"), pursuant to sections 328(a)

and 1103(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and

2016-1 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's tax identification number, are set forth in the Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief [Dkt. No. 78].

Eastern District of Virginia (the "**Local Rules**"), for entry of an order (a) authorizing the Committee to employ and retain Moelis & Company LLC ("**Moelis**") as its investment banker, *nunc pro tunc* to October 2, 2017, in accordance with the terms and conditions of the Engagement Letter (as hereinafter defined), and (b) waiving and modifying certain time-keeping requirements of Bankruptcy Rule 2016(a), any guidelines (the "**Trustee Guidelines**") of the United States Trustee (the "**U.S. Trustee**") and any other guidelines regarding submission and approval of fee applications and (c) granting related relief. In support of this Application, the Committee submits the declaration of Barak Klein (the "**Klein Declaration**"), which is annexed hereto as **Exhibit B**. In further support of this Application, the Committee respectfully represents as follows:

## RELIEF REQUESTED

1.      By this Application, the Committee requests entry of an order authorizing it to employ and retain Moelis as its investment banker in the Chapter 11 Cases, *nunc pro tunc* to October 2, 2017, which is the date on which Moelis was selected by the Committee and the date upon which Moelis commenced providing services to the Committee, in accordance with the terms and conditions set forth in the Engagement Letter (as defined herein). The Committee's selection of Moelis as investment banker reflects the Committee's belief that Moelis' general restructuring experience and expertise, its knowledge of capital markets, and its extensive knowledge of the retail industry make Moelis the best candidate for the services to be provided, and that the proposed fee structure is competitive and appropriate given the Committee's understanding of the facts and circumstances of the Chapter 11 Cases.

## JURISDICTION

2.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

2

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and other bases for the relief requested herein are Bankruptcy Code

sections and 328(a) and 1103(a), Bankruptcy Rules 2014(a) and 2016 and Local Bankruptcy Rules

2014-1 and 2016-1.

## BACKGROUND

### A.      General Background

4.      On September 19, 2017 (the "**Petition Date**"), each of the above-captioned debtors

and debtors in possession (collectively, the "**Debtors**") filed a voluntary petition for relief under

chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing

their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No trustee of examiner has been appointed in the Chapter 11 Cases.

5.      On September 26, 2017, the United States Trustee for the Eastern District of

Virginia appointed the Committee, pursuant to section 1102(a)(1) of the Bankruptcy Code, to

represent the interests of all creditors holding unsecured claims in the Chapter 11 Cases. (D.I. 206).

6.      On October 2, 2017, the newly appointed Committee selected Moelis as its

investment banker in the Chapter 11 Cases, and Moelis began providing services to the Committee.

The Committee's retention of Moelis is governed by an engagement letter, dated as of November

2, 2017 (the "**Engagement Letter**"), a copy of which is annexed to the Klein Declaration as

**Schedule 1**.

### B.      Moelis' Qualifications

7.      Moelis is an investment banking firm with its principal office located at 399 Park

Avenue, 5th Floor, New York, NY 10022.  Moelis is a registered broker-dealer with the United

States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority. Moelis was founded in 2007 and is a wholly-owned subsidiary of Moelis & Company Group LP. Moelis & Company Group LP, together with its subsidiaries, has approximately 650 employees based in 17 offices in North and South America, Europe, the Middle East, Asia, and Australia. Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

8.      Moelis provides a broad range of investment banking services to its clients, including financial advisory services involving: (i) general corporate finance; (ii) mergers, acquisitions, and divestitures; (iii) corporate restructurings; (iv) special committee assignments; and (v) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings.

9.      Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous chapter 11 cases, including, during the past five years: *In re AOG Entm't, Inc.*, Ch. 11 Case No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016) (D.I. 128); *In re SFX Ent'mt, Inc.*, Ch. 11 Case No. 16-10238 (MFW) (Bankr. D. Del. Mar. 21, 2016) (D.I. 265); *In re Quicksilver Resources, Inc.*, Ch. 11 Case No. 15-10585 (LSS) (Bankr. D. Del. May 8, 2015) (D.I. 332); *In re Samson Res. Corp.*, Ch. 11 Case No. 15-11934 (CSS) (Bankr. D. Del. Dec. 9, 2015) (D.I. 450); *In re Am. Apparel, Inc.*, Ch. 11 Case No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015) (D.I. 390); *In re Allied Nevada Gold Corp.*, Ch. 11 Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015) (D.I. 201); *In re ITR Concession Co. LLC*, Ch. 11 Case No. 14-34284 (Bankr. N.D. Ill. Oct. 28, 2014) (D.I. 180); *In re GSE Envt'l., Inc.*, Ch. 11 Case No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014) (D.I. 155); *In re MACH Gen, LLC*, Ch. 11 Case No.

14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014) (D.I. 138); *In re Sbarro LLC*, Ch. 11 Case No.

14-10557 (MG) (Bankr. S.D.N.Y. Apr. 7, 2014) (D.I. 125); *In re Sorenson Commc'ns, Inc.*, Ch.

11 Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 26, 2014) (D.I. 131); *In re Cengage Learning,*

*Inc.*, Ch. 11 Case No. 13-44106 (ESS) (Bankr. E.D.N.Y. Sept. 13, 2013) (D.I. 478); *In re OSH 1*

*Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*, Ch. 11 Case No. 13-11565 (CSS)

(Bankr. D. Del. July 15, 2013) (D.I. 221); *In re Revel AC, Inc.*, Ch. 11 Case No. 13-16253 (JHW)

(Bankr. D.N.J. Apr. 17, 2013) (D.I. 149); *In re AMF Bowling Worldwide, Inc.*, Ch. 11 Case No.

12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012) (D.I. 269); *In re Residential Capital, LLC*, Ch.

11 Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 30, 2012) (D.I. 1315); and *In re LightSquared,*

*Inc.*, Ch.11 Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. June 11, 2012) (D.I. 127).

10.      The Committee has selected Moelis as its investment banker based upon, among

other things, (i) the Committee's need to retain a skilled investment banking firm to provide advice

with respect to the Debtors' restructuring activities, (ii) Moelis' extensive experience in and

excellent reputation for providing investment banking services in complex chapter 11 cases, and

(iii) Moelis' extensive knowledge of the retail industry.  The Committee requires the services of

an experienced investment banker such as Moelis to assist with the critical tasks associated with

guiding the Committee through the Debtors' reorganization efforts.  Accordingly, the resources,

capabilities, and experience of Moelis in advising the Committee are crucial to the Committee's

efforts to discharge its statutory duties.  Moreover, an experienced investment banker such as

Moelis fulfills a critical need that complements the services provided by the Committee's other

restructuring professionals.

### C.    Services to Be Provided

11.    Subject to further order of the Court, and consistent with the terms of the

Engagement Letter, Moelis will provide the following services:[2]

(a)    assist the Committee in reviewing and analyzing the Company's results of operations, financial condition and business plan;

(b)    assist the Committee in reviewing and analyzing a potential Restructuring and assist the Committee in negotiating a Restructuring;

(c)    assist the Committee in analyzing the capital structure of the Company;

(d)    advise and assist the Committee in analyzing the terms of securities the Company offers in a potential Restructuring;

(e)    assist the Committee in reviewing any alternatives to a Restructuring proposed by the Company or other creditors of the Company or parties in interest;

(f)    participate in meetings with the Committee and meet with the Company's management, the Company's board and other creditor groups, equity holders or other parties in interest (in each case, who are institutional parties or represented by an advisor), to discuss any Restructuring;

(g)    participate in hearings before the Bankruptcy Court and provide testimony on matters mutually agreed upon in good faith; and

(h)    provide such other investment banking services in connection with a Restructuring as Moelis and the Committee may mutually agree upon.

12.    Moelis does not provide, and will not be providing, legal, tax, accounting, or

actuarial advice.

13.    To perform these services in a cost-effective manner, Moelis will endeavor, when

possible, to coordinate its work with other professionals retained in the Chapter 11 Cases in order

to avoid duplication of effort or the creation of unnecessary work.  The Committee is also seeking

---

[2] The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained in the Application and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

6

to retain FTI Consulting, Inc. ("**FTI**") to provide financial advisory services complementary to

those provided by Moelis.  At the Committee's request, representatives of FTI and Moelis have

met to address an appropriate and efficient division of responsibilities.  While both Moelis and FTI

recognize that it is difficult to predict how the Chapter 11 Cases will proceed, they will undertake

to coordinate all of their services to the Committee in order to minimize, wherever possible, any

unnecessary duplication of services and any potential burden on the Debtors and their professional

advisors.

### D.    Professional Compensation

14.    Moelis' decision to advise and assist the Committee in connection with the Chapter

11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement

Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

15.    Specifically, the Engagement Letter provides that as compensation for services

provided in the Chapter 11 Cases, Moelis will be paid the following fees (together with all other

compensation, the "**Fee Structure**"):

a)    <u>Monthly Fee</u>.  During the term of Moelis' engagement, as set forth in the Engagement Letter, a fee of $200,000 per month (the "**Monthly Fee**") payable in advance of each month.  The Debtors will pay the first Monthly Fee immediately upon execution of the Engagement Letter, and all subsequent Monthly Fees prior to each monthly anniversary of the date of the Engagement Letter.  Whether or not a Restructuring has taken place or will take place, Moelis shall earn and be paid the Monthly Fee every month during the term of the Engagement Letter.

b)    At the closing of a Restructuring, a fee (the "**Restructuring Fee**") of $3,000,000; provided, however, that in the event that the Restructuring is consummated as part of a confirmed chapter 11 plan (including a chapter 11 plan adopted subsequent to one or more asset sales pursuant to Section 363 of the Bankruptcy Code), such fee shall be $6,000,000. Fifty percent (50%) of all Monthly Fees, beginning with the seventh full Monthly Fee that is actually paid, shall be offset against the Restructuring Fee, up to a

7

maximum of $1,000,000.

16.     If at any time prior to the end of the Tail Period (as defined below), the Debtors

consummate (or any entity formed or invested in to consummate a Restructuring) a Restructuring

or enter into an agreement for a Restructuring, or a Plan is filed regarding a Restructuring and a

Restructuring is subsequently consummated at any time, then the Debtors (or any entity formed or

invested in to consummate a Restructuring) shall pay Moelis the appropriate fee specified above

immediately upon the closing of such transaction. The "**Tail Period**" shall end twelve (12) months

following the expiration or termination of the Engagement Letter; provided, that, if such

termination is a unilateral termination by Moelis (other than as a result of the Committee or the

Debtors' failure to comply with the terms of the Engagement Letter, including the Committee's

failure to comply with the obligations of Section 3 thereof regarding Bankruptcy Court approval

of Moelis' retention under the Engagement Letter), then the "Tail Period" shall end on the date of

Moelis' termination.

17.     Notwithstanding the foregoing, if Moelis is terminated by the Committee prior to

the closing of a Restructuring (i) because of willful misconduct, bad faith or gross negligence by

Moelis in performing the engagement ("**cause**"), (ii) which conduct is not substantially remedied

by Moelis within 15 days of receiving written notice from the Committee stating that the

Committee believes such conduct constitutes "cause" for termination, and (iii) it is determined by

a finding of a court of competent jurisdiction that there was such "cause" for termination by the

Committee, which was not so remedied, then the Committee shall have the right to object to the

payment of the Restructuring Fee, solely on the basis of the facts set forth in clauses (i)-(iii) of this

paragraph, based on the reasonableness standard provided in section 330 of the Bankruptcy Code.

18.     The Committee expressly acknowledges and agrees that more than one fee and

more than one type of fee may be payable to Moelis under the terms of the Engagement Letter. No fee payable to any other person, whether by the Debtors, the Committee, or any other person or entity, shall reduce or otherwise affect any fee payable under the terms of the Engagement Letter.

19.      In addition to any fees payable to Moelis, whether or not the Debtors consummate a Restructuring, the Debtors and their bankruptcy estates will reimburse Moelis for its reasonable out-of-pocket expenses, as they are incurred in entering into and performing services pursuant to the Engagement Letter, including the costs of Moelis' outside legal counsel (without the need for such legal counsel to be retained as a professional in the Chapter 11 Cases).

20.      Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter.

21.      Because the Committee is seeking to retain Moelis under section 328(a) of the Bankruptcy Code, except as otherwise provided in the Engagement Letter, Moelis' compensation and expense reimbursement should be subject to the standard of review contained in section 328(a), rather than section 330 of the Bankruptcy Code.[3]  The Committee further requests that, given the Fee Structure, Moelis not be required to file time records in accordance with the Trustee Guidelines or applicable Bankruptcy Rules.

---

[3] The U.S. Trustee, however, will maintain its rights under section 330 of the Bankruptcy Code in recognition of the practice in this District and as provided in the order approving this Application.

22.    Moelis will maintain records in support of the actual, necessary costs and expenses incurred in connection with the rendering of its services in the Chapter 11 Cases.  However, because (i) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those kept by attorneys, (ii) Moelis ordinarily does not keep time records on a "project category" basis, and (iii) Moelis' compensation will be calculated and paid based on the Restructuring Fee (in addition to the Monthly Fees), Moelis requests that it only be required to maintain records, in summary format, of services rendered for the Committee, including summary descriptions of those services, the approximate time expended in providing those services recorded in one-hour increments, and the identity of the individuals who provide those services.  Moelis will present such records to the Court in its fee applications.

23.    The Committee respectfully requests that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that Moelis' non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that Moelis not be required to provide or conform to any schedule of rates.  To the extent Moelis otherwise would be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, or other applicable procedures and orders of the Court, the Committee respectfully requests that the Court waive such requirements and allow Moelis to submit only summary time-records recorded in one-hour increments in its applications for payment of compensation.

