*K&E Draft 11/14/2017 – Privileged & Confidential – Attorney Work Product*

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200

*Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MOTION FOR ENTRY OF AN
## ORDER (A) APPROVING THE DEBTORS' NON-INSIDER
## COMPENSATION PROGRAM AND (B) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2]

respectfully state as follows in support of this motion (this "Motion"):

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 78].  The location of the Debtors' service address is One Geoffrey Way, Wayne, NJ 07470.

[2]    A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in (i) the *Declaration of David A. Brandon, Chief Executive Officer of Toys "R" Us, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "Brandon Declaration") and (ii) the *Declaration of Michael J. Short, Chief Financial Officer of Toys "R" Us, Inc., in Support of First Day Motions* (the "Short Declaration" and together with the Brandon Declaration, the "First Day Declarations"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (respectfully, the "Order") (a) approving the Debtors' non-insider compensation program (the "Non-Insider Compensation Program"), (b) authorizing the Debtors to implement the Non-Insider Compensation Program for the specified participants (the "Non-Insider Employees"),[3] and (c) allowing the Debtors' payment obligations thereunder as administrative expenses of these estates.  In further support of this Motion, the Debtors submit the declaration of Brian L. Cumberland (the "Cumberland Declaration"), attached hereto as **Exhibit B**.  The allocation of Non-Insider Compensation Program payments among the Debtors has not yet been determined.  The Debtors will submit a supplemental declaration discussing the allocation methodology before the hearing.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Eastern District of Virginia (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated July 10, 1984.  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court,

---

States Code (the "Bankruptcy Code"), on September 18, 2017 (the "Petition Date").  Capitalized terms used, but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declarations.

[3]     The relief requested herein does not apply to Debtor Toys "R" Us (Canada) Ltd. Toys "R" Us (Canada) Ltee ("Toys Canada"). Any relief with respect to the compensation programs and arrangements of Toys Canada will be addressed in proceedings in respect of Toys Canada pursuant to the *Companies' Creditors Arrangement Act* (Canada) pending before the Ontario Superior Court of Justice (Commercial List).

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are sections 363(b) and 503(c) of the Bankruptcy Code, Bankruptcy Rules 6004, and rule 6004-2 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Bankruptcy Rules").

### Preliminary Statement

5.     The impact to the Debtors' businesses following widespread media speculation in early September regarding the possibility of filing of these chapter 11 cases, and the subsequent filing of these chapter 11 cases, has been profound.  The general challenges in the ever-changing retail landscape have further compounded this impact, as competitors accelerate (and strengthen) their efforts to take market share.  The stress on the Debtors' operations has been lasting and continues, as efforts continue to stabilize the worldwide enterprise and position the company to win during the all-important holiday season, where approximately 40 percent of the Debtors' annual net sales are realized.

6.     The most important asset in this equation is the Debtors' employees.  Armed with capital from the recently approved debtor-in-possession financing facilities (the lenders thereunder, the "DIP Lenders"), it is the Debtors' employees that must execute at this critical juncture and provide the foundation for a successful turnaround.  Recognizing the vitality of incentivizing their workforce in the most challenging environment, the Debtors (at the direction of the Compensation Committee),[4] designed, approved, and seek to implement a series of

---

[4]    The members of the Compensation Committee of the Debtors' board of directors (the "Compensation Committee") include Matt Levin, Nate Taylor, Alan Miller, Richard Goodman, and Mohsin

compensation plans that are focused on maximizing the enterprise value of these estates for the benefit of all stakeholders.  As it relates to the Debtors' Non-Insider Employees, the Debtors seek approval of the Non-Insider Compensation Program, which provides incentive payments to the Non-Insider Employees to the extent they are able to achieve certain final targets.  Timing, of course, is everything.  Two weeks into the fourth quarter holiday season, now more than ever the Non-Insider Employees must be properly motivated and incentivized to handle the panoply of responsibilities attendant to their two full-time jobs of shepherding the Debtors through this restructuring and, at the same time, implementing a worldwide strategy to increase sales following a near shut-down of operations just eight short weeks ago.  The task at hand cannot be underestimated.

7.    In consultation with their advisors, including the Alvarez & Marsal Compensation and Benefits team (the "Compensation Consultants"), the Debtors developed the Non-Insider Compensation Program for the Non-Insider Employees as part of an overall compensation package that is both consistent with the Debtors' historical compensation programs and offers payments similar to its peers.  The Non-Insider Compensation Program is designed specifically to incentivize Toys "R" Us employees to maximize the Debtors' earnings before interest, depreciation, and amortization ("EBITDA").   Using the EBITDA metric, Non-Insider Compensation Program payments are interpolated between "threshold," "target," and "stretch" goals.  However, as the Debtors have explained to their key stakeholders (including the official committee of unsecured creditors (the "Creditor's Committee") and the ad hoc group of B4 lenders), the Debtors focus is on the "target" goal.  The impact of these chapter 11 filings on the Debtors' businesses and

---

Meghji.  None of these individuals would be entitled to any compensation under the Non-Insider Compensation Program.

operations, coupled with the general retail environment, make the "stretch" goal very challenging to achieve. If the Debtors are at or below the "threshold" goal, no payment is contemplated. To the extent the "target" goal is realized, a total payment of $45.8 million is contemplated.

8.    The Debtors' business enterprise is the premier toy retailer in the world. As a service oriented business operation, the Debtors' approximately 64,000 non-insider employees are undoubtedly the backbone of the enterprise.[5] These individuals perform the vast majority of the Debtors' sale operations, including store management, distribution, business administration and development, human resources, information technology, legal, marketing, operational, and regulatory work. Maintaining the morale, support, and focus of these employees is absolutely essential to fostering the welcoming and exciting environment that children around the world have come to love and cherish, while the Debtors work to optimize and reorganize their businesses to maximize the value of their estates.

9.    Certain Non-Insider Employees received retention payments prior to the commencement of these chapter 11 cases in the amount of $8 million. However, these payments are not part of the Non-Insider Compensation Program. Rather, the retention payments were contemplated as part of the overall compensation package approved by the Debtors' board of directors—each aspect constituting an essential part of the overall compensation package. Notably, individuals who received retention payments must return such payments if they voluntarily terminate their employment, or their employment is terminated for cause, with the Debtors within a year of the Petition Date.

