Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.  (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:      (804) 644-1700
Facsimile:      (804) 783-6192

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TOYS "R" US, INC., *et al.*,[1] | Case No. 17-34665 (KLP) |
| Debtors. | (Jointly Administered) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING GEOFFREY LLC TO ASSUME THE INTERCOMPANY IP LICENSE AGREEMENTS, AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2]

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 78] filed on September 18, 2017 (the "Petition Date").  The location of the Debtors' service address is One Geoffrey Way, Wayne, NJ 07470.

[2]   A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in (i) the *Declaration of David A. Brandon, Chief Executive Officer of Toys "R" Us, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "Brandon Declaration") and (ii) the *Declaration of Michael J. Short, Chief Financial Officer of Toys "R" Us, Inc., in Support of First Day Motions* (the "Short Declaration" and together with the Brandon Declaration, the "First Day Declarations") filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United

respectfully state as follows in support of this motion (this "<u>Motion</u>").

<b><u>Relief Requested</u></b>

1.       By this Motion, the Debtors seek entry of an order (the "<u>Proposed Order</u>"), substantially in the form attached hereto as **<u>Exhibit A</u>**, (a) authorizing Geoffrey LLC ("<u>Geoffrey</u>") to assume the Intercompany IP License Agreements (as defined herein) annexed as **<u>Annex 1</u>** and **<u>Annex 2</u>**, respectively, to **<u>Exhibit A</u>** attached hereto, and (b) granting related relief, and to continue to perform all obligations set forth therein in the ordinary course, subject to the reservation of rights contained herein and in the Proposed Order.

<b><u>Jurisdiction, Venue, and Procedural Background</u></b>

2.       The United States Bankruptcy Court for the Eastern District of Virginia (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated July 10, 1984.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.       The bases for the relief requested herein are section 365(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and rule 9013-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "<u>Local Bankruptcy Rules</u>").

---

States Code (the "<u>Bankruptcy Code</u>"), on the Petition Date.  Capitalized terms used, but not otherwise defined, in this Motion shall have the meanings ascribed to them in the First Day Declarations.

**Introduction**

A.      **The Investigation**

5.      Geoffrey is a member-managed LLC that does not have its own board.  Therefore, the directors of the sole member of Geoffrey, Toys "R" Us-Delaware, Inc. ("Toys Delaware"), are empowered to govern Geoffrey.  The disinterested directors of Toys Delaware have retained their own independent counsel and will be seeking approval to retain their own independent financial advisor to assist them with, among other things, an investigation on behalf of Geoffrey into the potential intercompany claims discussed in this Motion.  The disinterested directors of Toys Delaware, who are the only independent fiduciaries to the secured and unsecured creditors of the Toys Delaware and Geoffrey estates, will take appropriate action based on the results of that investigation.

B.      **The Intercompany IP License Agreements**

6.      Geoffrey owns substantially all of the Debtors' (excluding its Canadian affiliates') intellectual property (the "Intellectual Property") and licenses that Intellectual Property to its operating Debtor and non-Debtor affiliates, as well as third parties, in the ordinary course of business.  Geoffrey's sole function is to license its Intellectual Property in exchange for royalty payments.  Geoffrey is party to two intercompany license agreements with its foreign affiliates: (a) that certain Master License Agreement dated as of March 24, 2017 by and among Geoffrey and Toys (Labuan) Holding Limited ("Toys Labuan" or the "Asian JV"), Toys "R" Us, Inc., and Toys "R" Us Holdings (China) Limited ("Toys China") (as amended from time to time, and together with the subsidiary license agreements issued pursuant thereto, the "Asian JV License Agreement")[3]; and (b) that certain License Agreement dated as of February 1, 2009 by and among

---

[3]     The Asian JV License Agreement supersedes and terminates (a) that certain License Agreement dated as of February 1, 2009, by and among Geoffrey International, LLC, and Toys "R" Us — Japan, Ltd (the "Japan

Geoffrey and each of the non-Debtor affiliate counterparties thereto from time to time[4] (the "European-Australian License Agreement" and together with the Asian JV License Agreement, the "Intercompany IP License Agreements").  Pursuant to the Intercompany IP License Agreements, the licensees use Geoffrey's Intellectual Property in approximately 730 stores located in 17 countries, in exchange for royalty payments.

