**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

In re:

| | |
|---|---|
| Toys "R" Us, Inc., *et al.*,[1] <br> Debtors. | Case No. 17-34665-KLP <br> Chapter 11 <br> (Jointly Administered) |

## MEMORANDUM OPINION AND ORDER

Toys "R" Us – Delaware, Inc. ("TRU"), one of the Debtors in these jointly administered chapter 11 cases, currently rents space in a retail shopping center from Brea Union Plaza I ("Brea I"). TRU, in connection with a court-approved auction of certain real property and unexpired leases, is seeking final approval of the assumption and assignment of its lease with Brea I to Burlington Coat Factory Warehouse Corporation ("Burlington"). Brea I objects to the proposed assignment, asserting that TRU has not satisfied the adequate assurance of future performance requirements of 11 U.S.C. § 365(b)(3) because the assignment to Burlington would violate the exclusivity provision of another lease in the shopping center and would disrupt the shopping center's tenant mix and balance.

An evidentiary hearing was conducted on May 10, 2018. At the Court's direction, each party thereafter submitted proposed findings of fact and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's tax identification number, are set forth in the Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief [Dkt. No. 78].

conclusions of law. The Court has carefully considered the evidence[2] and submissions of the parties. For the following reasons, Brea I's objections are overruled.

## Facts

Brea I, successor in interest to Brea Union Partners, as landlord, and TRU, as tenant, are parties to a ground lease (the "Lease") entered into on December 20, 1996, for a parcel (the "Premises") in Brea Union Plaza, a retail shopping center lying on a 42-acre contiguous tract of land in Brea, California. TRU operated a Babies "R" Us retail store at the Premises, which is referred to by the Debtors as Store No. 5672.

On March 23, 2018, the Court entered the Order (I) Establishing Bidding Procedures and (II) Granting Related Relief [Dkt. No. 2351] (the "Bidding Procedures Order"), approving the Debtors' sale, and assumption and assignment, of certain real property and unexpired leases and auction and bidding procedures for soliciting and selecting the best offers for those assets. The Lease was one of the assets included in the Bidding Procedures Order.

---

[2] The parties have stipulated to most of the facts. *See* "Stipulation for Limited Purpose of Hearing Regarding Undisputed Facts and Issues and Admitted Evidence in Connection with Contested Matter Relating To (1) the Debtors' Proposed Assumption and Assignment of Unexpired Lease Relating to Store No. 5672 and (2) the Debtors' Proposed Form of Adequate Assurance of Future Performance of Such Lease by the Designated Backup Bidder" (the "Stipulation") [Dkt. No. 3013]. The documents described in paragraph 2 of the Stipulation were admitted into evidence at the May 10, 2018, hearing by agreement.

2

At an auction conducted on March 29, 2018, pursuant to the Bidding Procedures Order, the Debtors received multiple qualified bids and designated Festival Development Corporation as the successful bidder for the Lease, with Burlington as the backup bidder.  On April 9, 2018, Brea I filed an objection to the proposed assumption and assignment of the Lease.  Festival subsequently withdrew its bid and, on April 13, 2018, the Debtors filed a notice proposing to assume and assign the Lease to Burlington, with no backup bidder.  Burlington bid $1,150,000 for the Lease and intends to use the Premises to operate a Burlington Coat Factory department store for the "off-price" sale of apparel and other merchandise.  On April 24, 2018, Brea I filed a supplemental objection opposing the Debtors' proposed assumption and assignment of the Lease to Burlington.

Currently, there are approximately 43 tenants or subtenants at Brea Union Plaza, operating primarily retail stores.  The major tenants or subtenants of the Plaza operate the following stores: Walmart, Home Depot, PetSmart, Sears Outlet, Nordstrom Rack, Ross Dress for Less ("Ross"), Staples, Michaels, Tilly's, Party City, and Pier 1 Imports.  Nordstrom Rack and Ross are off-price retailers of apparel.