24.    In the event Moelis seeks reimbursement for attorneys' fees during the term of the Chapter 11 Cases, Moelis will include the applicable invoices and supporting time records from such attorneys in Moelis' own application, both interim and final.  Such invoices and time records will be subject to the Trustee Guidelines and the approval of the Court under the standards of

10

sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been

retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys'

services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

25.     The Committee believes the Fee Structure is consistent with, and typical of,

compensation arrangements entered into by Moelis and other comparable firms in connection with

the rendering of similar services under similar circumstances, both in and out of bankruptcy

proceedings.  The Committee also believes that the Fee Structure reflects a balance between a

fixed, monthly fee, and a contingency amount, which is tied to the consummation and closing of

the transactions and services contemplated by the Committee and Moelis in the Engagement

Letter. In determining the Fee Structure and the reasonableness of such compensation, the

Committee compared Moelis' fee proposal to comparable precedent.  After such comparison,

followed by discussions and arm's-length negotiations, the Committee believes that the Fee

Structure is reasonable, market-based, and designed to compensate Moelis fairly for its work.

26.     Moelis' strategic and financial expertise, as well as its capital markets knowledge,

financing skills, and restructuring capabilities, some or all of which has and will be required by

the Committee during the term of Moelis' engagement, were all important factors to the Committee

in determining the Fee Structure.  The Committee believes that the ultimate benefit of Moelis'

services cannot be measured by reference to the number of hours to be expended by Moelis'

professionals in the performance of such services.  The Committee and Moelis have agreed upon

the Fee Structure in anticipation that a substantial commitment of professional time and effort will

be required of Moelis and its professionals in connection with the Chapter 11 Cases and in light of

the fact that (i) such commitment may foreclose other opportunities for Moelis and (ii) the actual

time and commitment required of Moelis and its professionals to perform its services under the

Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Moelis.

27.     As of the Petition Date, neither the Debtors nor the Committee owed Moelis any fees for services performed or expenses incurred under the Engagement Letter.

**E.      Indemnification of Moelis**

28.     As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Committee has agreed to the terms of certain indemnification, contribution, and reimbursement obligations, set forth in **Annex A** of the Engagement Letter (the "**Indemnification Agreement**").   The Indemnification Agreement provides, among other things, that, in the event that Moelis or its affiliates or any of its or its affiliates' respective current or former directors, officers, partners, managers, agents, representatives or employees (including any person controlling Moelis or any of its affiliates) (each, an "**Indemnified Person**," and collectively, the "**Indemnified Persons**") become involved in any capacity in any actual or threatened action, claim, suit, investigation or proceeding related to Moelis' engagement, the Debtors will indemnify and hold harmless any Indemnified Person from and against, any losses (A) related to or arising out of oral or written statements or omissions made or information provided by the Committee, the Company (as defined in the Engagement Letter), including the Debtors, or its agents (including any information provided by or on behalf of the Company, including the Debtors, to any purchaser or seller of a security in any transaction contemplated by the engagement) or (B) otherwise related to Moelis' engagement, except that clause (B) shall not apply to  losses that are finally judicially determined to have resulted primarily from the willful misconduct, bad faith or gross negligence of such Indemnified Person.

29.     Moelis and the Committee negotiated the Engagement Letter, including the

12

Indemnification Agreement in good faith and at arm's length. The Committee and Moelis agree and submit that the provisions of the Indemnification Agreement are customary and reasonable terms of consideration for investment bankers such as Moelis with the in-court and out-of-court restructuring activities anticipated by the Engagement Letter, and reflect qualifications and limitations therein that are customary in this District and other jurisdictions. *See, e.g.*, *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 9, 2015); *In re EveryWare Global, Inc.*, No. 15-10743 (LSS) (Bankr. D. Del. May 20, 2015) (approving similar indemnification provisions); *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. Mar. 26, 2015) (same); *In re MPM Silicones, LLC*, No. 14-22503 (RDD) (Bankr. S.D.N.Y. June 10, 2014) (same); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012) (same).

### F.    Moelis' Disinterestedness

30.    Moelis has reviewed the list of parties in interest provided by the Committee listed in **Schedule 2** to the Klein Declaration (the "**Potential Parties in Interest**"). To the best of the Committee's knowledge as of the date hereof, and except to the extent disclosed in the Klein Declaration, Moelis (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (ii) does not hold or represent an interest materially adverse to the Debtors' estates; and (iii) has no connection to the Debtors, their creditors, or related parties herein. As of the filing of this Application, Moelis continues to research its records and communicate internally regarding its connections to the Potential Parties in Interest. Moelis will supplement the Klein Declaration as necessary in advance of the hearing on this Application should additional connections be discovered.

13

31.    Given the large number of parties in interest in the Chapter 11 Cases, despite the efforts to identify and disclose Moelis' relationships with such parties in interest, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed in the Klein Declaration.  Moelis will make continued inquiries following the filing of this Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

32.    Moelis understands and agrees that Moelis' sole and exclusive client is the Committee.  Moelis will in no circumstance be deemed to be an investment banker to, or have any obligation whatsoever to, the Debtors or any other party.

33.    Moelis will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.[4]

## **BASIS FOR RELIEF**

**A.    The Committee Should Be Permitted to Retain and Employ Moelis on the Terms in the Engagement Letter Pursuant to Sections 328 and 1103 of the Bankruptcy Code**

34.    The Committee seeks entry of an order authorizing it to retain and employ Moelis pursuant to sections 328(a) and 1103(a) of the Bankruptcy Code.  Section 1103(a) of the Bankruptcy Code provides, in relevant part, that the Committee, with the Court's approval, "may select and authorize the employment . . . of one or more attorneys, accountants, or other agents, to represent or perform services" for the Committee.  Section 328(a) of the Bankruptcy Code

---

[4] In the ordinary course of its business, Moelis regularly retains the services of senior advisors with specific industry or other expertise to supplement the investment banking services offered by Moelis' regular employees to Moelis' clients.  Upon Moelis' engagement on a particular assignment, one or more such senior advisors may be assigned to assist the other Moelis professionals for such engagement.  Such advisor acts under the management of the Moelis Managing Director who retains the lead role and primary responsibility for such assignment.  The fees and expenses of such senior advisors are paid solely by Moelis.  The Committee submits that such senior advisors are regular associates of Moelis within the meaning of section 504 of the Bankruptcy Code.

provides, in relevant part, that the Committee, with the Court's approval, "may employ or authorize the employment of a professional person under section . . . 1103 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Section 1103(b) of the Bankruptcy Code, in turn, prohibits a professional employed by a committee from "represent[ing] any other entity having an adverse interest in connection with the case."  Id. § 1103(b).

35.    As discussed above and in the Klein Declaration, Moelis satisfies the disinterestedness standard in section 1103(b) of the Bankruptcy Code,[5] and Moelis does not hold or represent an interest adverse to the Debtors' estates.

36.    Furthermore, section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum Co.* (*In re National Gypsum Co.*):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval for compensation agreed to with the trustee (or debtor or committee).

---

[5] Bankruptcy Rule 2014(a) requires that an application must be made for retention of professionals pursuant to section 1103 of the Bankruptcy Code.  Such application shall: "state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."  Fed. R. Bankr. P. 2014(a).  Additionally, the application "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections" to the parties in interest listed above.  *Id.*  Here, Bankruptcy Rule 2014 is satisfied by the contents of the Application and the Klein Declaration.

123 F.3d 861, 862 (5th Cir. 1997) (footnote omitted).

37.      Moelis is requesting, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed rate and contingent fee basis, and the payment of the fees described in the Engagement Letter, which, as set forth above, is customary in the investment banking industry. Monthly fee and transaction fee arrangements in other large chapter 11 cases have been approved and implemented by courts in this and other jurisdictions. *See, e.g.*, *In re The Gymboree Corp.*, Case No. 17-32986 (KLP) (Bankr. E.D. Va. July, 11, 2017); *In re Penn Va. Corp.*, Case No. 16-32395 (KLP) (Bankr. E.D. Va. July 6, 2016); *In re Alpha Natural Res.*, Case No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 16, 2015); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 9, 2015); *In re Allied Nev. Gold Corp.*, Ch. 11 Case No. 15-10503 (Bankr. D. Del. Apr. 15, 2015); *In re James River Coal Co.*, Case No. 14-31848 (KRH) (Bankr. E.D. Va. June 27, 2014); *In re GSE Envtl., Inc.*, Ch. 11 Case No. 14-11126 (Bankr. D. Del. May 30, 2014); *In re MACH Gen, LLC*, Ch. 11 Case No. 14-10461 (Bankr. D. Del. Apr. 11, 2014); *In re Sorenson Commc'ns, Inc.*, Ch. 11 Case No. 14-10454 (Bankr. D. Del. Mar. 25, 2014); *In re Cengage Learning, Inc.*, Ch. 11 Case No. 13-44106 (Bankr. E.D.N.Y. Sept. 13, 2013); *In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*, Ch. 11 Case No. 13-11656 (Bankr. D. Del. July 15, 2013); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012); *In re Residential Capital, LLC*, Ch. 11 Case No. 12-12020 (Bankr. S.D.N.Y. Aug. 30, 2012); *In re Appleseeds Intermediate Holdings, LLC*, Ch. 11 Case No. 11-10160 (Bankr. D. Del. Feb. 23, 2011); *In re Movie Gallery, Inc.*, No. 10-30696 (DOT) (Bankr. E.D. Va. Apr. 9, 2010); *In re Source Interlink Cos.*, Ch. 11 Case No 09-11424 (Bankr. D. Del. Apr. 27, 2009); *In re Dayton Superior Corp.*, Ch. 11 Case No. 09-11351 (Bankr. D. Del. Apr. 19, 2009).

38.      The Committee submits that the Fee Structure appropriately reflects the nature and

16

scope of services to be provided by Moelis, Moelis' substantial experience with respect to investment banking services, and the fee structures typically utilized by Moelis and other leading investment banks, which do not bill their clients on an hourly basis.

39.     Bankruptcy Rule 2016 requires retained professionals to submit applications for payment of compensation in chapter 11 cases.  The Trustee Guidelines also provide for retained professionals to submit detailed time entries that set forth, among other things, a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity, and the parties involved with the activity at issue.

40.     The Committee requests that application of the provisions of the Trustee Guidelines be tailored to the nature of Moelis' engagement and its compensation structure.  It is not the general practice of an investment banking firm to keep detailed time records similar to those customarily kept by attorneys.  Moelis' restructuring personnel, however, when formally retained in chapter 11 cases, and when required by local rules, do, and in the Chapter 11 Cases will, keep summary time records in one-hour increments describing their daily activities and the identity of persons who performed such tasks.  Apart from the time recording practices described above, Moelis' restructuring personnel do not maintain their time records on a "project category basis."  As such, the Committee requests modification of application of the provisions under the Trustee Guidelines. Moreover, notwithstanding the foregoing, the U.S. Trustee shall retain all rights to object to Moelis' fee application (including expense reimbursement) pursuant to section 330 of the Bankruptcy Code.

41.     Courts in other large chapter 11 cases in this District have excused professionals from time-keeping requirements. *See, e.g.*, *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 9, 2015) (requiring investment banking firm only to keep reasonably detailed

summary time records in one-half hour increments while indicating the total hours incurred by each professional for each day and briefly describing the nature of the work performed); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012) (permitting Moelis to keep time records in summary format containing reasonably detailed descriptions of services); *In re Movie Gallery, Inc.*, No. 10-30696 (DOT) (Bankr. E.D. Va. Apr. 9, 2010) (permitting investment banking firm to keep time records in summary format in one-hour increments).

**B.      The Indemnification, Contribution, and Reimbursement Terms of the Engagement Letter Are Appropriate**

42.      The Indemnification Agreement provisions were fully negotiated between the Committee and Moelis.   The Committee and Moelis believe that the provisions of the Indemnification Agreement are customary and reasonable for investment banking engagements both out-of-court and in chapter 11 cases.  *See In re The Gymboree Corp.*, Case No. 17-32986 (KLP) (Bankr. E.D. Va. July, 11, 2017); *In re Penn Va. Corp.*, Case No. 16-32395 (KLP) (Bankr. E.D. Va. July 6, 2016); *In re Alpha Natural Res.*, Case No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 16, 2015); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 9, 2015); *In re Energy Future Holdings Corp.*, Ch. 11 Case No. 14-10979 (Bankr. D. Del. Jan. 13, 2015); *In re Energy Future Holdings Corp.*, Ch. 11 Case No. 14-10979 (Bankr. D. Del. Oct. 20, 2014); *In re James River Coal Co.*, Case No. 14-31848 (KRH) (Bankr. E.D. Va. June 27, 2014); *In re MACH Gen, LLC*, Ch. 11 Case No. 14-10461 (Bankr. D. Del. Apr. 11, 2014); *In re Cengage Learning, Inc.*, Ch. 11 Case No. 13-44106 (Bankr. E.D.N.Y. Sept. 13, 2013); *In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*, Ch. 11 Case No. 13-11565 (Bankr. D. Del. July 15, 2013); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012);

*In re Residential Capital, LLC*, Ch. 11 Case No. 12-10202 (Bankr. S.D.N.Y. Aug. 30, 2012); *In re Appleseeds Intermediate Holdings, LLC*, Ch. 11 Case No. 11-10160 (Bankr. D. Del. Feb. 23, 2011); *In re Movie Gallery, Inc.*, No. 10-30696 (DOT) (Bankr. E.D. Va. Apr. 9, 2010); *In re Source Interlink Cos.*, Ch. 11 Case No 09-11424 (Bankr. D. Del. Apr. 27, 2009); *In re Dayton Superior Corp.*, Ch. 11 Case No. 09-11351 (Bankr. D. Del. Apr. 19, 2009).

43.    Accordingly, the Committee respectfully submits that the terms of the indemnification, reimbursement, and contribution provisions should be approved in the Chapter 11 Cases.

## C.    Nunc Pro Tunc Retention Is Appropriate

44.    The Committee required the immediate assistance of Moelis commencing on October 2, 2017 (the date on which the Committee selected Moelis as its investment banker) and, therefore, requests that the Committee's retention of Moelis be effective nunc pro tunc to that date. *See In re Arkansas Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power").