---

[5]    Non-insider compensation for many of these employees was approved under the *Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Benefits Programs, and (II) Granting Related Relief* [Docket No. 703] pursuant to the 2017 Team Achieved Gainsharing Plan and 2017 Hybrid Incentive Plan. The Non-Insider Compensation Program only applies to the 3,805 employees as described herein.

10.     The Debtors are hopeful that they can reach consensus for the Non-Insider Compensation Program amongst all major stakeholders.  Consensus, however, does not exist at the time of filing of this Motion.  Nonetheless, the Debtors must proceed with the filing of this Motion to ensure that the Non-Insider Compensation Program can be presented on December 5, 2017—just three weeks before the Christmas holiday and well into the fourth quarter.  The Debtors intend to continue discussions, diligence, and negotiations with the U.S. Trustee (as defined herein) and their major credit constituencies in an effort to develop consensus for the Non-Insider Compensation Program and avoid unnecessary litigation.

**Non-Insider Compensation Program Description**

11.     In consultation with their advisors and negotiation with major constituents in these cases, the Debtors have identified certain members of the Debtors' employees who are critical to the Debtors' efforts to revitalize their business while navigating the challenges of chapter 11.  The Non-Insider Employees perform a variety of important business functions for the Debtors, including store management, distribution, business administration and development, human resources, information technology, legal, marketing, operational, and regulatory work—work that is vital to the Debtors' ability to maintain operational stability and preserve and enhance stakeholder value.  Many of the Non-Insider Employees also have valuable relationships with the Debtors' key vendors and business partners.  The Non-Insider Employees' skills, knowledge, and understanding of the Debtors' business operations are essential to the Debtors' business operations.

12.     The Non-Insider Compensation Program does not include any "insiders" of the Debtors.  The Non-Insider Employees do not include any employee that:  (a) sits on any of the Debtors' board of directors; (b) reports directly to the Debtors' board of directors; (c) is appointed by the Debtors' board of directors; (d) exercises managerial control over the Debtors' operations

as a whole; (e) controls the Debtors' company policy; or (f) directs the Debtors' overall corporate governance.

13.     The total amount available for payment under the Non-Insider Compensation Program is $45.8 million on annual basis at the Target Threshold (as described below).  The amount could increase to one and a half-times that amount if the employees attained its "stretch" goal—a result that will be very challenging to achieve.

14.     The Non-Insider Employees are at the forefront of continuing, and improving, the Debtors' business operations while the Debtors work towards successfully restructuring.  The importance to the Debtors of those individuals fully incentivized cannot be overstated.

15.     The Debtors, through their Compensation Committee and Board of Directors, want to ensure these members of the Debtors' team are properly incentivized to meet the significant challenges upon us and ahead, particularly in light of the uncertainties and additional workload resulting from the Debtors' simultaneous efforts to revitalize their businesses and effectuate a global restructuring.  With that goal in mind, the Debtors and the Compensation Consultants have evaluated the existing compensation structure for the Non-Insider Employees and have determined that the total compensation for the Non-Insider Employees, if the Non-Insider Compensation Program is approved, is within the range of relevant benchmarks in the retail industry.

### Terms of the Non-Insider Compensation Program

16.     The Debtors designed the terms of the Non-Insider Compensation Program to be commensurate with the Team Achievement Dividend Plan (the "TAD Plan")—an incentive program the Debtors have had in place since 2015.  The Non-Insider Compensation Program is similar to the TAD, except that it has been modified to adjust to the additional demands and lack of viable long-term incentives caused by the bankruptcy filing.  Indeed, for a vast majority of the Non-Insider Compensation Program participants—3,725 out 3805—the only proposed changes to

the plan are moving the performance and payment periods from an annual to quarterly system and adjusting the EBITDA targets to take into account the current circumstances and operating environment following the filing of these chapter 11 cases.  For the remaining 80 participants, the only additional change is a slight increase in the potential payouts to compensate such employees for the discontinuance of long-term incentive payments, such as stock options.[6]

17.    Under the Non-Insider Compensation Program, Non-Insider Employees can earn a quarterly, cash incentive payment, based on a percentage of each Non-Insider Compensation Program Participant's salary, but only if the Debtors achieve certain targeted cumulative levels  of EBITDA.  The Non-Insider Employees receive no payment under the Non-Insider Compensation Program if the Debtors' EBITDA does not meet or only reaches the Minimum Threshold as set forth below.  The potential EBITDA thresholds are detailed below.

18.    As the Debtors' EBITDA increases to the Target Threshold, as set forth below, the Non-Insider Employees' incentive payment increases incrementally to the target award amount. Similarly, in the unlikely scenario the Debtors' EBITDA exceeds the Target Threshold up to a particularly aggressive stretch goal (the "Maximum Threshold"), the Non-Insider Employees' incentive payment increases incrementally to one and one-half the target award amount.  The payouts under the Non-Insider Compensation Program are slightly higher than the Debtors' historical program for 80 of the participants to compensate those employees for the discontinuation of the historical long-term compensation plans.  Altogether, the payments under the Non-Insider Compensation Program, together with the retention payments described above, remain at or below market rates.

19.    The three annual threshold levels are summarized in the table below.

---

[6]    The other 3,725 employees did not have regular long-term incentives and thus did not receive an increased award.

| Threshold | Global FY 2017 EBITDA Targets | U.S. Regional FY 2017 EBITDA Targets |
|---|---|---|
| *Minimum Threshold* | $484,000,000 | $298,232,000 |
| *Target Threshold* | $550,000,000 | $338,900,000 |
| *Maximum Threshold* | $616,000,000 | $379,568,000 |

20.      These thresholds will only be used to measure performance in the fourth quarter of 2017.  Although the Non-Insider Employees are working tirelessly to reach the Target Threshold, this number will be difficult to achieve—and reaching the Maximum Threshold would be an exceptional result.  The Debtors will consult with the DIP Lenders and Creditors' Committee to set the applicable targets for the first three quarters of 2018 as soon as reasonably practicable. Ultimately, if the parties are unable to reach an agreement on subsequent thresholds, the Debtors will seek Court approval for them.