7.    The initial term of the Asian JV License Agreement extends through ████████ ████.  Toys China, as master licensee, may, in its sole discretion, renew the Asian JV License Agreement for up to ████████████████████████████.

8.    The initial term of the European-Australian License Agreement ended on February 1, 2014, but automatically renews upon the same terms and conditions for additional consecutive one-year periods unless (a) the parties mutually agree to any revisions to the terms and conditions of the European-Australian License Agreement or (b) any party provides written notice of non-renewal no less than 30 days prior to the end of any then current term.

9.    The Intercompany IP License Agreements are a source of value to Geoffrey because they allow Geoffrey's brand to be leveraged in international markets, generate substantial royalty payments, increase the recognition and value of Geoffrey's brand worldwide, and build equity value in the Debtors' international operations.  In 2016, Geoffrey received approximately

---

Agreement") in its entirety and (b) that certain License Agreement in respect to Hong Kong, Mainland China, Taiwan, Singapore, Malaysia, Thailand, Brunei, Cambodia, Indonesia, Laos, Myanmar, and Vietnam dated November 1, 2011, made by and among Geoffrey and the licensees named therein, in its entirety.  The following entities have executed subsidiary license agreements in accordance with the terms of the Asian JV License Agreement: Toys "R" Us (Singapore) Pte. Ltd.; Toys "R" Us (Hong Kong) Limited; Toys "R" Us Retailing (China) Limited; Toys "R" Us (Malaysia) Sdn. Bhd; and Toys Labuan.

[4]    The non-Debtor counterparties to the European-Australian License Agreement are Toys "R" Us Handelsgesellschaft mbH, Toys "R" Us (Australia) Pty Ltd., Toys "R" Us SARL, Toys "R" Us GmbH, Toys "R" Us Portugal Brinquedos e Artigos Juvenis, Lda, Toys "R" Us Iberia, S.A.U., Toys "R" Us AG, and Toys "R" Us Limited.

$11 million in royalty payments from the subsidiaries that were party to the Asian JV License Agreement, approximately $16 million in royalty payments from TRU Japan Limited, and approximately $38 million in royalty payments under the European-Australian License Agreement.  During fiscal year 2017, Geoffrey has received approximately $30 million[5] in royalty payments under the Asian JV License Agreement and approximately $21 million in royalty payments under the European-Australian License Agreement.

10.    At the same time it entered into the Asian JV License Agreement, Geoffrey also entered into that certain subsidy letter agreement dated as of March 24, 2017, with Toys Labuan (the "Subsidy Agreement").  Pursuant to the Subsidy Agreement, Geoffrey is required to pay Toys Labuan a subsidy of ████████████████.[6]  The accrued amount under the Subsidy Agreement is approximately ████████ as of November 2017.  Substantially contemporaneously herewith, the Debtors filed a separate motion seeking authority to assume the Subsidy Agreement.

---

[5]    For approximately the first two periods during the fiscal year of 2017, TRU Japan Limited paid royalties to Geoffrey pursuant to the Japan Agreement (as defined herein).  The entirety of royalty payments that TRU Japan Limited has paid to Geoffrey during the entire fiscal year of 2017 is included in this dollar amount.

[6]    

C.    **The March 2017 Transaction**

11.    Prior to 2011, Fung Retailing Limited ("Fung")[7] licensed Geoffrey's intellectual property for its Asian toys business from, and paid a fixed royalty rate of ███████████████ ██████████████████████████████████████████████████████████ ████ directly to, Geoffrey International, LLC, Toys "R" Us, Inc., and Toys "R" Us-Service, (collectively, the "Licensors"), pursuant to that certain License Agreement dated as of August 24, 1999. The Licensors paid a ████████████████████████████████████████ ███████████████████████████████████.

12.    In 2011, the Debtors acquired a 70% interest in Fung's Asia business. In connection with that transaction, the parties entered into a license agreement providing for a royalty rate of ████████████████████████████████████████████████ ███████████████████████████████████. Separately, TRU (UK) Asia Limited ("TRU Asia") and Fung entered into that certain Shareholders' Agreement dated as of October 31, 2011, by and among Pieter Schats, TRU Asia, Toys "R" Us, Inc., Fung, and Toys Labuan. Under the Shareholders' Agreement, in the event that the Asian JV's royalty payments under the ███████ grid resulted in an amount payable that was higher than what would have been payable under the 1999 license agreement (including the subsidy), TRU Asia was to pay a "make whole" amount to the Asian JV to achieve net neutrality. Conversely, if the royalty payment from the Asian JV was lower than it would have been under the 1999 license agreement, the Asian JV was to pay a "make whole" amount to TRU Asia to achieve net neutrality.