Brea I executed its lease with Ross on October 1, 2009 (the "Ross Lease").  The Ross Lease contains an exclusive use clause that prohibits Brea I from leasing any space in Brea Union Plaza to a party that would use its

3

premises for off-price sales.[3] Ross is located adjacent to the Premises and has not consented to Burlington's intended use, which would compete with Ross and Nordstrom Rack.

Aside from provisions unrelated to the issues before the Court, the language of the Lease does not restrict the use of the Premises by TRU or its assignee. One provision of the Stipulation submitted by the parties is that:

> In some cases, the provisions regarding a tenant's use of leased premises in a later-entered lease within a multi-tenant commercial property include language that provides that the tenant's use of such premises is subject to or limited by the exclusive-use or prohibited-use clauses contained in already-existing leases within the same property. And in some cases, the provisions regarding a tenant's ability to assign a lease include language that prohibit[sic] an assignment to an assignee whose

---

[3] Section 15.3 of the Ross Lease states, in relevant part: "Without the prior written consent of Tenant, which consent may be withheld in the absolute and sole discretion of Tenant, no tenant or occupant of the Shopping Center (other than Tenant) may use, and Landlord, *if it has the capacity to do so*, shalt not permit any other tenant or occupant of the Shopping Center to (a) use its premises for the Off Price Sale (as hereinafter defined) of apparel, or (b) use more than ten thousand (10,000) square feet of Leasable Floor Area of its premises for the sale of apparel (except for discount department stores in excess of eighty-five thousand (85,000) square feet of Leasable Floor Area). For purposes of this exclusive, "Off Price Sale" shall mean the retail sale of merchandise on an everyday basis at prices reduced from those charged by full price retailers, such as full price department stores; provided, however, this definition shall not prohibit sales events by a retailer at a price discounted from that retailer' s everyday price. (Off Price Sale retailers include such retailers as T.J Maxx, Marshalls, A.J Wright, Fallas Paredes, Nordstrom Rack, Goody's, Factory 2U, Burlington Coat Factory, Steinmart, Filene' s Basement and Beall' s Outlet.) If any of the foregoing provisions is violated ("Protection Violation"), commencing on the first day of the Protection Violation and continuing throughout the period of the Protection Violation, Tenant, in addition to all other remedies available at law or in equity, including injunctive relief, shall have the ongoing right, exercisable by written notice to Landlord, either to terminate this Lease or to pay Substitute Rent within fifteen (15) days after the close of each calendar month. The parties agree that the monetary damages to be suffered by Tenant as a result of a *breach by Landlord (or Landlord's tenant(s))* of the provisions of this Section 15.3 are difficult to ascertain and that the payment of Substitute Rent, after negotiation, constitutes the best estimate by the parties of the amount of such damage." Stipulation, Exhibit 7 (emphasis added).

4

> use of the assigned leased premises would conflict with or violate the exclusive-use or prohibited-use clauses contained in then-existing leases within the same property.

Stipulation, ¶ 1(y). The Lease does not include language similar to that contained in other leases as described in the portion of the Stipulation set forth above. More specifically, there is no anti-assignment provision referencing exclusive or prohibited use clauses contained in leases with other tenants of Brea Union Plaza.

## Jurisdiction

Pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the general order of reference for the U.S. District Court for the Eastern District of Virginia dated August 15, 1984, this Court has subject matter jurisdiction over the Debtors' bankruptcy cases and this contested matter relating to the Debtors' proposed assumption and assignment of the Lease. This is a core proceeding pursuant to 11 U.S.C. § 157(b)(2)(A),(N) and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Discussion

The parties agree that Brea Union Plaza constitutes a "shopping center" as that term is used in 11 U.S.C. § 365(b)(3) and that the Lease is "an unexpired lease of nonresidential real property under which the debtor is the lessee" as that phrase is used in 11 U.S.C. § 365(d)(4)(A). The Debtors' proposed assignment of the Lease to Burlington must therefore satisfy the "adequate assurance of future performance of a lease of real property in a

5

shopping center" requirement set forth in 11 U.S.C. § 365(b)(3). *In re Heilig-Meyers Co.*, 294 B.R. 660, 662 (Bankr. E.D. Va. 2001).