45.    Courts routinely grant nunc pro tunc relief in this and other jurisdictions. *See, e.g.*, *In re The Gymboree Corp.*, Case No. 17-32986 (KLP) (Bankr. E.D. Va. July, 11, 2017); *In re Penn Va. Corp.*, Case No. 16-32395 (KLP) (Bankr. E.D. Va. July 6, 2016); *In re Alpha Natural Res.*, Case No. 15-33896 (KRH) (Bankr. E.D. Va. Oct. 16, 2015); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 9, 2015); *In re Allied Nev. Gold Corp.*, Ch. 11 Case No. 15-10503 (Bankr. D. Del. Apr. 15, 2015); *In re James River Coal Co.*, Case No. 14-31848 (KRH) (Bankr. E.D. Va. June 27, 2014); *In re GSE Envtl., Inc.*, Ch. 11 Case No. 14-11126 (Bankr. D.

19

Del. May 30, 2014); *In re MACH Gen, LLC*, Ch. 11 Case No. 14-10461 (Bankr. D. Del. Apr. 11,

2014); *In re Sorenson Commc'ns, Inc.*, Ch. 11 Case No. 14-10454 (Bankr. D. Del. Mar. 25, 2014);

*In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012); *In re*

*Vertis Holdings, Inc.*, Ch. 11 Case No. 12-12821 (Bankr. D. Del. Nov. 20, 2012); *In re WP Steel*

*Venture LLC*, Ch. 11 Case No. 12-11661 (Bankr. D. Del. Sept. 18, 2012); *In re Ritz Camera &*

*Image, LLC*, Ch. 11 Case No. 12-11868 (Bankr. D. Del. July 27, 2012); *In re Movie Gallery, Inc.*,

No. 10-30696 (DOT) (Bankr. E.D. Va. Apr. 9, 2010).

**D.     The Retention of Moelis Is Critical to the Committee's Discharge of Its Duties**

46.     The Committee submits that retaining Moelis will assist the Committee in

discharging its duties in the Chapter 11 Cases and is therefore in the best interests of all parties in

interest.   Moelis is a preeminent investment banking firm that is experienced in advising

stakeholders in complex restructurings.   Denial of the relief requested herein would deprive the

Committee of the assistance of uniquely qualified investment bankers.   Furthermore, since Moelis

has provided more than one month of services to the Committee thus far, denial of Moelis'

employment would result in an unjust disadvantage to the Committee and all parties in interest

because of Moelis' current understanding of the Debtors' operations.   If the Committee were

forced to engage a new investment banker, such change would necessitate the commitment of

significant and costly resources to educate such replacement.

47.     In light of the foregoing, the Committee submits that the retention of Moelis is in

the best interest of the estates, their creditors, and all parties in interest in these chapter 11 cases.

Moelis has extensive experience in matters involving complex financial restructurings and an

excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors

and creditor constituencies throughout the United States. The Committee therefore submits that it has satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules to support entry of an order authorizing the Committee to retain and employ Moelis in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

## NOTICE

48.     Notice of this Application has been provided in compliance with this Court's *Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* (D.I. 129). The Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

49.     No prior request for relief sought in this Application has been made to this or any other court.

## CONCLUSION

WHEREFORE the Committee respectfully requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, granting (i) the relief requested herein and (ii) such further relief as the Court deems just and proper.

Dated:   November 2, 2017

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF TOYS "R" US, INC.

**Simon Property Group, Inc.**
solely in its capacity as Committee Co-Chair and not in its
individual capacity[2]

*/s/ Ronald M. Tucker*
**Ronald M. Tucker**
Committee Co-Chair

Respectfully submitted,


*/s/ Cullen D. Speckhart*
Cullen D. Speckhart (VSB No. 79096)
Olya Antle (VSB No. 83153)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Suite 2010
Richmond, VA 23219
200 Bendix Road, Ste. 300
Virginia Beach, VA 23452
Telephone: (757) 497-6633
cspeckhart@wolriv.com
oantle@wolriv.com

        -and-

Kenneth H. Eckstein (admitted *pro hac vice*)
Robert T. Schmidt (admitted *pro hac vice*)
Stephen D. Zide (admitted *pro hac vice*)
Rachael L. Ringer (admitted *pro hac vice*)
**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
keckstein@kramerlevin.com
rschmidt@kramerlevin.com
szide@kramerlevin.com
rringer@kramerlevin.com

*Proposed Counsel to Official Committee of*
*Unsecured Creditors*

**<u>Exhibit A</u>**
**Proposed Order**

Kenneth H. Eckstein (admitted *pro hac vice*)
Robert T. Schmidt (admitted *pro hac vice*)
Stephen D. Zide (admitted *pro hac vice*)
Rachael L. Ringer (admitted *pro hac vice*)
**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

Cullen D. Speckhart (VSB No. 79096)
Olya Antle (VSB No. 83153)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Suite 2010
Richmond, VA 23219
200 Bendix Road, Ste. 300
Virginia Beach, VA 23452
Telephone: (757) 497-6633

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

---------------------------------------------------------------------
)
In re:                                                )          Chapter 11
)
TOYS "R" US, Inc., *et al.*,              )          Case No. 17-34665 (KLP)
)
Debtors.[1]          )          (Jointly Administered)
)
---------------------------------------------------------------------

## ORDER GRANTING APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF ORDER (A) AUTHORIZING EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS ITS INVESTMENT BANKER, NUNC PRO TUNC TO OCTOBER 2, 2017; (B) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS; AND (C) GRANTING RELATED RELIEF

Upon the application, dated November 2, 2017 (the "**Application**"),[2] of the Official Committee of Unsecured Creditors (the "**Committee**"), appointed in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order (a) authorizing the Committee to employ and retain Moelis & Company LLC ("**Moelis**") as its investment banker, *nunc pro tunc* to October 2,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's tax identification number, are set forth in the Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief [Dkt. No. 78].

[2] Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Application.

2017, in accordance with the terms and conditions of the Engagement Letter, and (b) waiving and modifying certain time-keeping requirements of Bankruptcy Rule 2016(a), any guidelines (the "**Trustee Guidelines**") of the United States Trustee (the "**U.S. Trustee**") and any other guidelines regarding submission and approval of fee applications and (c) granting related relief.; and upon the *Declaration of Barak Klein in Support of the Application of the Official Committee of Unsecured Creditors for Entry of Order (A) Authorizing Employment and Retention of Moelis & Company LLC as its Investment Banker, Nunc Pro Tunc to October 2, 2017; (B) Waiving Certain Time-Keeping Requirements; and (C) Granting Related Relief* (the "**Klein Declaration**"); and the Court having found that Moelis has the capability and experience to provide the services described in the Application; and the Court being satisfied based on the representations made in the Application and the Klein Declaration; and the Court being satisfied, based on the representations made in the Application and the Klein Declaration that Moelis (i) is "disinterested" as such term is defined in section 101(14) of title 11 of the United States Code (the "**Bankruptcy Code**") and (ii) does not represent or hold an interest adverse to the interest of the Debtors' estates with respect to the matters upon which it is to be engaged; and the Court finding that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134, that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409; and the Court finding that the Committee provided due and proper notice of the Application, which notice is adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested by the Application (the "**Hearing**"); and upon consideration of the Application, the Klein Declaration, the record of the Hearing, and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Application is in the best interests of the Committee, the Debtors' estates, their creditors,

2

and other parties in interest, and that the legal and factual bases set forth in the Application and

the Klein Declaration establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is hereby

ORDERED that the Application is granted as set forth herein; and it is further

ORDERED that pursuant to sections 328(a) and 1103 of the Bankruptcy Code,

Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1, the Committee is

authorized to employ and retain Moelis as its investment banker in accordance with the terms and

conditions set forth in the Application and the Engagement Letter, *nunc pro tunc* to October 2,

2017; and it is further

ORDERED that, except to the extent set forth herein, the Engagement Letter

(together with all annexes thereto), a copy of which is annexed hereto as **Exhibit 1,** including,

without limitation, the Fee Structure, is approved pursuant to sections 328(a) and 1103 of the

Bankruptcy Code, and the Debtors are authorized and directed to perform their payment,

indemnification, reimbursement, and contribution obligations and their nonmonetary obligations

in accordance with the terms and conditions, and at the times specified, in the Engagement Letter.

Subject to the below decretal paragraphs, all compensation, indemnification, reimbursement of

expenses, and contribution obligations to Moelis and any Indemnified Person (as defined in the

Engagement Letter) under the Engagement Letter shall be subject to review only pursuant to the

standards set forth in section 328(a) of the Bankruptcy Code, and shall not be subject to any other

standard of review, including, but not limited to, that set forth in section 330 of the Bankruptcy

Code, except as otherwise provided herein; and it is further

3

ORDERED that the Committee shall retain the right to object to the payment of the Restructuring Fee based on the reasonableness standard provided in section 330 of the Bankruptcy Code if Moelis is terminated by the Committee prior to the closing of a Restructuring (i) because of willful misconduct, bad faith or gross negligence by Moelis in performing this engagement ("**cause**"), (ii) which conduct is not substantially remedied by Moelis within 15 days of receiving written notice from the Committee stating that the Committee believes such conduct constitutes "cause" for termination, and (iii) it is determined by a finding of a court of competent jurisdiction that there was such "cause" for termination by the Committee, which was not so remedied.

ORDERED that the Debtors are authorized to pay Moelis' fees and to reimburse Moelis for its reasonable, documented, out-of-pocket costs and expenses as provided in the Engagement Letter, *nunc pro tunc* to October 2, 2017, including, but not limited to, in-sourced document production costs, travel costs, meals, and the reasonable, actual, documented, out-of-pocket costs, fees, disbursements, and other charges of Moelis' external legal counsel (without the need for such legal counsel to be retained as a professional in the Chapter 11 Cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).  In the event that Moelis seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Moelis' own applications, both interim and final, and these invoices and time records shall be subject to the Trustee Guidelines and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code, but without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and it is further

4

ORDERED that Moelis shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court; *provided, however*, that the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Trustee Guidelines, Local Rule 2016-1, and any other orders and procedures of this Court are modified such that Moelis' restructuring professionals shall be required only to keep summary time records in one-hour increments, Moelis' nonrestructuring professionals and personnel in administrative departments (including legal) shall not be required to keep any time records, Moelis' restructuring professionals shall not be required to keep time records on a project category basis, and Moelis shall not be required to provide or conform to any schedule of hourly rates; and it is further

ORDERED that except as otherwise provided herein, Moelis shall be compensated in accordance with the terms of the Engagement Letter, which compensation is approved pursuant to section 328(a) of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, the fees and expenses payable to Moelis pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except by the U.S. Trustee.  This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Moelis' compensation and expense reimbursements under sections 330 and 331 of the Bankruptcy Code.  Accordingly, nothing in this Order or the record of the Hearing shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Moelis' compensation; and it is further

5

ORDERED that in the event that, during the pendency of these cases, Moelis seeks

reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records

from such attorneys shall be included in Moelis' fee applications and such invoices and time

records shall be in compliance with the Local Bankruptcy Rules, and shall be subject to any United

States Trustee Guidelines and approval of the Bankruptcy Court under the standards of sections

330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained

under section 327; and it is further

ORDERED that notwithstanding anything in the Application or the Engagement Letter to

the contrary, to the extent that Moelis uses the services of independent contractors, subcontractors

(collectively, the "**Contractors**") in these cases and Moelis seeks to pass through the fees and/or

costs of the Contractors to the Debtors, Moelis shall (i) pass through the fees of such Contractors

to the Debtors at the same rate that Moelis pays the Contractors; (ii) seek reimbursement for actual

costs of the Contractors only; and (iii) ensure that the Contractors perform the conflicts check

required by Bankruptcy Rule 2014 and file with the Court such disclosures as required by

Bankruptcy Rule 2014; and it is further

ORDERED that the indemnification, contribution, and reimbursement provisions

set forth in **Annex A** to the Engagement Letter are approved, subject during the pendency of the

Chapter 11 Cases to the following modification:

(i)    Moelis shall not be entitled to indemnification, contribution, or
reimbursement set forth in the Engagement Letter, unless such indemnification,
contribution, or reimbursement is approved by the Court.

(ii)    Notwithstanding any provision of the Engagement Letter to the contrary,
the Debtors shall have no obligation to indemnify any Indemnified Person (as
defined in the Engagement Letter), or provide contribution or reimbursement to any
Indemnified Person, for any claim or expense that is either: (a) judicially

6

determined (the determination having become final) to have arisen from the Indemnified Person's gross negligence, willful misconduct, bad faith, or self-dealing to which the Debtors have not consented; (b) for a contractual dispute in which the Debtors allege breach of the Indemnified Person's obligations to maintain the confidentiality of nonpublic information, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.,* 315 F.3d 217 (3d Cir. 2003); or (c) settled without the Debtors' consent prior to a judicial determination as to the Indemnified Person's gross negligence, willful misconduct, bad faith, or unconsented self-dealing, but determined by this Court, after notice and a hearing, to be a claim or expense for which such Indemnified Person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter, as modified by this Order.

(iii)    If, before the earlier of: (a) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal); and (b) the entry of an order closing the Chapter 11 Cases, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, such Indemnified Person must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Indemnified Person before the entry of an order by this Court approving the payment. This subparagraph (iii) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, and/or reimbursement by any Indemnified Persons, and is not a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, the Indemnified Persons. All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, and/or reimbursement.

(iv)    Any limitations on any amounts to be contributed by the parties to the Engagement Letter shall be eliminated. The Indemnified Persons shall retain any rights they may have to contribution at common law; and it is further

ORDERED that the Debtors and the Committee are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that to the extent that the Application and the Engagement Letter are inconsistent with this Order, the terms of this Order shall govern; and it is further

ORDERED that notice of the Application as provided therein shall be deemed good and sufficient notice of the Application; and it is further

ORDERED that this Court shall retain jurisdiction to hear and to determine all matters arising from or related to this Order.