21.      The Debtors will also consider other performance metrics for Non-Insider Employees, depending on which business unit those employees work for.  Compensation for individuals at the store level depends on meeting the "Store Incentive Profit" metric, which tracks the profit margin on goods sold minus certain expense categories at the store level.  Similarly, compensation for Non-Insider Employees working in distribution centers depends on meeting the "Total Cost Per Carton" metric, which tracks the costs of warehousing and outbound transportation cost and the amount of goods distributed.  Both of these individualized targets have been crafted to maximize incentives by tying the metrics to the applicable employees' daily duties.  Below is a table summarizing the Non-Insider Employees' applicable metrics.

| *Business Unit* | *Metrics* |
|---|---|
| Global Resource Center | 100% Global EBITDA |
| Regional Resource Center | 50% Global EBITDA, 50% Regional EBITDA |
| Stores: U.S. | 50% Store Incentive Profit, 50% Regional EBITDA |

| Store Regional Vice Presidents | 50% Global EBITDA, 50% Regional EBITDA |
| U.S. Distribution Centers | 50% Total Cost Per Carton, 50% Regional EBITDA |

22.     Because the Debtors' fourth quarter accounts for a disproportionate amount of revenue compared to the other quarters, the metrics are weighted according to quarter.  The current fourth quarter is weighted 40 percent and subsequent first, second, and third quarters are each weighted 20 percent.

23.     The Non-Insider Compensation Program incentive payments are based on a percent of a Non-Insider Compensation Program Participant's salary based on their role.  The table below summarizes title and associated salary percentage.

| Non-Insider Compensation Program Target Percentage of Base Salary | | |
|---|---|---|
| *Title* | *Proposed Percentage* | *Historic Percentage* |
| Senior Vice President (3 participants) | 90% | 80% |
| Vice President (27 participants) | 75% | 60% |
| Executive Director (50 participants) | 50% | 45% |
| Other Employees (3725 participants) | 3-45% | same |

24.     Thus, the Non-Insider Compensation Program is tied directly to the Debtors' operational performance.  In this regard, the Non-Insider Compensation Program incentivizes the employees to maximize the value of the Debtors' estates to the benefit of all stakeholders.  Indeed,

10

the thresholds were deliberately set at challenging levels and reaching these targets will require a substantial effort from the Non-Insider Employees—especially given the enormous market and bankruptcy-related challenges the Debtors are facing at the most critical time of the year for their businesses. If the Non-Insider Employees are indeed able to meet these challenges, the Debtors' submit it is wholly appropriate to reward them for their substantial efforts.

### Basis for Relief

25.     The Non-Insider Compensation Program reflects a sound exercise of the Debtors' business judgment and should be approved pursuant to sections 363(b) and 503(c)(3) of the Bankruptcy Code. Further, the Debtors respectfully submit that the provisions otherwise applicable to retention and incentive programs pursuant to section 503(c) of the Bankruptcy Code are inapplicable here because no "insiders" (as that term is defined by section 101(31) of the Bankruptcy Code) will participate in the proposed Non-Insider Compensation Program.

I.      **The Non-Insider Compensation Program Is a Continuation of the Debtors' Prepetition Practices and Thus an Ordinary Course Transaction Under Section 363(c) of the Bankruptcy Code.**

26.     Section 363(c)(1) of the Bankruptcy Code allows a debtor in possession to "enter into transactions . . . in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Courts generally follow a two part test that analyzes the transaction on horizontal and vertical bases—the horizontal inquiry focusing on whether the transaction is common to the debtor's industry, and the vertical on comparing the proposed transaction to the debtor's prepetition practices. *In re Fairmont General Hospital, Inc.*, 510 B.R. 783, 787–88 (Bankr. N.D. W.Va. 2014) (citing *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992)); *see also In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 797 (Bankr. D. Del. 2007).

27.    The Non-Insider Compensation Program is an ordinary course transaction.  The Debtors are carrying forward the same general compensation structure and philosophy from their prepetition compensation practices. *See Nellson*, 368 B.R. at 803 (finding that compensation plans were in the ordinary course where "[c]onsistent with the Debtors' pre petition practices . . . [incentive compensation] must be viewed as a whole").  Further, the Non-Insider Compensation Program is similar to prior annual cash bonus programs with certain modifications, mainly a shift from annual to quarterly payments.

28.    The Non-Insider Compensation Program grants fixed quarterly payments to each Non-Insider Compensation Program Participant.  Each quarterly payment under the Non-Insider Compensation Program is individually calculated based on percentage of annual salary.  The implementation of the Non-Insider Compensation Program, therefore, reflects a continuation of prepetition practices which take into account the Debtors' operational history, financial performance, and particular business objectives.  Indeed, as described above, for a vast majority of Non-Insider Employees, the only changes to the Debtors' historical program are the movement to a quarterly-based system and the adjustment of EBTIDA targets to more realistic, though still very challenging, targets.  For the remaining employees, the only additional change is a slight adjustment to payouts to compensate such employees for the discontinuation of long-term incentive components.  *See In re Dana Corp.*, 358 B.R. 567, 571 (Bankr. S.D.N.Y. 2006) (finding that because a debtor's postpetition incentive program was a "refinement" of historical practices, the proposed program was within the ordinary course); *In re Global Home Prods.*, 369 B.R. 778, 786 (Bankr. D. Del. 2007) (finding that proposed compensation programs were "not 'new' compensation programs but, instead, [were] nearly consistent with plans previously used, and approved by a compensation committee and board of directors").