13.    The current structure of the Asian JV was created on March 24, 2017 (the "March 2017 Transaction"), when the Debtors contributed their Japanese business to the Asian JV in

---

[7]    Fung formerly did business under the name Li & Fung (Retailing) Limited.

6

exchange for an increased equity ownership from ▆▆▆ to approximately ▆▆▆. On the same date, Geoffrey and Toys Labuan entered into both the Asian JV License Agreement and the Subsidy Agreement.

### D.    The Taj Waiver

14.    Prior to the commencement of these chapter 11 cases, the Debtors, working with their advisors, commenced a marketing process to obtain postpetition financing to fund their worldwide business during the pendency of these chapter 11 cases. The Debtors recognized that any chapter 11 filing by Toys "R" Us, Inc. or Toys "R" Us – Delaware Inc. would cause an immediate event of default and automatic acceleration of their 12% Senior Secured Notes due 2021 (the "Taj Notes").[8] A default and acceleration of the Taj Notes would have, in turn, caused a cross default under the European and Australian Asset-Based Revolving Credit Facility (the "Euro ABL Facility"). This would have caused the immediate acceleration of more than $583 million due under the Taj Notes and could have led to the acceleration of more than $84 million due under the Euro ABL Facility, potentially forcing the commencement by non-Debtor subsidiaries of multiple insolvency proceedings around the world. The Debtors determined, and continue to believe, that this would be value destructive. To prevent this outcome, the Debtors engaged with a subset of holders of the Taj Notes (the "Taj Noteholders") to negotiate a

---

[8]    The Taj Notes are guaranteed by certain of the Debtors' non-Debtor foreign affiliates, including: TRU Taj (Europe) Holdings, LLC; TRU (Holdings) Limited; TRU Europe Limited; TRU (UK) H7 Limited; Toys "R" Us (UK) Limited; Toys "R" Us Holdings Limited; TRU (BVI) Finance II, Ltd.; Toys "R" Us Financial Services Limited (UK); TRU (UK) H6, LLC; TRU (UK) H4 Limited; Toys "R" Us Limited; Toys "R" Us Properties Limited; TRU (UK) H8 Limited; Toys "R" Us GmbH; TRU Global Imports B.V.; TRU Australia Holdings, LLC; Toys "R" Us (Australia) Pty Ltd; Babies "R" Us (Australia) Pty Ltd; Tru Asia, LLC; TRU Iberia Holdings 1, S.L.U.; and TRU Iberia Holdings 2, S.L.R.

prospective waiver of relevant defaults under the Taj Notes as well as the terms of postpetition financing to support their international business.

15.    Following extensive negotiations, the Debtors entered into the Foreign Guarantors Agreement dated as of September 18, 2017, by and among Toys "R" Us, Inc., TRU Taj LLC, TRU Taj Finance, Inc. (together with TRU Taj LLC, the "TRU Taj Debtors"), the guarantors party thereto, and certain Taj Noteholders (as may be amended from time to time, the "Taj Waiver").

16.    In connection with the negotiation of the Taj Waiver, the Taj Noteholders expressed a concern that, if the Intercompany IP License Agreements were rejected in the forthcoming chapter 11 cases, their rights under section 365(n) of the Bankruptcy Code could be adversely construed given the current case law in the Fourth Circuit.[9]  Accordingly, the Taj Noteholders required as a condition to entering into the Taj Waiver and providing postpetition financing, and the Debtors agreed to, the assumption of the Intercompany IP License Agreements no later than seven calendar days after the Petition Date (with entry of an order authorizing assumption within 45 days after the effective date of the Taj Waiver).[10]  In addition, section 3.01 of the Taj Waiver required the Debtors to assume (a) the European-Australian License Agreement, (b) the Japan Agreement, and (c) "any other agreement pursuant to which any Debtor grants to any Obligor or any subsidiary of any non-Company Obligor any intellectual property rights."[11]  Those agreements were defined as the "Intellectual Property Licenses."

---

[9]    *See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043, (4th Cir. 1985).

[10]    *See* Taj Waiver, §§ 3.01(b), (c).