Section 365(b)(3) of the Bankruptcy Code has four subsections applicable to shopping centers, including subsections (C) and (D), which are at issue in this case. Subsection (C) requires adequate assurance "that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center." 11 U.S.C. § 365(b)(3)(C). Subsection (D) requires adequate assurance "that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center." 11 U.S.C. § 365(b)(3)(D).

<u>Section 365(b)(3)(C)</u>.

The Fourth Circuit Court of Appeals has acknowledged that the purpose of § 365(b)(3)(C) "is to preserve the landlord's bargained-for protections with respect to premises use and other matters that are spelled out *in the lease with the debtor-tenant*." *Trak Auto Corp. v. West Town Center LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 244 (4th Cir. 2004) (emphasis added) (citing *In re Ames Dep't Stores, Inc.* 121 B.R. 160, 165 n.4 (Bankr. S.D.N.Y. 1990)). This provision is "intended to protect the landlord's economic expectations rather than those of the other tenants." *In re Martin*

6

*Paint Stores*, 199 B.R. 258, 262 (Bankr. S.D.N.Y. 1996). Its intent is not to bestow upon landlords new contractual rights but rather to preserve contract provisions at risk of being stricken as *de facto* anti-assignment clauses under the provisions of 11 U.S.C § 365(f).

The Lease was executed in 1966, long before the Ross Lease came into existence, and it contains no provision that requires compliance with the Ross Lease use restrictions. *Cf. Heilig-Myers* at 662 ("the Heilig lease provides that debtors will not '. . . assign or sublet the premises to any business that would violate any non[-]compete agreements in which [l]andlord has with other [t]enants in the Shopping Center.' *Because of this lease provision*, Mitchell's lease with Fabric must be considered . . . .") (emphasis added).[4]

Alternatively, the Court finds that assumption and assignment of the Lease to Burlington will not breach the exclusivity provision contained in the Ross Lease. The provision prohibiting Brea I from allowing a tenant to use the Premises to sell off-price apparel applies only if Brea I "has the capacity to do so." As the court observed in *Martin Paint Stores*, a court order approving the assumption and assignment of a lease is a judicial action that may render the landlord unable to comply with a restriction contained in another lease. "The law excuses performance that has been rendered legally impossible." 199 B.R. at 265. Here, approval of the assumption and

---

[4] Brea I's reliance on *Heilig-Myers* to support its "plain language" argument that the proposed assignment must not breach a restriction in any other lease, "regardless of whether that other lease is referred to in the lease sought to be assigned" is misplaced. That is not the ruling in *Heilig-Myers*, nor is it the ruling in any other case cited by Brea I.

7

assignment of the Lease to Burlington pursuant to § 365 renders Brea I without the capacity to prevent Burlington's intended use, an occurrence that may have been contemplated when the terms of the Ross Lease were negotiated. Accordingly, there has been no showing that the adequate protection requirement of § 365(b)(3)(C) is unmet.

Section 365(b)(3)(D).

Brea I's contention that the Debtors are unable to provide adequate assurance under 11 U.S.C. § 365(b)(3)(D) fails in light of the record and legal precedent. The court in *In re Ames Department Stores, Inc.*, 121 B.R. 160 (Bankr. S.D.N.Y. 1990), stated that § 365(b)(3)(D) "must be interpreted to refer to contractual protections and not undefined notions of tenant mix." *Id.* at 165. Finding no contractual provisions requiring the assignee to comply with the requirements of any master agreement or to preserve tenant mix and location, the court found that the assignment sought in *Ames* did not violate § 365(b)(3)(D).[5] Similarly, Brea I has pointed to no provisions in the Lease or any applicable master agreement relating to tenant mix and balance that would prohibit the assignment of the Lease to Burlington.