Dated: _____, 2017
      Richmond, Virginia

_____
THE HONORABLE KEITH L. PHILLIPS
UNITED STATES BANKRUPTCY JUDGE

8

WE ASK FOR THIS:

/s/
Cullen D. Speckhart (VSB No. 79096)
Olya Antle (VSB No. 83153)
**WOLCOTT RIVERS GATES**
919 E. Main Street, Suite 2010
Richmond, VA 23219
200 Bendix Road, Ste. 300
Virginia Beach, VA 23452
Telephone: (757) 497-6633
cspeckhart@wolriv.com
oantle@wolriv.com

      -and-

Kenneth H. Eckstein (admitted *pro hac vice*)
Robert T. Schmidt (admitted *pro hac vice*)
Stephen D. Zide (admitted *pro hac vice*)
Rachael L. Ringer (admitted *pro hac vice*)
**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
keckstein@kramerlevin.com
rschmidt@kramerlevin.com
szide@kramerlevin.com
rringer@kramerlevin.com

*Proposed Counsel to Official Committee of
Unsecured Creditors*


*Proposed Counsel to the Official
Committee of Unsecured Creditors*

9

**<u>Exhibit 1</u>**
**Engagement Letter**

*Execution Version*

399 PARK AVENUE
5th FLOOR
NEW YORK, NY 10022

T 212.883.3800
F 212.880.4260

M O E L I S & C O M P A N Y

November 2, 2017

<u>PRIVILEGED AND CONFIDENTIAL</u>

Official Committee of Unsecured Creditors of Toys "R" Us, Inc.
c/o Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Ladies & Gentlemen:

We are pleased to confirm that since October 2, 2017, the Official Committee of Unsecured Creditors (the "<u>Committee</u>" or "<u>you</u>"), appointed in the Bankruptcy Cases (as defined below) of Toys "R" Us, Inc. ("<u>Toys</u>") and its affiliates and subsidiaries that are or later become debtors in the Bankruptcy Cases (collectively, the "<u>Debtors</u>"),[1] that are pending in the United States Bankruptcy Court for the Eastern District of Virginia (the "<u>Bankruptcy Court</u>") under title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), has engaged Moelis & Company LLC ("<u>Moelis</u>", "<u>we</u>", "<u>our</u>" or "<u>us</u>") to act as its exclusive investment banker in connection with a potential Restructuring (as defined below). The current members of the Committee, together with any subsequent new members of the Committee, are referred to herein individually as a "<u>Member</u>" and collectively as "<u>Members</u>". The undersigned parties executing this agreement on behalf of the Committee represent and warrant that they have full power and authority to execute this agreement on behalf of each and every Member of the Committee.

"<u>Restructuring</u>" means any restructuring, reorganization, repayment, refinancing, rescheduling or recapitalization of all or any material portion of the liabilities of Toys and its affiliates and direct and indirect subsidiaries (collectively, the "<u>Company</u>"), however such result is achieved, including, without limitation, through a plan of reorganization or liquidation (a "<u>Plan</u>") confirmed in connection with one or more cases (each a "<u>Bankruptcy Case</u>" and, collectively, the "<u>Bankruptcy Cases</u>") commenced by or against the Debtors under the Bankruptcy Code, an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Company's debt instruments, an issuance of new securities, raising of new debt or equity capital, or a sale, disposition or other transfer (regardless of form), including to existing creditors of the Company, of all or a significant portion of the equity, interests, assets, properties, cash flows or businesses of the Company.[1]

---

[1]  It is expressly understood and agreed that all references to obligations of the Debtors under the terms of this agreement, including all attachments hereto, shall be obligations of the Debtors pursuant to the order entered by the Bankruptcy Court pursuant to and in accordance with the Committee's application to retain Moelis.

LOS ANGELES | NEW YORK | BOSTON

MOELIS & COMPANY

1.  As part of our engagement, we will if appropriate and requested:

(a)    assist the Committee in reviewing and analyzing the Company's results of operations, financial condition and business plan;

(b)    assist the Committee in reviewing and analyzing a potential Restructuring and assist the Committee in negotiating a Restructuring;

(c)    assist the Committee in analyzing the capital structure of the Company;

(d)    advise and assist the Committee in analyzing the terms of securities the Company offers in a potential Restructuring;

(e)    assist the Committee  in reviewing any alternatives to a Restructuring proposed by the Company or other creditors of the Company or parties in interest;

(f)    participate in meetings with the Committee and meet with the Company's management, the Company's board and other creditor groups, equity holders or other parties in interest (in each case, who are institutional parties or represented by an advisor), to discuss any Restructuring;

(g)    participate in hearings before the Bankruptcy Court and provide testimony on matters mutually agreed upon in good faith; and

(h)    provide such other investment banking services in connection with a Restructuring as Moelis and the Committee may mutually agree upon.

Please note that Moelis does not provide, and will not be providing, legal, tax, accounting or actuarial advice to the Committee or any other party.

2.  (a)  As compensation for our services hereunder, the Debtors and their bankruptcy estates agree to pay us the following nonrefundable cash fees set forth below.  We acknowledge that neither the Committee, nor any of its individual members, nor any of the Committee's advisors or professionals shall have any obligation to pay our fees or expenses or any indemnity amounts.

<u>Monthly Fee</u>

(i)    During the term of this agreement, a fee of $200,000 per month (the "<u>Monthly Fee</u>"), payable in advance of each month. The Debtors will pay the first Monthly Fee immediately upon the execution of this agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this agreement.  Whether or not a Restructuring has taken place or will take place, we shall earn and be paid the Monthly Fee every month during the term of this agreement.

<u>Restructuring Fee</u>

(ii)    At the closing of a Restructuring, a fee (the "<u>Restructuring Fee</u>") of $3,000,000; provided, however, that in the event that the Restructuring is consummated as part of a confirmed chapter 11 plan in connection with the Bankruptcy Cases (including a chapter

MOELIS & COMPANY

11 plan adopted subsequent to one or more asset sales pursuant to Section 363 of the Bankruptcy Code), such fee shall be $6,000,000. Fifty percent (50%) of all Monthly Fees, beginning with the seventh full Monthly Fee that is actually paid, shall be offset against the Restructuring Fee, up to a maximum offset of $1,000,000.

If, at any time prior to the end of the Tail Period (as defined below), the Debtors consummate (or any entity formed or invested in to consummate a Restructuring) a Restructuring or enter into an agreement for a Restructuring, or a Plan is filed regarding a Restructuring and a Restructuring is subsequently consummated at any time, then the Debtors (or any entity formed or invested in to consummate the Restructuring) and their bankruptcy estates shall pay us the appropriate fee specified in Section 2(a) above immediately upon the effectiveness of each such transaction. The "Tail Period" shall end 12 months following the expiration or termination of this agreement; provided, that, if such termination is a unilateral termination by Moelis (other than as a result of the Committee or the Debtors' failure to comply with the terms hereof, including the Committee's failure to comply with the obligations of Section 3 hereof regarding Bankruptcy Court approval of Moelis' retention under this agreement), then the "Tail Period" shall end on the date of Moelis' termination. Notwithstanding the foregoing, if Moelis is terminated by the Committee prior to the closing of a Restructuring (i) because of willful misconduct, bad faith or gross negligence by Moelis in performing this engagement ("cause"), (ii) which conduct is not substantially remedied by Moelis within 15 days of receiving written notice from the Committee stating that the Committee believes such conduct constitutes "cause" for termination, and (iii) it is determined by a finding of a court of competent jurisdiction that there was such "cause" for termination by the Committee, which was not so remedied, then the Committee shall have the right to object to the payment of the Restructuring Fee, solely on the basis of the facts set forth in clauses (i)-(iii), based on the reasonableness standard provided in section 330 of the Bankruptcy Code. Except as otherwise provided herein, the Committee agrees not to object to our request to the Bankruptcy Court and any appellate court for allowance and payment of Moelis' fees that are consistent with this agreement.

(b) Whether or not the Company consummates a Restructuring, the Debtors and their bankruptcy estates will reimburse us for all of our reasonable out-of-pocket expenses as they are incurred in entering into and performing services pursuant to this agreement, including the costs of our legal counsel (without the need for such legal counsel to be retained as a professional in the Bankruptcy Cases). We agree to provide the Debtors with reasonable support for our expenses at the Debtors's request or at the Bankruptcy Court's direction. The Committee agrees not to object to our request to the Bankruptcy Court and any appellate court for allowance and payment of Moelis' reasonable out-of-pocket expenses that are consistent with this agreement.

(c) The obligation of the Debtors and their bankruptcy estates to pay any fee, expense or indemnity set forth herein is not subject to any reduction by way of setoff, recoupment or counterclaim.

(d) Notwithstanding the obligations of the Debtors and their bankruptcy estates hereunder, including, but not limited to, their obligation to pay the fees and expenses of Moelis and to indemnify Moelis, it is understood and agreed that Moelis' sole and exclusive client is the Committee. Moelis will in no circumstance be deemed to be an investment banker to, or have any obligation whatsoever to, the Company or any other party, including, without limitation, any individual member of the Committee, whether in its capacity as a member of the Committee or otherwise. All advice (written or oral) provided by Moelis in connection with this engagement (i) is intended solely for the benefit and use of the Committee in considering matters to which this agreement relates, (ii) is not and will not be deemed to constitute a recommendation to the Company's board of directors (or any similar governing body) or the Company with

-3-

MOELIS & COMPANY

respect to any Restructuring or any other matter and (iii) is not intended for the benefit or use by the Company, its stockholders, its members, its other creditors or any other person or entity.

(e)  Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for us.  Moelis represents and warrants that William Derrough shall, so long as he is an active employee of Moelis, provide any testimony as contemplated by Section 1(g); unless, in each case, the Committee agrees that another representative from Moelis may do so. Moreover, the actual time and effort required for the engagement may vary substantially from time to time.  In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that the Committee will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Committee that Moelis will be available to advise and assist it throughout the Bankruptcy Cases.

3.  (a)  In the Bankruptcy Cases, the Committee will use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing our employment as the Committee's exclusive investment banker under this agreement (including, without limitation, the fee, expense, and indemnification provisions hereof) pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), nunc pro tunc to October 2, 2017.  The retention application and any order authorizing Moelis' retention must be acceptable to Moelis. In agreeing to seek Moelis' retention under Section 328(a) of the Bankruptcy Code, the Committee acknowledges that it believes that Moelis' general restructuring experience and expertise, its knowledge of the capital markets and its restructuring capabilities will inure to the benefit of the Company and the Committee, that the value to the Company and the Committee of Moelis' services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees set forth in Section 2 hereof are reasonable, regardless of the number of hours expended by Moelis' professionals in the performance of the services provided hereunder.

(b)  Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final order acceptable to Moelis under section 328(a) of the Bankruptcy Code within 90 days following the formation of the Committee.  If such an order is not obtained within such 90 day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this agreement, and the Debtors shall reimburse Moelis for all fees owing and expenses incurred prior to the date of termination, subject to any requirements that the Bankruptcy Court might provide.

(c)  Moelis' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of **Annex A**, if any, shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court.  Following entry of an order authorizing our retention, the Committee will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application.  The Committee will support Moelis' fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Debtors will pay promptly our fees and expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Rules.

(d) The Committee will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Cases contains

MOELIS & COMPANY

typical and customary releases (including from each of the Debtors, their bankruptcy estates and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, members, agents and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company, the Committee, any Plan or the engagement described in this agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4.   The Committee will, or will use all reasonable efforts to cause the Company to, furnish us with all information concerning the Company that we reasonably deem appropriate (collectively, the "Information") to perform this engagement and the Company will provide us with access to the officers, directors, employees, accountants, advisors, counsel and other representatives of the Company. The Debtors represent and warrant that, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading.  In addition, the Debtors will promptly advise us of any material event or change in the business, affairs, condition (financial or otherwise) of the Company that occurs during the term of our engagement hereunder.   The Committee understands and agrees that we, in performing our services hereunder, will be entitled to use and rely upon the Information as well as publicly available information without independent verification. We are not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities of the Company.  We will be entitled to assume that financial forecasts and projections the Company and/or the Committee  makes available to us have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company or the Committee, as applicable. The Committee acknowledges that Moelis' ability to render the services hereunder will depend on the extent of the cooperation Moelis receives.  Moelis' role in reviewing any Information is limited to performing a review as Moelis deems necessary to support its own advice and analysis and shall not be performed on behalf on any other party.

Moelis shall comply with the terms of the draft "Execution Version" of the confidentiality agreement as agreed between the Company and the Committee previously provided to Moelis, and we will not disclose to any third party nonpublic Information concerning the Committee and the Company provided to us in connection with such confidentiality agreement or this agreement as long as it remains nonpublic, except (i) as otherwise required by subpoena or court order (in which case we will give you as prompt prior notice as is commercially practicable in the circumstances, will cooperate with your efforts to prevent or narrow the scope of such disclosure or obtain a protective order to maintain its confidentiality, and will disclose only that portion of such nonpublic Information as our counsel advises is required or requested), (ii) to our financial regulatory authorities without notice to the Committee or the Company in connection with customary examinations and inquiries with respect to its business not specifically targeted at the Committee or the Company and (iii) we may provide nonpublic Information to prospective parties to a Restructuring as contemplated by this agreement. This paragraph shall terminate one year following the termination of this agreement.

Moelis may provide confidential information of the Company to members of the Committee who have signed a confidentiality agreement with the Company.  If any Member of the Committee elects not to receive any material non-public information or any confidential information of the Company is designated as "for professional eyes only" or "highly confidential" pursuant to the confidentiality agreement between Moelis and the Company or otherwise, each such Member agrees that Moelis shall

MOELIS & COMPANY

not have any liability for not providing such information to any such Member or for any advice provided based on such information.

5.    The Committee will not disclose, summarize or refer to any of Moelis' advice publicly or to any third party, without the prior written consent of Moelis. Certain communications and correspondence from Moelis, and work product and analyses prepared by Moelis for the Committee in connection with this engagement, are at the request of counsel to the Committee and will be considered in preparation for litigation over the restructuring of the Company and, accordingly, will be subject to attorney-client privilege and the work-product doctrine. Moelis makes no representation or warranty regarding the foregoing. In the event disclosure is required by subpoena or court order, the Committee will provide us reasonable advance notice and permit us to confer with independent counsel (and receive reimbursement for such counsel under Section 2(b) hereof) and to comment on the form and content of the disclosure. The Committee and the Debtors acknowledge that we may, at our option and expense after announcement of any Restructuring, place announcements and advertisements or otherwise publicize such transaction and our role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on our website and in such financial and other newspapers and journals as we may choose, stating that we have acted as exclusive investment banker to the Committee in connection with any Restructuring.