29.    The Debtors examined the compensation practices and incentive programs of comparable companies, both in bankruptcy and in the retail industry, in assessing and developing this program, and the Non-Insider Compensation Program is similar in structure. *See, e.g., In re Alpha Natural Resources, Inc.*, 546 B.R. 348, 361 (Bankr. E.D. Va. 2016), *Nellson*, 369 B.R. at 797–98; *In re Blitz U.S.A. Inc.*, 475 B.R. 209, 215 (Bankr. D. Del. 2012) (approving the continuation of incentive compensation plans under section 363(c)(1) of the Bankruptcy Code where the debtor had maintained the plans for many years prepetition and an incentive based compensation plan was common to the industry). Accordingly, the Debtors submit that the Non-Insider Compensation Program is an ordinary course transaction that does not require prior Court approval pursuant to section 363(c) of the Bankruptcy Code.

## II.    To the Extent that Section 363(b) of the Bankruptcy Code Is Applicable, the Non-Insider Compensation Program Warrants Approval Because It Is a Sound Exercise of the Debtors' Business Judgment.

30.    Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to use property of the estate when such use has a "sound business purpose" and when the use of the property is proposed in good faith. *See In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997); *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995).

31.    Courts generally require a debtor to demonstrate that a valid business purpose exists for the use of estate property in a manner that is not in the ordinary course of business. *See In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d Cir. 1983). Once the debtor has articulated a valid business justification, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interest of the company. *See In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992). Furthermore, once "the

debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing.  *See Integrated Res.*, 147 B.R. at 656; *Johns-Manville*, 60 B.R. at 615–16 (noting that "the Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions").  Thus, if a debtor's actions satisfy the business judgment rule, then the actions in question should be approved under section 363(b)(1).

32.      In this case, the Non-Insider Compensation Program is a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors and all their estates' stakeholders. The Non-Insider Employees—along with their skills, knowledge, and hard work—are critical to ensuring that the Debtors continue to maximize stakeholder value in a challenging economic environment. The Non-Insider Employees are intimately familiar with the Debtors' business and have the experience and knowledge necessary to ensure the Debtors' continued operations.

33.      The failure to pay the Non-Insider Compensation Program would upend the expectations, and undermine the morale, of the Debtors' employees at a critical juncture. The Debtors cannot easily replace the Non-Insider Employees without adversely affecting the Debtors' operating efficiency and distracting employees from the Debtors' restructuring efforts.  Finally, the total costs of the Non-Insider Compensation Program is reasonable in light of competitive market practice and involves compensation structures often used in other restructuring situations

to incentivize employees to continue optimal performance despite the added stressors inherent in the chapter 11 process.

34.    Courts in this district have approved plans similar to the Non-Insider Compensation Program.  *See, e.g., In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. July 29, 2015) [Docket No. 672]; *In re James River Coal Company,* No. 14-31848 (KRH) (Bankr. E.D. Va. June 12, 2014) [Docket No. 376]; *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (Bankr. E.D. Va. Jan. 18, 2013) [Docket No. 394]; *In re Movie Gallery, Inc.*, No. 10-30696 (DOT) (Bankr. E.D. Va. Sept. 21, 2010) [Docket No. 1811]; *In re Roper Bros. Lumber Co.*, No. 09-38215 (KRH) (Bankr. E.D. Va. Feb. 25, 2010) [Docket No. 190]; *In re LandAmerica Fin. Grp., Inc.*, No. 08-35994 (KRH) (Bankr. E.D. Va. June 22, 2009) [Docket No. 1639]; *In re Circuit City Stores, Inc.*, No. 08-35653 (KRH) (Bankr. E.D. Va. Mar. 3, 2009) [Docket No. 2394]; *In re Rowe Cos.,* No. 06-11142 (SSM) (Bankr. E.D. Va. Nov. 9, 2006) [Docket No. 339]; *In re US Airways, Inc.*, No. 04-13819 (SSM) (Bankr. E.D. Va. June 15, 2005) [Docket No. 2268]; *In re NTELOS, Inc.*, No. 03-32094 (DOT) (Bankr. E.D. Va. June 9, 2003) [Docket No. 328].

35.    Accordingly, the Debtors submit that the relief requested with respect to the Non-Insider Compensation Program is a valid exercise of the Debtors' business judgment and the approval of the Non-Insider Compensation Program is appropriate under section 363 of the Bankruptcy Code and in the best interests of the Debtors, their estates, and all parties in interest in these chapter 11 cases.

**III.    Section 503(c) of the Bankruptcy Code Is Inapplicable to the Non-Insider Compensation Program.**

36.    Section 503(c) of the Bankruptcy Code restricts payments made to "insiders" of the Debtors.  Section 101(31) of the Bankruptcy Code provides that where a debtor is a corporation, insiders include any "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of

the debtor . . . or [iv] relative of a . . . director, officer or person in control of the debtor." 11 U.S.C.

§ 101(31)(B).  By its terms, section 503(c) of the Bankruptcy Code does not apply where—as is

the case here—participants in an incentive based program are not insiders.  *See, e.g., In re Global*

*Home Prods., LLC*, 369 B.R. 778, 784 (Bankr. D. Del. 2007).  As a general matter, the Bankruptcy

Code's distinction between "insiders" and "non-insiders" is intended to draw a line between those

individuals who exercise control over corporate activities and corporate policy, and those that

do not.

37.    Certain Non-Insider Employees hold the title of "Director," "Vice President," or

"Senior Vice President."  The Debtors respectfully submit that such titles are not dispositive of

those individuals' substantive role in the Debtors' organization and that such titles do not implicate

section 503(c) of the Bankruptcy Code to apply here.  *See, e.g., In re Foothills Texas, Inc.*, 408

B.R. 573, 579 (Bankr. D. Del. 2009) ("[T]he mere title of a person does not end the inquiry.").  In

determining whether a particular employee is an "insider," courts consider not only an employee's

job title but also the employee's role with the debtor.  *See, e.g., In re Global Aviation Holdings,*

*Inc.*, 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) ("[T]itles such as 'vice president' are not

determinative."); *In re Borders Grp., Inc.*, 453 B.R. at 468 69 (holding that an individual's title,

by itself, is insufficient to establish insider status under section 101(31) of the Bankruptcy Code

(citing *In re Longview Aluminum, LLC*, 419 B.R. 351, 355 (Bankr. N.D. Ill. 2009) (noting that "it

is not simply the title 'director' or 'officer' that renders an individual an insider; rather, it is the set

of legal rights that a typical corporate director or officer holds."); *NMI Sys. v. Pillard (In re NMI*

*Sys.,)*, 179 B.R. 357, 370 (Bankr. D.D.C. 1995).  Thus, while a particular job title might indicate

that an individual is an insider per section 101(31) of the Bankruptcy Code, this presumption may

be rebutted by a showing that the individual in question does not exercise material levels of

16

management control over a debtor or its operations as a whole.  *Cf. In re Foothills Texas, Inc.*, 408 B.R. at 583.