[11]    The advisors to the Taj Noteholders contend that, at the time of the initial signing of the Taj Wavier, the Debtors had not yet shared the Asian JV License Agreement or the Subsidy Agreement with the advisors to the Taj Noteholders.

17.     Following the first-day hearing on September 19, 2017, the Ad Hoc Group of B-4 Lenders (the "B-4 Lenders") raised objections to the Taj DIP financing, including to the assumption of the Intercompany IP License Agreements.[12]   The Debtors, including the disinterested directors of Toys Delaware and the TRU Taj Debtors, the B-4 Lenders, the Committee, and the Taj Noteholders subsequently engaged in discussions to reach a resolution of these objections.   These negotiations continued over several months, resulting in several postpetition amendments to the Taj Waiver and Taj DIP financing documents.

18.     To facilitate negotiations among the parties, the First Amendment to the Taj Waiver amended section 3.01(b) to extend the deadline to file an assumption motion to 21 calendar days after the Petition Date (i.e., October 9, 2017).[13]   Subsequent to the first extension, the Debtors prepared materials regarding the Intercompany IP License Agreements and Subsidy Agreement and shared those materials with all key stakeholders, including their newly appointed disinterested independent directors, the B-4 Lenders, the Taj Noteholders, and the Official Committee of Unsecured Creditors (the "Committee").   On the eve of the deadline of October 9, the Debtors and the Taj Noteholders executed the Third Amendment to the Taj Waiver dated October 9, 2017, which extended the date to file an assumption motion by one day to allow the parties to finalize a longer-term agreement regarding the assumption deadlines and other potential objections to the

---

[12]   The advisors of the B-4 Lenders were advised, before the Petition Date, of the proposed assumption of the Intercompany IP License Agreements.   Moreover, the motion to approve the Taj DIP financing, filed on the Petition Date, noted the assumption of the Intercompany IP License Agreements.

[13]   The Second Amendment to the Taj Waiver, dated October 6, 2017, amended section 2.08 of the Taj Waiver to extend the deadline by which the Debtors were required to enter into a supplemental indenture to the Taj Notes from seven days after the date of the Taj Waiver to October 31, 2017.

Taj DIP financing.[14]  The Third Amendment was a short-term bridge extension that was executed

late on the evening of October 9, 2017.  The Debtors did not seek board approval for the Third

Amendment nor did they provide contemporaneous notice of the Third Amendment to the B-4

Lenders or the Committee.[15]  The lack of notice was inadvertent.  All significant parties in interest

were later provided information regarding the Third Amendment.

19.    In addition to extending the deadline to file an assumption motion by one day,

however, the Third Amendment also amended section 3.01 of the Taj Waiver to specifically

include the European-Australian License Agreement, the Asian JV License Agreement, "any other

agreement pursuant to which any Debtor grants to any Obligor or any subsidiary of any

non-Company Obligor any intellectual property rights," and the Subsidy Agreement among the

agreements which must be the subject of the assumption motion.  The Taj Noteholders' have

indicated that this modification was included to clarify the intent of the parties to include all license

and related agreements among Geoffrey and its foreign affiliates.  Moreover, the Taj Noteholders'

advisors assert that they only learned of the various agreements during the course of their diligence

after the Petition Date.  The B-4 Lenders contend that expansion of the definition of "Intellectual

Property Licenses" to include the Subsidy Agreement, so that the Subsidy Agreement would need

to be assumed by Geoffrey to avoid a default under the Taj Waiver and the Taj DIP financing, was

a material amendment to the Taj Waiver that necessitated Court approval.

20.    Since October 9, the Debtors, the Committee, the B-4 Lenders, and the Taj

Noteholders have engaged in ongoing discussions regarding the assumption of the Intercompany

---

[14]    The terms of a global resolution resolving all objections to the Taj DIP were embodied in the Fourth Amendment
to the Taj Waiver, executed on October 10, 2017, which extended the deadlines to file this Motion to December
15, 2017 and to obtain entry of an order authorizing such assumption to February 1, 2018.

[15]    The Debtors did not notify the disinterested directors of Toys Delaware of the Third Amendment prior to its
execution.

IP Licenses and the Subsidy Agreement. The B-4 Lenders contend that the royalty rates payable under the March 2017 intercompany agreements are not reasonable or fair to Geoffrey, and that Geoffrey has fraudulent conveyance and other claims against its affiliates originating from the March 2017 Transaction. As noted, the B-4 Lenders have also argued that the Third Amendment to the Waiver Agreement is ineffective, and that Geoffrey is therefore not required to assume the Subsidy Agreement to avoid a default under the Waiver Agreement or the Taj DIP financing documents. The Taj Noteholders, on the other hand, have taken the position that the Third Amendment was ministerial, non-substantive, and properly executed by the Debtors.