Aside from the lack of adequate protection, there is insufficient evidence to support a finding that assignment of the Lease to Burlington will disrupt the existing tenant mix and balance in Brea Union Plaza. The

---

[5] The District Court for the Eastern District of Virginia cited *Ames* when it stated that "[i]ntent to create a diverse tenant mix must be established in light of the lease terms." *Lasalle Nat'l Trust, N.A. v. Trak Auto Corp.*, 288 B.R. 114, 125 (E.D. Va. 2003), *rev'd on other grounds*, *Trak Auto Corp. v. West Town Center LLC (In re Trak Auto Corp.)*, 367 F.3d 237 (4th Cir. 2004).

8

Stipulations include a brief description of the nature of the other tenants' businesses, but these brief descriptions fall short of establishing that there was an intended tenant mix.  In a shopping center with 43 tenants, only two primarily sell "off-price" apparel.  Brea I has not demonstrated that a third "off-price" retailer will disrupt the tenant mix and balance.

In light of Brea I's failure to show that its contractual rights will be violated by the assignment of the Lease to Burlington, the Court will not prohibit the proposed assumption and assignment.[6]  The Debtors have met their burden under § 365(b)(1) and (3) of providing adequate assurance of future performance.  The Court finds that the assumption and assignment of the Lease to Burlington is in the best interests of the Debtors' Estates.

---

[6] The assumption and assignment to Burlington will result in the payment of $1,150,000 to TRU, which fulfills § 365's intended purpose of maximizing the value of the bankruptcy estate.  As Judge Gerber stated in *In re Ames Department Stores, Inc:*

> In a legislative judgment built into the Code, Congress has determined that, subject only to certain statutory safeguards, the value of a debtor's leases should go to the debtor's creditors, and that leases can be sold to achieve that end—with or without landlord consent. Here, Colonial has shown no legally cognizable basis for interfering with the assumption and assignment of this lease—which is, after all, the norm in bankruptcy, to implement that Congressional policy in order to benefit the general body of the debtor's creditors, and not the single creditor landlord that would like to get a lease back. I fully understand why a landlord would like to terminate a 1973 lease under which it gets a below market rate, but Congress has determined that the economic value in below market leases is to go to creditor bodies generally, and not to a windfall for a single creditor.

*In re Ames Dep't Stores, Inc.*, 348 B.R. 91, 98 (Bankr. S.D.N.Y. 2006).  Likewise, in the present case, Brea I has shown no basis for interfering with TRU's proposed assumption and assignment.

9

## **Conclusion**

For the foregoing reasons, Brea I's objections to the proposed assumption and assignment of the Lease are overruled.

**IT IS SO ORDERED.**

Date:  May 24 2018                             /s/ Keith L. Phillips
                                         United States Bankruptcy Judge

Copies to:

Peter J. Barrett, Esq.
Kutak Rock LLP
901 East Byrd Street, Suite 1000
Richmond, VA 23219-4071

Michael A. Condyles, Esq.
Kutak Rock LLP
901 East Byrd Street, Suite 1000
Richmond, VA 23219-4071

Jeremy S. Williams, Esq.
Kutak Rock LLP
901 East Byrd Street, Suite 1000
Richmond, VA 23219-4071

Edward O. Sassower, Esq.
Edward O. Sassower, P.C.
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
601 Lexington Ave.
New York, NY  10022

Entered on Docket: May 25 2018

Joshua A. Sussberg, Esq.
Joshua A. Sussberg, P.C.
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
601 Lexington Avenue
New York, NY 10022

James H.M. Sprayregen, Esq.
James H.M. Sprayregen, P.C.
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
300 N. LaSalle
Chicago, IL 60654

Anup Sathy, Esq.
Anup Sathy, P.C.
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
300 N. LaSalle
Chicago, IL 60654

Chad J. Husnick, Esq.
Chad J. Husnick, P.C.
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
300 N. LaSalle
Chicago, IL 60654

Emily E. Geier, Esq.
Kirkland & Ellis LLP
Kirkland & Ellis International LLP
300 N. LaSalle
Chicago, IL 60654

Sean C. Griffin, Esq.
Dykema Gossett PLLC
1301 K Street, NW
Washington, DC 20005

Dean G. Rallis Jr., Esq.
Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP
301 N. Lake Avenue, Suite 1100
Pasadena, CA 91101-4158