6.    Moelis is an independent contractor with the contractual obligations described herein owing solely to the Committee.  The parties agree that Moelis is not acting as an agent or fiduciary of the Committee or any other party, and the Committee agrees to not make any claims against Moelis based on an agency or fiduciary relationship. The Company and Moelis agree to the indemnity and other provisions set forth in *Annex A*, and each Member of the Committee agrees to the limitation on liability set forth therein. The Company's obligations set forth in *Annex A* are in addition to any rights that any Indemnified Person may have at common law or otherwise. Other than the Indemnified Persons, there are no third party beneficiaries of this agreement.

7.    Either the Committee or Moelis may terminate this agreement upon 5 days' prior written notice thereof to the other party.  In the event of any termination, (i) Moelis will continue to be entitled to the fees and expenses that became payable hereunder prior to termination or expiration and (ii) *Annex A*, the last paragraph of Section 2(a) and Sections 3 through 9 shall remain in full force and effect after the completion, termination or expiration of this agreement.

8.    Moelis is an independent investment bank which is engaged in a range of investment banking activities. Certain affiliates of Moelis are engaged in asset management and other activities for their own account and otherwise.  Moelis and its affiliates may have interests that differ from the interests of the Committee.  Moelis and its affiliates have no duty to disclose to the any party, or use for the benefit of any party, any information acquired in the course of providing services to any other party, engaging in any transaction or carrying on any other businesses.  Moelis' employees, officers, partners and affiliates may at any time own the Company's securities or those of any other entity involved in any transaction contemplated by this agreement.  Moelis recognizes its obligations under applicable securities laws in connection with the purchase and sale of such securities.

Moelis is required to obtain, verify, and record information that identifies each party with whom it does business in a manner that satisfies the requirements of and in accordance with the USA Patriot Act.  Upon request, each of the parties hereto will provide Moelis with information necessary to verify such party's identity for purposes of the USA Patriot Act.

MOELIS & COMPANY

9.    This agreement and any disputes or claims that may arise out of this agreement shall be governed by and construed in accordance with the internal laws of the State of New York, and this agreement embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Committee and us (and if the obligations of the Debtors are adversely affected, approved by the Bankruptcy Court). If any part of this agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect. Any proceeding arising out of this agreement shall be heard and determined exclusively (subject to the immediately succeeding sentence) by the Bankruptcy Court or any court having appellate jurisdiction over the Bankruptcy Court. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in a New York state or federal court sitting in the city and county of New York, to whose jurisdiction and forum Moelis and each Member of the Committee irrevocably submit.  The Committee also irrevocably consents to the service of process in any such proceeding by mail to the Committee's address set forth above.   This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.   This agreement shall be binding upon the Members of the Committee, the Company and its bankruptcy estates, and Moelis, and its and Moelis' respective successors and permitted assigns. WE, THE MEMBERS OF THE COMMITTEE AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS)  HEREBY AGREE TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

MOELIS & COMPANY

We are delighted to accept this engagement and look forward to working with the Members of the Committee.  Please sign and return the enclosed duplicate of this agreement.  The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____
Name:  Barak Klein
Title:  Managing Director

M O E L I S  &  C O M P A N Y

Agreed to as of the date first written above:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TOYS "R" US, INC.

By: Simon Property Group, Inc., solely in its capacity as
    Committee co-chair and not in its individual capacity.

By: _____

    Name: Ronald M. Tucker
    Title: Committee Co-chair

KL2 3034970.2
OMM_US:75963944.8

MOELIS & COMPANY

## ANNEX A

In connection with our engagement to advise and assist the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Bankruptcy Cases") of Toys "R" Us, Inc. ("Toys") and its affiliates and subsidiaries that are or later become debtors in the Bankruptcy Cases (collectively, the "Debtors"), the Debtors and the Committee will be subject to the terms of the Annex A.[2]  In the event that Moelis & Company LLC or our affiliates or any of our or our affiliates' respective current or former directors, officers, partners, managers, agents, representatives or employees (including any person controlling us or any of our affiliates) (collectively, "Indemnified Persons") becomes involved in any capacity in any actual or threatened action, claim, suit, investigation or proceeding (an "Action") arising out of, related to or in connection with the engagement or any matter referred to in this agreement, the Debtors, their bankruptcy estates, the reorganized Debtors and/or their reorganized affiliates and subsidiaries after the consummation of the Restructuring (as defined in the agreement between us and the Committee to which this Annex A is attached), and any entity or entities that may be formed or invested in to consummate a Restructuring (all such entities, the "Company") will reimburse such Indemnified Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing this  agreement, as they are incurred. The Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company and each Member of the Committee each agrees that no Indemnified Person shall have any liability to the Company, the Committee or any Member of the Committee or any of their respective affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages or liabilities (collectively, "Losses") (A) related to or arising out of oral or written statements or omissions made or information provided by the Committee, the Company or its agents (including any information provided by or on behalf of the Company to any purchaser or seller of a security in any transaction contemplated by the engagement) or (B) otherwise arising out of, related to or in connection with this agreement or Moelis' performance thereunder, except that this clause (B) shall not apply to Losses that are finally judicially determined to have resulted primarily from the willful misconduct, bad faith or gross negligence of such Indemnified Person.

If such indemnification or limitation on liability are for any reason not available or insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company and the Committee, on the one hand, and by us, on the other hand, with respect to the engagement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company or the Committee on the one hand and of us on the other hand, and any other equitable considerations; *provided, however,* that, to the extent permitted by applicable law, in no event shall the Indemnified Persons be responsible for amounts that exceed the fees actually received by us from the Company and its bankruptcy estates in connection with the engagement. Relative benefits to the Company, on the one hand, and us, on the other hand, with respect to the engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be,

---

[2]      It is expressly understood and agreed that all references to obligations of the Company under the terms of this Annex A and the agreement to which it is attached shall be obligations of the Company pursuant to the order entered by the Bankruptcy Court pursuant to and in accordance with the Committee's application to retain Moelis.

MOELIS & COMPANY

pursuant to the transaction(s), whether or not consummated, contemplated by the engagement bears to (ii) the fees actually received by us in connection with the engagement.

The Company and the Committee will not without the prior written consent of Moelis (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any Action (or facilitate the Settlement of any Action) in respect of which indemnification is or may be sought hereunder or in connection with the transactions contemplated by the engagement letter to which this *Annex A* is attached (whether or not an Indemnified Person is a party to such Action) unless such Settlement includes a release of each Indemnified Person from any Losses arising out of such Action.  The Company and the Committee will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of an Indemnified Person without such Indemnified Person's prior written consent.   No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's or the Committee's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action.

Prior to effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding debt or other securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company will notify us in writing of the arrangements for the Company's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Company  and us.

MOELIS & COMPANY

## <u>SCHEDULE 1</u>

**Wire Instructions:**
**Beneficiary Account:** Moelis & Company LLC
**Routing Number:** 122016066
**Account Number:** 412956230
**International SWIFT Code:** CINAUS6L

**City National Bank**
525 S. Flower Street
24th Floor
Los Angeles, CA 90071

**<u>Exhibit B</u>**
**Klein Declaration**

Kenneth H. Eckstein (admitted *pro hac vice*)  
Robert T. Schmidt (admitted *pro hac vice*)  
Stephen D. Zide (admitted *pro hac vice*)  
Rachael L. Ringer (admitted *pro hac vice*)  
**KRAMER LEVIN NAFTALIS & FRANKEL LLP**  
1177 Avenue of the Americas  
New York, New York 10036  
Telephone: (212) 715-9100  
Facsimile: (212) 715-8000

Cullen D. Speckhart (VSB No. 79096)  
Olya Antle (VSB No. 83153)  
**WOLCOTT RIVERS GATES**  
919 E. Main Street, Suite 2010  
Richmond, VA 23219  
200 Bendix Road, Ste. 300  
Virginia Beach, VA 23452  
Telephone: (757) 497-6633

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

-----------------------------------------------------------------  )
In re:                                                             )    Chapter 11
                                                                   )
TOYS "R" US, Inc., *et al.*,                                       )    Case No. 17-34665 (KLP)
                                                                   )
                                   Debtors.[1]                     )    (Jointly Administered)
-----------------------------------------------------------------  )

## DECLARATION OF BARAK KLEIN IN SUPPORT OF APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF ORDER (A) AUTHORIZING EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS ITS INVESTMENT BANKER, NUNC PRO TUNC TO OCTOBER 2, 2017; (B) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS; AND (C) GRANTING RELATED RELIEF

I, Barak Klein, declare that the following is true and correct to the best of my knowledge, information, and belief:

1.  I am a Managing Director of Moelis & Company LLC ("**Moelis**"), residing in Moelis' New York office, located at 399 Park Avenue, 5th Floor, New York, NY 10022.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's tax identification number, are set forth in the Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief [Dkt. No. 78].

2.     I am authorized to make this declaration (the "**Declaration**") in support of the application (the "**Application**")[2] of the Official Committee of Unsecured Creditors (the "**Committee**") of Toys "R" Us, Inc. *et al*., in the above-referenced jointly administered chapter 11 cases (the "**Chapter 11 Cases**") for entry of an order (a) authorizing the Committee to employ and retain Moelis & Company LLC ("**Moelis**") as its investment banker, *nunc pro tunc* to October 2, 2017, in accordance with the terms and conditions of the Engagement Letter (as hereinafter defined) and (b) waiving and  modifying certain  time-keeping requirements of Bankruptcy Rule 2016(a), any guidelines (the "**Trustee Guidelines**") of the United States Trustee (the "**U.S. Trustee**") and any other guidelines regarding submission and approval of fee applications and (c) granting related relief.

3.     The facts set forth in this Declaration are based on my personal knowledge, upon information and belief, or upon client matter records kept in the ordinary course of business that were reviewed either by me or other employees of Moelis under my supervision and direction. If called and sworn as a witness, I could and would testify competently to the facts set forth herein.

## A.      Moelis' Qualifications

4.     I believe that Moelis and the professionals it employ are uniquely qualified to advise the Committee in the matters for which Moelis is proposed to be employed.

5.     Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, NY 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.  Moelis was founded in 2007 and is a wholly-owned subsidiary of Moelis

---

[2] Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Application.

& Company Group LP.  Moelis & Company Group LP, together with its subsidiaries, has approximately 650 employees based in 17 offices in North and South America, Europe, the Middle East, Asia, and Australia.  Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

6.      Moelis provides a broad range of investment banking services to its clients, including financial advisory services involving: (i) general corporate finance; (ii) mergers, acquisitions, and divestitures; (iii) corporate restructurings; (iv) special committee assignments; and (v) capital raising.  Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings.

7.      Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including, during the past five years: *In re AOG Entm't, Inc.*, Ch. 11 Case No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016) (D.I. 128); *In re SFX Ent'mt, Inc.*, Ch. 11 Case No. 16-10238 (MFW) (Bankr. D. Del. Mar. 21, 2016) (D.I. 265); *In re Quicksilver Resources, Inc.*, Ch. 11 Case No. 15-10585 (LSS) (Bankr. D. Del. May 8, 2015) (D.I. 332); *In re Samson Res. Corp.*, Ch. 11 Case No. 15-11934 (CSS) (Bankr. D. Del. Dec. 9, 2015) (D.I. 450); *In re Am. Apparel, Inc.*, Ch. 11 Case No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015) (D.I. 390);   *In re Allied Nevada Gold Corp.*, Ch. 11 Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015) (D.I. 201); *In re ITR Concession Co. LLC*, Ch. 11 Case No. 14-34284 (Bankr. N.D. Ill. Oct. 28, 2014) (D.I. 180); *In re GSE Envt'l., Inc.*, Ch. 11 Case No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014) (D.I. 155); *In re MACH Gen, LLC*, Ch. 11 Case No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014) (D.I. 138); *In re Sbarro LLC*, Ch. 11 Case No. 14-10557 (MG) (Bankr. S.D.N.Y. Apr. 7, 2014) (D.I. 125); *In re Sorenson Commc'ns, Inc.*, Ch. 11 Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 26, 2014) (D.I. 131); *In re Cengage*

3

*Learning, Inc.*, Ch. 11 Case No. 13-44106 (ESS) (Bankr. E.D.N.Y. Sept. 13, 2013) (D.I. 478);

*In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*, Ch. 11 Case No.

13-11565 (CSS) (Bankr. D. Del. July 15, 2013) (D.I. 221); *In re Revel AC, Inc.*, Ch. 11 Case No.

13-16253 (JHW) (Bankr. D.N.J. Apr. 17, 2013) (D.I. 149); *In re AMF Bowling Worldwide, Inc.*,

Ch. 11 Case No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012) (D.I. 269); *In re Residential

Capital, LLC*, Ch. 11 Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 30, 2012) (D.I. 1315);

and *In re LightSquared, Inc.*, Ch.11 Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. June 11, 2012)

(D.I. 127).

8.      Moelis has been advising the Committee on the Debtors' current status and on

strategic and restructuring initiatives since October 2, 2017, pursuant to the terms and conditions

set forth in the engagement letter between the Committee and Moelis, dated November 2, 2017

(the "**Engagement Letter**"), a copy of which is annexed hereto as **Schedule 1**.

9.      As a result of its work over the past month, Moelis has become acquainted with

and developed valuable institutional knowledge concerning the Debtors' businesses, operations,

capital structure, and other material information.   Moelis also has developed a working

relationship with the Debtors' professionals and certain Committee constituents.   Accordingly,

I believe Moelis is well qualified and able to represent the Committee in a cost-effective,

efficient, and timely manner, and that the employment and retention of Moelis is in the best

interests of the Committee, the Debtors, their estates, and all parties in interest.

**B.      Services to Be Provided**

10.      Pursuant to the terms of the Engagement Letter, Moelis' anticipated services

include:[3]

---

[3] The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions
of the Engagement Letter.  To the extent there is any discrepancy between the summary contained in the Application

(a)     assist the Committee in reviewing and analyzing the Company's results of operations, financial condition and business plan;

(b)     assist the Committee in reviewing and analyzing a potential Restructuring and assist the Committee in negotiating a Restructuring;

(c)     assist the Committee in analyzing the capital structure of the Company;

(d)     advise and assist the Committee in analyzing the terms of securities the Company offers in a potential Restructuring;

(e)     assist the Committee  in reviewing any alternatives to a Restructuring proposed by the Company or other creditors of the Company or parties in interest;

(f)     participate in meetings with the Committee and meet with the Company's management, the Company's board and other creditor groups, equity holders or other parties in interest (in each case, who are institutional parties or represented by an advisor), to discuss any Restructuring;

(g)     participate in hearings before the Bankruptcy Court and provide testimony on matters mutually agreed upon in good faith; and

(h)     provide such other investment banking services in connection with a Restructuring as Moelis and the Committee may mutually agree upon.