38.    An analysis of insider versus non-insider status focuses on, among other things, whether the employee at issue has the authority to implement company policy or whether the employee reports directly to a company's board of directors, *see In re Borders Grp.*, 453 B.R. at 469, such that there is a plausible concern that the employee could have gained an "unfair advantage" by virtue of his or her position.  *See In re Foothills Texas, Inc.*, 408 B.R. at 583.  In short, the determination as to whether any particular employee is an "insider" requires an analysis as to whether the individual in question "is taking part in the management of the debtor."  *Id.* at 579.

39.    No Non-Insider Employees are insiders by this measure.  More specifically, no Non-Insider Employee:  (a) controls or directs the operations of any of the Debtors, *see In re NMI Sys.*, 179 B.R. at 370 ("[Employee] was still in charge of a unit of [a] division . . . . But [the employee's] position was not one in the inner circle making the company's critical [] decisions."); (b) has executive oversight authority for the Debtors' operations as a whole, *see In re Global Aviation Holdings, Inc.*, 478 B.R. at 148 ("[A] vice president was not an insider because he was conferred the title 'for purposes of marketing' only . . . ."); (c) has broad responsibilities over a large portion of the Debtors' businesses, *cf. In re Foothills Texas, Inc.*, 408 B.R. at 584 ("Given their broad responsibilities over significant aspects of the Debtors' business as well as the fact that they report directly to the Debtors' President, both men are clearly participating in the management of the Debtors."); or (d) has direct input into the governance or direction of the Debtors' operations or a material component of their assets, *cf. In re Kunz*, 489 F.3d 1072, 1077 (10th Cir. 2007) ("[A]s it is used in the statutory definition of 'insider,' the term plainly means a person who is a member

of the governing board of the corporation and participates in corporate governance."). Furthermore, no Non-Insider Compensation Program Participant (a) reports directly to the Debtors' board of directors (or similar governing body) or (b) is appointed directly by the Debtors' board of directors (or similar governing body).

40.    No Non-Insider Employee will be disproportionately rewarded as a result of their participation in the Non-Insider Compensation Program, and the Debtors believe the costs of the Non-Insider Compensation Program are reasonable and appropriate to mitigate the business risk and attendant costs that would result from the Debtors failing to incentivize the Non-Insider Employees.

41.    In sum, the Non-Insider Employees, although critical to the Debtors' operations, do not have the type of broad responsibility or control to make strategic decisions, set company policy, or control employee compensation.  As a result, any concerns that the Non-Insider Compensation Program results from "an unfair advantage" are not justified by the record here.

## IV.    The Non-Insider Compensation Program Is Justified by the Facts and Circumstances of These Chapter 11 Cases.

42.    Section 503(c)(3) is not applicable because this motion does seek authorization to pay incentive payments to insiders.  However, for the sake of clarification, the Non-Insider Compensation Program is well within the "facts and circumstances" test articulated therein. Section 503(c)(3) of the Bankruptcy Code generally prohibits certain transfers made to officers, managers, consultants, and others that are not justified by the facts and circumstances of the case. *See* 11 U.S.C. § 503(c)(3).  Importantly, section 503(c)(3)'s "facts and circumstances" justification test "creates a standard no different that the business judgment standard under section 363(b) of the Bankruptcy Code." *In re Borders Grp., Inc.*, 453 B.R. at 473; *see also In re Global Home Prods., LLC*, 369 B.R. at 783 ("If [the key employee retention program is] intended to incentivize

management, the analysis utilizes the more liberal business judgment review under § 363"); *In re Nobex Corp.*, No. 05 20050 (MFW), 2006 WL 4063024, at *3 (Bankr. D. Del. Jan. 19, 2006) (concluding that the standard under section 503(c)(3) of the Bankruptcy Code reiterates the business judgment standard).  For the reasons discussed above, a possible loss of the Non-Insider Employees would disrupt the Debtors' ability to continue to effectively manage the business and preserve and maximize value for the benefit of stakeholders.  Because implementation of the Non-Insider Compensation Program would likely incentivize the Non-Insider Employees to enhance the value of the Debtors' estates, the Non-Insider Compensation Program is justified by the facts and circumstances of these chapter 11 cases and is a sound exercise of the Debtors' business judgment.  *See, e.g., In re Mesa Air Grp., Inc.*, No. 10 10018 (MG), 2010 WL 3810899, *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (holding that bonus payments are "'justified by the facts and circumstances of the case' under section 503(c)(3) [where] they are within the 'sound business judgment' of the Debtors" (citation omitted)).

## Waiver of Bankruptcy Rule 6004(h)

43.    To implement the foregoing successfully, the Debtors seek a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

44.    The Debtors will provide notice of this Motion via first class mail and email (where available) to: (a) the Office of the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee"), Attn: Robert B. Van Arsdale and Lynn A. Kohen; (b) the Creditors' Committee and the advisors and counsel thereto; (c) DIP ABL Agent and the advisors and counsel thereto; (d) DIP Taj Term Loan Agent and the advisors and counsel thereto; (e) DIP Delaware Term Loan Agent and the advisors and counsel thereto; (f) the indenture trustee for the TRU Taj 12.00% Senior Notes and the advisors and counsel thereto; (g) the administrative agent for the prepetition