21.     Although the Debtors, the Committee, and the B-4 Lenders have all sought an extension of the December 15 deadline to file this Motion to facilitate continued negotiations, the Taj Noteholders have refused to provide an extension.

22.     The disinterested directors of Toys Delaware are currently reviewing potential claims related to the March 2017 Transaction. Moreover, the disinterested directors have been clear with all parties that their rights to preserve any claims or causes of action associated with the March 2017 Transaction must be preserved, notwithstanding the proposed assumption. The B-4 Lenders have likewise insisted on this reservation of rights. To that end, the Debtors are filing this Motion to meet the requirements of the Taj Waiver and Taj postpetition financing, and hereby reserve all rights to, at the direction of the disinterested directors of Toys Delaware, prosecute, withdraw, or settle any claims related to the March 2017 Transaction. The assumption of the Intercompany IP License Agreements contemplated by this Motion will not extinguish or in any way prejudice any claims related to the March 2017 Transaction.

23.     As set forth in the Proposed Order, the assumption of the Subsidy Agreement will have no bearing on, and will be without prejudice to, any and all causes of action of Geoffrey, any

other Debtor, or any creditor relating to the Intercompany IP License Agreements, the Subsidy
Agreement, the March 2017 Transaction, or the transactions consummated in connection
therewith, including without limitation:  (i) any cause of action to avoid any obligation or transfer
under any of the Intercompany IP License Agreements or the Subsidy Agreement under sections
544 to 550 of the Bankruptcy Code; (ii) any cause of action for breach of fiduciary duty relating
to entry into any of the Intercompany IP License Agreements or the Subsidy Agreement; or
(iii) any other cause of action alleging that entry into or payments under any of the Intercompany
IP License Agreements or the Subsidy Agreement caused harm to Geoffrey or any other Debtor.

24.    In addition, in approving assumption of the Intercompany IP License Agreements,
the Debtors are proposing that the Court would make no finding of any kind with respect to:  (i) the
fairness of the economic terms of the Intercompany IP License Agreements, the Subsidy
Agreement, or any other transaction; (ii) whether Geoffrey or other parties to the Intercompany IP
License Agreements and the Subsidy Agreement received reasonably equivalent value or fair
consideration in connection with those agreements; or (iii) whether the directors of Geoffrey or
other parties to the Intercompany IP License Agreements or the Subsidy Agreement properly
discharged their fiduciary duties in approving and entering into those agreements.  All Debtors and
other parties-in-interest will reserve all claims, defenses, and arguments relating to those matters.

## Basis for Relief

### I.    Assumption of the Intercompany IP License Agreements is an Exercise of Geoffrey's Sound Business Judgment

25.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession,
"subject to the court's approval, may assume or reject an executory contract or unexpired lease of
the debtor."  11 U.S.C. § 365(a).  "Unlike many other sections of the Bankruptcy Code, § 365(a)
of the Bankruptcy Code does not require a showing of 'cause' to support a Debtors' decision to

assume or reject an executory contract." *In re Circuit City Stores, Inc.*, No. 08-35653, 2010 WL 2425957, at *3 (Bankr. E.D. Va. June 9, 2010).  "Rather, the debtor's determination to [assume or] reject an executory contract is governed by the 'business judgment' standard." *Id.* (citing *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043, 1046–47 (4th Cir. 1985)); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (business judgment is the "traditional" standard); *In re US Airways Grp., Inc.*, 287 B.R. 643, 645 (Bankr. E.D. Va. 2002) ("The standard in [the Fourth] Circuit for approving a request to [assume or reject an executory contract] is whether the trustee or debtor in possession has exercised sound business judgment.").

26.    The business judgment standard is exceedingly deferential—"[o]nce the Debtors articulate a valid business justification, '[t]he business judgment rule becomes a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in honest belief that the action taken was in the best interests of the company.'" *Circuit City*, 2010 WL 2425957, at *3 (quoting *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992)).  "The Court should defer to the business judgment of the Debtors, unless 'the decision of the [Debtors] that [assumption or] rejection will be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice.'" *Id.* (quoting *Lubrizol,* 756 F.3d at 1047).