11.     Moelis does not provide, and will not be providing, legal, tax, accounting, or actuarial advice.

12.     To perform these services in a cost-effective manner, Moelis will endeavor, when possible, to coordinate its work with other professionals retained in the Chapter 11 Cases in order to avoid duplication of effort or the creation of unnecessary work.  The Committee is also seeking to retain FTI Consulting, Inc. ("**FTI**") to provide financial advisory services complementary to those provided by Moelis.  At the Committee's request, representatives of FTI and Moelis have met to address an appropriate and efficient division of responsibilities.  While both Moelis and FTI recognize that it is difficult to predict how the Chapter 11 Cases will proceed, they will

---

and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

undertake to coordinate all of their services to the Committee in order to minimize, wherever possible, any unnecessary duplication of services and any potential burden on the Debtors and their professional advisors.

13.    Based on Moelis' extensive expertise and experience in advising creditors and debtors in complex restructuring and chapter 11 cases, I submit that the employment and retention of Moelis will assist the Committee in discharging its duties in the Chapter 11 Cases and is in the best interests of the Debtors, their creditors, and all parties in interest.

**C.    Professional Compensation**

14.    Moelis' decision to advise and assist the Committee in connection with the Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

15.    Specifically, the Engagement Letter provides that, as compensation for services provided in the Chapter 11 Cases, Moelis will be paid the following fees:

a)    Monthly Fee.  During the term of Moelis' engagement, as set forth in the Engagement Letter, a fee of $200,000 per month (the "**Monthly Fee**") payable in advance of each month.  The Debtors will pay the first Monthly Fee immediately upon execution of the Engagement Letter, and all subsequent Monthly Fees prior to each monthly anniversary of the date of the Engagement Letter.  Whether or not a Restructuring has taken place or will take place, Moelis shall earn and be paid the Monthly Fee every month during the term of the Engagement Letter.

b)    At the closing of a Restructuring, a fee (the "**Restructuring Fee**") of $3,000,000; provided, however, that in the event that the Restructuring is consummated as part of a confirmed chapter 11 plan (including a chapter 11 plan adopted subsequent to one or more asset sales pursuant to Section 363 of the Bankruptcy Code), such fee shall be $6,000,000. Fifty percent (50%) of all Monthly Fees, beginning with the seventh full Monthly Fee that is actually paid, shall be offset against the Restructuring Fee, up to a maximum of $1,000,000.

16.    If at any time prior to the end of the Tail Period (as defined below), the Debtors consummate (or any entity formed or invested in to consummate a Restructuring) a Restructuring

6

or enter into an agreement for a Restructuring, or a Plan is filed regarding a Restructuring and a Restructuring is subsequently consummated at any time, then the Debtors (or any entity formed or invested in to consummate a Restructuring) shall pay Moelis the appropriate fee specified above immediately upon the closing of such transaction. The "**Tail Period**" shall end twelve (12) months following the expiration or termination of the Engagement Letter; provided, that, if such termination is a unilateral termination by Moelis (other than as a result of the Committee or the Debtors' failure to comply with the terms of the Engagement Letter, including the Committee's failure to comply with the obligations of Section 3 thereof regarding Bankruptcy Court approval of Moelis' retention under the Engagement Letter), then the "Tail Period" shall end on the date of Moelis' termination.

17.     Notwithstanding the foregoing, if Moelis is terminated by the Committee prior to the closing of a Restructuring (i) because of willful misconduct, bad faith or gross negligence by Moelis in performing the engagement ("**cause**"), (ii) which conduct is not substantially remedied by Moelis within 15 days of receiving written notice from the Committee stating that the Committee believes such conduct constitutes "cause" for termination, and (iii) it is determined by a finding of a court of competent jurisdiction that there was such "cause" for termination by the Committee, which was not so remedied, then the Committee shall have the right to object to the payment of the Restructuring Fee, solely on the basis of the facts set forth in clauses (i)-(iii) of this paragraph, based on the reasonableness standard provided in section 330 of the Bankruptcy Code. Except as otherwise provided herein, the Committee agrees not to object to Moelis' request to the Bankruptcy Court and any appellate court for allowance and payment of Moelis' fees that are consistent with this agreement.

18.     In addition to any fees payable to Moelis, whether or not the Company consummates a Restructuring, the Debtors and their bankruptcy estates will reimburse Moelis for its reasonable out-of-pocket expenses, as they are incurred in entering into and performing services pursuant to the Engagement Letter, including the costs of Moelis' legal counsel (without the need for such legal counsel to be retained as a professional in the Chapter 11 Cases).

19.     Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, and any other applicable procedures and orders of this Court, including any order granting this Application (to the extent compliance is not waived).

20.     Because the Committee is seeking to retain Moelis under section 328(a) of the Bankruptcy Code, except as otherwise provided in the Engagement Letter, Moelis' compensation and expense reimbursement should be subject to the standard of review contained in section 328(a), rather than section 330 of the Bankruptcy Code.[4]

21.     Moelis will maintain records in support of the actual, necessary costs and expenses incurred in connection with the rendering of its services in the Chapter 11 Cases. However, because (i) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those kept by attorneys, (ii) Moelis ordinarily does not keep time records on a "project category" basis, and (iii) Moelis' compensation will be calculated and paid based on the Restructuring Fee (in addition to the Monthly Fees), Moelis requests that it only be required to maintain records, in summary format, of services rendered for the

---

[4] The U.S. Trustee, however, will maintain its rights under section 330 of the Bankruptcy Code in recognition of the practice in this District and as provided in the order approving this Application.

8

Committee, including summary descriptions of those services, the approximate time expended in providing those services in one-hour increments, and the identity of the individuals who provide those services.  Moelis will present such records to the Court in its fee applications. Moreover, the Committee respectfully requests that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that Moelis' non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that Moelis not be required to provide or conform to any schedule of rates.  To the extent that Moelis otherwise would be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines, or other applicable procedures and orders of the Court, the Committee respectfully requests that the Court waive such requirements and allow Moelis to submit only summary time records kept in one-hour increments in its application for payment of compensation.

22.    If Moelis seeks reimbursement for attorneys' fees during the term of the Chapter 11 Cases, Moelis will include the invoices and supporting time records from such attorneys in Moelis' own application, both interim and final.  Such invoices and time records shall be subject to the Trustee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

23.    I understand that Moelis' strategic and financial expertise, as well as its capital markets knowledge, financing skills, and restructuring capabilities, some or all of which will be required by the Committee during the term of Moelis' engagement, were important factors to the Committee in determining the Fee Structure.  I believe that the ultimate benefits of Moelis'

services cannot be measured by reference to the number of hours to be expended by Moelis'

professionals in the performance of such services.  Moelis and the Committee have agreed upon

the Fee Structure in anticipation that a substantial commitment of professional time and effort

will be required of Moelis and its professionals in connection with the Chapter 11 Cases and in

light of the fact that (i) such commitment may foreclose other opportunities for Moelis and

(ii) the actual time and commitment required of Moelis and its professionals to perform its

services under the Engagement Letter may vary substantially from week-to-week and month-to-

month, creating "peak load" issues for Moelis.

24.     I believe the Fee Structure is consistent with, and typical of, compensation

arrangements entered into by Moelis and other comparable firms in connection with the

rendering of similar services under similar circumstances.  I also believe that the Fee Structure

reflects a balance between a fixed, monthly fee and a contingency fee, which is tied to the

consummation and closing of the transactions and services contemplated by the Committee and

Moelis in the Engagement Letter.  In determining the Fee Structure and the reasonableness of

such compensation, Moelis considered the rate structures that it has used in other investment

banking matters, as well as similar comparable precedent.  Moelis also discussed the terms of its

retention in arm's-length negotiations with the Committee.  After such comparison, followed by

discussions and arm's-length negotiations, I believe the Fee Structure is reasonable, market-

based, and designed to compensate Moelis fairly for its work.

25.     As of the Petition Date, neither the Debtors nor the Committee owed Moelis any

fees for services performed or expenses incurred under the Engagement Letter.

**D.     Indemnification of Moelis**

26.     As part of the overall compensation payable to Moelis under the terms of the

Engagement Letter, the Committee has agreed to the terms of certain indemnification,

10

contribution, and reimbursement obligations, set forth in **Annex A** of the Engagement Letter (the

"**Indemnification Agreement**").   The Indemnification Agreement provides, among other

things, that, in the event that Moelis or its affiliates or any of its or its affiliates' respective current

or former directors, officers, partners, managers, agents, representatives or employees (including

any person controlling Moelis or any of its affiliates) (each, an "**Indemnified Person,**" and

collectively, the "**Indemnified Persons**") become involved in any capacity in any actual or

threatened action, claim, suit, investigation or proceeding related to Moelis', the Debtors will

indemnify and hold harmless any Indemnified Person from and against, any losses (A) related

to or arising out of oral or written statements or omissions made or information provided by the

Committee, the Company (as defined in the Engagement Letter), including the Debtors, or its

agents (including any information provided by or on behalf of the Company, including the

Debtors, to any purchaser or seller of a security in any transaction contemplated by the

engagement) or (B) otherwise related to Moelis', except that clause (B) shall not apply to  losses

that are finally judicially determined to have resulted primarily from the willful misconduct, bad

faith or gross negligence of such Indemnified Person.

27.     I believe that the provisions of the Indemnification Agreement are customary and

reasonable terms of consideration for investment bankers such as Moelis with the in-court and

out-of-court restructuring activities anticipated by the Engagement Letter.  Moelis negotiated the

Engagement Letter, including the provisions of the Indemnification Agreement, with the

Committee in good faith and at arm's length.

**E.     Moelis' Disinterestedness**

28.     In connection with its proposed retention by the Committee in the Chapter 11

Cases, Moelis has undertaken to determine whether it had any conflicts or other relationships

that might cause it not to be disinterested or to represent an interest adverse to the Debtors'

11

estates in violation of section 1103(b) of the Bankruptcy Code.  Specifically, Moelis obtained

from the Committee the names of individuals and entities that may be parties in interest in the

Chapter 11 Cases.  Moelis then (i) researched its internal records to determine whether Moelis

has any connections with the Debtors and the parties listed in **Schedule 2** attached hereto (the

"**Potential Parties in Interest**") and (ii) issued a general inquiry to certain of its officers with

respect to the Debtors and certain Potential Parties in Interest.  As of the filing of this Application,

Moelis continues to research its records and communicate internally regarding its connections to

the Potential Parties in Interest.  Moelis will supplement the Klein Declaration as necessary in

advance of the hearing on this Application should additional connections be discovered.

29.     Based on the foregoing inquiry, other than in connection with this engagement

and as otherwise disclosed herein, Moelis has no relationships or connections with the Debtors

of which I am aware.  In particular, to the best of my knowledge, information, and belief, neither

I, Moelis, nor any of its professionals:

a)      is a creditor, equity security holder, or insider of the Debtors;

b)      is or has been within two (2) years before the Petition Date, a director, officer, or employee of the Debtors; or

c)      has any interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

Accordingly, I believe Moelis is a "disinterested person" as that term is defined in section

101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors

or their estates.

30.     Neither I nor any of the Moelis professionals who will provide services for the

Committee is related to any Judge of this Court, the U.S. Trustee or Assistant U.S. Trustee for

this District, or the U.S. Trustee trial attorney assigned to the Chapter 11 Cases.

12

31.     To the extent I have been able to ascertain that Moelis has been engaged within

the last two years or is currently engaged by any of the Potential Parties in Interest (or their

affiliates, as the case may be) in matters unrelated to the Chapter 11 Cases, such facts are

disclosed on **Schedule 3** attached hereto.  **Schedule 3** also sets forth certain other relationships

Moelis has with certain Potential Parties in Interest.

32.     In addition to the facts disclosed in **Schedule 3**, Moelis may be engaged in the

future by Potential Parties in Interest in matters unrelated to the Chapter 11 Cases.  As the

Chapter 11 Cases progress, new parties may become parties in interest in the Chapter 11 Cases

and similarly, Moelis may have engaged, may be currently engaged, and may in the future

become engaged by such new parties in interest in matters unrelated to the Chapter 11 Cases.

Moelis may also have engaged or had mutual clients with, may have current engagement or have

mutual clients with, and may in the future engage or have mutual clients with certain law firms,

accounting firms, and other professionals that are Potential Parties in Interest or may become

parties in interest all in matters unrelated to the Chapter 11 Cases.  Additionally, Moelis may

have been engaged by, be currently engaged by, or in the future be engaged by persons who are

creditors, shareholders of, or otherwise have business relationships with the Debtors, or who are

competitors or customers of the Debtors.  Potential Parties in Interest, persons that may become

parties in interest in the Chapter 11 Cases, and persons that have business relationships with the

Debtors, are competitors of the Debtors, or that are customers of the Debtors, may be: (i) parties

in interest in other bankruptcy cases where Moelis is acting as investment banker to the debtors

or to other parties in interest or (ii) affiliates of or creditors of persons by whom Moelis may

have been engaged, is currently engaged, or may in the future be engaged.  In the ordinary course

of its business, Moelis may also purchase services or products from Potential Parties in Interest

and other persons that are or may become parties in interest in the Chapter 11 Cases.