19

Secured Revolving Credit Facility and the advisors and counsel thereto; (h) the administrative agent for the prepetition Secured Term Loan B Facility and the advisors and counsel thereto; (i) the prepetition administrative agent for the Propco I Unsecured Term Loan Facility and the advisors and counsel thereto; (j) the agent for the Propco II Mortgage Loan and the advisors and counsel thereto; (k) the agent for the Giraffe Junior Mezzanine Loan and the advisors and counsel thereto; (l) the administrative agent for the prepetition European and Australian Asset-Based Revolving Credit Facility and the advisors and counsel thereto; (m) the administrative agent for the Senior Unsecured Term Loan Facility and the advisors and counsel thereto; (n) the indenture trustee for the Debtors' 7.375% Senior Notes and the advisors and counsel thereto; (o) the indenture trustee for the Debtors' 8.75% Unsecured Notes and the advisors and counsel thereto; (p) counsel to the ad hoc group of the Term B-4 Holders; (q) counsel to the Ad Hoc Committee of Taj Noteholders; (r) the monitor in the CCAA proceeding and counsel thereto; (s) the Debtors' Canadian Counsel, (t) the Internal Revenue Service; (u) the office of the attorneys general for the states in which the Debtors operate; (v) the Securities and Exchange Commission; and (w) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

45.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of the page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Richmond, Virginia
Dated:  November 14, 2017

/s/ *Michael A. Condyles*
**KUTAK ROCK LLP**
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:   (804) 644-1700
Facsimile:   (804) 783-6192
Email:        Michael.Condyles@KutakRock.com
              Peter.Barrett@KutakRock.com
              Jeremy.Williams@KutakRock.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:        edward.sassower@kirkland.com
              joshua.sussberg@kirkland.com

-and-

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:        james.sprayregen@kirkland.com
              anup.sathy@kirkland.com
              chad.husnick@kirkland.com
              robert.britton@kirkland.com
              emily.geier@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

## Exhibit A

**Proposed Order**

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:       (804) 644-1700
Facsimile:       (804) 783-6192

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200

*Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (A) APPROVING THE DEBTORS' NON-INSIDER
## COMPENSATION PROGRAM AND (B) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Toys "R" Us, Inc. and certain of its affiliates, as

debtors and debtors in possession (collectively, the "Debtors"), for the entry of an order (this

"Order"), under sections 363(b) and 503(c)(3) of the Bankruptcy Code, (a) approving and

authorizing the Debtors' proposed non-insider employee incentive plan (the "Non-Insider

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* filed contemporaneously herewith.  The location of the Debtors' service address is One Geoffrey Way, Wayne, NJ 07470.

[2]   Capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

Compensation Program"), (b) authorizing the Debtors to make payments to certain management employees under the Non-Insider Compensation Program, (c) granting administrative expense priority status to all payment obligations of the Debtors under the Non-Insider Compensation Program, and (d) granting related relief; all as more fully set forth in the Motion and the Cumberland Declaration; and the Court having found that is has jurisdiction to consider this Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and the Court having found that consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors provided due and proper notice of the Motion that is adequate and appropriate under the particular circumstances; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and upon consideration of the record of the Hearing, and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that the legal and factual bases set forth in the Motion and the Cumberland Declaration and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is

**HEREBY ORDERED THAT**:

1.      The Motion is granted as set forth in this Order.

2.      The Non-Insider Compensation Program is approved in its entirety.

3.      Any and all payment obligations of the Debtors under the Non-Insider Compensation Program shall constitute administrative expenses of the estates.

4.      With respect to EBITDA metrics for quarter one, quarter two, and quarter three of 2018, which have not yet been determined, the Debtors may implement such metrics once determined, in consultation with the DIP Lenders and Creditors' Committee.

5.      This Order shall not apply to Debtor Toys "R" Us (Canada) Ltd. Toys "R" Us (Canada) Ltee ("Toys Canada").  Toys Canada shall be permitted to maintain, implement and perform such compensation programs and arrangements as may be authorized or permitted in proceedings in respect of Toys Canada pursuant to the *Companies' Creditors Arrangement Act* (Canada) pending before the Ontario Superior Court of Justice (Commercial List).

6.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

7.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2017
Richmond, Virginia                              _____
                                                United States Bankruptcy Judge

WE ASK FOR THIS:

 /s/ Michael A. Condyles

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:          (804) 644-1700
Facsimile:          (804) 783-6192

- and -

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:          (212) 446-4800
Facsimile:          (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Robert A. Britton  (admitted *pro hac vice*)
Emily E. Geier  (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:          (312) 862-2000
Facsimile:          (312) 862-2200

*Co-Counsel to the Debtors and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

        Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been
endorsed by or served upon all necessary parties.

        /s/ Michael A. Condyles

## Exhibit B

**Cumberland Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF BRIAN L. CUMBERLAND**
**IN SUPPORT OF DEBTORS' MOTION FOR ENTRY**
**OF AN ORDER (A) APPROVING THE DEBTORS' NON-INSIDER**
**COMPENSATION PROGRAM AND (B) GRANTING RELATED RELIEF**

I, Brian L. Cumberland, hereby declare under penalty of perjury as follows:

1.      I am a National Managing Director of the Compensation & Benefits practice at Alvarez & Marsal North America, LLC ("A&M"), a financial advisory firm.  A&M has been engaged as a financial advisor to Toys "R" Us, Inc. and certain of its direct and indirect subsidiaries as debtors and debtors in possession (collectively, the "Debtors") since July 26, 2017.

2.      I have been employed by A&M for over 11 years, with over 25 years of experience in the field.  My responsibilities at A&M primarily involve consulting with corporate clients, specifically with regard to executive compensation.  In this capacity, I have worked with numerous Fortune 1000 companies to advise on their management-compensation strategies, programs, and pay levels.  I have participated in the development and design of over 100 management-incentive plans for companies inside and outside of chapter 11.  Prior to joining A&M, I led KPMG's

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket 78].  The location of the Debtors' service address is One Geoffrey Way, Wayne, New Jersey 07470.

Compensation and Benefits Group for the Southwest United States, and I was also a member of KPMG's National Tax Practice in Washington, D.C.