27.    Geoffrey's assumption of the Intercompany IP License Agreements is a reasonable exercise of its sound business judgment because (a) the Intercompany IP License Agreements (i) provide value in the form of royalty payments associated therewith, and (ii) increase the Debtors' brand value globally, (b) assumption of the Intercompany IP License Agreements may prevent an event of default under the Taj Waiver and the Taj DIP Indenture, as well as cross-defaults under the Euro ABL Facility and the Toys Delaware DIP financings, thereby

13

preventing value destructive global liquidation proceedings, and (c) assumption of the
Intercompany IP License Agreements will provide assurance to vendors that the Debtors'
international affiliates are well-capitalized, will continue to have access to Geoffrey's intellectual
property, and are not at risk of commencing insolvency proceedings arising from any alleged
breach of the Taj Waiver.  The Debtors believe a cascade of defaults under their various financing
facilities would be value destructive and inconsistent with their fiduciary duties to maximize value.
To provide comfort to the disinterested directors of Toys Delaware in connection with the filing
of this Motion, the Debtors have proposed the broad reservation of rights set forth in the Proposed
Order.  Although the Debtors and the disinterested directors would prefer that the relief requested
in this Motion and the motion to assume the Subsidy Agreement be addressed at a later date, the
terms of the Taj Waiver—and the cascade of defaults and consequences associated with the failure
to adhere to the terms of the Taj Waiver—necessitate the filing of this Motion.  Notably, in
connection with authorizing the filing of this Motion, the disinterested directors have insisted that
the Debtors include the broad reservation of rights set forth in the Proposed Order.

28.    The Debtors, through their disinterested directors, hereby reserve all rights to
prosecute, withdraw, or settle this Motion and any claims related to the March 2017 Transaction.

29.    For all of the foregoing reasons, and subject to the reservation of rights set forth in
the Proposed Order, the Debtors respectfully submit that assumption of the Intercompany IP
License Agreements is in the best interests of their estates and an appropriate exercise of their
business judgment.

## Waiver of Memorandum of Points and Authorities

30.    The Debtors respectfully request that this Court treat this Motion as a written
memorandum of points and authorities or waive any requirement that this Motion be accompanied

by a written memorandum of points and authorities as described in Local Bankruptcy Rule
9013-1(G).

## <u>Notice</u>

31.    The Debtors will provide notice of this Motion via first class mail and email (where
available) to: (a) the Office of the United States Trustee for the Eastern District of Virginia, Attn:
Robert B. Van Arsdale and Lynn A. Kohen; (b) counsel to the Official Committee of Unsecured
Creditors; (c) DIP ABL Agent and the advisors and counsel thereto; (d) DIP Taj Term Loan Agent
and the advisors and counsel thereto; (e) DIP Delaware Term Loan Agent and the advisors and
counsel thereto; (f) the indenture trustee for the TRU Taj 12.00% Senior Notes and the advisors
and counsel thereto; (g) the administrative agent for the prepetition Secured Revolving Credit
Facility and the advisors and counsel thereto; (h) the administrative agent for the prepetition
Secured Term Loan B Facility and the advisors and counsel thereto; (i) the prepetition
administrative agent for the Propco I Unsecured Term Loan Facility and the advisors and counsel
thereto; (j) the agent for the Propco II Mortgage Loan and the advisors and counsel thereto; (k) the
agent for the Giraffe Junior Mezzanine Loan and the advisors and counsel thereto; (l) the
administrative agent for the Euro ABL Facility and the advisors and counsel thereto; (m) the
administrative agent for the Senior Unsecured Term Loan Facility and the advisors and counsel
thereto; (n) the indenture trustee for the Debtors' 7.375% Senior Notes and the advisors and
counsel thereto; (o) the indenture trustee for the Debtors' 8.75% Unsecured Notes and the advisors
and counsel thereto; (p) counsel to the ad hoc group of the Term B-4 Holders; (q) counsel to the
Ad Hoc Committee of Taj Noteholders; (r) the monitor in the CCAA proceeding and counsel
thereto; (s) the Debtors' Canadian Counsel, (t) the Internal Revenue Service; (u) the office of the
attorneys general for the states in which the Debtors operate; (v) the Securities and Exchange

Commission; (w) the counterparties to the Asian JV License Agreement; (x) the counterparties to the European-Australian License Agreement; and (y) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

32.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order

granting the relief requested herein and such other relief as the Court deems appropriate under the

circumstances.