13

33.     Given the large number of parties in interest in the Chapter 11 Cases, despite the efforts described above to identify and disclose Moelis' relationships with parties in interest in the Chapter 11 Cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed.  Among other things, Moelis may have relationships with persons who are beneficial owners of parties in interest and persons whose beneficial owners include parties in interest, or persons who otherwise have relationships with parties in interest. Moelis employees may have relationships with Potential Parties in Interest, persons that may become parties in interest in the Chapter 11 Cases, and/or persons that have business relationships with the Debtors, or are competitors or customers of the Debtors.  Continued inquiry will be made following the filing of the Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

34.     Moelis' parent company, Moelis & Company Group LP, is a subsidiary of Moelis & Company, a public company listed on the NYSE.  Moelis & Company is controlled by Kenneth Moelis.   Mr. Moelis also controls a separate private company, Moelis Asset Management LP ("**Moelis Asset Management**").   Moelis Asset Management is operated separately from the public company Moelis & Company and its subsidiaries including Moelis. The executive officers of Moelis & Company are different from the executive officers of Moelis Asset Management.

35.     Moelis Asset Management has a separate private equity business ("**Moelis Capital Partners**"), which holds investment positions in various entities, some of which may be parties in interest in the Chapter 11 Cases.  To the best of my knowledge, Moelis Capital Partners does not hold any investment positions that constitute a conflict of interest that would disqualify Moelis from providing the services described in the Engagement Letter.  The Moelis professionals providing services to the Committee will not share confidential or otherwise

14

nonpublic information they receive in the course of this engagement with Moelis Capital Partners.  Accordingly, I believe that Moelis Capital Partners' investment activities do not constitute a conflict of interest that would disqualify Moelis from providing the services described in the Engagement Letter.

36.      Moelis Asset Management also has an economic interest in NexPhase Fund III, a private equity fund managed by NexPhase Capital LP ("**NexPhase Capital**"), a private equity manager formed by the former Managing Partners of Moelis Capital Partners. NexPhase Capital LLC and NexPhase Fund III Capital are not affiliates of Moelis.  NexPhase Capital is owned and controlled by its investment management team.  Moelis, Moelis Asset Management and Kenneth Moelis do not have control or influence or participate in the investment decisions of NexPhase Capital.  Moelis Asset Management is entitled to 25% of the carried interest of NexPhase Fund III.  In addition, Moelis Asset Management and Kenneth Moelis own up to $7.5 million and $7.5 million, respectively, of limited partnership interests in NexPhase Fund III.  NexPhase Fund III holds investment positions in various entities, some of which may be parties in interest in these chapter 11 cases.  The Moelis professionals providing services to the Committee will not share confidential or otherwise non public information they receive in the course of this engagement with NexPhase Capital.  Accordingly, I believe that NexPhase Capital's investment activities do not constitute a conflict of interest that would disqualify Moelis from providing the services described in the Engagement Letter.

37.      Moelis Asset Management has a separate credit focused investment management business ("**Gracie Credit**").  Gracie Credit is operated as a separate business from Moelis and will continue to be operated in separate legal and operating entities from Moelis.  Gracie Credit employees will not be working on the Chapter 11 Cases, and Moelis employees working on the Chapter 11 Cases will not have any involvement in Gracie Credit's investment decisions.  Moelis

and Gracie Credit will maintain strict compliance information barriers between Moelis on the one hand and Gracie Credit on the other to ensure that (i) no Moelis employee will disclose any nonpublic information concerning the Debtors or the Chapter 11 Cases to any Gracie Credit employee and (ii) no Gracie Credit employee will disclose any nonpublic information concerning a Gracie Credit position or Gracie Credit's intentions with respect to any consent, waiver, tender, or vote decision to any Moelis employee.  Moelis and Gracie Credit currently have separate offices with access to the other's offices physically restricted and use separate e-mail address domain names (@moelis.com and @graciecap.com, respectively).  Gracie Credit may from time to time in the ordinary course of business hold investment positions in the Debtors and parties in interest in the Chapter 11 Cases.  Based on the business separation and compliance information above, Gracie Credit's investment activities do not constitute a conflict of interest that would disqualify Moelis from providing the services described in the Engagement Letter.

38.    Moelis Asset Management has a separate direct lending business, Freeport Financial Group ("**Freeport**").  Freeport is operated as a separate business from Moelis, and Freeport will continue to be operated in separate legal and operating entities from Moelis. Freeport employees will not be working on the Chapter 11 Cases, and Moelis employees working on the Chapter 11 Cases will not have any involvement in Freeport's investment decisions. Moelis and Freeport maintain strict compliance information barriers between Moelis on the one hand and Freeport on the other hand to ensure that: (i) no Moelis employee will disclose any nonpublic information concerning the Debtors or the Chapter 11 Cases to any Freeport employee and (ii) no Freeport employee will disclose any nonpublic information concerning a Freeport position or Freeport's intentions with respect to any consent, waiver, tender, or vote decision to any Moelis employee.  Moelis and Freeport currently have separate offices with access to the other's offices physically restricted and use separate e-mail address domain names

(@moelis.com and @freeportfinancial.com, respectively). Freeport may from time to time in the ordinary course of business hold investment positions in the Debtors and parties in interest in the Chapter 11 Cases. Based on the business separation and compliance information above, Freeport's investment activities do not constitute a conflict of interest that would disqualify Moelis from providing the services described in the Engagement Letter.

39.    Moelis Asset Management has a business of managing collateralized loan obligations through a subsidiary, Steele Creek Investment Management LLC ("**Steele Creek**"). Steele Creek is operated as a separate business from Moelis, and Steele Creek will continue to be operated in separate legal and operating entities from Moelis. Steele Creek employees will not be working on the Chapter 11 Cases, and Moelis employees working on the Chapter 11 Cases will not have any involvement in Steele Creek's investment decisions. Moelis and Steele Creek maintain strict compliance information barriers between Moelis on the one hand and Steele Creek on the other hand to ensure that: (i) no Moelis employee will disclose any nonpublic information concerning the Debtors or the Chapter 11 Cases to any Steele Creek employee and (ii) no Steele Creek employee will disclose any nonpublic information concerning a Steele Creek position or Steele Creek's intentions with respect to any consent, waiver, tender, or vote decision to any Moelis employee. Moelis and Steele Creek currently have separate offices and use separate e-mail address domain names (@moelis.com and @steelecreek.com, respectively). Steele Creek may from time to time in the ordinary course of business hold investment positions in the Debtors and parties in interest in the Chapter 11 Cases. Based on the business separation and compliance information above, Steele Creek's investment activities do not constitute a conflict of interest that would disqualify Moelis from providing the services described in the Engagement Letter.

17

40.     To the best of my knowledge, information, and belief, some of Moelis' present and future employees may, or may in the future, have personal investments in funds, or other investment vehicles, over whose investment decisions such employees have no input or control.  Such entities may have made, or may in the future make, investments in the claims or securities of the Debtors, or those of their creditors, or other parties in interest in the Chapter 11 Cases.

41.     Moelis will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than other principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.  In the ordinary course of its business, Moelis regularly retains the services of senior advisors with specific industry or other expertise to supplement the investment banking services offered by Moelis' regular employees to Moelis' clients. Upon Moelis' engagement on a particular assignment, one or more such senior advisors may be assigned to assist the other Moelis professionals for such engagement.  Such advisor acts under the management of the Moelis Managing Director who retains the lead role and primary responsibility for such assignment.  The fees and expenses of such senior advisor are paid solely by Moelis.  The Committee submits that such senior advisors are regular associates of Moelis within the meaning of section 504 of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my information, knowledge, and belief.

18

Executed on November 2, 2017

MOELIS & COMPANY LLC

By: _____
    Barak Klein
    Managing Director
    Moelis & Company LLC

## SCHEDULE 1
**The Engagement Letter**
**[*Included as Exhibit 1 to Proposed Order*]**

**<u>SCHEDULE 2</u>**
**Potential Parties in Interest List**

### Schedule 1 to Klein Declaration

**Schedule of Searched Parties**

#### Debtors and Debtor Affiliates

Babies "R" Us (Australia) Pty Ltd.
Geoffrey Funds, Inc.
Geoffrey Holdings, LLC
Geoffrey International, LLC
Geoffrey, LLC
Giraffe Holdings, LLC
Giraffe Junior Holdings, LLC
Magic Group Investments Ltd.
MAP 2005 Real Estate, LLC
MAP Real Estate, LLC
SALITRU Associates JV
Toys "R" Us Inc.
Toys (Labuan) Holding Ltd.
Toys (Labuan) Holding Ltd. (BVI)
Toys (Labuan) Ltd.
Toys 'R' Us Holdings (UK) Ltd.
Toys 'R' Us Holdings (UK) Ltd. (UK)
Toys "R" Us - Delaware, Inc.
Toys "R" Us – Japan Ltd.
Toys "R" Us - Value Inc.
Toys "R" Us (Asia) Ltd.
Toys "R" Us (Australia) Pty Ltd.
Toys "R" Us (Canada) Ltd.
Toys "R" Us (Canada) Ltee
Toys "R" Us (China) Limited dba Fan Dou
    Cheng Commercial Consulting (Shenzhen)
    Co. Ltd.
Toys "R" Us (Hong Kong) Ltd.
Toys "R" Us (Ireland) Unlimited (Ireland)
Toys "R" Us (Taiwan) Trading Ltd.
Toys "R" Us (UK) Ltd.
Toys "R" Us AG
Toys "R" Us Children's Fund
Toys "R" Us Europe, LLC
Toys "R" Us Financial Services Ltd.
Toys "R" Us France Real Estate SAS
Toys "R" Us GmbH
Toys "R" Us Handelsgesellschaft mbH
Toys "R" Us Holdings (China) Ltd.
Toys "R" Us Holdings Ltd.
Toys "R" Us Inc. Sucursal en España

Toys "R" Us Ltd.
Toys "R" Us Poland sp. ZOO
Toys "R" Us Properties (UK) Ltd.
Toys "R" Us Properties Ltd.
Toys "R" Us Property Company I, LLC
Toys "R" Us Property Company II, LLC
Toys "R" Us Retailing (China) Ltd.
Toys "R" Us SARL
Toys Acquisition, LLC
Toys R Us Iberia Real Estate SLU
Toys R Us Iberia SAU
Toys R Us Madrid SLU
Toys R Us Portugal Brinquedos e Artigos
    Juvenis Lda.
Toys Retailing (Thailand) Ltd.
Toys'R'Us (Malaysia) Sdn. Bhd.
Toys'R'Us (Singapore) Pte. Ltd.
Toys"R"Us Sklep Internetowy Sp. ZOO
Toys"R"Us Sklep Internetowy Sp. ZOO SpK
TRU – SVC Inc.
TRU (BVI) Asia 1 Ltd.
TRU (BVI) Asia 2 Ltd.
TRU (BVI) Finance I Ltd.
TRU (BVI) Finance II Ltd.
TRU (France) Finance Ltd.
TRU (France) Holdings Ltd.
TRU (HK) Ltd. (Hong Kong)
TRU (Holdings) Ltd.
TRU (Ireland) Holdings Unlimited
TRU (Japan) Holdings Parent Ltd.
TRU (UK) Asia Ltd.
TRU (UK) H4 Ltd.
TRU (UK) H5 Ltd.
TRU (UK) H6, LLC
TRU (UK) H7 Ltd.
TRU (UK) H8 Ltd.
TRU (UK) H9 Ltd.
TRU (UK) Holdings Limited (UK)
TRU (UK) Holdings Ltd.
TRU (UK) Noteholder Ltd.
TRU (Vermont) Inc.

TRU 2005 RE I, LLC
TRU 2005 RE II Trust
TRU 2016-1 Depositor, LLC
TRU Asia, LLC
TRU Australia Holdings, LLC
TRU BVI Ltd.
TRU Capital, LLC
TRU China Holdings, LLC
TRU China Retail Holdings, LLC
TRU Europe Ltd.
TRU Global Imports BV
TRU Global Sourcing Ltd.
TRU Global Tooling, LLC
TRU GSO (HK) Ltd.
TRU GSO, LLC
TRU Guam, LLC
TRU Holdings 1 Ltd.
TRU Holdings 1 Ltd. (BVI)
TRU Holdings 2 Unlimited
TRU Holdings 2 Unlimited (BVI)
TRU Hong Kong Holdings, LLC
TRU Hong Kong Ltd.
TRU Iberia Holdings 1 SLU
TRU Iberia Holdings 2 SLU
TRU Japan Holdings 2, LLC
TRU Japan Holdings, LLC (converted from
    TRU Japan Holdings, Inc. on 7-28-16)

TRU Mexico Holdings 1, LLC
TRU Mexico Holdings 2, LLC
TRU Mobility, LLC
TRU Netherlands Holdings BV
TRU of Puerto Rico Inc.
TRU Taj (Europe) Holdings, LLC (name
    amended from TRU Taj (Spain) Holdings,
    LLC on 7-28-16)
TRU Taj Finance, Inc.
TRU Taj Holdings 1, LLC
TRU Taj Holdings 2 Ltd.
TRU Taj Holdings 3, LLC
TRU Taj LLC
TRU Thailand Ltd.
TRU Thailand, LLC
TRUINC Giraffe
TRUINC Giraffe fka TRU (Ireland)
    Holdings Unlimited (Ireland)
TRU-SVC LLC
TRUToys (UK) Ltd.
Wayne Real Estate Company, LLC
Wayne Real Estate Holding Company, LLC
Wayne Real Estate Parent Company, LLC
    (fka WREHC amended on 9-5-15)
Y.K. Babiesrus Internet Japan
Y.K. Toysrus Internet Japan
ZT-Winston Salem-Associates JV

**<u>Current and Former Directors, Officers, Members, and Managers</u>**

Barry, Richard
Begeman, Gary D.
Bekenstein, Joshua
Boggs, N. Cornell
Brandon, David
Carr, Alan J.
Cellar, Kurt M.
Foster, Jonathan F.
Goldman, Neal P.
Goodman, Richard
Grace, Timothy
Hassan, Carla
Leand Jr., Paul M.
Levin, Matthew
MacNab, Keven
MacNow, Joseph
Megjhi, Moshin Y.
Miller, Alan B.
Preston, Diana
Raether, Paul
Short, Michael
Silverstein, Wendy
Stein, Jeffrey S.
Taylor, Nathaniel
Venezia, Patrick
Von Walter, Amy
Weinstein, David N.
Wills, Lance

**<u>5% or More Equity Holders</u>**
Bain Capital
KKR
Vornado Realty

**<u>Banking Relationships</u>**
Banco Popular
Bank of America
Bank of Hawaii
Bank of New York
Brigade Capital Management LP
Citi
Debussy DTC PLC
Dechert LLP Cira Centre
Deutsche Bank
Elavon Financial Services Ltd.
Fifth Third Bank
Goldman Sachs
Institutional Cash Distributors LLC
JPMorgan Chase
Key Bank
Milbank Tweed Hadley & McCloy LLP
Regions Financial Corp.
Situs Asset Management Ltd.
Stone Hill Capital Management[1]
United Jersey Bank
US Bank
Wells Fargo
Wilmington Trust

**<u>Contract Counterparties</u>**
Al Futtaim Sons
Amic Trading Pty. Ltd.
Keshet - Hypertoy Ltd.
Lotte Shopping Co. Ltd.
Marketing Services & Commercial Projects Operation Co.
Tablez Food Co.
Top Toy

---

[1] A Managing Director of Moelis & Company LLC owns limited partnership interests (with a capital contribution of $250,000) of Stone Hill and is the sibling of a managing partner at Stone Hill. The Managing Director is not a member of the deal team providing services to the Committee.