3.    I submit this declaration (this "Declaration") to support the relief requested in the *Debtors' Motion for Entry of an Order (A) Approving the Debtors' Non-Insider Compensation Program and (B) Granting Related Relief* (the "Motion").[2]  Unless otherwise indicated, all facts set forth in this declaration are based upon:  (a) my personal knowledge of the Debtors' operations and financial performance; (b) information learned from my review of relevant financial and operational data regarding the Debtors; (c) information received from members of the Debtors' management or their advisors; and (d) my 25 years of compensation experience.  I am not a participant in any of the compensation programs described herein and in the Motion, and I will receive no payments under such programs.

4.    Based on my analysis, I have concluded that the payouts proposed under the Non-Insider Compensation Program, and the allocations thereof, are reasonable and consistent with market practice.  This conclusion is based upon a comparison (discussed below) of the design structures and proposed payouts under the Non-Insider Compensation Program with market data regarding incentive payments for other companies going through chapter 11.  I have also concluded that the structure of the Non-Insider Compensation Program, including the metrics used within, are consistent with other plans within the retail industry.

5.    I am authorized to submit this declaration on behalf of the Debtors, and, if I were called upon to testify, I could and would testify competently to the facts set forth herein.

---

[2]    I have reviewed the Motion.  Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

## Importance of the Non-Insider Employees

6.      The Non-Insider Employees play an indispensable role in the performance of the business.  The Debtors are two weeks into the fourth quarter holiday season, and during this critical time the Non-Insider Employees must be properly incentivized to lead the Debtors through this restructuring and, at the same time, conduct to the Debtors' day-to-day businesses.  Absent adequately incentivizing the Non-Insider Employees, there is a significant risk of the Debtors' businesses being disrupted.  Accordingly, the Debtors have an immediate need to implement the Non-Insider Compensation Program and provide incentive opportunities that will enable the Debtors to achieve their business and restructuring goals.

## Overview and Necessity of the Non-Insider Compensation Program

7.      The responsibilities of the Non-Insider Employees have increased due to the additional requirements of operating as a debtor-in-possession.  The Debtors' employees are critical to the Debtors' efforts to revitalize their business while navigating the challenges of chapter 11.  The Non-Insider Employees perform a variety of important business functions for the Debtors, including store management, distribution, business administration and development, human resources, information technology, legal, marketing, operational, and regulatory work—work that is vital to the Debtors' ability to maintain operational stability and preserve and enhance stakeholder value.  Many of the Non-Insider Employees also have valuable relationships with the Debtors' key vendors and business partners.  The Non-Insider Employees' skills, knowledge, and understanding of the Debtors' business operations are essential to the Debtors' business operations.

8.      The Non-Insider Compensation Program does not include any "insiders" of the Debtors.  The Non-Insider Employees do not include any employee that:  (a) sits on any of the Debtors' Board of Directors; (b) reports directly to the Debtors' Board of Directors; (c) is appointed by the Debtors' Board of Directors; (d) exercises managerial control over the Debtors'

operations as a whole; (e) controls the Debtors' company policy; or (f) directs the Debtors' overall corporate governance.

9.    The Non-Insider Employees have already experienced dramatically increased workloads as a result of operating in chapter 11 and the Debtors' related restructuring efforts.  As a result, it is critical that these employees be appropriately incentivized to drive performance for all stakeholders.

10.    Recognizing that achieving a successful restructuring would require appropriately incentivizing the Debtors' employees, the Debtors retained A&M to assist the Debtors' management and the board of directors of Toys "R" Us, Inc. in designing an employee incentive plan to provide employees instrumental to the success of the Debtors' restructuring efforts and operational performance with appropriate compensation.

11.    I am not a participant in the Non-Insider Compensation Program, and I played a pivotal role in formulating and negotiating its terms on behalf of the Debtors.  The development of an effective employee incentive plan is essential under the circumstances to improve the Debtors' financial and operational performance and achieve a value-maximizing restructuring on an accelerated timeline, and the Non-Insider Compensation Program is an effective plan in this regard.

12.    In summary, the payments contemplated under the Non-Insider Compensation Program are reasonable and will adequately and fairly incentivize the Non-Insider Employees. The Debtors, in consultation with A&M and their other advisors, conducted extensive due diligence and invested a great deal of thought into the best way to structure the Non-Insider Compensation Program to ensure that it is competitive, market-based, and, above all, effective.

## **Development of the Non-Insider Compensation Program**

13.     The Debtors historically sought to attract and motivate talented employees to achieve strong financial and operational results.  To this end, the Debtors compensated some employees not only through base salary, but also through cash bonuses and long-term equity programs that tied financial rewards to the Debtors' financial and operational performance.

14.     Prior to the commencement of these chapter 11 cases, the Debtors recognized that their employees would play a crucial role in driving the Debtors' business performance and successfully implementing the Debtors' restructuring strategy.  Thus, the Debtors, with the assistance of A&M, developed the Non-Insider Compensation Program to properly incentivize the employees during this crucial and challenging time and to ensure its competitiveness with the Debtors' market competitors.

15.     The Non-Insider Employees have devoted, and will continue to devote, significant attention and effort to addressing the Debtors' restructuring initiatives while simultaneously running the Debtors' day-to-day businesses.  A successful restructuring of the Debtors depends on the Non-Insider Employees' success on these parallel paths.  The Non-Insider Employees comprise the individuals that substantially influence the performance of the Debtors' business.  Accordingly, the Debtors have an immediate need to implement the Non-Insider Compensation Program.  Doing so will help the Debtors achieve their near- and long-term operating performance and restructuring goals.

16.     Before the Non-Insider Compensation Program was submitted and approved by the Debtors' Board of Directors, it was approved by the Compensation Committee of the Debtors' Board of Directors—all of whom would not receive any compensation under the plan.