Richmond, Virginia
Dated:   December 15, 2017

/s/ Jeremy S. Williams
**KUTAK ROCK LLP**
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:    (804) 644-1700
Facsimile:    (804) 783-6192
Email:        Michael.Condyles@KutakRock.com
              Peter.Barrett@KutakRock.com
              Jeremy.Williams@KutakRock.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
(admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
              joshua.sussberg@kirkland.com

-and-

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C.
(admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              anup.sathy@kirkland.com
              chad.husnick@kirkland.com
              robert.britton@kirkland.com
              emily.geier@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.  (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900


-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200

*Co-Counsel to the Debtors and Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER (I) AUTHORIZING GEOFFREY LLC
## TO ASSUME THE INTERCOMPANY IP LICENSE
## AGREEMENTS, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession

(collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>"), (a) authorizing Geoffrey to

assume the Intercompany IP License Agreements attached hereto as **Annex 1** and **Annex 2**,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 78] filed on September 18, 2017 (the "<u>Petition Date</u>").  The location of the Debtors' service address is One Geoffrey Way, Wayne, NJ 07470.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

respectively, to **Exhibit A** and (b) granting related relief, and to continue to perform all obligations

set forth therein in the ordinary course, all as more fully set forth in the Motion; and upon the First

Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern*

*District of Virginia*, dated July 10, 1984; and this Court having found that it may enter a final order

consistent with Article III of the United States Constitution; and this Court having found that venue

of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and this Court having found that the relief requested in the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and this Court having found that the

Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under

the circumstances and that no other notice need be provided; and this Court having reviewed the

Motion and having heard the statements in support of the relief requested therein at a hearing

before this Court (the "Hearing"); and this Court having determined that the legal and factual bases

set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and

upon all of the proceedings had before this Court; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY ORDERED THAT:

1.      Geoffrey is authorized to assume the Intercompany IP License Agreements

attached hereto as **Annex 1** and **Annex 2**.

2.      The assumption of the Intercompany IP License Agreements shall have no bearing

on, and be without prejudice to, any and all causes of action of Geoffrey, LLC, any other Debtor,

or any creditor relating to the Intercompany IP License Agreements, the Subsidy Agreement, the

March 2017 Transaction, or the transactions consummated in connection therewith, including

without limitation:  (i) any cause of action to avoid any obligation or transfer under any of the

Intercompany IP License Agreements or the Subsidy Agreement under sections 544 to 550 of the Bankruptcy Code; (ii) any cause of action for breach of fiduciary duty relating to entry into any of the Intercompany IP License Agreements or the Subsidy Agreement; or (iii) any other cause of action alleging that entry into or payments under any of the Intercompany IP License Agreements or the Subsidy Agreement caused harm to Geoffrey, LLC or any other Debtor.

3.      In approving assumption of the Intercompany IP License Agreements, the Court makes no finding of any kind with respect to:  (i) the fairness of the economic terms of the Intercompany IP License Agreements, the Subsidy Agreement, or any other transaction; (ii) whether Geoffrey, LLC or other parties to the Intercompany IP License Agreements and the Subsidy Agreement received reasonably equivalent value or fair consideration in connection with those agreements; or (iii) whether the directors of Geoffrey, LLC or other parties to the Intercompany IP License Agreements or the Subsidy Agreement properly discharged their fiduciary duties in approving and entering into those agreements.  All Debtors and other parties-in-interest reserve all claims, defenses, and arguments relating to those matters and such other matters not specifically addressed herein.

4.      The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is waived.

5.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

6.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

3

8.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2017                    _____
Richmond, Virginia                                    United States Bankruptcy Judge

4

WE ASK FOR THIS:

 /s/ Jeremy S. Williams
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

- and -

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200

*Co-Counsel to the Debtors and Debtors in Possession*

**<u>CERTIFICATION OF ENDORSEMENT</u>**
**<u>UNDER LOCAL BANKRUPTCY RULE 9022-1(C)</u>**

       Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

        /s/ Jeremy S. Williams

## **Annex 1**

**Asian JV License Agreement**

[Filed Under Seal]

**<u>Annex 2</u>**

**European-Australian License Agreement**

[Filed Under Seal]

## **Exhibit B**

**November 20, 2017 Letter from Wachtell, Lipton, Rosen & Katz**

[Filed Under Seal]