**<u>Insurers</u>**
INA Holdings Corporation
Allied World Assurance Co.
American Zurich Insurance Co.
Barbican Consortium 9354 - London
Continental Insurance Co. of NJ
Federal Insurance Co.
Great American Assurance Co.
Ironshore Indemnity Inc.
Liberty Surplus Insurance Co.
Lloyds of London
Monopolistic
National Union Fire Insurance Co. of Pittsburgh PA
Nationwide
Navigators Insurance Co.
Ohio Casualty Insurance Co.
PICC Property & Casualty Co. Ltd.
Starr Companies
Steadfast Insurance Co.
Tokio Marine Holdings
Travelers Casualty & Surety Co.
Wright National Flood Insurance Co.
XL Insurance America Inc.
Zurich Insurance Group

**Taxing Authorities**

Alameda, County of (CA)
Anchorage, Municipality of (AK)
Anne Arundel, County of (MD)
Aurora, City of (CO)
Baltimore, County of (MD)
Baton Rouge, City of (LA)
Berkheimer Outsourcing Inc.
Bexar, County of (TX)
Birmingham, City of (AL)
Braintree, Town of (MA)
Brockton, City of (MA)
Brookfield, City of (WI)
Broome, County of (NY)
Broward, County of (FL)
Calcasieu, Parish of (LA)
Carrollton Farmers Branch Independent
   School District (TX)
Centennial, City of (CO)
Charleston, County of (SC)
Cherry Hill UE LLC
City View Towne Crossing
Clackamas, County of (OR)
Clark, County of (NV)
Clarkstown, Town of (NY)
Cobb, County of (GA)
Colorado Springs, City of (CO)
Concord, City of (NC)
Concord, City of (NH)
Cook, County of (IL)
Cuyahoga, County of (OH)
Dallas, County of (TX)
Delaware, State of
Denton, County of (TX)
Deptford, Township of (NJ)
Douglas, County of (CO)
Douglas, County of (NE)
Dupage, County of (IL)
Ellis, County of (TX)
Fairfax, County of (VA)
Fidelity Totowa Associates LLC
Florida, State of
Fort Collins, City of (CO)
Franklin, County of (OH)
Freehold, Township of (NJ)
Fresno, County of (CA)

Fulton, County of (GA)
Georgia, State of
Glendale, City of (AZ)
Glendale, City of (CA)
Guam, Territory of (United States)
   Department of Revenue
Hamburg, Town of (NY)
Hamilton, Township of (NJ)
Harris, County of (TX)
Hempstead, Town of (NY)
Henry, County of (GA)
Hidalgo, County of (TX)
Hillsborough, County of (FL)
Hinds, County of (MS)
Hoover, City of (AL)
Houston County & City of Dothan Pash
   Return (AL)
Illinois, State of
Jackson, County of (MO)
Jefferson, County of (AL)
Jefferson, County of (CO)
Jefferson, Parish of (LA)
Johnson, County of (KS)
Kane, County of (IL)
Keystone Collections Group
King, County of (WA)
Lafayette Parish School Board
Lake, County of (IL)
Lake, County of (IN)
Lakewood, City of (CO)
Lawrence, Township of (NJ)
Lexington, County of (SC)
Linn, County of (IA)
Livingston, Township of (NJ)
Los Angeles, County of (CA)
Lucas, County of (OH)
Madison Heights, City of (MI)
Madison, City of (WI)
Mahoning, County of (OH)
Maricopa, County of (AZ)
Marion, County of (IN)
Mark Monitor
Maryland, State of
Massachusetts, Commonwealth of
Mayagüez, Municipio de (PR)

McAndrew Conboy & Prisco LLP
McLennan, County of (TX)
Mesa, City of (AZ)
Miami-Dade, County of (FL)
Michigan, State of
Middletown, Township of (PA)
Milford, City of (CT)
Milwaukee, City of (WI)
Monroe, City of (LA)
Monroeville, Municipality of (PA)
Monterey, County of (CA)
Montgomery, City of (AL)
Montgomery, County of (MD)
Montgomery, County of (PA)
Mount Olive, Township of (NJ)
Nashua, City of (NH)
Nevada, State of
New Jersey, State of
New York, City of (NY)
New York, State of
North Attleborough, Town of (MA)
North Carolina, State of
North Dakota, State of
Northmarq Capital
Norwalk, City of (CT)
Ohio, State of
Oklahoma, County of (OK)
Orange, County of (FL)
Palm Beach, County of (FL)
Paramus, Borough of (NJ)
Pennsylvania, Commonwealth of
Philadelphia, City of (PA)
Phoenix, City of (AZ)
Pierce, County of (WA)
Pima, County of (AZ)
PK I North County Plaza LP
Placer, County of (CA)
Polk, County of (IA)
Poughkeepsie, Town of (NY)
Prince George's, County of (MD)
Prince William, County of (VA)
Puerto Rico, Commonwealth of
Pulaski, County of (AR)
Racine, City of (WI)
Ramsey, County of (MN)
Riverhead, Town of (NY)

Riverview Management Co.
Rockaway, Township of (NJ)
Roseville, City of (MI)
Sacramento, County of (CA)
Salem, Town of (MA)
San Bernardino, County of (CA)
San Diego, County of (CA)
San Joaquin, County of (CA)
San Mateo, County of (CA)
Santa Clara, County of (CA)
Scott, County of (IA)
Sedgwick, County of (KS)
Seminole, County of (FL)
Shawnee, County of (KS)
Snohomish, County of (WA)
Solano, County of (CA)
South Dakota, State of
South Portland, City of (ME)
SPI Property Management Corp.
Springfield, City of (MA)
Springfield, Township of (PA)
St. Clair, County of (IL)
St. Louis, County of (MO)
Stanislaus, County of (CA)
Sterling Heights, City of (MI)
Tarrant, County of (TX)
Tax Recourse LLC
Texas, State of
Thornton, City of (CO)
Toms River, Township of (NJ)
Travis, County of (TX)
Tucson, City of (AZ)
Tulsa, County of (OK)
Tuscaloosa, County of (AL)
United States, Government of the IRS
Upper Merion, Township of (PA)
Vanderburgh, County of (IN)
Ventura, County of (CA)
Washington, County of (OR)
Washington, State of
Waterford, Town of (CT)
Waukesha, County of (WI)
Wayne, Township of (NJ)
West Hartford, Town of (CT)
West Mifflin, Borough of (PA)
Westminster, City of (CO)

Whitehall, Township of (PA)                    Yonkers, City of (NY).
Will, County of (IL)

## U.S. Trustees, Judges, Clerks, and Court Contacts for the Eastern District of Virginia

Blades, Paula F.
Bloom, Margaret L.
Charboneau, Joel
Flinchum, Peggy T.
Frankel, Jack I.
Franklin, Lisa D.
Garber, Margaret K.
Guzinski, Joseph A.
Herron, Nicholas S.
Huennekens, Kevin R.
Jones, Bradley D.
Kenney, Brian F.
Kidd, Karen
Kindred, Klinette H.
King, B. Webb
Legum, Jay W.
Mann, Evertte
Mcpherson, Theresa E.
Oliver, Betty
Pecoraro, Shannon F.
Phillips, Keith L.
Pika, Tony
Poda, Heidi
Redden, William C.
Rintye, Peggy
Santoro, Frank J.
Sims, Ilene M.
St. John, Stephen C.
Steven, Mark E.
Turner, June E.
Van Arsdale, Robert B.
Watson, Martha J.
Weschler, Cecelia A.
Whitehurst III, Kenneth N.
Wilson, Sheryl D.

**<u>Utilities</u>**
Alabama Power Co.
Ameren Missouri
Arizona Public Service Electric Co.
Consolidated Edison
Constellation NewEnergy Inc.
Consumers Energy
Dominion Energy Inc.
DTE Energy Co.
Duke Energy
Eversource Energy
Florida Power & Light Co.
Georgia Power
Jersey Central Power & Light Co.
Los Angeles City of (CA) Department of Water & Power
New Jersey Natural Gas Co.
Northern States Power Co.
Pacific Gas & Electric Co.
Public Service Electric & Gas Co.
Puerto Rico Territory of Electric Power Authority
San Diego Gas & Electric Co.
Southern California Edison Co.
WE Energies
XCEL Energy Inc.

## **Vendors**

Aden & Anais Inc.
Alex Toys LLC
Baby Boom Consumer Product Inc.
Bandai Co., Ltd.
Best Chairs Inc.
Boppy Co. LLC
C&T International
Ceva Freight LLC
Chicco BRU
Claire's Boutiques Inc.
Delta Enterprises Corp.
Ergobaby Inc.
Euler Hermes
Evenflo Co. Inc.
Fashion Angels Enterprises
Funko LLC
Gerber Childrenswear LLC
Graco Children's Product Inc.
Handi-Craft Co.
Hasbro Inc.
Honest Co. Inc.
Huffy
Jay Franco & Sons Inc.
Jazwares Inc.
Just Play LLC
Kent International
Kids II Inc.
Kolcraft Products
Lansinoh Laboratories Inc.

LaRose Industries
Learning Resources
Lego
Levtex LLC
Mattel, Inc.
Maxim Co. Taiwan Ltd.
Medela Inc.
MGA Entertainment
MJ Holding Co. LLC
Moose Toys Pty. Ltd.
Ontel Products Corp.
Playmates Toys Inc.
Playmobil USA Inc.
PlayMonster LLC
Radio Flyer Inc.
Razor USA Inc.
ReaderLink Distribution Services LLC
Skyrocket Toys LLC
Solowave Design Corp.
Solutions 2 Go LLC
Spin Master Inc.
TOMY Corp.
Triboro Quilt Mfg. Co.
United Parcel Service
Veritiv
VTech Electronics North America
William Carter Co.
Yesmail Inc.
Yvolution USA In

## **Landlords**

| | |
|---|---|
| Acadia Real Estate Trust | InvenTrust Property Management, LLC |
| ACF Property Management | IRC Retail Centers |
| AEW Capital Management | Kimco Realty |
| Arc Properties | Kin Properties |
| Athena Property Management | Kite Realty Group |
| Bobby Slater | Levin Management |
| Brixmor Properties | LRF Slater |
| BTM Development Partners, LLC | McFarland Investment Partners |
| Burlington Coat Factory | Pacific Development Group |
| Cafaro Company | Pagano Real Estate |
| Casto | Prestige Properties & Development |
| CBL & Associates Properties | Regency Centers |
| Cole Capital | Retail Properties of America |
| Colliers International | Robertson Properties Group |
| Core Bloomington Commons | Rouse Properties |
| Crosspoint Realty Services | RREEF America LLC |
| DDR Corp | Schottenstein Property Group |
| DLC Management Corp | Simon Property Group |
| Dunhill Partners | Steiner Equities Group |
| Fidelis Realty Partners | The Macerich Company |
| General Growth Properties | Triangle Equities |
| Goodman Realty Corp | Urban Edge Properties |
| Hartz Mountain Development Corporation | Vornado Realty Trust |
| Hines Global REIT | Washington Prime Group |
| Ikea | |

**<u>Members of the Official Committee of Unsecured Creditors</u>**

Mattel
Lego
Bank of New York
Kimco Realty
Simon Property Group
Huffy
Evenflo
Veritiv
Euler Hermes

## **SCHEDULE 3**
### **Disclosure of Relationships with Parties in Interest**

## Schedule 2 to Klein Declaration

**Schedule of Searched Parties and/or Certain Related Parties that Moelis
Currently Represents, or Has in the Past Represented, in Matters Unrelated to these
Chapter 11 Cases**

Moelis (and its financial advisory affiliates) has been engaged within the last two years or is currently engaged or verbally mandated to be engaged by the following Potential Parties in Interest (or one or more of their affiliates, as the case may be) in matters unrelated to these cases (including where the Potential Party in Interest was only a member of an official or an ad hoc creditor committee or an equity committee):

## 5% or More Equity Holders

Moelis has in the past represented and currently represents the following companies and/or certain related parties of such companies on matters wholly unrelated to the Debtors' chapter 11 cases:

Bain Capital
KKR

## Banking Relationships

Moelis has in the past represented and currently represents the following companies and/or certain related parties of such companies on matters wholly unrelated to the Debtors' chapter 11 cases:

Bank of America
Bank of New York
Brigade Capital Management LP
Citi
Deutsche Bank
Goldman Sachs
JPMorgan Chase
Stone Hill Capital Management[2]
U.S. Bank
Wells Fargo
Wilmington Trust

---

[2] A Managing Director of Moelis & Company LLC owns limited partnership interests (with a capital contribution of $250,000) of Stone Hill and is the sibling of a managing partner at Stone Hill. The Managing Director is not a member of the deal team providing services to the Committee.

**<u>Bankruptcy Professionals</u>**

Moelis has in the past represented and currently represents the following companies and/or certain related parties of such companies on matters wholly unrelated to the Debtors' chapter 11 cases:

Lazard Ltd.

**<u>Vendors</u>**

Moelis has in the past represented and currently represents the following companies and/or certain related parties of such companies on matters wholly unrelated to the Debtors' chapter 11 cases:

Claire's Boutiques Inc.