**Terms of the Non-Insider Compensation Program**

17.     The Debtors have designed the terms of the Non-Insider Compensation Program to be commensurate with the Team Achievement Dividend Plan (the "TAD Plan")—an incentive program of the Debtors in place since 2015.   Indeed, for a vast majority of the employees participating in the Non-Insider Compensation Program—3,725 out 3805—the only proposed changes to the plan are moving the performance and payment periods from an annual to quarterly system and adjusting the EBITDA targets to appropriately motivating levels.   For the remaining 80 participants, the only additional change is slightly increasing the potential payouts to compensate such employees for the discontinuance of long-term incentive payments, such as stock options.[3]

18.     To appropriately incentivize the Non-Insider Employees and maximize the value of the Debtors' businesses, the Non-Insider Employees' compensation is tied to achieving certain performance levels—"Minimum," "Target," and "Maximum"—related to the global EBITDA metric (collectively, the "Threshold Levels").   The Threshold Level goals for the performance metric were determined based on the DIP Budget and adjusted for business impacts around the filing and post-filing.   The Debtors attempted to adjust for the following factors: (a) supply chain disruption due to news of the Debtors' bankruptcy filing; (b) difficulty of securing allowances from vendors at levels consistent with prior allowances; (c) continued disruption to the retail industry; and (d) increased gift card redemptions and decreased gift card purchases.   The Threshold Levels are summarized in the table below.[4]

---

[3]     The other 3,725 employees did not have regular long-term incentives and thus did not receive an increased award.

[4]     The Debtors will consult with the DIP Lenders and Creditors' Committee to set the applicable targets for the first three quarters of 2018 as soon as reasonably practicable.   Ultimately, if the parties are unable to reach an agreement on subsequent thresholds, the Debtors will seek Court approval for them.

| Threshold | FY 2017 Global EBITDA Targets | FY 2017 U.S. Regional EBITDA Targets |
|---|---|---|
| *Minimum Threshold* | $484,000,000 | $298,232,000 |
| *Target Threshold* | $550,000,000 | $338,900,000 |
| *Maximum Threshold* | $616,000,000 | $379,568,000 |

19.     The Threshold Levels are calculated on an annual basis.  As described in further detail below, achievement of the Threshold Levels under the Non-Insider Compensation Program—which are not easy-to-achieve milestones—will require the Non-Insider Employees' best efforts to achieve and, if met, will significantly benefit the Debtors' stakeholders.  Indeed, to meet the Threshold Levels, the Debtors will need to perform better than current trends both in terms of same stores sales and margin rate.  In addition, the Company will need to successfully negotiate significant vendor allowances in the fourth quarter.  Given these hurdles, the Maximum Threshold is most likely unattainable.  As such, the scope of the Non-Insider Compensation Program is fair and reasonable, and importantly, does not discriminate unfairly among Non-Insider Employees.

20.     If the Debtors do not reach the Minimum Threshold, no payments will be made pursuant to the Non-Insider Compensation Program.  The Target Threshold is the level at which the Non-Insider Employees will receive the target award due under the Non-Insider Compensation Program.  In the unlikely scenario the Debtors hit the Maximum Threshold, the Non-Insider Employees would receive one and a half times the target award due under the Non-Insider Compensation Program.  The award is computed as a percentage of the Non-Insider Employee's

salary based on their role.  The table below summarizes title and associated salary percentage if the Target Threshold is met.

| Non-Insider Compensation Program Target Percentage of Base Salary | | |
|---|---|---|
| *Title* | *Proposed Percentage* | *Historic Percentage* |
| Senior Vice President (3 participants) | 90% | 80% |
| Vice President (27 participants) | 75% | 60% |
| Executive Director (50 participants) | 50% | 45% |
| Other Employees (3725 participants) | 3-45% | same |

21.     The Debtors will also consider other performance metrics for Non-Insider Employees, depending on which business unit those employees work for.  Compensation for individuals at the store level depends on meeting the "Store Incentive Profit" metric, which tracks the profit margin on goods sold minus certain expense categories at the store level.  Similarly, compensation for Non-Insider Employees working in distribution centers depends on meeting the "Total Cost Per Carton" metric, which tracks the costs of warehousing and outbound transportation cost and the amount of goods distributed.  Both of these individualized targets have been crafted to maximize incentives by tying the metrics to the applicable employees' daily duties.  Below is a table listing the Non-Insider Employees' applicable metrics.

| Business Unit | Metrics |
|---|---|
| Global Resource Center | 100% Global EBITDA |
| Regional Resource Center | 50% Global EBITDA, 50% Regional EBITDA |
| Stores: U.S. | 50% Store Incentive Profit, 50% Regional EBITDA |
| Store Regional Vice Presidents | 50% Global EBITDA, 50% Regional EBITDA |
| U.S. Distribution Centers | 50% Total Cost Per Carton, 50% Regional EBITDA |

22.     The Debtors' business is cyclical and depends heavily on the results of the holiday shopping season in the fourth quarter.  As such, the Non-Insider Compensation Program is designed to reflect that trend—the Threshold Level is weighted by quarter.  The current fourth quarter is weighted 40 percent and subsequent first, second, and third quarters are each weighted percent.  This aligns the terms of the Non-Insider Compensation Program with the Debtors natural business cycle and helps ensure that the Non-Insider Employees are focused on driving bottom-line performance for the benefit of all stakeholders.

**A&M's Independent Review of the
Reasonableness of the Non-Insider Compensation Program**

23.     I and my team at A&M have assessed and discussed the Debtors' operational history and challenges with the Debtors and their advisors.  I have a thorough understanding of the Debtors' compensation arrangements and their recent performance.  In the past few years, regular annual incentives have not been earned and the value of historical long-term incentive awards is highly uncertain.

24.     I have reviewed the overall structure of the Non-Insider Compensation Program, its performance goals, the participants and the target payout levels, as well as similar programs in the retail industry.  Based on my review and analysis, the overall design and structure of the Non-

Insider Compensation Program, along with the proposed target incentive opportunities, are consistent with market practice and incentivize the Non-Insider Employees to achieve the Debtors' operating and financial goals.

25.     Accordingly, and for the reasons set forth in this Declaration, I believe that the Debtors' Non-Insider Compensation Program is reasonable in design and structure, and provides reasonable award opportunities as compared to the Debtors' peers.

*[Remainder of page intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  November 14, 2017                    *Brian L. Cumberland*
      Dallas, Texas                         Brian L. Cumberland
                                            Managing Director
                                            Alvarez & Marsal North America, LLC