Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:       (804) 644-1700
Facsimile:       (804) 783-6192

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200

*Co-Counsel to the Debtors and Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

# ORDER CONFIRMING
## THE SECOND AMENDED CHAPTER
## 11 PLAN OF WAYNE REAL ESTATE PARENT, LLC

Wayne Real Estate Parent Company, LLC, one of the above-captioned debtors and debtors

in possession (the "Debtor"), having:

    a.    commenced, on September 18, 2017 (the "Petition Date"), these chapter 11 cases
(the "Chapter 11 Cases") by filing a voluntary petition in the United States
Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") for

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting
Related Relief* [Docket No. 78].  The location of the Debtors' service address is One Geoffrey Way, Wayne,
New Jersey 07470.

relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");[2]

b.     continued to operate its business and manage its properties as debtor in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

c.     filed, on July 17, 2018, the *Debtors' Motion for Entry of an Order (I) Approving (A) the Settlement Agreement, (B) Opt-Out Procedures Applicable to the Settlement Agreement, and (C) a Substantial Contribution Claim Under Section 503(B)(3)(D) of the Bankruptcy Code and (II) Granting Related Relief* (the "July 2018 Settlement Motion") [Docket No. 3814];

d.     obtained, on August 8, 2018, entry of the *Order (I) Approving (A) the Settlement Agreement, (B) Opt-Out Procedures Applicable to the Settlement Agreement, (C) a Substantial Contribution Claim Under Section 503(B)(3)(D) of the Bankruptcy Code, and (II) Granting Related Relief* [Docket No. 4083] (the "July 2018 Settlement Order") approving, among other things, the terms of the settlement agreement dated July 17, 2018, (the "July 2018 Settlement Agreement") among the Toys Delaware Debtors, Geoffrey Debtors, TRU Inc., the Ad Hoc Group of B-4 Lenders, the Creditors' Committee and certain members of the Creditors' Committee in their capacity as Holders of Administrative Claims, the Ad Hoc Group of Postpetition Vendor Administrative Claimants (the "Ad Hoc Vendor Group"), NexBank SSB (the "Term DIP Facility Agent"), Bank of America, N.A. (the "Prepetition Term Loan Agent"), and each of Bain Capital Private Equity, LP, Kohlberg Kravis Roberts & Co. L.P., and Vornado Realty Trust in their capacity as equity owners of Toys "R" Us, Inc. (together, the "Sponsors") (collectively, the "July 2018 Settlement Parties"), the procedures to opt out of the July 2018 Settlement Agreement (the "Opt Out Procedures"), and distributions in accordance with the July 2018 Settlement Agreement;

e.     caused, on August 10, 2018, the *Administrative Claim Holder Opt-Out Form for Opting Out of the Settlement Agreement* (the "Opt-Out Form") to be mailed to administrative claimants that filed notice of appearances and/or are on the Core/2002 List, as evidenced by, among other things, the *Affidavit of Service* for the Opt-Out Form [Docket No. 4435] (the "Opt-Out Affidavit");

f.     filed, on August 28, 2018, the *Settlement Effectiveness Notice* [Docket No. 4385], providing that holders of less than 7.5% in aggregate value of Administrative Claims opted-out of the July 2018 Settlement Agreement on or before August 24,

---

[2]    Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "Confirmation Order") have the meanings ascribed to them in the *First Amended Chapter 11 Plan of Wayne Real Estate Parent Company, LLC*, attached hereto as **Exhibit A** (as may be amended, supplemented, or otherwise modified from time to time, and including all exhibits and supplements thereto, the "Plan").  The rules of interpretation set forth in Article 1.B. of the Plan apply to this Confirmation Order.

2018, i.e. the opt-out deadline, and, accordingly, the July 2018 Settlement Agreement became effective as of such date;

g.     filed, on December 24, 2018, the *Chapter 11 Plan of Wayne Real Estate Parent Company, LLC* [Docket No. 6053], the *Disclosure Statement for the Chapter 11 Plan of Wayne Real Estate Parent Company, LLC* [Docket No. 6054], and the *Debtor's Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement for the Chapter 11 Plan of Wayne Real Estate Parent Company, LLC, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtor's Proposed Chapter 11 Plan, (III) Approving the Form of the Ballot and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Shortening the Objection Periods and Notice Requirements Related Thereto, and (VI) Granting Related Relief* [Docket No. 6055];

h.     obtained, on December 28, 2018, entry of the *Order (I) Approving the Adequacy of the Disclosure Statement for the Chapter 11 Plan of Wayne Real Estate Parent Company, LLC, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtor's Proposed Joint Chapter 11 Plan, (III) Approving the Form of the Ballot and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Shortening the Objection Periods and Notice Requirements Related Thereto, and (VI) Granting Related Relief* [Docket No. 6119] (the "Disclosure Statement Order"), conditionally approving the Disclosure Statement, solicitation procedures (the "Solicitation Procedures"), and related notices, forms, and ballots (collectively, the "Solicitation Packages");

i.     filed, on December 31, 2018, the *First Amended Chapter 11 Plan of Wayne Real Estate Parent Company, LLC* [Docket No. 6123], and the *First Amended Disclosure Statement for the Chapter 11 Plan of Wayne Real Estate Parent Company, LLC* [Docket No. 6124];

j.     caused the notice of the Confirmation Hearing (the "Confirmation Hearing Notice") and the deadline for objecting to confirmation of the Plan to be distributed on December 28, 2018, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 6237] and the Solicitation Packages to be distributed on or about January 3, 2019 (the "Solicitation Date"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Service of Solicitation Materials* [Docket No. 6203] (the "Solicitation Affidavit");

k.     caused the Confirmation Hearing Notice to be published on January 3, 2019, in the national edition of *USA Today*, as evidenced by the Affidavit of Publication [Docket No. 6234] (the "Publication Affidavit");

l.      filed, on January 10, 2019, the *Notice of Filing of Plan Supplement for the First Amended Chapter 11 Plan of Wayne Real Estate Parent Company, LLC* [Docket No. 6218] (the "Plan Supplement");

m.      filed, on January 22, 2019, the *Declaration of James Daloia of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the First Amended Chapter 11 Plan of Wayne Real Estate Parent Company, LLC* [Docket No. 6271] (the "Voting Report");

n.      filed, on January 23, 2019, the *Second Amended Chapter 11 Plan of Wayne Real Estate Parent Company, LLC* [Docket No. 6285];

o.      filed, on January 22, 2019, *The Propco I Debtors' and Wayne Real Estate Parent Company, LLC's Joint Memorandum of Law in Support of Confirmation of the Third Amended Joint Chapter 11 Plan of Toys "R" Us, Property Company I, LLC and Its Debtor Affiliates and the Second Amended Chapter 11 Plan of Wayne Real Estate Parent Company, LLC* [Docket No. 6277] (the "Confirmation Brief"); and

p.      filed, on January 22, 2019, the *Declaration of Matthew Finigan in Support of Confirmation of the Third Amended Joint Chapter 11 Plan of Toys "R" Us, Property Company I, LLC and Its Debtor Affiliates and the Second Amended Chapter 11 Plan of Wayne Real Estate Parent Company, LLC* [Docket No. 6280] (the "Finigan Declaration").

This Court having:

q.      entered the Disclosure Statement Order on December 28, 2018 [Docket No. 6119];

r.      set January 23, 2019 at 12:00 p.m. (prevailing Eastern Time) as the deadline for filing objections in opposition to the Plan pursuant to the Disclosure Statement Order;

s.      set January 18, 2019, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan pursuant to the Disclosure Statement Order;

t.      set January 22, 2019, at 12:00 p.m. (prevailing Eastern Time) as the deadline for the Voting Report pursuant to the Disclosure Statement Order;

u.      set January 23, 2019, at 11:59 p.m. (prevailing Eastern Time) as the date and time for the Confirmation Brief Deadline pursuant to the Disclosure Statement Order;

v.      set January 24, 2019, at 1:00 p.m. (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing pursuant to the Disclosure Statement Order;

w.      reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Report, and all pleadings, exhibits, statements, responses, and comments regarding

Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

x.      held the Confirmation Hearing;

y.      heard the statements and arguments made by counsel with respect to Confirmation;

z.      considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the Confirmation Hearing;

aa.     entered rulings on the record at the Confirmation Hearing held on January 24, 2019 (the "<u>Confirmation Ruling</u>");

bb.     overruled any and all objections to the Plan and to Confirmation, except as otherwise stated or indicated on the record, and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

cc.     taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and order:[3]

## I.  <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

IT IS HEREBY FOUND AND DETERMINED THAT:

**A. Jurisdiction and Venue.**

1.      The Bankruptcy Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated July 10, 1984.  The Bankruptcy Court has

---

[3]    In accordance with Bankruptcy Rules 2002 and 3020(c), no later than the first Business Day that is seven (7) days after the Effective Date, the Debtor must cause notice of Confirmation and occurrence of the Effective Date (the "<u>Notice of Confirmation</u>"), the form of which is attached hereto **Exhibit B**, to be served by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice.  To supplement the notice procedures described in the preceding sentence, the Debtor shall cause the Notice of Confirmation, modified for publication, to be published on one occasion in *USA Today* (national edition).

exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. The Debtor confirms its consent, pursuant to Bankruptcy Rule 7008, to entry of a final order by the Bankruptcy Court in connection with Confirmation to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue in this Court was proper as of the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**B.  Eligibility for Relief.**

2.      The Debtor was and continues to be an entity eligible for relief under section 109 of the Bankruptcy Code.

**C.  Commencement and Joint Administration of the Chapter 11 Cases.**

3.      On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On September 19, 2017, the Bankruptcy Court entered an order [Docket No. 78] authorizing the joint administration of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). The Debtor has operated its

business and managed its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**D.  Appointment of the Creditors' Committee.**

4.      On September 26, 2017, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") [Docket No. 206] to represent the interests of the unsecured creditors of the various debtors in the Chapter 11 Cases.

**E.  Plan Supplement.**

5.      On January 10, 2019, the Debtor filed the initial Plan Supplement with the Bankruptcy Court, which the Debtor may subsequently supplement or amend, and which may be further amended or supplemented, including with respect to the Transaction Steps Memorandum. The Plan Supplement complies with the terms of the Plan, and the Debtor provided good and proper notice of the filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases.  No other or further notice is or will be required with respect to the Plan Supplement unless otherwise provided for in this Confirmation Order or the Plan.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  The terms of all such documents remain subject to compliance with the conditions set forth in Article IX.A of the Plan.  In the event that any term in any such Plan Supplement document conflicts with or is inconsistent in any respect with the terms of the Plan, the terms of the Plan shall control.  Subject to the terms of the Plan, the Debtor reserves the right to alter, amend, update, supplement, or modify the Plan Supplement before the Effective Date subject to compliance with the Bankruptcy Code and the Bankruptcy Rules, provided that no such alteration, amendment, update, supplement,

or modification shall be inconsistent with the terms of this Confirmation Order or the terms of the Plan.

**F.  Modifications to the Plan.**

6.      On December 31, 2018 and January 23, 2019, the Debtor made certain modifications to the Plan.  Pursuant to section 1127 of the Bankruptcy Code, these modifications to the Plan described or set forth in this Confirmation Order and the Plan filed on December 31, 2018 and January 23, 2019 constitute technical changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest.  These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and solicitation materials served pursuant to the Disclosure Statement Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases.

7.      In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims and Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

**G.  Objections Overruled.**

8.      Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Bankruptcy Court on the record at the Confirmation Hearing is hereby

incorporated by reference.  All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

**H. Disclosure Statement Order.**

9.        On December 28 2018, the Bankruptcy Court entered the Disclosure Statement Order [Docket No. 6119], which, among other things, approved (a) on a conditional basis, the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (b) the Solicitation and Notice Procedures; and (c) the Solicitation Packages.

**I.    Transmittal and Mailing of Materials; Notice.**

10.        As evidenced by the Solicitation Affidavit, the Publication Affidavit, and the Voting Report, the Debtor provided due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Disclosure Statement Order, the Solicitation Packages, the Confirmation Hearing Notice, the Plan Supplement, and all the other materials distributed by the Debtor in connection with the Confirmation of the Plan in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Bankruptcy Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Local Rules"), and the procedures set forth in the Disclosure Statement Order.  The Debtor provided due, adequate, and sufficient notice of the Voting Deadline, the Plan Objection Deadline, the Confirmation Hearing (as may be continued from time to time), and any applicable bar dates and hearings described in the Disclosure Statement Order in compliance with the Bankruptcy Code, the Bankruptcy Rules,

the Bankruptcy Local Rules, and the Disclosure Statement Order.  No other or further notice is or shall be required.

**J.  Solicitation.**

11.    The Debtor solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with sections 1125 and 1126, and all other applicable sections, of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Disclosure Statement Order, the Bankruptcy Local Rules, and all other applicable rules, laws, and regulations.  The Solicitation Packages provided the opportunity for voting creditors to opt out of the releases.

**K.  Voting Report.**

12.    On January 22, 2019, the Debtor filed the Voting Report.  The Voting Report was admitted into evidence during the Confirmation Hearing.  The procedures used to tabulate ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and all other applicable rules, laws, and regulations.

13.    As set forth in the Plan, Holders of Claims in Class 3 (the "Voting Class") were eligible to vote on the Plan in accordance with the Solicitation Procedures.  Holders of Claims and Interests in Classes 1 and 2 (together, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan. Holders of Claims in Class 4 either are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or Impaired and conclusively deemed to reject the Plan, and, therefore, are not entitled to vote to accept or reject the Plan.  Holders of Interests in Class 5 (the "Deemed Rejecting Class") are Impaired under the Plan, are entitled to no recovery under the Plan, and are therefore deemed to have rejected the Plan.

14.    As evidenced by the Voting Report, Class 3 voted in favor of the Plan.

**L.  Bankruptcy Rule 3016.**

15.     The Plan and all modifications thereto are dated and identify the Entity submitting them, thereby satisfying Bankruptcy Rule 3016(a).  The Debtor appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**M. Burden of Proof.**

16.     The Debtor, as proponent of the Plan, has met its burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation.  Further, the Debtor has proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence.  Each witness who testified on

behalf of the Debtor in connection with Confirmation was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**N.  Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

17.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**a.  Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

18.     The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

**i.   Sections 1122 and 1123(a)(1)—Proper Classification.**

19.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into five (5) different Classes based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, DIP Claims, Accrued Professional Compensation Claims, and Priority Tax Claims, which are addressed in Article II of the Plan and are not required to be designated as separate Classes by section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of such Claims and Interests, such classifications were not implemented for any improper purpose, and the creation of such Classes does not unfairly discriminate between, or among, holders of Claims and Interests.

20.     In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests that are substantially similar to the other Claims or

Interests within that Class.    Accordingly, the Plan satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### ii.  Section 1123(a)(2)—Specification of Unimpaired Classes.

21.    Article III of the Plan specifies that Claims and Interests in Classes 1 and 2 are Unimpaired under the Plan and Claims in Class 4 are either Impaired or Unimpaired under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### iii.  Section 1123(a)(3)—Specification of Treatment of Impaired Classes.

22.    Article III of the Plan specifies the treatment of each Impaired Class under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### iv.  Section 1123(a)(4)—No Discrimination.

23.    Article III of the Plan provides that each holder of an Allowed Claim and Interest will receive the same treatment as all other holders of Allowed Claims and Interests within the same class, except to the extent any holders of Allowed Claims and Interests have agreed to different treatment.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### v.  Section 1123(a)(5)—Adequate Means for Plan Implementation.

24.    Article IV and various other provisions of the Plan provide adequate means for the Plan's implementation.  Among other things, the Plan provides for:

- the sources of consideration for Plan distributions, including the Cash on hand and any other Cash received or generated by the Debtor;

- the authorization for the Debtor or the Reorganized Debtor, as applicable, to take corporate actions necessary to effectuate the Plan, including filing any New Organizational Documents of the Reorganized Debtor;

- the authorization for the Debtor or the Reorganized Debtor, as applicable, to undertake certain Restructuring Transactions;

- the cancellation of notes, instruments, certificates, and other existing securities; and

- except as otherwise provided in the July 2018 Settlement Agreement, the preservation of certain Causes of Action and the waiver of all rights to commence or pursue Avoidance Actions.

25.    Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### vi.  Section 1123(a)(6)—Non-Voting Equity Securities.

26.    Article IV.G of the Plan provides that the New Organizational Documents for the Reorganized Debtor will prohibit the issuance of non-voting stock.  Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### vii. Section 1123(a)(7)—Directors, Officers, and Trustees.

27.    As set forth in the Plan Supplement, Holders of Class 3 Claims will receive their recoveries through the Successor Entity to the Geoffrey Debtors under the Toys Delaware Plan, TRU Kids Parent, LLC, rather than from a Reorganized Debtor.  Accordingly, section 1129(a)(7) is inapplicable.  To the extent applicable, the new board of directors for the Reorganized Debtor will be identified prior to the Confirmation Hearing in the Plan Supplement or at the Confirmation

Hearing consistent with section 1129(a)(5).  Accordingly, to the extent applicable, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### b.  Section 1123(b)—Discretionary Contents of the Plan.

28.      The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, the Plan satisfies section 1123(b).

### i.  Impairment/Unimpairment of Any Class of Claims or Interests.

29.      Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

### ii.  Assumption and Rejection of Executory Contracts and Unexpired Leases.

30.      Article V of the Plan provides that except as otherwise provided in the plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including, without limitation, any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed or assumed and assigned to a third party, as applicable, in connection with any Sale Transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in

connection with the Plan; or (5) is an Insurance Contract.  Therefore, the Plan satisfies section 1123(b)(2) of the Bankruptcy Code.

### iii. Compromise and Settlement.

31.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan and the July 2018 Settlement Agreement, the provisions of the Plan and this Confirmation Order constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that all Holders of Claims or Interests may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.  The entry of this Confirmation Order constitutes the Bankruptcy Court's approval of all compromises and settlements of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromises and/or settlements are in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and are fair, equitable, and reasonable.

### iv. Debtor Release.

32.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, the releases of claims and Causes of Action by the Debtor described in Article VIII.D of the Plan (the "Debtor Release") represent a valid exercise of the Debtor's business judgment under Bankruptcy Rule 9019.  The Debtor's or the Reorganized Debtor's pursuit of any such claims against the Released Parties is not in the best interests of the estate's various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims.  The Debtor Release is fair and equitable and complies with the absolute priority rule.

33.     The Voting Class has voted in favor of the Plan, including the Debtor Release.  The Plan, including the Debtor Release, was negotiated by sophisticated parties represented by able

16

counsel and financial advisors.  The Debtor Release is therefore the result of an arm's-length negotiation process.

34.    The Debtor Release appropriately offers protection to parties that participated in and contributed to the Debtor's restructuring process.  Specifically, the Released Parties under the Plan—including the (a) the Holders of Claims against and Interests in the Debtor; (b) the Creditors' Committee and its members; (c) the Sponsors—made significant concessions and contributions to the Debtor's Chapter 11 Case, including, as applicable, entering into the actively supporting the Plan and the Chapter 11 Case and settling and compromising substantial rights and claims against the Debtor and its direct and indirect subsidiaries under the Plan.  The Debtor Release for the Debtor's directors, officers, and managers is appropriate because the Debtor's directors, officers, and managers share an identity of interest with the Debtor, supported the Plan and the Chapter 11 Cases, and actively participated in meetings, negotiations, and implementation of the restructuring during the Chapter 11 Case, and have provided other valuable consideration to the Debtor to facilitate the Debtor's reorganization.

35.    The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  In light of, among other things, the value provided by the Released Parties to the Debtor's estate and the critical nature of the Debtor Release to the Plan, the Debtor Release is approved.

### v.  Release by Holders of Claims and Interests.

36.    The release by the Releasing Parties (the "Third Party Release"), set forth in Article VIII.E of the Plan, is an essential provision of the Plan.  The Third Party Release is:  (a) consensual; (b) in exchange for the good and valuable consideration provided by the Released Parties; (c) a good-faith settlement and compromise of the claims and Causes of Action released by the Third Party Release; (d) materially beneficial to, and in the best interests of, the Debtor, its

estate, and its stakeholders, and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in the Chapter 11 Case; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) a bar to any of the Releasing Parties asserting any claim or Cause of Action released by the Third Party Release against any of the Released Parties; and (h) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

37.     The Third Party Release is an integral part of the Plan that is overwhelmingly supported by the Debtor's creditors and provides a meaningful recovery to all of the Debtor's Creditors.   Like the Debtor Release, the Third Party Release facilitated participation of the Released Parties in both the Plan and the chapter 11 processes generally.  The Third Party Release is instrumental to the Plan and was critical in incentivizing the Released Parties to support the Plan and preventing potentially significant and time-consuming litigation regarding the parties' respective rights and interests.  The Third Party Release was a core negotiation point in connection with the July 2018 Settlement Agreement and instrumental in developing a Plan that maximized value for all of the Debtor's stakeholders and preserved the Debtor's business as a going concern. The Third Party Release is necessary to the restructuring.

38.     The Released Parties have made a substantial contribution to the Debtor's reorganization.  Furthermore, the Third Party Release is consensual as the Releasing Parties were provided adequate notice of the chapter 11 proceedings, the Plan, and the deadline to object to confirmation of the Plan, and voting creditors and interest holders were given the opportunity to

opt out of the Third Party Release, and the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, and the ballot.

39.     There is an identity of interests between the Debtor and the entities that will benefit from the Third Party Release.  Each of the Released Parties, as stakeholders and critical participants in the Debtor's reorganization process, shares a common goal with the Debtor in seeing the Plan succeed.  Further, the Debtor and the Reorganized Debtor are required to indemnify certain of the Released Parties under, among other agreements, their pre- and postpetition credit facilities.  Any Cause of Action against one of the Debtor's indemnitees would create an obligation on behalf of the Debtor and would effectively amount to litigation against the Debtor, depleting assets of the estate.

40.     The scope of the Third Party Release is appropriately tailored to the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the Third Party Release.  Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third Party Release, and no other disclosure is necessary.  The Debtor, as evidenced by the Solicitation Affidavit, provided sufficient notice of the Third Party Release, and no further or other notice is necessary.  The Third Party Release is specific in language, integral to the Plan, and given for substantial consideration.

41.     In light of the foregoing, the Third Party Release is approved and binding on all Releasing Parties, including, without limitation, the Debtor and all parties in interest in the above-captioned chapter 11 cases.

### vi. Exculpation.

42.     The exculpation provisions set forth in Article VIII.F of the Plan are essential to the Plan.  The record in the Chapter 11 Case fully supports the exculpation and the exculpation

provisions set forth in Article VIII.F of the Plan, which are appropriately tailored to protect the Exculpated Parties from unnecessary litigation.

### vii. Injunction.

43.     The injunction provisions set forth in Article VIII.G of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the discharge, the Debtor Release, the Third Party Release, and the exculpation provisions in Article VIII of the Plan.  Such injunction provisions are appropriately tailored to achieve those purposes.

### viii.    Reservation of Claims and Causes of Action.

44.     Article IV.O of the Plan appropriately provides that, unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtor reserves any and all Causes of Action, including any actions specifically enumerated in and in accordance with the terms of the Plan Supplement, whether arising before or after the Petition Date, and preserves the right to commence, prosecute, or settle such Causes of Action, notwithstanding the occurrence of the Effective Date;

45.     No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that either the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against them.  No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

46.     The Plan is specific with respect to the Causes of Action to be retained by the Debtor, and the Plan and Plan Supplement provide meaningful disclosure with respect to the potential Causes of Action that the Debtor may retain, and all parties in interest received adequate

notice with respect to such Causes of Action.  The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtor, its estate, and Holders of Claims and Interests.  For the avoidance of any doubt, Causes of Action released or exculpated under the Plan will not be retained by the Reorganized Debtor.

### ix.  Lien Releases.

47.     Except as otherwise specifically provided in the Plan, pursuant to Article VIII.C of the Plan, in any contract, instrument, release, or other agreement or document created pursuant to the Plan, or executed in connection therewith, to implement the Plan, it is necessary that all mortgages, deeds of trust, Liens, pledges, encumbrances, or other security interests against any property of the Debtor's estate shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtor's Estate shall revert to the Debtor or Reorganized Debtor(the "Lien Releases").  The provisions of the Lien Releases are appropriate, fair, equitable and reasonable and in the best interests of the Debtor, its estate, and Holders of Claims and Interests.

### x.  Additional Plan Provisions.

48.     The other discretionary provisions of the Plan, including the Plan Supplement, are appropriate and consistent with applicable provisions of the Bankruptcy Code, including, without limitation, provisions for the allowance of certain Claims and Interests, treatment of indemnification obligations, and the retention of court jurisdiction.

### c.  Section 1123(d)—Cure of Defaults.

49.     Article V.C of the Plan provides for the satisfaction of Cure Obligations associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each Assumed Executory

Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash, subject to the limitations described in Article V.C of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and nonbankruptcy law.  As such, the Plan provides that the Debtor will cure, or provide adequate assurance that the Debtor will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

### d.  Section 1129(a)(2)—Compliance of the Debtor and Others with the Applicable Provisions of the Bankruptcy Code.

50.    The Debtor, as proponent of the Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129, and with Bankruptcy Rules 2002, 3017, 3018, and 3019.

51.    The Debtor and its agents solicited votes to accept or reject the Plan after the Bankruptcy Court approved the adequacy of the Disclosure Statement, pursuant to section 1125(a) of the Bankruptcy Code and the Disclosure Statement Order.

52.    The Debtor and its agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the

protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII.F of the Plan.

53.     The Debtor and its agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

**e. Section 1129(a)(3)—Proposal of Plan in Good Faith.**

54.     The Debtor has proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case, the Plan itself, and the process leading to its formulation.  The Debtor's good faith is evident from the facts and the record of the Chapter 11 Case, the Disclosure Statement, the hearing on the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Case.

55.     The Plan is the product of good faith, arm's-length negotiations by and among the Debtor, the Debtor's directors, officers, and managers, and the other constituencies involved in the Chapter 11 Case.  The Plan itself and the process leading to its formulation provide independent evidence of the Debtor's and such other parties' good faith, serve the public interest, and assure fair treatment of holders of Claims and Interests.  Consistent with the overriding purpose of chapter 11, the Debtor filed the Chapter 11 Case with the belief that the Debtor was in need of restructuring and the Plan was negotiated and proposed with the intention of maximizing

stakeholder value and for no ulterior purpose.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**f.   Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.**

56.      Any payment made or to be made by the Debtor, or by a person issuing securities or acquiring property under the Plan, for services or costs and expenses in connection with the Chapter 11 Case, or in connection with the Plan or incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.  Accordingly, the Plan satisfies the requirements of section 1129(a)(4).

**g.   Section 1129(a)(5)—Disclosure of Directors, Officers and Managers and Consistency with the Interests of Creditors and Public Policy.**

57.      As set forth in the Plan Supplement, Holders of Class 3 Claims will receive their recoveries through the Successor Entity to the Geoffrey Debtors under the Toys Delaware Plan, TRU Kids Parent, LLC rather than from a Reorganized Debtor.  Accordingly, section 1129(a)(7) will be inapplicable to this case.  To the extent applicable, the new board of directors for the Reorganized Debtor will be identified prior to the Confirmation Hearing in the Plan Supplement or at the Confirmation Hearing consistent with section 1129(a)(5).  Accordingly, to the extent applicable, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

**h.   Section 1129(a)(6)—Rate Changes.**

58.      The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval.  Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**i.   Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

59.      The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, and the facts and circumstances of the Chapter 11 Cases, establishes that

24

each holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such holder would receive if the Debtor was liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  As a result, the Debtor has demonstrated that the Plan is in the best interests of its creditors and equity holders and the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

**j.   Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Classes; Fairness of Plan with Respect to Deemed Rejecting Classes.**

60.    The Deemed Accepting Classes are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Nevertheless, because the Plan has not been accepted by the Deemed Rejecting Class, the Debtor seeks Confirmation under section 1129(b), solely with respect to the Deemed Rejecting Class, rather than section 1129(a)(8), of the Bankruptcy Code.  Although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Class, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Class and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Class as described further below.  As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

**k.   Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

61.    The treatment of Administrative Claims, Accrued Professional Compensation Claims, and Priority Tax Claims under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

62.    On the Effective Date, except to the extent that a Holder of an Allowed Administrative Claim or Priority Tax Claim and the Debtor agree to less favorable treatment for

such Holder, each Holder of an Allowed Administrative Claim or Priority Tax Claim, shall be paid in full in Cash on the unpaid portion of such Administrative Claim.

### l.   Section 1129(a)(10)—Acceptance by at Least One Impaired Class.

63.     As set forth in the Voting Report, the sole class that was entitled to vote on the Plan has voted to accept the Plan.  Specifically, Holders of Claims in Class 3, which is an impaired Class of Claims under the Plan, voted to accept the Plan independent of any insiders' votes.  As such, there is either at least one class of Claims that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider (as defined by the Bankruptcy Code).  Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

### m.  Section 1129(a)(11)—Feasibility of the Plan.

64.     The Plan satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.  The Plan provides for the transfer of the Debtor's sole asset—the New Contingent Equity Rights received by the Debtor pursuant to the Propco I Plan—to the Debtor's stakeholders.

65.     The Plan provides for the settlement of all Causes of Actions and disposition of all assets of the Debtor's estate and brings a conclusion to these chapter 11 proceedings.  Rather than unnecessarily elongate these cases, the Plan provides closure and assurance that the assets of the Debtor's estate are being distributed in an efficient and value maximizing manner pursuant to the Debtor's obligations under the Plan, without the need for any further financial restructuring. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

### n.   Section 1129(a)(12)—Payment of Statutory Fees.

66.     Article XII.C of the Plan provides that all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at the Confirmation Hearing in

accordance with section 1128 of the Bankruptcy Code, will be paid by the Debtor or the

Reorganized Debtor for each quarter (including any fraction of a quarter) until the Chapter 11

Cases are converted, dismissed, or closed, whichever occurs first.  Accordingly, the Plan satisfies

the requirements of section 1129(a)(12) of the Bankruptcy Code.

**o.  Section 1129(a)(13), (14), (15), and (16)—Retiree Benefits, Domestic Support Obligations, Individuals, and Nonprofit Corporations.**

67.    The Debtor does not owe any retiree benefits, domestic support obligations, is not

an individual, and is not a nonprofit corporation.  Therefore, sections 1129(a)(13), 1129(a)(14),

1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to this Chapter 11 Case.

**p.  Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Classes.**

68.    Notwithstanding the fact that the Deemed Rejecting Class has not accepted the

Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because:

(a) all applicable requirements of section 1129(a) of the Bankruptcy Code other than paragraph (8)

thereof are met; and (b) the Plan does not discriminate unfairly and is fair and equitable with

respect to the Interests in the Deemed Rejecting Class.  As a result, the Plan satisfies the

requirements of section 1129(b) of the Bankruptcy Code.  Thus, the Plan may be confirmed even

though section 1129(a)(8) of the Bankruptcy Code is not satisfied.  After entry of this Confirmation

Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of the Deemed Rejecting Class.

### q.  Section 1129(c)—Only One Plan.

69.    Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Case of the Debtor.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

### r.  Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act.

70.    No governmental unit or any other party has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

### s.  Section 1129(e)—Not Small Business Cases.

71.    This Chapter 11 Case is not a small business case, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to this Chapter 11 Case.

### O.  Satisfaction of Confirmation Requirements.

72.    Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtor, as applicable, satisfy all the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

### P.  Good Faith.

73.    The Debtor proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtor's estate for the benefit of its stakeholders.  The Plan is the product of extensive collaboration among the Debtor and key stakeholders and accomplishes this

goal. Accordingly, the Debtor or the Reorganized Debtor, as appropriate, has been, is, and will continue acting in good faith if it proceeds to: (a) consummate the Plan, the Restructuring Transactions, and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

**Q. Disclosure: Agreements and Other Documents.**

74. The Debtor has disclosed all material facts, to the extent applicable, regarding: (a) the adoption of the New Organizational Documents or similar constituent documents; (b) the method and manner of distributions under the Plan; (c) the adoption, execution, and implementation of the other matters provided for under the Plan, including those involving corporate action to be taken by or required of the Debtor or Reorganized Debtor, as applicable; (d) the July 2018 Settlement Agreement, (e) the retained Causes of Action; (f) securities registration exemptions; (g) the exemption under section 1146(a) of the Bankruptcy Code; and (h) the adoption, execution, and delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

**R. Conditions to Effective Date.**

75. The Plan shall not become effective unless and until the conditions set forth in Article IX.B of the Plan have been satisfied or waived pursuant to Article IX.C of the Plan.

**S. Implementation.**

76. All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtor, and shall, upon completion of documentation and execution,

be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtor, the estate, and the holders of Claims and Interests.  The Debtor has exercised reasonable business judgment in determining which documents and agreements to enter into and has provided sufficient and adequate notice of such documents and agreements. The Debtor is authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

**T.  Vesting of Assets.**

77.     Except as otherwise provided in the Plan, the July 2018 Settlement Agreement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor free and clear of all liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**U.  Treatment of Executory Contracts and Unexpired Leases.**

78.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Confirmation Date, the Plan provides for the rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date.  The Debtor's determinations regarding the rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtor, are necessary to the implementation of the Plan and are in

the best interests of the Debtor, its estate, holders of Claims and Interests, and other parties in interest in the Chapter 11 Cases.

### V.  B-2/B-3 Settlement

79.     The settlement of ratable claims held by the Term B-2 and B-3 Lenders outlined in Article IV.A of the Plan and in the Restructuring Transactions Memorandum (the "B-2/B-3 Settlement") is fair, equitable, reasonable and in the best interests of the Debtors, their estates, and their creditors and is a valid and sound exercise of the Debtors' business judgment.

### W. Objections.

80.     All parties have had a full and fair opportunity to litigate all issues raised in the objections to Confirmation of the Plan, or which might have been raised, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.

## II.  ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

81.     This Confirmation Order confirms the Plan in its entirety as modified herein.

82.     This Confirmation Order approves the Plan Supplement, including the documents contained therein, as it may be amended through and including the Effective Date in accordance with and as permitted by the Plan.  The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order; *provided* that if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of such conflict.

83.     All holders of Claims that voted to accept the Plan are conclusively presumed to have accepted the Plan as modified.  All Holders of Administrative Claims that did not opt-out of the July 2018 Settlement Agreement are presumed to have accepted their treatment under the Plan.

84.     The terms of the Plan, the Plan Supplement, all exhibits thereto, this Confirmation Order, and any related document or exhibit shall be effective and binding as of the Effective Date on all parties in interest, including, but not limited to:  (a) the Debtor; (b) the Creditors' Committee; and (c) all holders of Claims and Interests.

85.     The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Bankruptcy Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**A.     Objections.**

86.     To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections

(including any reservation of rights contained therein) are hereby overruled in their entirety and on their merits.

**B.    Findings of Fact and Conclusions of Law.**

87.    The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing in relation to Confirmation, including the Confirmation Ruling, are hereby incorporated into this Confirmation Order.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.  To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

**C.    Post-Confirmation Modification of the Plan.**

88.    Subject to the limitations and terms contained in Article X.A and B of the Plan, the Debtor is hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, without further order of this Court.

**D.    Plan Classification Controlling.**

89.    The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder and the classifications set forth on the ballots tendered to or returned by the holders of Claims or Interests in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual

classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtor except for voting purposes.

**E.      General Settlement of Claims and Interests.**

90.      Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies resolved pursuant to the Plan.

**F.      Restructuring Transactions.**

91.      The Debtor shall take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.  The actions necessary to implement the Restructuring Transactions may include, without limitation: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the Entity may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and the Transaction Steps Memorandum and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial

law; (d) all other actions that the Entity determines to be necessary or appropriate, including

making filings or recordings that may be required by applicable law in connection with the Plan;

and (e) all other actions that are provided for in the Restructuring Transactions Description and/or

the Transaction Steps Memorandum, or that the Entity determines to be necessary or appropriate,

including making filings or recordings that may be required by applicable law.

92.     With respect to the Plan, all amounts of Cash necessary for the Debtor or the

Disbursing Agent to make payments or distributions pursuant hereto shall be obtained from the

Cash on hand and any other Cash received or generated by the Debtor.

93.     The Reorganized Debtor shall use Cash on hand to fund distributions to certain

Holders of Allowed Claims in accordance with Article III of the Plan.

**G.     Corporate Action.**

94.     On the Effective Date, or as soon thereafter as is reasonably practicable, all actions

contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all

respects, including, as applicable:   (a) the implementation of the Restructuring Transactions,

including generally allowing for all corporate action necessary to effectuate the Restructuring

Transactions; (b) the effectuation of the respective Settlement Agreements; (c) the cancellation of

certain agreements, obligations, instruments, and certain Interests; (d) authorization and approval

of all corporate actions contemplated under the Plan; (e) the execution, delivery, filing, or

recording of all contracts, instruments, releases, and other agreements or documents in furtherance

of the Plan; and (f) all other actions contemplated by the Plan (whether to occur before, on, or after

the Effective Date).  Upon the Effective Date, all matters provided for in the Plan involving the

corporate structure of the Reorganized Debtor, and any corporate action required by the Debtor in

connection with the Plan shall be deemed to have occurred and shall be in effect, without any

requirement of further action by the security holders, directors, or officers of the Debtor, or the Reorganized Debtor.

95.     On or (as applicable) before the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor, including any and all other agreements, documents, securities, and instruments relating to the foregoing.   The authorizations and approvals contemplated by Article IV.L of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**H.      Plan Implementation Authorization.**

96.     The Debtor or the Reorganized Debtor, as the case may be, and their respective directors, officers, members, agents, and attorneys, financial advisors, and investment bankers are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan, as the same may be modified, amended and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with its terms and the terms hereof, or take any or all corporate actions authorized to be taken pursuant to the Plan, this Confirmation Order, or the July 2018 Settlement Order, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Bankruptcy Court.   To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective state filing or recording offices and filed or recorded in

accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

97.    Pursuant to section 303 of the General Corporation Law of the State of Delaware and any comparable provision of the business corporation laws of any other state, as applicable, no action of the Debtor's board of directors or the Reorganized Debtor's board of directors will be required to authorize the Debtor or Reorganized Debtor, as applicable, to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument, release, or other agreement or document related to the Plan, and following the Effective Date, each of the Plan documents will be a legal, valid, and binding obligation of the Debtor or Reorganized Debtor, as applicable, enforceable against the Debtor and the Reorganized Debtor in accordance with the respective terms thereof.  The Reorganized Debtor may also, consistent with the Plan, take any additional steps on and after the Effective Date to consolidate and streamline its organization, including, among other things, the merger, liquidation, or dissolution of the Debtor or Reorganized Debtor.

I.    **The Settlement Agreements.**

98.    The July 2018 Settlement Agreement shall remain in full force and effect.  The terms of the July 2018 Settlement Agreement and the July 2018 Settlement Order are incorporated by reference herein, are an integral part of this Confirmation Order and are hereby ratified in their entirety, and the Debtor shall continue to fulfill its obligations thereunder.

J.    **Cancellation of Notes, Instruments, Certificates, and Other Documents.**

99.    On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, Certificates, and other documents evidencing, or in any way related to, Claims or Interests shall be canceled and the obligations of the Debtor thereunder or in any way related thereto shall be released, settled, and compromised; provided, however, that, other than as

provided by the Toys Delaware Plan and the Geoffrey Plan, the Secured Term Loan B Credit Agreement (as defined in the Toys Delaware Plan) shall continue in effect solely for the Secured Term Loan B Credit Facility Agent to comply with its obligations under the Plan and to enforce any obligations owed to it under the Plan; provided, further, that nothing in the Plan shall alter, amend, or otherwise modify the rights and obligations of the Secured Term Loan B Credit Facility Agent with respect to any of the Toys Delaware Debtors and Geoffrey Debtors, as set forth in the Toys Delaware Plan and Geoffrey Plan, respectively.

**K.    Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.**

100.    This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, any other Restructuring Documents, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

101.    The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.The definition of "Released Parties" set forth in Section I.A.96 of the Plan is replaced with the following:

> "Released Party" means, subject to Article VIII, collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the TRU Retail Debtors; (d) the Propco I Debtors; (e) the Holders of Claims against and Interests in the Debtor; (f) the Creditors' Committee and its members; (g) the Sponsors (but not the Sponsor-affiliated directors, officers, and managers); (h) the Secured Term Loan B Credit Facility Agent; and (i) with respect to each of the foregoing entities in clauses (a) through (h) (other than the Toys Delaware Debtors, the Geoffrey Debtors, and TRU Inc.), such entity's current and former Affiliates, and each of such entity's subsidiaries, officers, directors, managers, principals, members,

employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (j) with respect to the Toys Delaware Debtors, the Geoffrey Debtors, and TRU Inc., such entity's affiliates and its and their respective directors, officers, agents, advisors, and professionals; *provided* that notwithstanding any other provisions herein, "Released Parties" shall not include, and in each case regardless of whether such party or entity would otherwise meet the definition of Released Party, (i) any party that opts out of the releases contained in the Plan or is otherwise removed from the definition of "Releasing Parties" shall not be a "Released Party" or (ii) any party subject to a Non-Released Claim (including any D&O Party, as defined in the Toys Delaware Plan and/or the Toys Inc. Plan) but only to the extent, and in the capacity, that such party is subject to such Non-Released Claim, *provided*, for the avoidance of doubt, TRU Inc. and the Toys Delaware Debtors and their respective estates and creditors are not releasing any Claims or Causes of Action against any D&O Party (as defined in the Toys Delaware Plan and/or the Toys Inc. Plan).

102.    The definition of "Exculpated Parties" set forth in Section I.A.45 of the Plan is replaced with the following:

"Exculpated Parties" means, subject to Article VIII, collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the TRU Retail Debtors ; (d) the Propco I Debtors; (e) the Holders of Claims against and Interests in the Debtor; (e) the Creditors' Committee and its members; (f) the Sponsors (solely to the extent acting as a fiduciary of the Debtor, and not the Sponsor-affiliated directors, officers, and managers); (g) the Secured Term Loan B Credit Facility Agent; and (h) with respect to each of the foregoing entities in clauses (a) through (g) (other than the Toys Delaware Debtors, the Geoffrey Debtors, and TRU Inc.), such entity's current and former affiliates, and each of such entity's, and such entity's current and former affiliates', current and former equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (i) with respect to the Toys Delaware Debtors, the Geoffrey Debtors, and TRU Inc., such entity's affiliates and its and their respective directors, officers, agents, advisors, and professionals; *provided* that, notwithstanding the foregoing or any other provision herein, the term "Exculpated Parties" does not include any party subject to a Non-Released Claim (including any

D&O Party, as defined in the Toys Delaware Plan and/or the Toys Inc. Plan) but only to the extent, and in that capacity, that such party is subject to such Non-Released Claim, *provided*, for the avoidance of doubt, TRU Inc. and the Toys Delaware Debtors and their respective estates and creditors, are not releasing any Claims or Causes of Action against any D&O Party (as defined in the Toys Delaware Plan and/or the Toys Inc. Plan), in each case regardless of whether such party or entity would otherwise meet the definition of Exculpated Parties.

103.    The following releases, injunctions, exculpations, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party:

   *a.    Debtor Release.*

104.    **Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtor and the Debtor's Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, including any derivative Cause of Action asserted on behalf of the Debtor, that the Debtor or the Debtor's Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Cause of Action against, or Interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other**

agreement or document created or entered into in connection with the Disclosure Statement, the Plan, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; **provided**, **however**, that notwithstanding anything to the contrary herein, nothing in this Article or this Plan shall release

(a) any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and the Restructuring Transactions;

(b) any Administrative Claims held by the Debtor against the TRU Retail Debtor Parties or any Former Debtor, including any Administrative Claims pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code;

(c) any Non-Released Claims or any D&O Claims (as defined in the Toys Delaware Plan and/or Toys Inc. Plan); or

(d) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any Entity.

105.    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this **Article VIII.D** by the Debtor, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this **Article VIII.D** is:

**(1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Causes of Action;**

**(2) in the best interest of the Debtor and all Holders of Interests and Causes of Action;**

**(3) fair, equitable, and reasonable;**

**(4) given and made after due notice and opportunity for hearing; and**

**(5) subject to the terms and provisions herein, a bar to the Debtor asserting any Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.**

106.    **Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Debtor.**

b.    *Release by Holders of Claims or Interests.*

107.    **As of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtor and each Released Party from any and all Causes of Action, whether known or unknown, including any derivative Causes of Action asserted on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of**

Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; **provided**, **however**, that notwithstanding anything to the contrary herein, nothing in this Article or this Plan shall release

(a) any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and the Restructuring Transactions;

(b) any Administrative Claims held by the Debtor against the TRU Retail Debtor Parties or any Former Debtor, including any Administrative Claims pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code;

(c) any Non-Released Claims or any D&O Claims (as defined in the Toys Delaware Plan and/or Toys Inc. Plan); or

(d) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any Entity.

108.    For the avoidance of doubt, nothing contained herein shall affect any rights of any parties to the Settlement Agreement preserved under the Settlement Agreement.

109.    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this **Article VIII.E**, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this **Article VIII.E** is:

(1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Causes of Action;

(2) in the best interests of the Debtor and all Holders of Interests and Causes of Action;

(3) fair, equitable, and reasonable;

(4) given and made after due notice and opportunity for hearing; and

(5) subject to the terms and provisions herein, a bar to any of the Releasing Parties asserting any Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

110.    **Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Debtor.**

c.  *Exculpation*.

111.    **Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability with respect to, and each Exculpated Party is released and exculpated from, any Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement,**

except for Causes of Action related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan; provided, however, notwithstanding anything to the contrary herein, the following shall not release or exculpate:

(i) any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and the Restructuring Transactions;

(ii) any Administrative Claims held by the Debtor against the TRU Retail Debtor Parties or any Former Debtor, including any Administrative Claims pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code;

(iii) any Non-Released Claims or any D&O Claims (as defined in the Toys Delaware Plan and/or Toys Inc. Plan); or

(iv) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any Entity.

112.    **Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Plan Debtor.**

d.  *Injunction*.

113.    **Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan, or the Confirmation Order, all Entities who have held, hold, or may hold Causes of Action, Claims, or Interests that have been compromised, settled, or released, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Exculpated Parties, or the Released Parties:**

**(1) commencing or continuing in any manner any and all Causes of Action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests;**

**(2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor, the Exculpated Parties, or the Released Parties on account of or in connection with or with respect to any such Claims or Interests;**

**(3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Exculpated Parties, or the Released Parties or the property or the estate of the Debtor, the Exculpated Parties, or the Released Parties on account of or in connection with or with respect to any such Causes of Action, Claims, or Interests;**

**(4) asserting any right of setoff, subrogation, recoupment, or other similar legal or equitable right of any kind against any obligation due from the Debtor, the**

Exculpated Parties, or the Released Parties or against the property of the Debtor, the Exculpated Parties, or the Released Parties on account of or in connection with or with respect to any such Causes of Action, Claims, or Interests unless such Holder has Filed a motion requesting the right to perform such legal or equitable right on or before the Effective Date, and notwithstanding an indication of any Cause of Action, Claim, or Interest or otherwise that such Holder asserts, has, or intends to preserve pursuant to applicable law or otherwise; and

(5) commencing or continuing in any manner any and all Causes of Action or other proceeding of any kind on account of or in connection with or with respect to any such Causes of Action, Claims, or Interests released or settled pursuant to the Plan; provided, however, that, notwithstanding anything to the contrary herein, nothing in this Article or this Plan shall enjoin:

(i) any Entity from taking the preceding actions with respect to any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and the Restructuring Transactions;

(ii) any Administrative Claims held by the Debtor against the TRU Retail Debtor Parties or any Former Debtor, including any Administrative Claims pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code;

(iii) any Non-Released Claims or any D&O Claims (as defined in the Toys Delaware Plan and/or Toys Inc. Plan); or

(iv) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any Entity.

47

114.    **Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this <u>Article VIII.G</u> of the Plan.**

115.    **Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Plan Debtor.**

116.    Notwithstanding anything herein or in the Plan to the contrary, nothing in the Plan or the Confirmation Order shall release or exculpate any (i) D&O Claims, (ii) Non-Released Claims, or (iii) Claims against the D&O Parties by TRU Inc. or the Toys Delaware Debtors (in each of (i) through (iii), as defined in the Toys Delaware Plan and/or Toys Inc. Plan).  Nothing herein or in the Plan shall provide for any release or exculpation of Avoidance Actions as between the Propco I Debtors and the TRU Retail Debtor Parties, which shall be governed in all respects by the terms of the Propco I Plan.

**L.    Assumption and Rejection of Executory Contracts and Unexpired Leases.**

117.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any

and all disputes concerning the assumption or rejection, as applicable, of such Executory Contracts

and Unexpired Leases) shall be, and hereby are, approved in their entirety.

118.    For the avoidance of doubt, Article V of the Plan provides that except as otherwise

provided in the plan, each Executory Contract and Unexpired Lease not previously rejected,

assumed, or assumed and assigned, including, without limitation, any employee benefit plans,

severance plans, and other Executory Contracts under which employee obligations arise, shall be

deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless

such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be

assumed in connection with Confirmation of the Plan, or is specifically scheduled to be assumed

or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending

motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to

be assumed or assumed and assigned to a third party, as applicable, in connection with any Sale

Transaction; (4) is a contract, instrument, release, indenture, or other agreement or document

entered into in connection with the Plan; or (5) is an Insurance Contract.  Entry of the Confirmation

Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and

rejections, including the assumptions of the Executory Contracts or Unexpired Leases listed on the

Assumed Executory Contract and Unexpired Lease List and the rejection of the Executory

Contracts or Unexpired Leases listed on the Rejected Executory Contract and Unexpired Lease

List pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Any motions to assume or

reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to

approval by the Bankruptcy Court on or after the Effective Date by a Final Order.  Each Executory

Contract and Unexpired Lease assumed pursuant to Article V.A of the Plan or by any order of the

Bankruptcy Court, which has not been assigned to a third party before or on the Confirmation

Date, shall revest in and be fully enforceable by the Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

**M.    Cure of Defaults for Assumed and Assigned Executory Contracts and Unexpired Leases.**

119.    Any Cure Obligations under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Obligation in Cash on or after the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of the Cure Claim, (2) the ability of the Debtor's Estate or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Claims required by section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or Orders resolving the dispute and approving the assumption.  The Debtor provided notices of proposed assumption and proposed Cure Obligations to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or Cure Obligation must be filed, served, and actually received by the Debtor at least three days before the Confirmation Hearing.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or Cure Obligation.

120.    Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction

of any Claims or defaults, subject to satisfaction of the Cure Claims, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition, restricting use or tenant mix, or other bankruptcy-related defaults, including, without limitation, violation of go-dark or cessation of operation provisions or other provisions which seek to condition or restrict the use or assignment of an Unexpired Lease, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment. Any provisions in any lease or other conveyance document that prohibits or conditions the assignment of an Unexpired Lease or allows the landlord or other counterparty, as applicable, to terminate, recapture, or impose any penalty upon assignment of any such Unexpired Lease, or as a result of a closure or failure to operate in the premises, are deemed by this Plan to be unenforceable anti-assignment provisions that are void and of no force and effect. Any liabilities reflected in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

121.    Unless otherwise provided in the Plan, contracts and leases the Debtor entered into after the Petition Date, including any Executory Contracts and Unexpired Leases assumed by the Debtor, will be performed by the Reorganized Debtor, in the ordinary course of its business after the Effective Date. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive entry of the Confirmation Order.

**N.    Provisions Governing Distributions.**

122.    The distribution provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Plan or this Confirmation Order, the Disbursing Agent shall make all distributions required under the Plan. The timing of

distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

**O.      Release of Liens.**

123.     Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtor's Estate shall revert to the Debtor.

**P.      Post-Confirmation Notices.**

124.     In accordance with Bankruptcy Rules 2002 and 3020(c), no later than seven Business Days after the Effective Date, the Reorganized Debtor must cause notice of Confirmation and occurrence of the Effective Date (the "Notice of Confirmation") to be served by United States mail, first-class postage prepaid, by hand, by overnight courier service, or by electronic service to all parties served with the Confirmation Hearing Notice; *provided*, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtor mailed a Confirmation Hearing Notice but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtor has been informed in writing by such Entity, or is otherwise aware, of that

Entity's new address.  For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

125.    To supplement the notice procedures described in the preceding sentence, no later than 10 Business Days after the Effective Date, the Reorganized Debtor must cause the Notice of Confirmation, modified for publication, to be published on one occasion in *USA Today* (national edition).  Mailing and publication of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice is necessary.

126.    The Notice of Confirmation will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

**Q.    Professional Compensation and Reimbursement Claims and Professional Fee Escrow Account.**

127.    All final requests for payment of Claims of a Professional shall be filed no later than the first Business Day that is 60 days after the Effective Date or such earlier date following the Effective Date as may be ordered by the Bankruptcy Court.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court.  The amount of Allowed Accrued Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by a Final Order.  To the extent that funds held in the Professional Fee Escrow Account are unable to satisfy

the Allowed amount of Accrued Professional Compensation Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of the Plan.  Notwithstanding anything to the contrary herein, the Fee Examiner Order shall remain in effect pursuant to its own terms.

128.    To receive payment for unbilled fees and expenses incurred through the Confirmation Date, the Professionals shall estimate their Accrued Professional Compensation Claims before and as of the Confirmation Date and shall deliver such estimate to the Debtor no later than ten business days prior to the Effective Date; *provided* that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtor may estimate the unbilled fees and expenses of such Professional. The total aggregate amount so estimated shall be utilized by the Debtor to determine the Professional Fee Escrow Amount; *provided that* the Reorganized Debtor shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

129.    Notwithstanding anything to the contrary in the Plan, the Debtor shall continue to allocate Accrued Professional Compensation Claims among each of the Debtors pursuant to the Professional Fee Allocation Mechanism, to the extent any professional involved in the Debtors' cases continues to work post-Confirmation.  The Debtors are authorized to publicize professional fees and expenses incurred post-Confirmation, subject to the rights of parties-in-interest to object in accordance with the Global Settlement Agreement and/or the Interim Compensation Order to

the post-Confirmation allocation of any professional fees or expenses to or among each or any of the Debtors or any of their respective subsidiaries or affiliates.

130.    Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtor.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**R.      Notice of Subsequent Pleadings.**

131.    Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties:  (a) the Reorganized Debtor and its counsel; (b) the U.S. Trustee; (c)  any party known to be directly affected by the relief sought by such pleadings; and (d) any party that specifically requests additional notice in writing to the Debtor or Reorganized Debtor, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date.  The Notice and Claims Agent shall not be required to file updated service lists.

**S.      Securities Law Exemptions.**

132.    Notwithstanding anything to the contrary in this Confirmation Order or the Plan, to the maximum extent provided by section 1145 of the Bankruptcy Code, applicable provisions of the Securities Act and other applicable non-bankruptcy law, the offering, issuance, and distribution of the Initial Shares, and Subscription Rights issued under the Plan are exempt from, among other

things, the registration and prospectus delivery requirements of Section 5 of the Securities Act and any other applicable state or federal law requiring registration and/or prospectus delivery or qualification prior to the offering, issuance, distribution, or sale of Securities.

133.    In addition, under section 1145 of the Bankruptcy Code, to the extent applicable, such Eligible Securities will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act and otherwise to the extent permitted under section 1145 of the Bankruptcy Code, and compliance with applicable securities laws and any rules and regulations of the U.S. Securities and Exchange Commission (the "SEC"), if any, applicable at the time of any future transfer of such Securities or instruments and subject to any restrictions in the Reorganized Debtor's New Organizational Documents.

**T.    Section 1146 Exemption.**

134.    Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, to the fullest extent contemplated by section 1146(a) of the Bankruptcy Code, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such

transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**U.    Preservation of Causes of Action.**

135.    Except as otherwise provided in the Plan (including the Debtor Release and the Third-Party Release) or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, Article IV.O of the Plan appropriately provides that, unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order such that the Debtor retains no right or interest in such Cause of Action as of the Effective Date, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall reserve, retain, and may enforce, all rights to commence, prosecute or settle, as appropriate, any and all Causes of Action, whether arising or accruing before or after the Petition Date, which authority shall vest in the Reorganized Debtor on the Effective Date pursuant to the terms of the Plan.

136.    The Reorganized Debtor may enforce all rights to commence, prosecute, or settle, as appropriate, any and all such Causes of Action, whether arising or accruing before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.    Any Reorganized Debtor may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Reorganized Debtor deems appropriate, including on a contingency fee basis.

137.    No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor, or the Reorganized Debtor will not pursue any and all available Causes of Action against them.    The

Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order such that the Debtor hold no right or interest in such Cause of Action as of the Effective Date, the Debtor and the Reorganized Debtor expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  The Reorganized Debtor reserves and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

138.    The Plan is specific with respect to the Causes of Action to be retained by the Debtor, and the Plan and Plan Supplement provide meaningful disclosure with respect to the potential Causes of Action that the Debtor may so retain or transfer, and all parties in interest received adequate notice with respect to such Causes of Action.  The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtor, its estate, and Holders of Claims and Interests.

## V.    Avoidance Actions.

139.    The Debtor waives all rights to commence or otherwise pursue any and all Avoidance Actions arising under section 547 of the Bankruptcy Code or any comparable

"preference" action arising under applicable non-bankruptcy law, *provided that*, (i) neither the Debtor nor the Reorganized Debtor waive any rights to commence or pursue any Avoidance Actions against the TRU Retail Debtors or any Former Debtors; and (ii) except as expressly provided in the Plan, the Reorganized Debtor shall retain the right to assert any Causes of Action assertable in any Avoidance Action as defenses or counterclaims in any Cause of Action brought by any Entity.

**W.    Reports.**

140.    The Debtor will continue to include information regarding its deposits, expenditures, and other relevant financial information in monthly operating reports (prior to the Effective Date) and quarterly post-confirmation reports (after the Effective Date) Filed with the Court until the applicable Chapter 11 cases are converted, dismissed, or closed, whichever occurs first.

**X.    General Authorization.**

141.    Except as set forth in the Plan, Confirmation of the Plan shall be deemed to constitute approval of the transactions contemplated thereby and all actions to be taken, undertakings to be made, and obligations to be incurred by the Debtor and Reorganized Debtor (including the payment of all fees, indemnities, and expenses provided for therein) and, subject to the occurrence of the Effective Date, authorization for the Reorganized Debtor to enter into and perform its obligations under such other documents as may be reasonably required or appropriate.

**Y.    Binding Effect.**

142.    Subject to Article IX of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims

or Interests accepted or rejected the Plan), all Entities that are parties to or are subject to the

settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring

property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired

Leases with the Debtor.

**Z.      Post-Confirmation Fees and Expenses.**

143.    Except as otherwise specifically provided in the Plan, from and after the

Confirmation Date, the Debtor shall, in the ordinary course of business and without any further

notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal,

professional, or other fees and expenses related to implementation and Consummation of the Plan

incurred by the Debtor.   Upon the Confirmation Date, any requirement that Professionals and

Ordinary Course Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy

Code, the Interim Compensation Order, or the Ordinary Course Professionals Order, in seeking

retention or compensation for services rendered after such date shall terminate, and the Debtor

may employ and pay any Professional or Ordinary Course Professional in the ordinary course of

business without any further notice to or action, order, or approval of the Bankruptcy Court.

**AA.    Nonseverability of Plan Provisions Upon Confirmation.**

144.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062,

9014, or otherwise, the terms and conditions of this Confirmation Order will be effective and

enforceable immediately upon its entry.  Each term and provision of the Plan, and the transactions

related thereto as it heretofore may have been altered or interpreted by the Bankruptcy Court is:

(a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or

modified absent consultation with the Creditors' Committee; and (c) nonseverable and mutually dependent.

**BB.    Waiver or Estoppel.**

145.    Except as otherwise set forth in the Plan or this Confirmation Order, each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

**CC.    Authorization to Consummate.**

146.    The Debtor is authorized to consummate the Plan, including the Restructuring Transactions contemplated thereby, at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.  The substantial consummation of the Plan, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, is deemed to occur on the first date, on or after the Effective Date, on which distributions are made in accordance with the terms of the Plan to holders of any Allowed Claims or Interests (as applicable).

**DD.    Injunctions and Automatic Stay.**

147.    Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force

and effect until the Effective Date.  All injunctions or stays contained in the Plan or this

Confirmation Order shall remain in full force and effect in accordance with their terms.

**EE.    Dissolution of the Creditors' Committee.**

148.    Except to the extent provided in the Plan, on the Effective Date, any statutory

committee appointed in the Chapter 11 Case of the Debtor shall dissolve solely with respect to the

Debtor and members thereof shall be released and discharged from all rights and duties from or

related to the Chapter 11 Case of the Debtor on the Effective Date.  The Debtor and the

Reorganized Debtor shall no longer be responsible for paying any fees or expenses incurred by the

members of or advisors to the Creditors' Committee after the Effective Date.  Upon the dissolution

of the Creditors' Committee, the current and former members of the Creditors' Committee, and

their officers, employees, counsel, advisors, and agents, shall be released and discharged of and

from all further authority, duties, responsibilities, and obligations related to and arising from and

in connection with the Chapter 11 Case of the Debtor, and the retention or employment of the

Creditors' Committee's respective attorneys, accountants, and other agents shall terminate, except

that the Creditors' Committee and its professionals shall have the right to pursue, review, and

object to any applications for compensation and reimbursement of expenses filed in accordance

with Article II.B of the Plan.

**FF.    B-2/B-3 Settlement**

149.    The B-2/B-3 Settlement is hereby approved and the Debtor and Reorganized Debtor

are hereby authorized to take all actions necessary to implement the B-2/B-3 Settlement.

**GG.    Effect of Non-Occurrence of Conditions to the Effective Date.**

150.    Notwithstanding the entry of this Confirmation Order, in the event that the Effective

Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to

extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

**HH.    Effect of Conflict Between Plan, the Disclosure Statement, the Plan Supplement, the Settlement Agreements, and Confirmation Order.**

151.    Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided*, *however*, with respect to any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern; *provided, however*, to the extent the Plan or Confirmation Order is inconsistent with the July 2018 Settlement Agreement or July 2018 Settlement Order, with respect to provisions of the Plan that explicitly refer to or incorporate the July 2018 Settlement Agreement or July 2018 Settlement Order, the July 2018 Settlement

Agreement or July 2018 Settlement Order shall govern solely with respect to such provisions of the Plan (but solely as to the parties to the July 2018 Settlement Agreement).

**II.      Retention of Jurisdiction.**

152.    This Court retains jurisdiction over the Chapter 11 Case, all matters arising out of or related to the Chapter 11 Case and the Plan, the matters set forth in Article XI, and other applicable provisions of the Plan.

**JJ.      Waiver of 14-Day Stay.**

153.    Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 6004(h), 7062, and 9014, this Confirmation Order is effective immediately and not subject to any stay.

**KK.   Final Order.**

154.    This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

155.    This Confirmation Order is effective as of the date of entry of this order.

Dated: **Jan 29 2019**
Richmond, Virginia

**/s/ Keith L. Phillips**

THE HONORABLE KEITH L. PHILLIPS
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: Jan 29 2019

WE ASK FOR THIS:


/s/ *Jeremy S. Williams*

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:       (804) 644-1700
Facsimile:       (804) 783-6192

- and -

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200


*Co-Counsel to the Debtors and Debtors in Possession*



## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)


Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ *Jeremy S. Williams*

## Exhibit A

**Plan**

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:      (804) 644-1700
Facsimile:      (804) 783-6192

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF FILING OF SECOND AMENDED
## CHAPTER 11 PLAN OF WAYNE REAL ESTATE PARENT COMPANY, LLC

**PLEASE TAKE NOTICE** that on December 24, 2018, Wayne Real Estate Parent Company, LLC ("Wayne" and together certain of its subsidiaries and affiliates, the "Debtors"), filed the *Chapter 11 Plan of Wayne Real Estate Parent Company, LLC* [Docket No. 6053] (the "Original Plan") with the United States Bankruptcy Court for the Eastern District of Virginia (the "Court").

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket 78]. The location of the Debtors' service address is One Geoffrey Way, Wayne, New Jersey 07470.

PLEASE TAKE FURTHER NOTICE that on December 28, 2018, the Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement for the Chapter 11 Plan of Wayne Real Estate Parent Company, LLC, (II) Approving the Solicitation and Notice Procedures with Respect to the Confirmation of the Debtor's Proposed Chapter 11 Plan, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Shortening the Objection Periods and Notice Requirements Related Thereto, and (VI) Granting Related Relief* [Docket No. 6119] (the "Order") which, among other things, (a) scheduled certain dates and deadlines in connection with confirmation of the Plan; and (b) established certain protocols in connection with those proceedings.

PLEASE TAKE FURTHER NOTICE that on December 31, 2018, the Debtors filed the *First Amended Chapter 11 Plan of Wayne Real Estate Parent Company, LLC* [Docket No. 6123]  (the "First Amended Plan").

PLEASE TAKE FURTHER NOTICE that the Debtors hereby file the *Second Amended Chapter 11 Plan of Wayne Real Estate Parent Company, LLC* (the "Second Amended Plan"), attached hereto as **Exhibit A**.

PLEASE TAKE FURTHER NOTICE that attached hereto as **Exhibit B** is a redline of the Second Amended Plan reflecting cumulative changes as between the Second Amended Plan and the First Amended Plan.

PLEASE TAKE FURTHER NOTICE that the Debtors will appear at a hearing to seek confirmation of the Second Amended Plan on **January 24, 2019, at 1:00 p.m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard, before the Honorable Keith L. Phillips or any other judge who may be sitting in his place and stead, in Room 5100 in the United States Bankruptcy Court, 701 East Broad Street, Richmond, Virginia 23219.

PLEASE TAKE FURTHER NOTICE that the Plan, the First Amended Plan, the Second Amended Plan, the Order and all other documents filed in these chapter 11 cases are available free of charge by: (a) visiting the Debtors' restructuring website at https://cases.primeclerk.com/toysrus or (b) by calling (844) 794-3476 (U.S. toll free) or +001 (917) 962-8499 (international).  You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: http://www.vaeb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

Richmond, Virginia
Dated: January 23, 2019

/s/ *Jeremy S. Williams*
_____

**KUTAK ROCK LLP**
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:    (804) 644-1700
Facsimile:    (804) 783-6192
Email:        Michael.Condyles@KutakRock.com
              Peter.Barrett@KutakRock.com
              Jeremy.Williams@KutakRock.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
              joshua.sussberg@kirkland.com
              emily.geier@kirkland.com

-and-

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              anup.sathy@kirkland.com
              chad.husnick@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

## **Exhibit A**

**Second Amended Plan**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## SECOND AMENDED CHAPTER 11 PLAN
## OF WAYNE REAL ESTATE PARENT COMPANY, LLC

---

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE,
COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTOR
OR ANY OTHER PARTY IN INTEREST.**

**YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN
FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

**THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER
CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

---

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:         (212) 446-4800
Facsimile:         (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:         (804) 644-1700
Facsimile:         (804) 783-6192

*Co-Counsel to the Debtors and Debtors in Possession*

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:         (312) 862-2000
Facsimile:         (312) 862-2200

Dated:  January 23, 2019

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 78].  The location of the Debtors' service address is One Geoffrey Way, Wayne, New Jersey 07470.

## TABLE OF CONTENTS

**Page**

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ................................................................................................. 1
    A.    Defined Terms. ......................................................................................... 1
    B.    Rules of Interpretation. ........................................................................... 10
    C.    Computation of Time. ............................................................................ 10
    D.    Governing Law. ..................................................................................... 11
    E.    Reference to Monetary Figures. ............................................................. 11
    F.    Reference to the Debtor or the Reorganized Debtor. ............................. 11
    G.    Controlling Document. ........................................................................... 11

**ARTICLE II ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS** ......................... 11
    A.    Administrative Claims. ........................................................................... 11
    B.    Accrued Professional Compensation Claims. ....................................... 12
    C.    Priority Tax Claims. ............................................................................... 13

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ........... 13
    A.    Summary of Classification. ..................................................................... 13
    B.    Treatment of Claims and Interests. ........................................................ 13
    C.    Special Provision Governing Unimpaired Claims. ................................ 15
    D.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes. ............... 15
    E.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code. ..... 15
    F.    Subordinated Claims. .............................................................................. 15

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** ......................................... 15
    A.    General Settlement of Claims. ................................................................ 15
    B.    Restructuring Transactions. .................................................................... 16
    C.    Sources of Consideration for Plan Distributions. ................................... 16
    D.    Issuance of New Common Stock. ........................................................... 16
    E.    Exemption from Registration Requirements. ......................................... 17
    F.    Subordination. ........................................................................................ 17
    G.    Vesting of Assets in the Reorganized Debtor. ....................................... 17
    H.    Cancellation of Securities and Agreements. .......................................... 18
    I.    Corporate Action. ................................................................................... 18
    J.    Corporate Existence; Tax Classification. ............................................... 18
    K.    Charter, Bylaws, and New Organizational Documents .......................... 19
    L.    Effectuating Documents; Further Transactions. ..................................... 19
    M.    Exemption from Certain Taxes and Fees. .............................................. 19
    N.    Directors and Officers. ........................................................................... 19
    O.    Retention of Causes of Action. .............................................................. 20
    P.    Avoidance Actions. ................................................................................ 20
    Q.    Regulatory Requirements ....................................................................... 20
    R.    Insurance Contracts. ............................................................................... 20

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ....... 21
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ................... 21
    B.    Claims Based on Rejection of Executory Contracts and Unexpired Leases. ................... 22
    C.    Cure of Defaults for Assumed and Assigned Executory Contracts and Unexpired Leases. ................................................................................... 22
    D.    Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Leases. ................................................................................... 22
    E.    D&O Liability Insurance Policies. .......................................................... 23
    F.    Indemnification Obligations ................................................................... 23

i

G.      Modifications, Amendments, Supplements, Restatements, or Other Agreements. ...........23
H.      Reservation of Rights. ...............................................................................................23
I.      Nonoccurrence of Effective Date. ...............................................................................23

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** ........................................................**24**
A.      Timing and Calculation of Amounts to Be Distributed. ..................................................24
B.      Disbursing Agent. ......................................................................................................24
C.      Distributions on Account of Claims Allowed After the Effective Date. .........................24
D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. .....................25
E.      Compliance with Tax Requirements/Allocations. ........................................................25
F.      No Postpetition Interest on Claims. ..............................................................................26
G.      Setoffs and Recoupment. ...........................................................................................26
H.      Claims Paid or Payable by Third Parties. .....................................................................26
I.      Indefeasible Distributions. ..........................................................................................27
J.      Distributions on Account of Subordinated Claims. .......................................................27

**ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
DISPUTED CLAIMS** ...............................................................................................................**27**
A.      Allowance of Claims and Interests. ..............................................................................27
B.      Claims and Interests Administration Responsibilities. ..................................................27
C.      Estimation of Claims and Interests. .............................................................................27
D.      Adjustment to Claims or Interests without Objection. ...................................................28
E.      Time to File Objections to Claims. ...............................................................................28
F.      Disallowance of Claims. ..............................................................................................28
G.      Amendments to Claims. ...............................................................................................28
H.      No Distributions Pending Allowance. ...........................................................................28
I.      Distributions After Allowance. .....................................................................................29
J.      Single Satisfaction of Claims. ......................................................................................29

**ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ......................**29**
A.      Settlement, Compromise, and Release of Claims and Interests. ....................................29
B.      Discharge of Claims and Termination of Equity Interests .............................................29
C.      **Release of Liens.** .......................................................................................................30
D.      **Releases by the Debtor.** ............................................................................................30
E.      **Releases by Holders of Claims and Interests.** ............................................................31
F.      **Exculpation.** .............................................................................................................32
G.      **Injunction.** ................................................................................................................32
H.      Protections Against Discriminatory Treatment. ............................................................33
I.      Setoffs. ......................................................................................................................33
J.      Recoupment. ..............................................................................................................33
K.      Subordination Rights. .................................................................................................33
L.      Document Retention. ..................................................................................................34
M.      Reimbursement or Contribution. .................................................................................34

**ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ...........**34**
A.      Conditions Precedent to Confirmation. .........................................................................34
B.      Conditions Precedent to the Effective Date. ..................................................................34
C.      Waiver of Conditions. .................................................................................................35

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ...............................**35**
A.      Modification and Amendments. ....................................................................................35
B.      Effect of Confirmation on Modifications. .....................................................................35
C.      Revocation or Withdrawal of the Plan. .........................................................................35

**ARTICLE XI RETENTION OF JURISDICTION** ..............................................................................**35**

**ARTICLE XII MISCELLANEOUS PROVISIONS** ........................................................................37
    A.              Immediate Binding Effect. ................................................................................37
    B.              Additional Documents. .....................................................................................37
    C.              Payment of Statutory Fees. ...............................................................................38
    D.             Dissolution of Committees. ...............................................................................38
    E.              Reservation of Rights. ......................................................................................38
    F.              Successors and Assigns. ...................................................................................38
    G.             Service of Documents. ......................................................................................38
    H.             Term of Injunctions or Stays. ...........................................................................39
    I.              Entire Agreement. .............................................................................................39
    J.              Exhibits. ...........................................................................................................39
    K.             Nonseverability of Plan Provisions. ..................................................................40
    L.              Waiver or Estoppel. ..........................................................................................40
    M.            Enforcement of the Confirmation Order ..........................................................40
    N.             Votes Solicited in Good Faith ...........................................................................40
    O.             Creditor Default ...............................................................................................40

**INTRODUCTION**

The Debtor proposes the following plan pursuant to chapter 11 of the Bankruptcy Code (together with the documents comprising the Plan Supplement, the "Plan").  Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A.

The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.  Reference is made to the Disclosure Statement for a discussion of the Debtor's history, businesses, results of operations, historical financial information, projections, and future operations, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan.  The Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.  This Plan is separate from the Propco II Plan,[2] the Toys Delaware Plan, and any other plan for any entity or entities other than the Debtor.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

1.    "*Accrued Professional Compensation Claims*" means, at any given moment, all Claims for accrued fees and expenses (including success fees) for services rendered by a Professional through and including the Effective Date, to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Accrued Professional Compensation Claim.

2.    "*Ad Hoc Group of Term B-4 Lenders*" means the ad hoc group of certain holders of Secured Term Loan B Credit Facility Claims (as defined in the Toys Delaware Plan) consisting of funds and accounts managed or advised by Angelo, Gordon & Co., L.P.; Franklin Mutual Advisors, LLC; Highland Capital Management, LP; Oaktree Capital Management, L.P.; and Solus Alternative Asset Management LP.

3.    "*Ad Hoc Vendor Group*" means the ad hoc group of merchandise vendors represented by Foley & Lardner LLP, Fox Rothschild LLP; Schiff Hardin LLP; Saul Ewing Arnstein & Lehr LLP; Morris, Nichols, Arsht & Tunnell; and Wasserman, Jurista & Stolz, P.C.

4.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtor's estate pursuant to sections 328, 330, 503(b) or 507(a)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses of preserving the Estate and operating the business of the Debtor incurred after the Petition Date and through and including the Effective Date; and (b) Accrued Professional Compensation Claims.

5.    "*Administrative Claims Bar Date*" means, except for Accrued Professional Compensation Claims, the first Business Day that is 30 days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

---

[2]    The Propco II Plan was confirmed by the Bankruptcy Court on August 22, 2018.

6.        "*Administrative Claims Objection Bar Date*" means the deadline to filing objections to requests for payment of Administrative Claims (other than requests for payment of Accrued Professional Fee Claims and Claims arising under sections 503(b)(9) of the Bankruptcy Code), which shall be the later of (a) 60 days after the Effective Date or (b) 60 days after the Filing of the applicable request for payment of an Administrative Claim, *provided, that* the Administrative Claims Objection Bar Date may be extended by order of the Bankruptcy Court.

7.        "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

8.        "*Allowed*" means, with reference to any Claim or Interest, as may be applicable, (a) any Claim that is evidenced by a Proof of Claim or a request for payment of an Administrative Claim, as applicable, that is Filed on or before the applicable Claims Bar Date or Administrative Claims Bar Date or which, pursuant to the Bankruptcy Code or a Final Order, is not required to be Filed; (b) any Claim that is listed in the Schedules as of the Effective Date as neither contingent, unliquidated, nor disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; *provided*, *however*, that with respect to any Claim described in clauses (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or such an objection is so interposed and the Claim shall have been Allowed by a Final Order. Except as otherwise specified in the Plan, any Final Order, or as otherwise agreed by the Debtor, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claim (as determined by Final Order of the Bankruptcy Court), the amount of an Allowed Claim shall not include interest or fees on such Claim accruing from and after the Petition Date. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without any further notice to or action, order or approval of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as the case may be. "Allow" and "Allowing" shall have correlative meanings.

9.        "*Assumed Liabilities*" means any liability of any Debtor that is fully assumed by a Purchaser or other entity pursuant to Sale Transaction Documents.

10.        "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

11.        "*Ballot*" means the ballot form for accepting or rejecting this Plan and making certain elections under this Plan, distributed to the Holders of Claims or Interests that are Impaired under this Plan and entitled to vote to accept or reject this Plan pursuant to Article III.

12.        "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

13.        "*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of Virginia having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 or the General Order of the District Court pursuant to section 151 of the Judicial Code, the United States District Court for the Eastern District of Virginia.

14.        "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

15.        "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

16.        "*Cash*" means the legal tender of the United States or the equivalent thereof.

17.    "*Causes of Action*" means any claim (including any Claim), cause of action, controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, debt, damage, remedy, judgment, account, defense, offset, power, privilege, license, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising,  contingent or non contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, "Causes of Action" include:  (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any right to object to or otherwise contest Claims or Interests; (d) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any claim or defense, including fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any Avoidance Action.

18.    "*Certificate*" means any instrument evidencing a Claim or Interest.

19.    "*Chapter 11 Cases*" means the chapter 11 case of the Debtor pending before the Bankruptcy Court under the lead case of Toys "R" Us, Inc., Case No. 17-34665 (KLP) (Bankr. E.D. Va.).

20.    "*Claim*" means any claim against the Debtor, as defined in section 101(5) of the Bankruptcy Code, including: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

21.    "*Claims Bar Date*" means, either, the General Claims Bar Date or the Governmental Claims Bar Date, as applicable.

22.    "*Claims Objection Bar Date*" means the later of: (a) the date that is 180 days after the Effective Date; and (b) such other date as may be fixed by the Bankruptcy Court, after notice and hearing, upon a motion filed before the expiration of the deadline to object to Claims or Interests.

23.    "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

24.    "*Class*" means a category of Holders of Claims or Interests as set forth in <u>Article III</u> in accordance with section 1122(a) of the Bankruptcy Code.

25.    "*Confirmation*" means the entry on the docket of the Chapter 11 Cases of a Confirmation Order.

26.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order.

27.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation pursuant to section 1129 of the Bankruptcy Code.

28.    "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

29.    "*Consummation*" means the occurrence of the Effective Date for the Plan.

30.    "*Creditors' Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases.

31.  "*Cure Claims*" means all Claims for Cure Obligations.

32.  "*Cure Obligations*" means all (a) amounts (or such lesser amount as may be agreed upon by the parties under an Executory Contract, Unexpired Lease, or Sale Transaction Document) required to cure any monetary defaults and (b) other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed by the Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

33.  "*D&O Liability Insurance Policies*" means all insurance policies for directors', members', trustees', officers', and managers' liability issued to the Debtor as first-named insured as of the applicable Effective Date.

34.  "*Debtor*" means Wayne Real Estate Parent Company, LLC.

35.  "*Disallowed*," when used with respect to a Claim, means a Claim that has been disallowed by the Bankruptcy Code or Final Order (including, for the avoidance of doubt, the Confirmation Order).

36.  "*Disclosure Statement*" means the *First Amended Disclosure Statement for the Chapter 11 Plan of Wayne Real Estate Parent Company, LLC*, including all exhibits and schedules thereto.

37.  "*Disclosure Statement Order*" means the Order approving the Disclosure Statement and certain procedures for solicitation of votes on the Plan and granting related relief.

38.  "*Disputed*" means a Claim or an Interest or any portion thereof: (a) that is not Allowed; and (b) that is not Disallowed under the Plan, the Bankruptcy Code, or a Final Order.

39.  "*Disbursing Agent*" means the party to be selected by the Creditors' Committee in its sole discretion to make or facilitate distributions that are to be made on or after the Effective Date pursuant to the Plan.

40.  "*Distribution Record Date*" means the date for determining which holders of Claims or Interests are eligible to receive distributions hereunder and shall be the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

41.  "*DTC*" means Depository Trust Company.

42.  "*Effective Date*" means, with respect to the first date that is a Business Day selected by the Debtor after the Confirmation Date on which:  (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX.A have been satisfied or waived (in accordance with Article IX.C); and (c) the Plan is declared effective, after consultation with the Creditors' Committee.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

43.  "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

44.  "*Estate*" means, the estate created for the Debtor on the Petition Date pursuant to sections 301 and 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired after the Petition Date through the Effective Date.

45.  "*Exculpated Parties*" means, subject to Article VIII, collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the TRU Retail Debtor Parties; (d) the Propco I Debtors; (e) the Holders of Claims against and Interests in the Debtor; (e) the Creditors' Committee and its members; (f) the Sponsors (solely to the extent acting as a fiduciary of the Debtor, and not the Sponsor-affiliated directors, officers, and managers); (g) the Secured Term Loan B Credit Facility Agent; and (h) with respect to each of the foregoing entities in clauses (a) through (g), such entity's current and former affiliates, and each of such entity's, and such entity's current and former affiliates', current and former equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board

members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided* that, notwithstanding the foregoing or any other provision herein, the term "Exculpated Parties" does not include any party subject to a Non-Released Claim (including any D&O Party, as defined in the Toys Delaware Plan) but only to the extent, and in that capacity, that such party is subject to such Non-Released Claim, *provided*, for the avoidance of doubt, TRU Inc. and the Toys Delaware Debtors and their respective estates and creditors, are not releasing any Claims or Causes of Action against any D&O Party (as defined in the Toys Delaware Plan), in each case regardless of whether such party or entity would otherwise meet the definition of Exculpated Parties.

46.    "*Executory Contract*" means a contract to which one or more of the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

47.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Effective Date.

48.    "*Fee Examiner Order*" means the *Stipulation and Order for Appointment of a Fee Examiner* [Docket No. 3463].

49.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice and Claims Agent.

50.    "*Final Order*" means, an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, reconsideration, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, or motion for reargument, reconsideration, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

51.    "*Former Debtor*" means any former TRU Retail Debtor for which a chapter 11 plan of reorganization has been confirmed and declared effective.

52.    "*General Claims Bar Date*" means April 6, 2018 at 5:00 p.m. prevailing Eastern Time, or such other date established by the Bankruptcy Court by which Proofs of Claim must have been Filed by a Governmental Unit, as ordered by the Bankruptcy Court in the *Amended Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief* [Docket No. 1329].

53.    "*General Unsecured Claim*" means any other Claims against any Debtor that are not otherwise paid in full during the Chapter 11 Cases pursuant to an order of the Bankruptcy Court and are not:  (a) an Administrative Claim; (b) an Other Secured Claim; (c) an Other Priority Claim; or (d) an Intercompany Claim.

54.    "*Geoffrey Debtors*" means, collectively, Geoffrey Holdings, LLC, Geoffrey, LLC and Geoffrey International, LLC.

55.    "*Geoffrey Plan*" means the chapter 11 plan of the Geoffrey Debtors.

56.    "*Giraffe Junior*" means Giraffe Junior Holdings, LLC.

57.    "*Governmental Claims Bar Date*" means June 18, 2018 at 5:00 p.m. prevailing Eastern Time or such other date established by the Bankruptcy Court by which Proofs of Claim must have been Filed by a Governmental Unit, as ordered by the Bankruptcy Court in the *Amended Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date*

*and Rejection Damages Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief* [Docket No. 1329].

58.     "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

59.     "*Holder*" means any Entity holding a Claim or an Interest.

60.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

61.     "*Indemnification Obligations*" means the Debtor's indemnification obligations in place as of the Effective Date, set forth in any of: (a) the organizational documents of the Debtor (including the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, or board resolutions); (b) employment contracts; or (c) an engagement or retention letter as to professional or advisory services.

62.     "*Intercompany Claim*" means any Claim in the Debtor held by another TRU Retail Debtor or Propco I Debtor.

63.     "*Insurance Contract*" means all insurance policies that have been issued at any time to or provide coverage to the Debtor, including the D&O Liability Insurance Policies, and all agreements, documents or instruments relating thereto.

64.     "*Insurer*" means any company or other Entity that issued an Insurance Contract, and any respective predecessors and/or affiliates of the foregoing.

65.     "*Interests*" means any interest, equity, or share in the Debtor, including all options, warrants, or other rights to obtain such an interest or share in such Debtor, whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising therefrom.

66.     "*Interim Compensation Order*" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief*, entered June 28, 2018 [Docket No. 746].

67.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

68.     "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

69.     "*New Board*" means the board of directors of the Reorganized Debtor, to be identified by the Debtor, prior to or at the Confirmation Hearing.

70.     "*New Common Stock*" means the common stock in the Reorganized Debtor, which may, for the avoidance of doubt, consist of stock of a newly-formed entity as specified in the Restructuring Transactions Memorandum.

71.     "*New Common Stock Summary*" means the term sheet summarizing the characteristics of the New Common Stock.

72.     "*New Contingent Equity Rights*" has the meaning ascribed to that term in the Propco I Plan.

73.     "*New Organizational Documents*" means such certificates or articles of incorporation, certificates of formation, certificates of conversion, by-laws, limited liability company agreements, stockholders' agreements, or such other applicable formation and governance documents of the Reorganized Debtor, forms of which shall be included in the Plan Supplement.

74.    "*Non-Released Claims*" has the meaning ascribed to such term in the Settlement Agreement.

75.    "*Notice and Claims Agent*" means Prime Clerk LLC.

76.    "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

77.    "*Other Secured Claim*" means any secured Claim against the Debtor not specifically described in the Plan.

78.    "*Petition Date*" means September 18, 2017.

79.    "*Plan*" means this *Chapter 11 Plan of Wayne Real Estate Parent Company, LLC*, including the Plan Supplement which is incorporated herein by reference and made part of this Plan as if set forth herein.

80.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed at least seven (7) days prior to the Voting Deadline, as amended, supplemented, or otherwise modified from time to time prior to the Effective Date in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including:  (a) a list of Executory Contracts and Unexpired Leases to be assumed or assumed and assigned pursuant to the Plan, and as may be amended by the Debtor in accordance with the Plan prior to the Effective Date; (b) a schedule of the retained Causes of Action; (c) the New Common Stock Summary; (d) the New Organizational Documents; (e) the identity of the New Board; and (f) the Restructuring Transactions Memorandum, subject to appropriate confidentiality protections.

81.    "*Priority Claims*" means Priority Tax Claims and Other Priority Claims.

82.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

83.    "*Professional*" means an Entity: (a) retained in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363, or 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

84.    "*Professional Fee Escrow Account*" means an interest-bearing escrow account to hold and maintain an amount of Cash equal to the Professional Fee Escrow Amount to be funded by the Debtor on or before the Effective Date solely for the purpose of paying all Allowed and unpaid Accrued Professional Compensation Claims and Accrued Creditor's Committee Member Expense Claims.  Such Cash shall remain subject to the jurisdiction of the Bankruptcy Court.

85.    "*Professional Fee Escrow Amount*" means the aggregate Accrued Professional Compensation Claims through the Effective Date as estimated in accordance with <u>Article II.B</u>.

86.    "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Cases.

87.    "*Propco I*" means Toys "R" Us Property Company I, LLC.

88.    "*Propco I Debtors*" means the debtors and debtors-in-possession whose chapter 11 cases are jointly administered under the case *In re Toys "R" Us Property Company I, LLC*, Case No. 18-31429 (KLP) (Bankr. E.D. Va.).

89.    "*Propco I Plan*" means the chapter 11 plan of the Propco I Debtors.

90.    "*Propco II*" means Toys "R" Us Property Company II, LLC.

91.    "*Propco II Plan*" means the chapter 11 plan of the Propco II Plan Entities.

92.    "*Propco II Plan Entities*" means together, Propco II and Giraffe Junior.

93.    "*Purchaser*" means each Entity that is a purchaser under the Sale Transaction Documents to which it is a party.

94.    "*Raider Hill*" means Raider Hill Advisors, LLC.

95.    "*Reinstated*" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

96.    "*Released Party*" means, subject to <u>Article VIII</u>, collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the TRU Retail Debtor Parties; (d) the Propco I Debtors; (e) the Holders of Claims against and Interests in the Debtor; (f) the Creditors' Committee and its members; (g) the Sponsors (but not the Sponsor-affiliated directors, officers, and managers); (h) the Secured Term Loan B Credit Facility Agent; and (i) with respect to each of the foregoing entities in clauses (a) through (h) (other than the Toys Delaware Debtors, the Geoffrey Debtors, and TRU Inc.), such entity's current and former Affiliates, and each of such entity's subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (j) with respect to the Toys Delaware Debtors, the Geoffrey Debtors, and TRU Inc., such entity's affiliates and its and their respective directors, officers, agents, advisors, and professionals; *provided* that notwithstanding any other provisions herein, "Released Parties" shall not include, and in each case regardless of whether such party or entity would otherwise meet the definition of Released Party, (i) any party that opts out of the releases contained in the Plan or is otherwise removed from the definition of "Releasing Parties" shall not be a "Released Party" or (ii) any party subject to a Non-Released Claim (including any D&O Party, as defined in the Toys Delaware Plan) but only to the extent, and in the capacity, that such party is subject to such Non-Released Claim, *provided*, for the avoidance of doubt, TRU Inc. and the Toys Delaware Debtors and their respective estates and creditors are not releasing any Claims or Causes of Action against any D&O Party (as defined in the Toys Delaware Plan)

97.    "*Releasing Parties*' means, subject to <u>Article VIII</u>, collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the TRU Retail Debtor Parties; (d) the Propco I Debtors; (e) the Creditors' Committee and its members; (f) the Sponsors; and (g) with respect to each of the foregoing entities in clauses (a) through (f), such entity's current and former Affiliates, and each of such entity's, and such entity's current and former affiliates', current and former equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (h) all Holders of Claims and Interests that are deemed to accept the Plan and do not opt-out of the releases; (i) all Holders of Claims and Interests who vote to accept the Plan; and (j) all Holders of Claims who receive a Ballot, abstain from voting, and do not otherwise opt-out of the releases.

98.    "*Reorganized Debtor*" means, on an after the Effective Date, the Debtor as reorganized hereunder.

99.    "*Reorganized Debtor Assets*" means, on the Effective Date, all assets and interests of the Estate, control over which will be vested in the Reorganized Debtor, and, thereafter, all assets from time to time controlled by the Reorganized Debtor.

100.    "*Reorganized Propco I*" means, on and after the Effective Date, Propco I, as reorganized under the Propco I Plan.

101.    "*Reorganized Propco I Subsidiaries*" means Map Real Estate, LLC, Wayne Real Estate Company, LLC, TRU 2005 RE I, LLC, and TRU 2005 RE II Trust, on and after the respective Effective Date, as such entities are reorganized under the Propco I Plan.

102.    "*Restructuring Transactions*" has the meaning set forth in <u>Article IV.B.</u>

103.    "*Restructuring Transactions Memorandum*" means a description of the Restructuring Transactions.

104.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the official bankruptcy forms.

105.    "*Secured*" means when referring to a Claim secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order or the Plan, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

106.    "*Secured Term Loan B Credit Facility*" means the credit facility made available pursuant to the Secured Term Loan B Credit Agreement (as defined in the Toys Delaware Plan).

107.    "*Secured Term Loan B Credit Facility Agent*" means Bank of America, N.A. as administrative agent and collateral agent under the Secured Term Loan B Credit Agreement (as defined in the Toys Delaware Plan).

108.    "*Secured Term Loan B-4 Facility Claim*" means any Claim derived from or based upon the Term B-4 Loans (as defined in the Toys Delaware Plan) under the Secured Term Loan B Credit Facility.

109.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa.

110.    "*Securities Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn.

111.    "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

112.    "*Settlement Agreement*" means that certain settlement agreement by and among the Debtor and certain other TRU Retail Debtors and certain Holders of Claims and Interests against the TRU Retail Debtors, including the Creditors' Committee and certain of its members, the Ad Hoc Vendor Group and its members, the Sponsors, and the Ad Hoc Group of Term B-4 Lenders and its members, dated as of July 17, 2018.

113.    "*Sponsors*" means, collectively, (a) Bain Capital Private Equity, LP, (b) Kohlberg Kravis Roberts & Co. L.P., (c) Vornado Realty Trust, and (d) funds and entities advised by each such Entity, and each such Entity's current and former Affiliates.

114.    "*Toys Delaware Debtors*" means Toys Delaware, TRU Guam, LLC, Toys Acquisition, LLC, Giraffe Holdings, LLC, TRU of Puerto Rico, Inc., and TRU-SVC, Inc.

115.    "*Toys Delaware Plan*" means the chapter 11 plan of the Toys Delaware Debtors.

116.    "*TRU Inc.*" means Toys "R" Us, Inc.

117.    "*TRU Retail Debtor Parties*" means, excluding the Debtor, (a) the TRU Retail Debtors, (b) the Sponsors, and (c) with respect to each of the foregoing entities in clauses (a) and (b), such entity's current and former affiliates (for the avoidance of doubt, not including the Debtor), and each of such entity's, and such entity's current and former affiliates', current and former equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

118.    "*TRU Retail Debtors*" means, excluding the Debtor, Toys "R" Us, Inc. and its affiliated debtors and debtors-in-possession in the cases jointly administered under Case No. 17-34665 (KLP), which includes, for the avoidance of doubt, the Toys Delaware Debtors.

119.    "*U.S. Trustee*" means the Office of the United States Trustee for the Eastern District of Virginia.

120.    "*Unexpired Lease*" means a lease to which one or more of the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

121.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

122.    "*United States*" means the United States of America, its agencies, departments, or agents.

123.    "*Voting Deadline*" means January 18, 2019, or such other date ordered by the Bankruptcy Court.

124.    "*Wayne Parent*" means the Debtor.

B.    *Rules of Interpretation.*

For purposes of the Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (14) any immaterial effectuating provisions may be interpreted in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. References in the Plan to the Debtor shall mean the Debtor or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, as applicable.

C.    *Computation of Time.*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan or Confirmation Order.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.       *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate or limited liability company governance matters relating to the Debtor shall be governed by the laws of the state of incorporation or formation (as applicable) of the Debtor.

E.       *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to the legal tender of the United States, unless otherwise expressly provided.

F.       *Reference to the Debtor or the Reorganized Debtor.*

Except as otherwise specifically provided in the Plan to the contrary references to the Reorganized Debtor means the Debtor to the extent context requires.

G.       *Controlling Document.*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided, however, with respect to any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

## ARTICLE II
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

A.       *Administrative Claims.*

Except with respect to Administrative Claims that are Accrued Professional Compensation Claims and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Administrative Claim and the Debtor agree to less favorable treatment, each holder of an Administrative Claim shall be paid in full in Cash on the unpaid portion of such Administrative Claim in accordance with the following:  (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) if such Administrative Claim is not Allowed as of the Effective Date, on or as soon as reasonably practicable after the date such Administrative Claim is Allowed pursuant to a Final Order; (c) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court, or (d) if an Allowed Administrative Claim is not due and payable as of the Effective Date, the date such Allowed Administrative Claim becomes due and payable in accordance with the terms and conditions agreed upon by the Holder of such Allowed Administrative Claim and the Debtor or Reorganized Debtor, as applicable, or as soon thereafter as is reasonably practicable; *provided* that Allowed Administrative Claims that arise in the ordinary course of the Debtor's businesses, including Claims held by Governmental Units for taxes incurred by the Debtor following the Petition Date (in accordance with section 503(b)(1)(D) of the Bankruptcy Code), shall be paid in the ordinary course of business in accordance with applicable law and the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions; *provided* that any Administrative Claim that has been expressly assumed by a Purchaser pursuant to Sale Transaction Documents to which it is a party shall not be an obligation of the Debtor.

Except as otherwise provided in this <u>Article II.A</u> and except with respect to Administrative Claims that are Accrued Professional Compensation Claims, requests for payment of (or Proofs of Claim for) Administrative Claims must be Filed and served on the Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Holders of Administrative

Claims that are required to, but do not, File and serve a request for payment of (or Proofs of Claim for) such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or their property and such Administrative Claims shall be deemed discharged, compromised, settled, and released as of the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

Objections to requests for payment of such Administrative Claims, if any, must be Filed and served on the requesting party and the Reorganized Debtor by the Administrative Claims Objection Bar Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims as to which an objection is Filed shall be determined by, and satisfied in accordance with, an order that becomes a Final Order of the Bankruptcy Court.

B.     *Accrued Professional Compensation Claims.*

1.     **Professional Fee Escrow Account.**

As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtor shall establish the Professional Fee Escrow Account. The Debtor shall fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be funded no later than the Effective Date and maintained in trust for the Professionals and members of the Creditors' Committee and shall not be considered property of the Debtor's Estate or the Reorganized Debtor; *provided* that the Estate shall have a reversionary interest in the excess amount, if any, remaining in the Professional Fee Escrow Account when all such Allowed amounts owing to Professionals and members of the Creditors' Committee have been paid in full, and any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Estate and shall be distributed by the Reorganized Debtor in accordance with the Plan without any further action or order of the Bankruptcy Court.

2.     **Final Fee Applications, Payment of Accrued Professional Compensation Claims, and Payment of Accrued Creditors' Committee Member Expense Claims.**

All final requests for payment of Accrued Professional Compensation Claims incurred during the period from the Petition Date through the Confirmation Date, shall be Filed no later than the first Business Day that is 60 days following the Effective Date. All Entities' respective rights (if any) to object to allowance or payment of all or any portion of any Accrued Professional Compensation Claims shall be preserved. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court. The amount of Accrued Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by a Final Order. To the extent that funds held in the Professional Fee Escrow Account are unable to satisfy the Allowed amount of Accrued Professional Compensation Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of the Plan. Notwithstanding anything to the contrary herein, the Fee Examiner Order shall remain in effect pursuant to its own terms.

3.     **Professional Fee Escrow Amount.**

To receive payment for unbilled fees and expenses incurred through the Confirmation Date, the Professionals shall estimate their Accrued Professional Compensation Claims before and as of the Confirmation Date and shall deliver such estimate to the Debtor no later than 10 days prior to the Effective Date; *provided* that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtor may estimate the unbilled fees and expenses of such Professional. The total aggregate amount so estimated shall be utilized by the Debtor to determine the Professional Fee Escrow Amount; *provided that* the Reorganized Debtor shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4.      **Post-Confirmation Fees and Expenses.**

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtor.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Article III.

A.      *Summary of Classification.*

Claims and Interests, except for Administrative Claims, Accrued Professional Compensation Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Intercompany Claims | Unimpaired or Impaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |
| Class 5 | Interests in the Debtor | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.      *Treatment of Claims and Interests.*

The treatment provided to each Class relating to the Debtor for distribution purposes and voting rights are specified below:

1.      **Class 1 - Other Secured Claims.**

    (a)    *Classification*:  Class A-1 consists of all Other Secured Claims.

    (b)    *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction and discharge of each Allowed Other Secured Claim, each Holder thereof shall receive, either:  (a) payment in full in Cash; or (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code.

    (c)    *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.    **Class 2 - Other Priority Claims.**

    (a)    *Classification*:  Class 2 consists of all Other Priority Claims.

    (b)    *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction and discharge of each Allowed Other Priority Claim, each Holder thereof shall receive, either:  (a) payment in full in Cash or (b) such other treatment as shall render such Claim Unimpaired.

    (c)    *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.    **Class 3 - General Unsecured Claims.**

    (a)    *Classification*:  Class 3 consists of all General Unsecured Claims.

    (b)    *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction of each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive their pro rata share of the consideration to be specified in the Restructuring Transactions Memorandum, which in any case will consist of either direct or indirect ownership of the New Contingent Equity Rights (as defined in the Propco I Plan), which direct or indirect ownership may be accomplished through the receipt of New Common Stock, the direct receipt of the New Contingent Equity Rights, or another mechanism to be determined.

    (c)    *Voting*:  Class 3 is Impaired under the Plan.  Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.    **Class 4 - Intercompany Claims.**

    (a)    *Classification*:  Class 4 consists of all Intercompany Claims.

    (b)    *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, each Intercompany Claim shall be Reinstated or canceled without any distribution on account of such Intercompany Claim as determined by the Debtor in its sole discretion.

(c)     *Voting*:  Holders of Claims in Class 4 are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

5.     **Class 5 - Interests in the Debtor.**

(a)     *Classification*:  Class 5 consists of all Interests in the Debtor.

(b)     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction and discharge of each Interest in the Debtor, each Holder of an Interest in the Debtor will be cancelled without any distribution on account of such Interest.

(c)     *Voting*:  Class 5 is Impaired under the Plan.  Holders of Allowed Claims in Class 5 are conclusively presumed to reject the Plan.

C.     *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor or Reorganized Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan

D.     *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the Disclosure Statement Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.  If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be presumed to have accepted the Plan.

E.     *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.*

The Debtor shall seek Confirmation for the Debtor pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtor reserve the right to modify the Plan in accordance with Article X to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

F.     *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.     *General Settlement of Claims.*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases,

and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve such good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.  Distributions made to holders of Allowed Claims in any Class are intended to be final.

In settlement of any claims held by the Term B-2 Lenders and Term B-3 Lenders (as defined in the Toys Delaware Plan) in respect of ratable treatment with the Term B-4 Lenders (as defined in the Toys Delaware Plan) on account of recoveries from the Debtor, on the Effective Date, TRU Kids Holdings One Inc. will purchase the New Contingent Equity Rights from the Debtor in exchange for equally valued common equity in TRU Kids Holdings One Inc., which shall be distributed to Holders of General Unsecured Claims against Wayne Parent pursuant to **Article III** of this Plan.

To the extent that any Term B-4 Lenders (as defined in the Toys Delaware Plan) but not the Term B-2 Lenders or Term B-3 Lenders receive shares of TRU Kids Holdings One Inc. pursuant to this Plan, those Term B-4 lenders will contribute such shares to their issuer or cancel such shares, in either case, for no additional consideration.

B.      *Restructuring Transactions.*

On or before the Effective Date, the Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, the Plan Supplement and the Confirmation Order (the "Restructuring Transactions"), including:  (1) the execution, filing, and delivery of appropriate agreements or other documents of merger, sale, disposition, transfer, consolidation, reorganization, restructuring, liquidation, dissolution, or equity issuance, certificates of incorporation, certificates of conversion, certificates of formation, operating agreements, bylaws, or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of sale, equity issuance, transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the issuance of the New Common Stock (if applicable); (4) the execution of the New Organizational Documents, (5) the vesting of the Debtor's assets in the Reorganized Debtor, in each case in accordance with the Plan and the Plan Supplement; (6) such other transactions that are necessary or appropriate to implement the Plan in the most tax efficient manner, including any mergers, sales, dispositions, transfers, consolidations, restructurings, conversions, formations, organizations, dissolutions or liquidations (including the transactions set forth in the Restructuring Transactions Memorandum); and (7) all other transactions or actions that either (x) the Debtor or (y) the Reorganized Debtor, as applicable, determine are necessary or appropriate to implement the Plan.  The Restructuring Transactions may include a transfer of all or substantially all or a part of the Debtor's assets or entities to a newly-formed entity (or an affiliate or subsidiary of such entity) formed and controlled by certain holders of Claims against the Debtor and, in such case, some or all of the New Common Stock (and/or other interests) issued to holders of Claims pursuant to the Plan may comprise stock (and/or other interests) of such new entity (or an affiliate or subsidiary of such entity).

C.      *Sources of Consideration for Plan Distributions.*

The Debtor Cash on hand, and any other Cash received or generated by the Debtor shall be used to fund the distributions to holders of Allowed Claims against the Debtor in accordance with the treatment of such Claims as set forth herein and subject to the terms provided herein.

D.      *Issuance of New Common Stock.*

Upon the Effective Date, all Interests in the Debtor shall be cancelled and the New Common Stock may be issued as set forth under the Plan.  The New Common Stock (if applicable) shall be freely tradable and eligible for the book-entry delivery, depository and settlement services of DTC.  On the Effective Date, the Reorganized Debtor shall issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan.

On the Effective Date, Holders of New Common Stock (if applicable) shall be parties to certain New Organizational Documents.  On the Effective Date, the Reorganized Debtor and the Holders of New Common Stock (to the extent applicable) shall enter into and deliver the New Organizational Documents to each Entity that is intended to be a party thereto and such New Organizational Documents shall be deemed to be valid, binding, and enforceable in accordance with their terms, and each Holder of New Common Stock shall be bound thereby, in each case, without the need for execution by any party thereto other than the Reorganized Debtor.

E.        *Exemption from Registration Requirements.*

The New Common Stock is or may be a security within the meaning of Section 2(a)(1) of the Securities Act, Section 101 of the Bankruptcy Code and applicable state securities laws.

The offering, issuance, sale and distribution of all shares of New Common Stock will be exempt from, among other things, the registration and prospectus delivery requirements under the Securities Act or any similar federal, state, or local laws in reliance upon section 1145 of the Bankruptcy Code to the maximum extent permitted and applicable, without further act or action by the Reorganized Debtor. The New Common Stock (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act unless the initial recipient thereof is an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code, and (b) if such security is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, such security will be freely tradable and transferable by the initial recipient thereof if at the time of transfer such initial recipient is not an "affiliate" (as defined in Rule 144(a)(1) under the Securities Act) of the Reorganized Debtor and has not been such an "affiliate" within 90 days of such transfer.

The Reorganized Debtor need not provide any further evidence to DTC other than the Plan or the Confirmation Order with respect to the treatment of securities to be issued under this Plan (including securities issuable upon exercise of such securities) under applicable securities laws.

DTC shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether such securities are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.  Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Common Stock is exempt from registration and/or eligible for DTC book-entry delivery, settlement and depository services.

F.        *Subordination.*

The allowance, classification, and treatment of all Claims and Interests under the Plan conform to and are consistent with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and the Plan recognizes and implements any such rights.  Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the rights of the Debtor or the Reorganized Debtor, as applicable, are hereby reserved to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto upon entry of a Final Order ruling that such Allowed Claim or Allowed Interest (or portion thereof) is subordinated.  On the Effective Date, any and all subordination rights or obligations that a Holder of a Claim or Interest may have with respect to any distribution to be made under the Plan will be discharged and terminated, and all actions related to the enforcement of such subordination rights will be enjoined permanently. Accordingly, distributions under the Plan to holders of Allowed Claims and Allowed Interests will not be subject to turnover or payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

G.        *Vesting of Assets in the Reorganized Debtor.*

Except as otherwise provided herein, or in any agreement, instrument, or other document incorporated in the Plan (including, without limitation, the Restructuring Transactions Memorandum), on the Effective Date, all property in Debtor's Estate, including the Reorganized Debtor's Assets, all Causes of Action, claims, or defenses, and any property acquired by the Debtor under the Plan shall vest in each respective Reorganized Debtor (excluding any

Executory Contracts and Unexpired Leases included on the Schedule of Rejected Executory Contracts and Unexpired Leases), free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than any restrictions expressly imposed by the Plan, the Plan Supplement, or the Confirmation Order. Notwithstanding anything to the contrary in the Plan, the Unimpaired Claims against a Debtor shall remain the obligations solely of the Debtor or the Reorganized Debtor and shall not become obligations of any other Debtor or Reorganized Debtor by virtue of the Plan, the Chapter 11 Cases, or otherwise.

      *H.*      *Cancellation of Securities and Agreements.*

      On the Effective Date, except to the extent otherwise provided in the Plan, under Article IV.G and IV.H, all notes, instruments, Certificates, and other documents evidencing, or in anyway related to, Claims or Interests shall be canceled and the obligations of the Debtor or Reorganized Debtor thereunder or in any way related thereto shall be released, settled, and compromised, *provided*, *however*, that, other than as provided by the Toys Delaware Plan and the Geoffrey Plan, the Secured Term Loan B Credit Agreement (as defined in the Toys Delaware Plan) shall continue in effect solely for the Secured Term Loan B Credit Facility Agent to comply with its obligations under this Plan and to enforce any obligations owed to it under this Plan; *provided*, *further*, that nothing herein shall alter, amend or otherwise modify the rights and obligations of the Secured Term Loan B Credit Facility Agent with respect to any of the Toys Delaware Debtors and Geoffrey Debtors, as set forth in the Toys Delaware Plan and Geoffrey Plan, respectively.

      *I.*      *Corporate Action.*

      On the Effective Date, or as soon thereafter as is reasonably practicable, all actions as may be necessary or appropriate to effect any transactions described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (a) the adoption, execution, delivery and/or filing of the New Organizational Documents, (b) the selection of the directors, managers, and officers for the Reorganized Debtor, including the appointment of the New Board, in accordance with the terms of the Plan; (c) the authorization, issuance, delivery and distribution of New Common Stock; (d) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (e) all other actions that may be required by applicable law. Upon the Effective Date, all matters provided for in the Plan involving the corporate structure the Reorganized Debtor, and any corporate action required by the Debtor, or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtor or the Reorganized Debtor. On or before the Effective Date (as applicable), the appropriate officers of the Debtor or the Reorganized Debtor shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the Restructuring Transactions) in the name of and on behalf of the Reorganized Debtor, including any and all other agreements, documents, Securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV.M shall be effective notwithstanding any requirements under non-bankruptcy law.

      *J.*      *Corporate Existence; Tax Classification.*

      As noted above, Holders of Class 3 Claims will directly or indirectly receive the New Contingent Equity Rights, which constitute Interests in Propco I. Except as otherwise provided in the Propco I Plan or any agreement, instrument, or other document incorporated in the Propco I Plan or the Propco I Plan Supplement, on the Propco I Effective Date, Reorganized Propco I and the Reorganized Propco I Subsidiaries shall continue to exist as separate limited liability companies, with all the powers of a corporation, limited liability company, partnership, or other form of Entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Propco I Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation documents) in effect before the Propco I Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended or amended and restated by the Propco I Plan (including pursuant to the provisions of Article IV.K of the Propco I Plan), the Propco I New

Organizational Documents, or otherwise, and to the extent such documents are amended or amended and restated, such documents are deemed to be amended or amended and restated pursuant to the Propco I Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law). Subject to the Propco I Restructuring Transactions Memorandum, Reorganized Propco I will be treated as a partnership for U.S. federal income (and applicable state and local) tax purposes, and the Reorganized Propco I Subsidiaries will be treated as disregarded entities of Reorganized Propco I for U.S. federal income (and applicable state and local) tax purposes; *provided* that, on or before the Propco I Effective Date and at the option of the Propco I Creditors' Committee, the Propco I Debtors will (and will cause their affiliates to) take any actions necessary to cause Reorganized Propco I and/or one or more of the Reorganized Propco I Subsidiaries to be treated as a corporation for U.S. federal income (and applicable state and local) tax purposes effective as of prior to the actual or constructive receipt of any consideration under the Propco I Plan, including by executing and filing one or more IRS Forms 8832 (and analogous forms for applicable state and local tax purposes).

To the extent the New Common Stock is issued, the tax classification of the entity issuing the New Common Stock will be specified in the Restructuring Transactions Memorandum.

K.      *Charter, Bylaws, and New Organizational Documents.*

On the Effective Date, or as soon thereafter as is reasonably practicable, to the extent applicable, the Debtor's respective certificates of incorporation and bylaws (and other formation and constituent documents relating to limited liability companies) shall be amended or amended and restated as may be required to be consistent with the provisions of the Plan, the New Organizational Documents, and any other documents required to complete the Restructuring Transactions, as applicable, and the Bankruptcy Code.  The New Organizational Documents shall, among other things: (a) authorize the issuance of the New Common Stock; and (b) be modified or deemed to be modified to include a provision pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, prohibiting the issuance of non-voting equity Securities.  After the Effective Date, each Reorganized Debtor may amend and restate its certificate of incorporation and other formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

L.      *Effectuating Documents; Further Transactions.*

Prior to the Effective Date, the Debtor, and on and after the Effective Date, the Reorganized Debtor, in each case to the extent applicable, and the officers and members thereof are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

M.      *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property or any Interests pursuant to the Plan, including the recording of any amendments to such transfers, or any new mortgages or liens placed on the property in connection with such transfers, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

N.      *Directors and Officers.*

To the extent applicable, the members of the New Board shall be identified prior to the Confirmation Hearing in the Plan Supplement or at the Confirmation Hearing consistent with section 1129(a)(5) of the Bankruptcy Code. On the Effective Date, except as otherwise provided in the Plan Supplement or announced on the record at the Confirmation Hearing, the existing officers of the Debtor shall serve in their current capacities for the Reorganized

Debtor.  From and after the Effective Date, each director, officer, or manager of the Reorganized Debtor shall serve pursuant to the terms of the respective Reorganized Debtor's charters and bylaws or other formation and constituent documents, and applicable laws of the respective Reorganized Debtor's jurisdiction of formation.

O.      *Retention of Causes of Action.*

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order such that the Debtor retain no right or interest in such Cause of Action as of the Effective Date, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall reserve, retain, and may enforce, all rights to commence, prosecute or settle, as appropriate, any and all Causes of Action, whether arising or accruing before or after the Petition Date, which authority shall vest in the Reorganized Debtor on the Effective Date pursuant to the terms of the Plan.  The Reorganized Debtor may enforce all rights to commence, prosecute, or settle, as appropriate, any and all such Causes of Action, whether arising or accruing before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  Any Reorganized Debtor may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Reorganized Debtor deems appropriate, including on a contingency fee basis.

**No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor, or the Reorganized Debtor will not pursue any and all available Causes of Action against them.  The Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan**.  Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order such that the Debtor hold no right or interest in such Cause of Action as of the Effective Date, the Debtor and the Reorganized Debtor expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  The Reorganized Debtor reserve and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

P.      *Avoidance Actions*.

As of the Effective Date, the Debtor waives all rights to commence or otherwise pursue any and all Avoidance Actions arising under section 547 of the Bankruptcy Code or any comparable "preference" action arising under applicable non-bankruptcy law, *provided that*, (i) neither the Debtor nor the Reorganized Debtor waive any rights to commence or pursue any Avoidance Actions against the TRU Retail Debtors or any Former Debtors; and (ii) except as expressly provided in the Plan, the Reorganized Debtor shall retain the right to assert any Causes of Action assertable in any Avoidance Action as defenses or counterclaims in any Cause of Action brought by any Entity.

Q.      *Regulatory Requirements*

All parties shall abide by, and use their reasonable best efforts to obtain, any regulatory and licensing requirements or approvals as promptly as practicable to achieve Consummation.

R.      *Insurance Contracts.*

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court in the Chapter 11 Cases (including any other provision that purports to be preemptory or supervening, grants an injunction or release, or requires a party to opt out of any releases): (i) on and

after the Effective Date, nothing shall alter, amend or otherwise modify the terms and conditions of (or the coverage provided by) any of the Insurance Contracts except that the Reorganized Debtor shall be liable in full for all of its and the Debtor's obligations thereunder regardless of whether such obligations arise before or after the Effective Date, without the requirement or need for the Insurer to file a proof of claim, an Administrative Claim, a Cure Claim or object to any cure amount, *provided* that any and all rights of the Debtor to dispute such payments or reimbursements are expressly reserved; (ii) nothing shall permit or otherwise effect a sale, an assignment or any other transfer of any Insurance Contract that has been issued by ACE American Insurance Company, Federal Insurance Company, or any of their affiliates or successors (together, "<u>Chubb Companies</u>") at any time to (or which provide coverage to) the Debtor (or any of its Affiliates or any of its predecessors), and all agreements, documents or instruments relating thereto (collectively, the "<u>Chubb Insurance Contracts</u>") and/or any rights, benefits, claims, rights to payments, or recoveries under or relating to the Chubb Insurance Contracts without the express written consent of the Chubb Companies; and (iii) nothing shall permit or otherwise effect a sale, an assignment or any other transfer of any Insurance Contract that has been issued by Zurich American Insurance Company, American Zurich Insurance Company, Steadfast Insurance Company, or any of their affiliates or successors (together, "<u>Zurich</u>") at any time to (or which provide coverage to) the Debtor (or any of its Affiliates or any of its predecessors), and all agreements, documents or instruments relating thereto (collectively, the "<u>Zurich Insurance Contracts</u>") and/or any rights, benefits, claims, rights to payments, or recoveries under or relating to the Zurich Insurance Contracts without the express written consent of Zurich.  For the avoidance of doubt, any such rights and obligations shall be determined under the Insurance Contracts and applicable non-bankruptcy law.[3]

**ARTICLE V**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.       *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including, without limitation, any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed or assumed and assigned to a third party, as applicable, in connection with any Sale Transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (5) is an Insurance Contract.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date.

---

[3]    For the avoidance of doubt, nothing herein shall prohibit or require the consent of the Chubb Companies and/or Zurich to transfer any rights, benefits, claims, rights to payment, proceeds, or recoveries related to any Non-Released Claims held by any Successor Entity or the Non-Released Claims Trust (as those terms are defined in the Toys Delaware Plan), in accordance with the Toys Delaware Plan.

For the avoidance of doubt, (i) nothing in this paragraph shall in any way affect the Non-Released Claims Trust's, or, as applicable, the Successor Entities' (as those terms are defined in the Toys Delaware Plan), ability to assert the Non-Released Claims or any other applicable claims that are not otherwise released pursuant to the Toys Delaware Plan and are properly asserted against the D&O Liability Insurance Policies, or access the proceeds of the D&O Liability Insurance Policies for any losses on account of such Non-Released Claims or such other claims, and (ii) no consent shall be necessary for the Non-Released Claims Trust, or as applicable, the Successor Entities, to transfer such proceeds, once received from the insurer, provided, however, that the Non-Released Claims Trust and the Successor Entities shall not be insureds or otherwise covered under the Chubb Insurance Contracts.

B.     *Claims Based on Rejection of Executory Contracts and Unexpired Leases.*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court by the later of: (1) the Claims Bar Date, Administrative Claims Bar Date, or the Governmental Bar Date, as applicable; and (2) 4:00 p.m., prevailing Eastern Time, on the date that is thirty (30) days following the entry of an Order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtor, its Estate, the Reorganized Debtor, or property of the foregoing parties, without the need for any objection by the Debtor, its Estate, the Reorganized Debtor and without the need for any further notice to, or action, order, or approval of the Bankruptcy Court. Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with <u>Article III</u> of the Plan, as applicable.

C.     *Cure of Defaults for Assumed and Assigned Executory Contracts and Unexpired Leases.*

Any Cure Claims under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, by the Debtor as an Administrative Claim, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of the Cure Claim, (2) the ability of the Debtor's Estate or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Claims required by section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or Orders resolving the dispute and approving the assumption.

Unless otherwise provided by an Order of the Bankruptcy Court, at least seven (7) days before the Voting Deadline, the Debtor shall cause notice of proposed assumption and proposed Cure Claims to be sent to applicable counterparties. Any objection by such counterparty must be Filed, served, and actually received by the Debtor not later than seven days after service of notice of the Debtor's proposed assumption and associated Cure Claims. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or Cure Claim.

Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Claims, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition, restricting use or tenant mix, or other bankruptcy-related defaults, including, without limitation, violation of go-dark or cessation of operation provisions or other provisions which seek to condition or restrict the use or assignment of an Unexpired Lease, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment. Any provisions in any lease or other conveyance document that prohibits or conditions the assignment of an Unexpired Lease or allows the landlord or other counterparty, as applicable, to terminate, recapture, or impose any penalty upon assignment of any such Unexpired Lease, or as a result of a closure or failure to operate in the premises, are deemed by this Plan to be unenforceable anti-assignment provisions that are void and of no force and effect. **Any liabilities reflected in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.**

D.     *Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Leases.*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor under such contracts or leases as modified, amended, supplemented, or restated. In particular, notwithstanding any non-bankruptcy law to the contrary, to the extent applicable, the Reorganized Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods

previously purchased, or services previously received, by the contracting Debtors from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

E.      *D&O Liability Insurance Policies.*

On the Effective Date, the Debtor shall assume all of the D&O Liability Insurance Policies pursuant to section 365 of the Bankruptcy Code or otherwise, subject to the Debtor's rights to seek amendment to such D&O Liability Insurance Policies. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation shall not discharge, impair, or otherwise modify any obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan as to which no Proof of Claim need be Filed.

F.      *Indemnification Obligations.*

To the extent applicable, the Debtor and Reorganized Debtor shall assume the Indemnification Obligations for the Debtor's current and former directors, officers, managers, and employees, and current attorneys, accountants, investment bankers, and other professionals of the Debtor, to the extent consistent with applicable law, and such Indemnification Obligations shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

G.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, unless such Executory Contract or Unexpired Lease was assumed by the Debtor and approved by the Bankruptcy Court.

H.      *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the list of Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan contained in the Plan Supplement, nor anything else in the Plan shall constitute an admission by the Debtor or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor or any other Entity, as applicable, has any liability thereunder.

I.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

# ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed.*

Except as otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such a Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against or Allowed Interest in the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class as applicable; *provided* that the Debtor or Reorganized Debtor, as applicable, will use reasonable commercial efforts to make distributions to holders of General Unsecured Claims that are Allowed as of the Effective Date within sixty (60) days of the Effective Date.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim or Allowed Interest shall, on account of such Allowed Claim or Allowed Interest, receive a distribution in excess of the Allowed amount of such Claim or Interest payable in accordance with the Plan or other Final Order of the Bankruptcy Court.

B.    *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Disbursing Agent.

Subject to the terms of the Plan, the Disbursing Agent shall be empowered to:  (1) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (2) make all distributions contemplated under the Plan; (3) employ professionals to represent it with respect to its responsibilities; (4) object to or otherwise resolve any General Unsecured Claim, Priority Claim, or Other Secured Claim, subject to the terms hereof; and (5) exercise such other powers as may be vested in the Reorganized Debtor by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

C.    *Distributions on Account of Claims Allowed After the Effective Date.*

1.    **Payments and Distributions on Disputed Claims.**

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.    **Special Rules for Distributions to Holders of Disputed Claims.**

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtor or the Reorganized Debtor, on the one hand, and the holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

D.        *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.        **Record Date for Distribution.**

On the Distribution Record Date, the Claims Register shall be closed and the Debtor, the Reorganized Debtor, or any other party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register (or with respect to Holders of Secured Term Loan B-4 Facility Claims, those Holders of Secured Term Loan B-4 Facility Claims as reflected on the Secured Term Loan B Credit Facility Agent's books and records) as of the close of business on the Distribution Record Date.

2.        **Delivery of Distributions in General.**

Except as otherwise provided herein, the Debtor shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtor's records (or in the case of Holders of Secured Term Loan B-4 Facility Claims, as reflected on the Secured Term Loan B Credit Facility Agent's books and records) as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtor; *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder (other than with respect to Holders of Secured Term Loan B-4 Facility Claims as set forth above).  If a Holder holds more than one Claim in any one Class, all Claims of the Holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

3.        **Minimum; De Minimis Distributions.**

No Cash payment of less than $50.00, in the reasonable discretion of the Debtor or Reorganized Debtor, as applicable, shall be made to a Holder of an Allowed Claim or Allowed Interest on account of such Allowed Claim or Allowed Interest.

4.        **Undeliverable Distributions and Unclaimed Property.**

In the event that any notice or distribution to any holder is returned as undeliverable, no such notice of distribution to such holder shall be made unless and until the Reorganized Debtor have determined the then current address of such holder, at which time such notice or distribution shall be made to such holder without interest; *provided* that such notice or distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date of the attempted distribution to the holder.  After such date, all unclaimed property or interests in property shall revert to the Debtor or Reorganized Debtor for the benefit of other Allowed Claims in accordance with the terms of the Plan, and the Claim of any holder to such property or interest in property shall be released, settled, compromised, and forever barred.

5.        **Manner of Payment Pursuant to the Plan.**

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Debtor or Reorganized Debtor by check or by wire transfer, at the sole and exclusive discretion of the Debtor or Reorganized Debtor

E.        *Compliance with Tax Requirements/Allocations.*

In connection with the Plan, to the extent applicable, the Debtor, Reorganized Debtor, and other withholding agents shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtor, Reorganized Debtor, and other withholding agents shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

To the extent any subrogation claim is deemed to arise against Toys "R" Us Delaware Inc. or any of its direct or indirect subsidiaries as a result of any distribution made under the Plan, such subrogation claim will be treated as having been immediately cancelled for no consideration, rather than being distributed to Toys "R" Us, Inc. and then contributed to Toys "R" Us Delaware Inc. or any of its direct or indirect subsidiaries.

F.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, the Confirmation Order, or documents executed as required by this Plan, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim.

G.      *Setoffs and Recoupment.*

Except as otherwise expressly provided herein, the Debtor may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against any Holder, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim, Cause of Action, or legal or equitable defense it may have against the Holder.

H.      *Claims Paid or Payable by Third Parties.*

1.      **Claims Paid by Third Parties.**

The Debtor or Reorganized Debtor, as applicable, shall be authorized to reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, as applicable, including on account of recourse to collateral held by third parties that secure such Claim.  To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such holder shall, within 14 days of receipt thereof, repay or return the distribution to the Debtor or Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.      **Claims Payable by Third Parties.**

No distributions under the Plan shall be made on account of a Claim that is payable pursuant to one of the Debtor's Insurance Contracts, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the holder of such Claim has exhausted all remedies with respect to such Insurance Contract, surety agreement, other non-Debtor payment agreement, or collateral, as applicable.  To the extent that one or more of the Debtor's Insurers, sureties, or non-Debtor payors pays or satisfies a Claim in full or in part (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such satisfaction, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court.

3.    **Applicability of Insurance Contracts.**

Except as otherwise provided in the Plan, distributions to holders of Claims covered by an Insurance Contract shall be in accordance with the provisions of any applicable Insurance Contract. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including Insurers under any Insurance Contract, nor shall anything contained herein constitute or be deemed a waiver by Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

I.    *Indefeasible Distributions.*

Any and all distributions made under the Plan shall be indefeasible and not subject to clawback.

J.    *Distributions on Account of Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions on account thereof take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto. Notwithstanding the foregoing, the Plan shall be without prejudice to the contractual, legal, or equitable subordination rights (if any) in favor of any holder of any Allowed Claim, and any holder of any Allowed Claim (if any) subject to any such contractual, legal, or equitable subordination shall remit any distribution on account of such Claim to which such holder's Claim is subordinated in accordance with and to the extent required under any applicable contractual, legal, or equitable subordination obligation

# ARTICLE VII
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.    *Allowance of Claims and Interests.*

The Debtor and the Reorganized Debtor, as applicable, shall have and shall retain any and all rights and legal or equitable defenses that the Debtor had with respect to any Claim or Interest immediately before the Effective Date. Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed pursuant to the Plan or the Bankruptcy Code or a Final Order, including the Confirmation Order (when it becomes a Final Order), allowing such Claim.

B.    *Claims and Interests Administration Responsibilities.*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Reorganized Debtor shall have the sole authority (subject to any party in interest's right to object to a Claim or Interest under section 502(a) of the Bankruptcy Code): (1) to File, withdraw, or litigate to judgment objections to Disputed Claims or Disputed Interests; (2) to settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, Order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, Order, or approval by the Bankruptcy Court.

C.    *Estimation of Claims and Interests.*

Prior to and on the Effective Date, the Debtor, and, after the Effective Date, the Reorganized Debtor, may (but are not required to), at any time, request that the Bankruptcy Court estimate: (1) any Disputed Claim or Disputed Interest pursuant to applicable law; and (2) any Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or Interest, or

whether the Bankruptcy Court has ruled on any such objection, the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim or Interest, that estimated amount shall constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest for all purposes under the Plan, including for purposes of distributions, and the Debtor or the Reorganized Debtor, as applicable, may elect to pursue additional objections to the ultimate distribution on such Claim or Interest. If the estimated amount constitutes a maximum limitation on such Claim or Interest, the Debtor or the Reorganized Debtor, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated. All of the aforementioned Claims and Interests and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims and Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.    *Adjustment to Claims or Interests without Objection.*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtor without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court.

E.    *Time to File Objections to Claims.*

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

F.    *Disallowance of Claims.*

Any Claims or Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Debtor or the Reorganized Debtor, as applicable, by that Entity have been turned over or paid to the Debtor or the Reorganized Debtor.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.**

G.    *Amendments to Claims.*

On or after the Effective Date, except as otherwise provided herein, a Claim or Interest may not be Filed or amended without the prior authorization of the Debtor or the Reorganized Debtor, as applicable, and any such new or amended Claim or Interest Filed shall be deemed Disallowed and expunged without any further notice to or action, Order, or approval of the Bankruptcy Court.

H.    *No Distributions Pending Allowance.*

If an objection to a Claim or Interest or portion thereof is Filed as set forth in <u>Article VII</u> of the Plan, or if such Claim or Interest is scheduled as Disputed, no payment or distribution provided under the Plan shall be made on

account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest; however, at the sole discretion of the Debtor or the Reorganized Debtor, as applicable, payment may be made on any undisputed portion of such Claim or Interest.

I.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan. As soon as practicable after the date that the Order of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Reorganized Debtor shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law or as otherwise provided in Article III.B of the Plan.

J.      *Single Satisfaction of Claims.*

Holders of Allowed Claims and Allowed Interests may assert such Claims against or Interests in the Debtor(s) obligated with respect to such Claims or Interests, and such Claims or Interests shall be entitled to share in the recovery provided for the applicable Class of Claims or Interests against the Debtor based upon the full Allowed amount of such Claims or Interests. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim or Allowed Interest exceed 100 percent (100%) of the underlying Allowed Claim or Allowed Interest plus applicable interest, if any.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Settlement, Compromise, and Release of Claims and Interests.*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distribution, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtor), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on such Claims, Interests, or Causes of Action from and after the Petition Date, whether known or unknown, against, liabilities, of Liens on, obligations of, rights, or Causes of Action against, and Interests in, the Debtor or any of their assets or properties, regardless of whether any property shall have been assumed, assumed and assigned, distributed, or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose or accrued before the Effective Date, any liability (including withdrawal liability) to the extent such Causes of Action, Claims, or Interests related to service performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representation or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such Cause of Action, Claim, debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Cause of Action, Claim, or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such Cause of Action, Claim, or Interest has accepted the Plan. Any default by the Debtor or their Affiliates with respect to any Cause of Action, Claim, or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Causes of Action, Claims, and Interests subject to the Effective Date occurring.

B.      *Discharge of Claims and Termination of Equity Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtor), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on such Claims, Interests, or Causes of Action from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of their assets or properties, regardless of whether any property shall have been assumed, assumed and assigned, distributed, or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose or accrued before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtor or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to Consummation.

C.     *Release of Liens.*

**Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall revert to the Debtor or Reorganized Debtor, as applicable.**

**Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Debtor.**

D.     *Releases by the Debtor.*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtor and the Debtor's Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, including any derivative Cause of Action asserted on behalf of the Debtor, that the Debtor or the Debtor's Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Cause of Action against, or Interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, *however*, that notwithstanding anything to the contrary herein, nothing in this Article or this Plan shall release (a) any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and the Restructuring Transactions; (b) any Administrative**

Claims held by the Debtor against the TRU Retail Debtor Parties or any Former Debtor, including any Administrative Claims pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code; (c) any Non-Released Claims; or (d) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any Entity.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this <u>Article VIII.D</u> by the Debtor, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this <u>Article VIII.D</u> is: (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Causes of Action; (2) in the best interest of the Debtor and all Holders of Interests and Causes of Action; (3) fair, equitable, and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) subject to the terms and provisions herein, a bar to the Debtor asserting any Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Debtor.

E.    *Releases by Holders of Claims and Interests.*

As of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtor and each Released Party from any and all Causes of Action, whether known or unknown, including any derivative Causes of Action asserted on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; <u>provided</u>, <u>however</u>, that notwithstanding anything to the contrary herein, nothing in this Article or this Plan shall release (a) any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and the Restructuring Transactions; (b) any Administrative Claims held by the Debtor against the TRU Retail Debtor Parties or any Former Debtor, including any Administrative Claims pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code; (c) any Non-Released Claims; or (d) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any Entity.

For the avoidance of doubt, nothing contained herein shall affect any rights of any parties to the Settlement Agreement preserved under the Settlement Agreement.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this <u>Article VIII.E</u>, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this <u>Article VIII.E</u> is: (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Causes of Action; (2) in the best interests of the Debtor and all Holders of Interests and Causes of Action; (3) fair, equitable, and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) subject to the terms and provisions herein, a bar to any of the Releasing Parties asserting any Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Debtor.

F.    *Exculpation.*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability with respect to, and each Exculpated Party is released and exculpated from, any Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for Causes of Action related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan; provided, however, notwithstanding anything to the contrary herein, the following shall not release or exculpate: (i) any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and the Restructuring Transactions; (ii) any Administrative Claims held by the Debtor against the TRU Retail Debtor Parties or any Former Debtor, including any Administrative Claims pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code; (iii) any Non-Released Claims; or (iv) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any Entity.

Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Plan Debtor.

G.    *Injunction.*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan, or the Confirmation Order, all Entities who have held, hold, or may hold Causes of Action, Claims, or Interests that have been compromised, settled, or released, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any and all Causes of Action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor, the Exculpated Parties, or the Released Parties on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Exculpated Parties, or the Released Parties or the property or the estate of the Debtor, the Exculpated Parties, or the Released Parties on account of or in connection with or with respect to any such Causes of Action, Claims, or Interests; (4) asserting any right of setoff, subrogation, recoupment, or other similar legal or equitable right of any kind against any obligation due from the Debtor, the Exculpated Parties, or the Released Parties or against the property of the Debtor, the Exculpated Parties, or the Released Parties on account of or in connection with or with respect to any such Causes of Action, Claims, or Interests unless such Holder has Filed a motion requesting the right to perform such legal or equitable right on or before the Effective Date, and notwithstanding an indication of any Cause of Action, Claim, or Interest or otherwise that such Holder asserts, has, or intends to preserve pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any and all Causes of Action or other proceeding of any kind on account of or in connection with or with respect to any such Causes of Action, Claims, or Interests released or settled pursuant to the Plan; provided, however, that, notwithstanding anything to the contrary herein, nothing in this Article or this Plan shall enjoin: (i) any Entity from taking the

preceding actions with respect to any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and the Restructuring Transactions; (ii) any Administrative Claims held by the Debtor against the TRU Retail Debtor Parties or any Former Debtor, including any Administrative Claims pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code; (iii) any Non-Released Claims; or (iv) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any Entity.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.G of the Plan.

Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Plan Debtor.

H.       Protections Against Discriminatory Treatment.

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtor, or another Entity with whom the Debtor have been associated, solely because Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtor are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.       Setoffs.

Except as otherwise expressly provided for in the Plan, Debtor, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or before the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor of any such Claims, rights, Causes of Action, and legal or equitable defenses that such Debtor may possess against such Holder.  In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of a Debtor, unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff *provided*, that the foregoing shall not prevent any Holder of Claims or Interests from asserting setoff rights as an affirmative defense to the extent provided by applicable law.

J.       Recoupment.

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtor unless such Holder actually has timely Filed a Proof of Claim with the Bankruptcy Court preserving such recoupment, *provided*, that the foregoing shall not prevent any Holder of Claims or Interests from asserting recoupment as an affirmative defense to the extent provided by applicable law.

K.       Subordination Rights.

The classification and treatment of all Claims and Interests under the Plan shall conform to and with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and any such rights shall be settled, compromised, and released pursuant to the Plan.

*L.*     *Document Retention.*

On and after the Effective Date, the Debtor or Reorganized Debtor, as applicable, may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtor.

*M.*     *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

*A.*     *Conditions Precedent to Confirmation.*

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C:

1.   the Bankruptcy Court shall have entered the Disclosure Statement Order;

2.   the Plan shall have been Filed;

3.   the Bankruptcy Court shall have entered the Confirmation Order;  and

4.   the Plan Supplement shall have been Filed.

*B.*     *Conditions Precedent to the Effective Date.*

It shall be a condition to Consummation that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C:

1.   the Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order; *provided*, *however*, that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

2.   all documents and agreements necessary to implement the Plan shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

3.   all governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

4.   the Professional Fee Escrow Account shall have been funded with Cash, as applicable, in the amount of the aggregate Professional Fee Escrow Amount; and

5.        all actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units as provided for in the Plan.

*C.        Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in this <u>Article IX</u> may be waived by the Debtor only by consent of the Creditors' Committee in its sole discretion, and without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

## ARTICLE X
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.        Modification and Amendments.*

Subject to the limitations contained in the Plan, the Debtor or the Reorganized Debtor, as applicable, reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor and the Reorganized Debtor, as applicable, expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with <u>Article X</u> hereof.

*B.        Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.        Revocation or Withdrawal of the Plan.*

The Debtor reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor or any other Entity, including the holders of Claims or the non-Debtor subsidiaries; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.        allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Obligations pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtor or Reorganized Debtor amending, modifying, or supplementing, after the Effective Date, pursuant to <u>Article V</u>, any Executory Contracts or Unexpired Leases to the set forth on the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in <u>Article VIII</u> and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

13.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.      adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19.     hear, determine, and resolve matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.     hear and determine matters concerning section 1145 of the Bankruptcy Code;

21.     hear and determine all disputes involving the existence, nature, or scope of the Debtor's release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

22.     enforce all orders previously entered by the Bankruptcy Court;

23.     resolve any disputes arising in connection with any Sale Transaction, including the interpretation, implementation, modification, of any Sale Transaction Documents;

24.     hear any other matter not inconsistent with the Bankruptcy Code;

25.     enter an order concluding or closing the Chapter 11 Cases; and

26.     enforce the injunction, release, and exculpation provisions set forth in <u>Article VIII</u>.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect.*

Subject to the terms hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, the Debtor's Estate, the Reorganized Debtor, and any and all holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, or injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

B.     *Additional Documents.*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, with the consent of the Creditors' Committee in their sole discretion. The Debtor and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute,

and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan, in consultation with the Creditors' Committee.

C.      *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtor for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. For the avoidance of doubt, the Debtor shall pay any outstanding U.S. Trustee fees in full on the Effective Date and the Debtor or Reorganized Debtor shall continue to pay such fees until the Chapter 11 cases are converted, dismissed, or closed, whichever occurs first.

D.      *Dissolution of Committees.*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases on the Effective Date. The Debtor and the Reorganized Debtor shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee after the Effective Date. Upon the dissolution of the Creditors' Committee, the current and former members of the Creditors' Committee, and their officers, employees, counsel, advisors, and agents, shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's respective attorneys, accountants, and other agents shall terminate, except that the Creditors' Committee and its professionals shall have the right to pursue, review, and object to any applications for compensation and reimbursement of expenses filed in accordance with Article II.B hereof.

E.      *Reservation of Rights.*

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests before the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Service of Documents.*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor shall be served on:

1.      **the Debtor:**

Wayne Real Estate Parent Company, LLC
One Geoffrey Way,
Wayne, New Jersey 07470
Attention: Jamie Young

with copies to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022-4611
Facsimile: (212) 446-4900

Attention:  Joshua A. Sussberg, Emily E. Geier
E-mail addresses:  joshua.sussberg@kirkland.com,
                emily.geier@kirkland.com

and

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654-3406
Facsimile:  (312) 862-2200
Attention:  Chad J. Husnick
E-mail address:  chad.husnick@kirkland.com

    2.      **Counsel for the Independent Directors of Wayne Parent.**

Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Attention:  Morton R. Branzburg
Telephone:  (215) 569-3007
Facsimile:  (215) 568-6603
E-mail address:  mbranzburg@klehr.com

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtor or, *after the Effective Date*, the Debtor, shall be served on the Reorganized Debtor, as set forth in the Plan Supplement.

After the Effective Date, the Debtor or Reorganized Debtor, as applicable, have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtor are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed request

   *H.*      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order (including the Injunction) shall remain in full force and effect in accordance with their terms.

   *I.*      *Entire Agreement.*

Except as otherwise indicated, the Plan, the Confirmation Order, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

   *J.*      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Debtor's restructuring website at https://cases.primeclerk.com/toyspropcoI or the Bankruptcy Court's website at www.vaeb.uscourts.gov.

K.       *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable; *provided* that at the request of the Debtor (in their sole discretion), the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted *provided* that any such alteration or interpretation shall be reasonably acceptable to the Creditors' Committee.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified absent consultation with the Creditors' Committee; and (3) nonseverable and mutually dependent.

L.       *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtor or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

M.       *Enforcement of the Confirmation Order.*

On and after the Effective Date, the Debtor and Reorganized Debtor, as applicable, shall be entitled to enforce the terms of the Confirmation Order and the Plan.

N.       *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

O.       *Creditor Default.*

An act or omission by a holder of a Claim or an Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Debtor or Reorganized Debtor, as applicable, may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Debtor or Reorganized Debtor in remedying such default.  Upon the finding of such a default by a creditor, the Bankruptcy Court may:  (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award judgment against such defaulting creditor in favor of the Debtor in an amount, including interest, to compensate the Debtor for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

[*Remainder of page intentionally left blank.*]

Respectfully submitted, as of the date first set forth above,

Dated:  January 23, 2019                Wayne Real Estate Parent Company, LLC

                                        By:      /s/ Matthew Finigan
                                        Name:    Matthew Finigan
                                        Title:   Executive Vice President - Chief Financial Officer and
                                                 Treasurer

Prepared by:

Edward O. Sassower, P.C.                         James H.M. Sprayregen, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)   Anup Sathy, P.C.
Emily E. Geier (admitted *pro hac vice*)         Chad J. Husnick, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**                         **KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**           **KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue                             300 North LaSalle
New York, New York 10022                         Chicago, Illinois 60654
Telephone:     (212) 446-4800                    Telephone:     (312) 862-2000
Facsimile:     (212) 446-4900                    Facsimile:     (312) 862-2200

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:     (804) 644-1700
Facsimile:     (804) 783-6192

*Co-Counsel to the Debtors and Debtors in Possession*

**Exhibit B**

**Redline**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

FIRSTSECOND AMENDED CHAPTER 11 PLAN
OF WAYNE REAL ESTATE PARENT COMPANY, LLC

---

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE,
COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTOR
OR ANY OTHER PARTY IN INTEREST.**

**YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN
FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

**THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER
CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

---

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:    (804) 644-1700
Facsimile:    (804) 783-6192

*Co-Counsel to the Debtors and Debtors in Possession*

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Dated:  December 31, 2018January 23, 2019

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 78].  The location of the Debtors' service address is One Geoffrey Way, Wayne, New Jersey 07470.

## TABLE OF CONTENTS

<b>Page</b>

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW**................................................................................................1
    A.    Defined Terms. ...........................................................................................1
    B.    Rules of Interpretation. ..............................................................................9
    C.    Computation of Time. ...............................................................................10
    D.    Governing Law. .......................................................................................10
    E.    Reference to Monetary Figures. ................................................................10
    F.    Reference to the Debtor or the Reorganized Debtor. ..................................10
    G.    Controlling Document. .............................................................................10

**ARTICLE II ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS**..............................11
    A.    Administrative Claims. .............................................................................11
    B.    Accrued Professional Compensation Claims. .............................................11
    C.    Priority Tax Claims...................................................................................12

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**............................12
    A.    Summary of Classification. .......................................................................13
    B.    Treatment of Claims and Interests. ...........................................................13
    C.    Special Provision Governing Unimpaired Claims. .......................................14
    D.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes...............15
    E.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code. ............15
    F.    Subordinated Claims.................................................................................15

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** ........................................15
    A.    General Settlement of Claims. ...................................................................15
    B.    Restructuring Transactions. .......................................................................15
    C.    Sources of Consideration for Plan Distributions..........................................16
    D.    Issuance of New Common Stock. ..............................................................16
    E.    Exemption from Registration Requirements................................................16
    F.    Subordination...........................................................................................17
    G.    Vesting of Assets in the Reorganized Debtor. ............................................17
    H.    Cancellation of Securities and Agreements. ...............................................17
    I.    Corporate Action. ....................................................................................17
    J.    Corporate Existence; Tax Classification. ...................................................18
    K.    Charter, Bylaws, and New Organizational Documents ................................18
    L.    Effectuating Documents; Further Transactions. ..........................................18
    M.    Exemption from Certain Taxes and Fees. ...................................................19
    N.    Directors and Officers. .............................................................................19
    O.    Retention of Causes of Action. ..................................................................19
    P.    Avoidance Actions....................................................................................19
    Q.    Regulatory Requirements ..........................................................................20
    R.    Insurance Contracts. .................................................................................20

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......................20
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ...................20
    B.    Claims Based on Rejection of Executory Contracts and Unexpired Leases. ..................21
    C.    Cure of Defaults for Assumed and Assigned Executory Contracts and Unexpired Leases. ...................................................................................21
    D.    Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Leases. ...................................................................................21
    E.    D&O Liability Insurance Policies................................................................22
    F.    Indemnification Obligations ......................................................................22

G.    Modifications, Amendments, Supplements, Restatements, or Other Agreements. ........... 22
H.    Reservation of Rights. .................................................................................................. 22
I.    Nonoccurrence of Effective Date. ................................................................................ 22

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** ........................................................ **23**
A.    Timing and Calculation of Amounts to Be Distributed. ................................................ 23
B.    Disbursing Agent. ........................................................................................................ 23
C.    Distributions on Account of Claims Allowed After the Effective Date. ......................... 23
D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions. ..................... 24
E.    Compliance with Tax Requirements/Allocations. ......................................................... 24
F.    No Postpetition Interest on Claims. .............................................................................. 25
G.    Setoffs and Recoupment. ............................................................................................. 25
H.    Claims Paid or Payable by Third Parties. ..................................................................... 25
I.    Indefeasible Distributions. ........................................................................................... 26
J.    Distributions on Account of Subordinated Claims. ....................................................... 26

**ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
DISPUTED CLAIMS** ........................................................................................................ **26**
A.    Allowance of Claims and Interests. .............................................................................. 26
B.    Claims and Interests Administration Responsibilities. ................................................... 26
C.    Estimation of Claims and Interests. .............................................................................. 26
D.    Adjustment to Claims or Interests without Objection. ................................................... 27
E.    Time to File Objections to Claims. ............................................................................... 27
F.    Disallowance of Claims. ............................................................................................... 27
G.    Amendments to Claims. ............................................................................................... 27
H.    No Distributions Pending Allowance. ........................................................................... 27
I.    Distributions After Allowance. ..................................................................................... 27
J.    Single Satisfaction of Claims. ...................................................................................... 28

**ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ..................... **28**
A.    Settlement, Compromise, and Release of Claims and Interests. ..................................... 28
B.    Discharge of Claims and Termination of Equity Interests ............................................. 28
C.    **Release of Liens.** ......................................................................................................... 29
D.    **Releases by the Debtor.** .............................................................................................. 29
E.    **Releases by Holders of Claims and Interests.** ............................................................. 30
F.    **Exculpation.** ............................................................................................................... 30
G.    **Injunction.** ................................................................................................................. 31
H.    Protections Against Discriminatory Treatment. ............................................................ 31
I.    Setoffs. ........................................................................................................................ 32
J.    Recoupment. ................................................................................................................ 32
K.    Subordination Rights. ................................................................................................... 32
L.    Document Retention. .................................................................................................... 32
M.    Reimbursement or Contribution. .................................................................................. 32

**ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ........... **32**
A.    Conditions Precedent to Confirmation. ........................................................................ 32
B.    Conditions Precedent to the Effective Date. ................................................................. 33
C.    Waiver of Conditions. .................................................................................................. 33

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ............................ **33**
A.    Modification and Amendments. .................................................................................... 33
B.    Effect of Confirmation on Modifications. ..................................................................... 34
C.    Revocation or Withdrawal of the Plan. ......................................................................... 34

**ARTICLE XI RETENTION OF JURISDICTION** ..................................................................... **34**

**ARTICLE XII MISCELLANEOUS PROVISIONS** ................................................................................36
 A.   Immediate Binding Effect. ............................................................................36
 B.   Additional Documents. ................................................................................36
 C.   Payment of Statutory Fees. ..........................................................................36
 D.   Dissolution of Committees. ..........................................................................36
 E.   Reservation of Rights. .................................................................................36
 F.   Successors and Assigns. ...............................................................................37
 G.   Service of Documents. .................................................................................37
 H.   Term of Injunctions or Stays. .......................................................................38
 I.   Entire Agreement. .......................................................................................38
 J.   Exhibits. .....................................................................................................38
 K.   Nonseverability of Plan Provisions. ..............................................................38
 L.   Waiver or Estoppel. ....................................................................................38
 M.   Enforcement of the Confirmation Order ........................................................38
 N.   Votes Solicited in Good Faith .......................................................................39
 O.   Creditor Default .........................................................................................39

**INTRODUCTION**

The Debtor proposes the following plan pursuant to chapter 11 of the Bankruptcy Code (together with the documents comprising the Plan Supplement, the "Plan").  Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A.

The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.  Reference is made to the Disclosure Statement for a discussion of the Debtor's history, businesses, results of operations, historical financial information, projections, and future operations, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan.  The Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.  This Plan is separate from the Propco II Plan,[2] the Toys Delaware Plan, and any other plan for any entity or entities other than the Debtor.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.      *Defined Terms.*

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

1.      "*Accrued Professional Compensation Claims*" means, at any given moment, all Claims for accrued fees and expenses (including success fees) for services rendered by a Professional through and including the Effective Date, to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Accrued Professional Compensation Claim.

2.      "*Ad Hoc Group of Term B-4 Lenders*" means the ad hoc group of certain holders of Secured Term Loan B Credit Facility Claims (as defined in the Toys Delaware Plan) consisting of funds and accounts managed or advised by Angelo, Gordon & Co., L.P.; Franklin Mutual Advisors, LLC; Highland Capital Management, LP; Oaktree Capital Management, L.P.; and Solus Alternative Asset Management LP.

3.      "*Ad Hoc Vendor Group*" means the ad hoc group of merchandise vendors represented by Foley & Lardner LLP, Fox Rothschild LLP; Schiff Hardin LLP; Saul Ewing Arnstein & Lehr LLP; Morris, Nichols, Arsht & Tunnell; and Wasserman, Jurista & Stolz, P.C.

4.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtor's estate pursuant to sections 328, 330, 503(b) or 507(a)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses of preserving the Estate and operating the business of the Debtor incurred after the Petition Date and through and including the Effective Date; and (b) Accrued Professional Compensation Claims.

5.      "*Administrative Claims Bar Date*" means, except for Accrued Professional Compensation Claims, the first Business Day that is 30 days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

---

[2]      The Propco II Plan was confirmed by the Bankruptcy Court on August 22, 2018.

6.        "*Administrative Claims Objection Bar Date*" means the deadline to filing objections to requests for payment of Administrative Claims (other than requests for payment of Accrued Professional Fee Claims and Claims arising under sections 503(b)(9) of the Bankruptcy Code), which shall be the later of (a) 60 days after the Effective Date or (b) 60 days after the Filing of the applicable request for payment of an Administrative Claim, *provided, that* the Administrative Claims Objection Bar Date may be extended by order of the Bankruptcy Court.

7.        "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

8.        "*Allowed*" means, with reference to any Claim or Interest, as may be applicable, (a) any Claim that is evidenced by a Proof of Claim or a request for payment of an Administrative Claim, as applicable, that is Filed on or before the applicable Claims Bar Date or Administrative Claims Bar Date or which, pursuant to the Bankruptcy Code or a Final Order, is not required to be Filed; (b) any Claim that is listed in the Schedules as of the Effective Date as neither contingent, unliquidated, nor disputed, and for which no Proof of Claim has been timely filed; or (c) any Claim Allowed pursuant to the Plan; *provided*, *however*, that with respect to any Claim described in clauses (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or such an objection is so interposed and the Claim shall have been Allowed by a Final Order.  Except as otherwise specified in the Plan, any Final Order, or as otherwise agreed by the Debtor, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claim (as determined by Final Order of the Bankruptcy Court), the amount of an Allowed Claim shall not include interest or fees on such Claim accruing from and after the Petition Date.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as the case may be.  "Allow" and "Allowing" shall have correlative meanings.

9.        "*Assumed Liabilities*" means any liability of any Debtor that is fully assumed by a Purchaser or other entity pursuant to Sale Transaction Documents.

10.        "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

11.        "*Ballot*" means the ballot form for accepting or rejecting this Plan and making certain elections under this Plan, distributed to the Holders of Claims or Interests that are Impaired under this Plan and entitled to vote to accept or reject this Plan pursuant to Article III.

12.        "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

13.        "*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of Virginia having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 or the General Order of the District Court pursuant to section 151 of the Judicial Code, the United States District Court for the Eastern District of Virginia.

14.        "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

15.        "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

16.        "*Cash*" means the legal tender of the United States or the equivalent thereof.

17.    "*Causes of Action*" means any claim (including any Claim), cause of action, controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, debt, damage, remedy, judgment, account, defense, offset, power, privilege, license, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising,  contingent or non contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, "Causes of Action" include:  (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any right to object to or otherwise contest Claims or Interests; (d) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any claim or defense, including fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any Avoidance Action.

18.    "*Certificate*" means any instrument evidencing a Claim or Interest.

19.    "*Chapter 11 Cases*" means the chapter 11 case of the Debtor pending before the Bankruptcy Court under the lead case of Toys "R" Us, Inc., Case No. 17-34665 (KLP) (Bankr. E.D. Va.).

20.    "*Claim*" means any claim against the Debtor, as defined in section 101(5) of the Bankruptcy Code, including: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

21.    "*Claims Bar Date*" means, either, the General Claims Bar Date or the Governmental Claims Bar Date, as applicable.

22.    "*Claims Objection Bar Date*" means the later of: (a) the date that is 180 days after the Effective Date; and (b) such other date as may be fixed by the Bankruptcy Court, after notice and hearing, upon a motion filed before the expiration of the deadline to object to Claims or Interests.

23.    "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

24.    "*Class*" means a category of Holders of Claims or Interests as set forth in Article III in accordance with section 1122(a) of the Bankruptcy Code.

25.    "*Confirmation*" means the entry on the docket of the Chapter 11 Cases of a Confirmation Order.

26.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order.

27.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation pursuant to section 1129 of the Bankruptcy Code.

28.    "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

29.    "*Consummation*" means the occurrence of the Effective Date for the Plan.

30.    "*Creditors' Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases.

31.    "*Cure Claims*" means all Claims for Cure Obligations.

32.    "*Cure Obligations*" means all (a) amounts (or such lesser amount as may be agreed upon by the parties under an Executory Contract, Unexpired Lease, or Sale Transaction Document) required to cure any monetary defaults and (b) other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed by the Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

33.    "*D&O Liability Insurance Policies*" means all insurance policies for directors', members', trustees', officers', and managers' liability issued to the Debtor as first-named insured as of the applicable Effective Date.

34.    "*Debtor*" means Wayne Real Estate Parent Company, LLC.

35.    "*Disallowed*," when used with respect to a Claim, means a Claim that has been disallowed by the Bankruptcy Code or Final Order (including, for the avoidance of doubt, the Confirmation Order).

36.    "*Disclosure Statement*" means the *First Amended Disclosure Statement for the Chapter 11 Plan of Wayne Real Estate Parent Company, LLC*, including all exhibits and schedules thereto.

37.    "*Disclosure Statement Order*" means the Order approving the Disclosure Statement and certain procedures for solicitation of votes on the Plan and granting related relief.

38.    "*Disputed*" means a Claim or an Interest or any portion thereof: (a) that is not Allowed; and (b) that is not Disallowed under the Plan, the Bankruptcy Code, or a Final Order.

39.    "*Disbursing Agent*" means the party to be selected by the Creditors' Committee in its sole discretion to make or facilitate distributions that are to be made on or after the Effective Date pursuant to the Plan.

40.    "*Distribution Record Date*" means the date for determining which holders of Claims or Interests are eligible to receive distributions hereunder and shall be the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

41.    "*DTC*" means Depository Trust Company.

42.    "*Effective Date*" means, with respect to the first date that is a Business Day selected by the Debtor after the Confirmation Date on which:  (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX.A have been satisfied or waived (in accordance with Article IX.C); and (c) the Plan is declared effective, after consultation with the Creditors' Committee.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

43.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

44.    "*Estate*" means, the estate created for the Debtor on the Petition Date pursuant to sections 301 and 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired after the Petition Date through the Effective Date.

45.    "*Exculpated Parties*" means, subject to Article VIII, collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the TRU Retail Debtor Parties; (d) the Propco I Debtors; (e) the Holders of Claims against and Interests in the Debtor; (e) the Creditors' Committee and its members; (f) the Sponsors (solely to the extent acting as a fiduciary of the Debtor, and (gnot the Sponsor-affiliated directors, officers, and managers); (g) the Secured Term Loan B Credit Facility Agent; and (h) with respect to each of the foregoing entities in clauses (a) through (fg), such entity's current and former affiliates, and each of such entity's, and such entity's current and former affiliates', current and former equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board

4

members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided* that, notwithstanding the foregoing or any other provision herein, the term "Exculpated Parties" does not include any party subject to a Non-Released Claim (including any D&O Party, as defined in the Toys Delaware Plan) but only to the extent, and in that capacity, that such party is subject to such Non-Released Claim, *provided*, for the avoidance of doubt, TRU Inc. and the Toys Delaware Debtors and their respective estates and creditors, are not releasing any Claims or Causes of Action against any D&O Party (as defined in the Toys Delaware Plan), in each case regardless of whether such party or entity would otherwise meet the definition of Exculpated Parties.

46.    "*Executory Contract*" means a contract to which one or more of the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

47.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Effective Date.

48.    "*Fee Examiner Order*" means the *Stipulation and Order for Appointment of a Fee Examiner* [Docket No. 3463].

49.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice and Claims Agent.

50.    "*Final Order*" means, an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, reconsideration, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, or motion for reargument, reconsideration, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

51.    "*Former Debtor*" means any former TRU Retail Debtor for which a chapter 11 plan of reorganization has been confirmed and declared effective.

52.    "*General Claims Bar Date*" means April 6, 2018 at 5:00 p.m. prevailing Eastern Time, or such other date established by the Bankruptcy Court by which Proofs of Claim must have been Filed by a Governmental Unit, as ordered by the Bankruptcy Court in the *Amended Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief* [Docket No. 1329].

53.    "*General Unsecured Claim*" means any other Claims against any Debtor that are not otherwise paid in full during the Chapter 11 Cases pursuant to an order of the Bankruptcy Court and are not:  (a) an Administrative Claim; (b) an Other Secured Claim; (c) an Other Priority Claim; or (d) an Intercompany Claim.

54.    "*Geoffrey Debtors*" means, collectively, Geoffrey Holdings, LLC, Geoffrey, LLC and Geoffrey International, LLC.

55.    "*Geoffrey Plan*" means the chapter 11 plan of the Geoffrey Debtors.

55.56.    "*Giraffe Junior*" means Giraffe Junior Holdings, LLC.

56.57.    "*Governmental Claims Bar Date*" means June 18, 2018 at 5:00 p.m. prevailing Eastern Time or such other date established by the Bankruptcy Court by which Proofs of Claim must have been Filed by a Governmental Unit, as ordered by the Bankruptcy Court in the *Amended Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date*

*and Rejection Damages Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief* [Docket No. 1329].

~~57.~~58.    "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

~~58.~~59.    "*Holder*" means any Entity holding a Claim or an Interest.

~~59.~~60.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

~~60.~~61.    "*Indemnification Obligations*" means the Debtor's indemnification obligations in place as of the Effective Date, set forth in any of: (a) the organizational documents of the Debtor (including the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, or board resolutions); (b) employment contracts; or (c) an engagement or retention letter as to professional or advisory services.

~~61.~~62.    "*Intercompany Claim*" means any Claim in the Debtor held by another TRU Retail Debtor or Propco I Debtor.

~~62.~~63.    "*Insurance Contract*" means all insurance policies that have been issued at any time to or provide coverage to ~~any of~~ the Debtor, including the D&O Liability Insurance Policies, and all agreements, documents or instruments relating thereto.

~~63.~~64.    "*Insurer*" means any company or other Entity that issued an Insurance Contract, and any respective predecessors and/or affiliates of the foregoing.

~~64.~~65.    "*Interests*" means any interest, equity, or share in the Debtor, including all options, warrants, or other rights to obtain such an interest or share in such Debtor, whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising therefrom.

~~65.~~66.    "*Interim Compensation Order*" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief*, entered June 28, 2018 [Docket No. 746].

~~66.~~67.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

~~67.~~68.    "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

~~68.~~69.    "*New Board*" means the board of directors of the Reorganized Debtor, to be identified by the Debtor, prior to or at the Confirmation Hearing.

~~69.~~70.    "*New Common Stock*" means the common stock in the Reorganized Debtor, which may, for the avoidance of doubt, consist of stock of a newly-formed entity as specified in the Restructuring Transactions Memorandum.

71.    "*New Common Stock Summary*" means the term sheet summarizing the characteristics of the New Common Stock~~.~~

~~70.~~72.    "*New Contingent Equity Rights*" has the meaning ascribed to that term in the Propco I Plan.

~~71.~~73.    "*New Organizational Documents*" means such certificates or articles of incorporation, certificates of formation, certificates of conversion, by-laws, limited liability company agreements, stockholders' agreements, or such other applicable formation and governance documents of the Reorganized Debtor, forms of which shall be included in the Plan Supplement.

72.74.    "*Non-Released Claims*" has the meaning ascribed to such term in the Settlement Agreement.

73.75.    "*Notice and Claims Agent*" means Prime Clerk LLC.

74.76.    "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or Claims entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

75.77.    "*Other Secured Claim*" means any secured Claim against the Debtor not specifically described in the Plan.

76.78.    "*Petition Date*" means September 18, 2017.

77.79.    "*Plan*" means this *Chapter 11 Plan of Wayne Real Estate Parent Company, LLC*, including the Plan Supplement which is incorporated herein by reference and made part of this Plan as if set forth herein.

78.80.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed at least seven (7) days prior to the Voting Deadline, as amended, supplemented, or otherwise modified from time to time prior to the Effective Date in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including:  (a) a list of Executory Contracts and Unexpired Leases to be assumed or assumed and assigned pursuant to the Plan, and as may be amended by the Debtor in accordance with the Plan prior to the Effective Date; (b) a schedule of the retained Causes of Action; (c) the New Common Stock Summary; (d) the New Organizational Documents; (e) the identity of the New Board; and (f) the Restructuring Transactions Memorandum, subject to appropriate confidentiality protections.

79.81.    "*Priority Claims*" means Priority Tax Claims and Other Priority Claims.

80.82.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

81.83.    "*Professional*" means an Entity: (a) retained in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363, or 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

82.84.    "*Professional Fee Escrow Account*" means an interest-bearing escrow account to hold and maintain an amount of Cash equal to the Professional Fee Escrow Amount to be funded by the Debtor on or before the Effective Date solely for the purpose of paying all Allowed and unpaid Accrued Professional Compensation Claims and Accrued Creditor's Committee Member Expense Claims.  Such Cash shall remain subject to the jurisdiction of the Bankruptcy Court.

83.85.    "*Professional Fee Escrow Amount*" means the aggregate Accrued Professional Compensation Claims through the Effective Date as estimated in accordance with Article II.B.

84.86.    "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Cases.

85.87.    "*Propco I*" means Toys "R" Us Property Company I, LLC.

86.88.    "*Propco I Debtors*" means the debtors and debtors-in-possession whose chapter 11 cases are jointly administered under the case *In re Toys "R" Us Property Company I, LLC*, Case No. 18-31429 (KLP) (Bankr. E.D. Va.).

87.89.    "*Propco I Plan*" means the chapter 11 plan of the Propco I Debtors.

88.90.   "*Propco II*" means Toys "R" Us Property Company II, LLC.

89.91.   "*Propco II Plan*" means the chapter 11 plan of the Propco II Plan Entities.

90.92.   "*Propco II Plan Entities*" means together, Propco II and Giraffe Junior.

91.93.   "*Purchaser*" means each Entity that is a purchaser under the Sale Transaction Documents to which it is a party.

92.94.   "*Raider Hill*" means Raider Hill Advisors, LLC.

93.95.   "*Reinstated*" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

94.96.   "*Released Party*" means, subject to Article VIII, collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the TRU Retail Debtor Parties; (d) the Propco I Debtors; (e) the Holders of Claims against and Interests in the Debtor; (f) the Creditors' Committee and its members; (g) the Sponsors; (but not the Sponsor-affiliated directors, officers, and managers); (h) the Secured Term Loan B Credit Facility Agent; and (i) with respect to each of the foregoing entities in clauses (a) through (g);h) (other than the Toys Delaware Debtors, the Geoffrey Debtors, and TRU Inc.), such entity's current and former Affiliates, and each of such entity's subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, *provided* that; and (j) with respect to the Toys Delaware Debtors, the Geoffrey Debtors, and TRU Inc., such entity's affiliates and its and their respective directors, officers, agents, advisors, and professionals; *provided* that notwithstanding any other provisions herein, "Released Parties" shall not include, and in each case regardless of whether such party or entity would otherwise meet the definition of Released Party, (i) any party that opts out of the releases contained in the Plan or is otherwise removed from the definition of "Releasing Parties" shall not be a "Released Party."" or (ii) any party subject to a Non-Released Claim (including any D&O Party, as defined in the Toys Delaware Plan) but only to the extent, and in the capacity, that such party is subject to such Non-Released Claim, *provided,* for the avoidance of doubt, TRU Inc. and the Toys Delaware Debtors and their respective estates and creditors are not releasing any Claims or Causes of Action against any D&O Party (as defined in the Toys Delaware Plan)

95.97.   "*Releasing Parties*' means, subject to Article VIII, collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Reorganized Debtor; (c) the TRU Retail Debtor Parties; (d) the Propco I Debtors; (e) the Creditors' Committee and its members; (f) the Sponsors; and (g) with respect to each of the foregoing entities in clauses (a) through (f), such entity's current and former Affiliates, and each of such entity's, and such entity's current and former affiliates', current and former equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; (h) all Holders of Claims and Interests that are deemed to accept the Plan and do not opt-out of the releases; (i) all Holders of Claims and Interests who vote to accept the Plan; and (j) all Holders of Claims who receive a Ballot, abstain from voting, and do not otherwise opt-out of the releases.

96.98.   "*Reorganized Debtor*" means, on an after the Effective Date, the Debtor as reorganized hereunder.

97.99.   "*Reorganized Debtor Assets*" means, on the Effective Date, all assets and interests of the Estate, control over which will be vested in the Reorganized Debtor, and, thereafter, all assets from time to time controlled by the Reorganized Debtor.

98.100.   "*Reorganized Propco I*" means, on and after the Effective Date, Propco I, as reorganized under the Propco I Plan.

99.101. "*Reorganized Propco I Subsidiaries*" means Map Real Estate, LLC, Wayne Real Estate Company, LLC, TRU 2005 RE I, LLC, and TRU 2005 RE II Trust, on and after the respective Effective Date, as such entities are reorganized under the Propco I Plan.

100.102. "*Restructuring Transactions*" has the meaning set forth in Article IV.B.

101.103. "*Restructuring Transactions Memorandum*" means a description of the Restructuring Transactions.

102.104. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the official bankruptcy forms.

103.105. "*Secured*" means when referring to a Claim secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order or the Plan, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

106.    "*Secured Term Loan B Credit Facility*" means the credit facility made available pursuant to the Secured Term Loan B Credit Agreement (as defined in the Toys Delaware Plan).

107.    "*Secured Term Loan B Credit Facility Agent*" means Bank of America, N.A. as administrative agent and collateral agent under the Secured Term Loan B Credit Agreement (as defined in the Toys Delaware Plan).

108.    "*Secured Term Loan B-4 Facility Claim*" means any Claim derived from or based upon the Term B-4 Loans (as defined in the Toys Delaware Plan) under the Secured Term Loan B Credit Facility.

104.109. "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa.

105.110. "*Securities Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn.

106.111. "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

107.112. "*Settlement Agreement*" means that certain settlement agreement by and among the Debtor and certain other TRU Retail Debtors and certain Holders of Claims and Interests against the TRU Retail Debtors, including the Creditors' Committee and certain of its members, the Ad Hoc Vendor Group and its members, the Sponsors, and the Ad Hoc Group of Term B-4 Lenders and its members, dated as of July 17, 2018.

108.113. "*Sponsors*" means, collectively, (a) Bain Capital Private Equity, LP, (b) Kohlberg Kravis Roberts & Co. L.P., (c) Vornado Realty Trust, and (d) funds and entities advised by each such Entity, and each such Entity's current and former Affiliates.

109.114. "*Toys Delaware Debtors*" means Toys Delaware, TRU Guam, LLC, Toys Acquisition, LLC, Giraffe Holdings, LLC, TRU of Puerto Rico, Inc., and TRU-SVC, Inc.

110.115. "*Toys Delaware Plan*" means the chapter 11 plan of the Toys Delaware Debtors.

111.116. "*TRU Inc.*" means Toys "R" Us, Inc.

112.117. "*TRU Retail Debtor Parties*" means, excluding the Debtor, (a) the TRU Retail Debtors, (b) the Sponsors, and (c) with respect to each of the foregoing entities in clauses (a) and (b), such entity's current and former affiliates (for the avoidance of doubt, not including the Debtor), and each of such entity's, and such entity's current and former affiliates', current and former equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board

members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

113.118. "*TRU Retail Debtors*" means, excluding the Debtor, Toys "R" Us, Inc. and its affiliated debtors and debtors-in-possession in the cases jointly administered under Case No. 17-34665 (KLP), which includes, for the avoidance of doubt, the Toys Delaware Debtors.

114.119. "*U.S. Trustee*" means the Office of the United States Trustee for the Eastern District of Virginia.

115.120. "*Unexpired Lease*" means a lease to which one or more of the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

116.121. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

117.122. "*United States*" means the United States of America, its agencies, departments, or agents.

118.123. "*Voting Deadline*" means January 18, 2019, or such other date ordered by the Bankruptcy Court.

119.124. "*Wayne Parent*" means the Debtor.

B.      *Rules of Interpretation.*

For purposes of the Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (14) any immaterial effectuating provisions may be interpreted in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity. References in the Plan to the Debtor shall mean the Debtor or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, as applicable.

C.    *Computation of Time.*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan or Confirmation Order. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.    *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate or limited liability company governance matters relating to the Debtor shall be governed by the laws of the state of incorporation or formation (as applicable) of the Debtor.

E.    *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to the legal tender of the United States, unless otherwise expressly provided.

F.    *Reference to the Debtor or the Reorganized Debtor.*

Except as otherwise specifically provided in the Plan to the contrary references to the Reorganized Debtor means the Debtor to the extent context requires.

G.    *Controlling Document.*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided, however, with respect to any conflict or inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

## ARTICLE II
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

A.    *Administrative Claims.*

Except with respect to Administrative Claims that are Accrued Professional Compensation Claims and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Administrative Claim and the Debtor agree to less favorable treatment, each holder of an Administrative Claim shall be paid in full in Cash on the unpaid portion of such Administrative Claim in accordance with the following: (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) if such Administrative Claim is not Allowed as of the Effective Date, on or as soon as reasonably practicable after the date such Administrative Claim is Allowed pursuant to a Final Order; (c) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court, or (d) if an Allowed Administrative Claim is not due and payable as of the Effective Date, the date such Allowed Administrative Claim becomes due and payable in accordance with the terms and conditions agreed upon by the Holder of such Allowed Administrative Claim and the Debtor or Reorganized Debtor, as applicable, or as soon thereafter as is reasonably practicable; *provided* that Allowed Administrative Claims that arise in the ordinary course of the Debtor's businesses, including Claims held by Governmental Units for taxes incurred by the Debtor following the Petition Date (in accordance with section 503(b)(1)(D) of the Bankruptcy Code), shall be paid in the ordinary course of business in accordance with applicable law and the terms and subject to the conditions of any agreements governing, instruments evidencing, or other

11

documents relating to such transactions; *provided* that any Administrative Claim that has been expressly assumed by a Purchaser pursuant to Sale Transaction Documents to which it is a party shall not be an obligation of the Debtor.

Except as otherwise provided in this <u>Article II.A</u> and except with respect to Administrative Claims that are Accrued Professional Compensation Claims, requests for payment of (or Proofs of Claim for) Administrative Claims must be Filed and served on the Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of (or Proofs of Claim for) such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or their property and such Administrative Claims shall be deemed discharged, compromised, settled, and released as of the Effective Date.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

Objections to requests for payment of such Administrative Claims, if any, must be Filed and served on the requesting party and the Reorganized Debtor by the Administrative Claims Objection Bar Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims as to which an objection is Filed shall be determined by, and satisfied in accordance with, an order that becomes a Final Order of the Bankruptcy Court.

B.    *Accrued Professional Compensation Claims.*

1.    **Professional Fee Escrow Account.**

As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtor shall establish the Professional Fee Escrow Account.  The Debtor shall fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be funded no later than the Effective Date and maintained in trust for the Professionals and members of the Creditors' Committee and shall not be considered property of the Debtor's Estate or the Reorganized Debtor; *provided* that the Estate shall have a reversionary interest in the excess amount, if any, remaining in the Professional Fee Escrow Account when all such Allowed amounts owing to Professionals and members of the Creditors' Committee have been paid in full, and any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Estate and shall be distributed by the Reorganized Debtor in accordance with the Plan without any further action or order of the Bankruptcy Court.

2.    **Final Fee Applications, Payment of Accrued Professional Compensation Claims, and Payment of Accrued Creditors' Committee Member Expense Claims.**

All final requests for payment of Accrued Professional Compensation Claims incurred during the period from the Petition Date through the Confirmation Date, shall be Filed no later than the first Business Day that is 60 days following the Effective Date.  All Entities' respective rights (if any) to object to allowance or payment of all or any portion of any Accrued Professional Compensation Claims shall be preserved.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court.  The amount of Accrued Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by a Final Order.  To the extent that funds held in the Professional Fee Escrow Account are unable to satisfy the Allowed amount of Accrued Professional Compensation Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with <u>Article II.A</u> of the Plan.  Notwithstanding anything to the contrary herein, the Fee Examiner Order shall remain in effect pursuant to its own terms.

3.    **Professional Fee Escrow Amount.**

To receive payment for unbilled fees and expenses incurred through the Confirmation Date, the Professionals shall estimate their Accrued Professional Compensation Claims before and as of the Confirmation Date and shall

deliver such estimate to the Debtor no later than 10 days prior to the Effective Date; *provided* that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtor may estimate the unbilled fees and expenses of such Professional. The total aggregate amount so estimated shall be utilized by the Debtor to determine the Professional Fee Escrow Amount; *provided that* the Reorganized Debtor shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

    4.    **Post-Confirmation Fees and Expenses.**

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtor. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this <u>Article III</u>.

A.    *Summary of Classification.*

Claims and Interests, except for Administrative Claims, Accrued Professional Compensation Claims, and Priority Tax Claims, are classified in the Classes set forth in this <u>Article III</u>. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Intercompany Claims | Unimpaired or Impaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 5 | Interests in the Debtor | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.      *Treatment of Claims and Interests.*

The treatment provided to each Class relating to the Debtor for distribution purposes and voting rights are specified below:

1.   **Class 1 - Other Secured Claims.**

(a)     *Classification*:  Class A-1 consists of all Other Secured Claims.

(b)     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction and discharge of each Allowed Other Secured Claim, each Holder thereof shall receive, either:  (a) payment in full in Cash; or (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code.

(c)     *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.   **Class 2 - Other Priority Claims.**

(a)     *Classification*:  Class 2 consists of all Other Priority Claims.

(b)     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction and discharge of each Allowed Other Priority Claim, each Holder thereof shall receive, either:  (a) payment in full in Cash or (b) such other treatment as shall render such Claim Unimpaired.

(c)     *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.   **Class 3 - General Unsecured Claims.**

(a)     *Classification*:  Class 3 consists of all General Unsecured Claims.

(b)     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in full and final satisfaction of each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive their pro rata share of the consideration to be specified in the Restructuring Transactions Memorandum, which in any case will consist of either direct or indirect ownership of the New Contingent Equity Rights (as defined in the Propco I Plan), which direct or indirect ownership may be accomplished through the receipt of New Common Stock, the direct receipt of the New Contingent Equity Rights, or another mechanism to be determined.

(c)     *Voting*:  Class 3 is Impaired under the Plan.  Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.     **Class 4 - Intercompany Claims.**

(a)     *Classification*:  Class 4 consists of all Intercompany Claims.

(b)     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, each Intercompany Claim shall be Reinstated or canceled without any distribution on account of such Intercompany Claim as determined by the Debtor in its sole discretion.

(c)     *Voting*:  Holders of Claims in Class 4 are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

5.     **Class 5 - Interests in the Debtor.**

(a)     *Classification*:  Class 5 consists of all Interests in the Debtor.

(b)     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, in full and final satisfaction and discharge of each Interest in the Debtor, each Holder of an Interest in the Debtor will be cancelled without any distribution on account of such Interest.

(c)     *Voting*:  Class 5 is Impaired under the Plan.  Holders of Allowed Claims in Class 5 are conclusively presumed to reject the Plan.

C.     *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor or Reorganized Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan

D.     *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the Disclosure Statement Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.  If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be presumed to have accepted the Plan.

E.     *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.*

The Debtor shall seek Confirmation for the Debtor pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtor reserve the right to modify the Plan in accordance with Article X to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

F.     *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating

thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.    *General Settlement of Claims.*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve such good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.  Distributions made to holders of Allowed Claims in any Class are intended to be final.

In settlement of any claims held by the Term B-2 Lenders and Term B-3 Lenders (as defined in the Toys Delaware Plan) in respect of ratable treatment with the Term B-4 Lenders (as defined in the Toys Delaware Plan) on account of recoveries from the Debtor, on the Effective Date, TRU Kids Holdings One Inc. will purchase the New Contingent Equity Rights from the Debtor in exchange for equally valued common equity in TRU Kids Holdings One Inc., which shall be distributed to Holders of General Unsecured Claims against Wayne Parent pursuant to **Article III** of this Plan.

To the extent that any Term B-4 Lenders (as defined in the Toys Delaware Plan) but not the Term B-2 Lenders or Term B-3 Lenders receive shares of TRU Kids Holdings One Inc. pursuant to this Plan, those Term B-4 lenders will contribute such shares to their issuer or cancel such shares, in either case, for no additional consideration.

B.    *Restructuring Transactions.*

On or before the Effective Date, the Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, the Plan Supplement and the Confirmation Order (the "Restructuring Transactions"), including:  (1) the execution, filing, and delivery of appropriate agreements or other documents of merger, sale, disposition, transfer, consolidation, reorganization, restructuring, liquidation, dissolution, or equity issuance, certificates of incorporation, certificates of conversion, certificates of formation, operating agreements, bylaws, or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of sale, equity issuance, transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the issuance of the New Common Stock (if applicable); (4) the execution of the New Organizational Documents, (5) the vesting of the Debtor's assets in the Reorganized Debtor, in each case in accordance with the Plan and the Plan Supplement; (6) such other transactions that are necessary or appropriate to implement the Plan in the most tax efficient manner, including any mergers, sales, dispositions, transfers, consolidations, restructurings, conversions, formations, organizations, dissolutions or liquidations (including the transactions set forth in the Restructuring Transactions Memorandum); and (7) all other transactions or actions that either (x) the Debtor or (y) the Reorganized Debtor, as applicable, determine are necessary or appropriate to implement the Plan.  The Restructuring Transactions may include a transfer of all or substantially all or a part of the Debtor's assets or entities to a newly-formed entity (or an affiliate or subsidiary of such entity) formed and controlled by certain holders of Claims against the Debtor and, in such case, some or all of the New Common Stock (and/or other interests) issued to holders of Claims pursuant to the Plan may comprise stock (and/or other interests) of such new entity (or an affiliate or subsidiary of such entity).

C.      *Sources of Consideration for Plan Distributions.*

The Debtor Cash on hand, and any other Cash received or generated by the Debtor shall be used to fund the distributions to holders of Allowed Claims against the Debtor in accordance with the treatment of such Claims as set forth herein and subject to the terms provided herein.

D.      *Issuance of New Common Stock.*

Upon the Effective Date, all Interests in the Debtor shall be cancelled and the New Common Stock may be issued as set forth under the Plan. The New Common Stock (if applicable) shall be freely tradable and eligible for the book-entry delivery, depository and settlement services of DTC. On the Effective Date, the Reorganized Debtor shall issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan.

On the Effective Date, Holders of New Common Stock (if applicable) shall be parties to certain New Organizational Documents. On the Effective Date, the Reorganized Debtor and the Holders of New Common Stock (to the extent applicable) shall enter into and deliver the New Organizational Documents to each Entity that is intended to be a party thereto and such New Organizational Documents shall be deemed to be valid, binding, and enforceable in accordance with their terms, and each Holder of New Common Stock shall be bound thereby, in each case, without the need for execution by any party thereto other than the Reorganized Debtor.

E.      *Exemption from Registration Requirements.*

The New Common Stock is or may be a security within the meaning of Section 2(a)(1) of the Securities Act, Section 101 of the Bankruptcy Code and applicable state securities laws.

The offering, issuance, sale and distribution of all shares of New Common Stock will be exempt from, among other things, the registration and prospectus delivery requirements under the Securities Act or any similar federal, state, or local laws in reliance upon section 1145 of the Bankruptcy Code to the maximum extent permitted and applicable, without further act or action by the Reorganized Debtor. The New Common Stock (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act unless the initial recipient thereof is an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code, and (b) if such security is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, such security will be freely tradable and transferable by the initial recipient thereof if at the time of transfer such initial recipient is not an "affiliate" (as defined in Rule 144(a)(1) under the Securities Act) of the Reorganized Debtor and has not been such an "affiliate" within 90 days of such transfer.

The Reorganized Debtor need not provide any further evidence to DTC other than the Plan or the Confirmation Order with respect to the treatment of securities to be issued under this Plan (including securities issuable upon exercise of such securities) under applicable securities laws.

DTC shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether such securities are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services. Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Common Stock is exempt from registration and/or eligible for DTC book-entry delivery, settlement and depository services.

F.      *Subordination.*

The allowance, classification, and treatment of all Claims and Interests under the Plan conform to and are consistent with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and the Plan recognizes and implements any such rights. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the rights of the Debtor or the Reorganized Debtor, as applicable, are hereby reserved to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto upon entry of a Final Order ruling that such Allowed Claim or Allowed Interest

(or portion thereof) is subordinated. On the Effective Date, any and all subordination rights or obligations that a Holder of a Claim or Interest may have with respect to any distribution to be made under the Plan will be discharged and terminated, and all actions related to the enforcement of such subordination rights will be enjoined permanently. Accordingly, distributions under the Plan to holders of Allowed Claims and Allowed Interests will not be subject to turnover or payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

G.    *Vesting of Assets in the Reorganized Debtor.*

Except as otherwise provided herein, or in any agreement, instrument, or other document incorporated in the Plan (including, without limitation, the Restructuring Transactions Memorandum), on the Effective Date, all property in Debtor's Estate, including the Reorganized Debtor's Assets, all Causes of Action, claims, or defenses, and any property acquired by any of the Debtor under the Plan shall vest in each respective Reorganized Debtor (excluding any Executory Contracts and Unexpired Leases included on the Schedule of Rejected Executory Contracts and Unexpired Leases), free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than any restrictions expressly imposed by the Plan, the Plan Supplement, or the Confirmation Order. Notwithstanding anything to the contrary in the Plan, the Unimpaired Claims against a Debtor shall remain the obligations solely of the Debtor or the Reorganized Debtor and shall not become obligations of any other Debtor or Reorganized Debtor by virtue of the Plan, the Chapter 11 Cases, or otherwise.

H.    *Cancellation of Securities and Agreements.*

On the Effective Date, except to the extent otherwise provided in the Plan, under <u>Article IV.G</u> and <u>IV.H</u>, all notes, instruments, Certificates, and other documents evidencing, or in anyway related to, Claims or Interests shall be canceled and the obligations of the Debtor or Reorganized Debtor thereunder or in any way related thereto shall be released, settled, and compromised, *provided, however,* that, other than as provided by the Toys Delaware Plan and the Geoffrey Plan, the Secured Term Loan B Credit Agreement (as defined in the Toys Delaware Plan) shall continue in effect solely for the Secured Term Loan B Credit Facility Agent to comply with its obligations under this Plan and to enforce any obligations owed to it under this Plan; *provided, further,* that nothing herein shall alter, amend or otherwise modify the rights and obligations of the Secured Term Loan B Credit Facility Agent with respect to any of the Toys Delaware Debtors and Geoffrey Debtors, as set forth in the Toys Delaware Plan and Geoffrey Plan, respectively.

I.    *Corporate Action.*

On the Effective Date, or as soon thereafter as is reasonably practicable, all actions as may be necessary or appropriate to effect any transactions described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (a) the adoption, execution, delivery and/or filing of the New Organizational Documents, (b) the selection of the directors, managers, and officers for the Reorganized Debtor, including the appointment of the New Board, in accordance with the terms of the Plan; (c) the authorization, issuance, delivery and distribution of New Common Stock; (d) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (e) all other actions that may be required by applicable law. Upon the Effective Date, all matters provided for in the Plan involving the corporate structure the Reorganized Debtor, and any corporate action required by the Debtor, or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtor or the Reorganized Debtor. On or before the Effective Date (as applicable), the appropriate officers of the Debtor or the Reorganized Debtor shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the Restructuring Transactions) in the name of and on behalf of the Reorganized Debtor, including and any and all other agreements, documents, Securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this <u>Article IV.M</u> shall be effective notwithstanding any requirements under non-bankruptcy law.

J.        *Corporate Existence; Tax Classification.*

As noted above, Holders of Class 3 Claims will directly or indirectly receive the New Contingent Equity Rights, which constitute Interests in Propco I.  Except as otherwise provided in the Propco I Plan or any agreement, instrument, or other document incorporated in the Propco I Plan or the Propco I Plan Supplement, on the Propco I Effective Date, Reorganized Propco I and the Reorganized Propco I Subsidiaries shall continue to exist as separate limited liability companies, with all the powers of a corporation, limited liability company, partnership, or other form of Entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Propco I Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation documents) in effect before the Propco I Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended or amended and restated by the Propco I Plan (including pursuant to the provisions of Article IV.K of the Propco I Plan), the Propco I New Organizational Documents, or otherwise, and to the extent such documents are amended or amended and restated, such documents are deemed to be amended or amended and restated pursuant to the Propco I Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).  Subject to the Propco I Restructuring Transactions Memorandum, Reorganized Propco I will be treated as a partnership for U.S. federal income (and applicable state and local) tax purposes, and the Reorganized Propco I Subsidiaries will be treated as disregarded entities of Reorganized Propco I for U.S. federal income (and applicable state and local) tax purposes; *provided* that, on or before the Propco I Effective Date and at the option of the Propco I Creditors' Committee, the Propco I Debtors will (and will cause their affiliates to) take any actions necessary to cause Reorganized Propco I and/or one or more of the Reorganized Propco I Subsidiaries to be treated as a corporation for U.S. federal income (and applicable state and local) tax purposes effective as of prior to the actual or constructive receipt of any consideration under the Propco I Plan, including by executing and filing one or more IRS Forms 8832 (and analogous forms for applicable state and local tax purposes).

To the extent the New Common Stock is issued, the tax classification of the entity issuing the New Common Stock will be specified in the Restructuring Transactions Memorandum.

K.        *Charter, Bylaws, and New Organizational Documents.*

On the Effective Date, or as soon thereafter as is reasonably practicable, to the extent applicable, the Debtor's respective certificates of incorporation and bylaws (and other formation and constituent documents relating to limited liability companies) shall be amended or amended and restated as may be required to be consistent with the provisions of the Plan, the New Organizational Documents, and any other documents required to complete the Restructuring Transactions, as applicable, and the Bankruptcy Code.  The New Organizational Documents shall, among other things: (a) authorize the issuance of the New Common Stock; and (b) be modified or deemed to be modified to include a provision pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, prohibiting the issuance of non-voting equity Securities.  After the Effective Date, each Reorganized Debtor may amend and restate its certificate of incorporation and other formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

L.        *Effectuating Documents; Further Transactions.*

Prior to the Effective Date, the Debtor, and on and after the Effective Date, the Reorganized Debtor, in each case to the extent applicable, and the officers and members thereof are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

M.        *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property or any Interests pursuant to the Plan, including the recording of any amendments to such transfers, or any new mortgages or liens placed on the property in connection with such transfers, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar

tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

N.      *Directors and Officers.*

To the extent applicable, the members of the New Board shall be identified prior to the Confirmation Hearing in the Plan Supplement or at the Confirmation Hearing consistent with section 1129(a)(5) of the Bankruptcy Code. On the Effective Date, except as otherwise provided in the Plan Supplement or announced on the record at the Confirmation Hearing, the existing officers of the Debtor shall serve in their current capacities for the Reorganized Debtor. From and after the Effective Date, each director, officer, or manager of the Reorganized Debtor shall serve pursuant to the terms of the respective Reorganized Debtor's charters and bylaws or other formation and constituent documents, and applicable laws of the respective Reorganized Debtor's jurisdiction of formation.

O.      *Retention of Causes of Action.*

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order such that the Debtor retain no right or interest in such Cause of Action as of the Effective Date, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall reserve, retain, and may enforce, all rights to commence, prosecute or settle, as appropriate, any and all Causes of Action, whether arising or accruing before or after the Petition Date, which authority shall vest in the Reorganized Debtor on the Effective Date pursuant to the terms of the Plan. The Reorganized Debtor may enforce all rights to commence, prosecute, or settle, as appropriate, any and all such Causes of Action, whether arising or accruing before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. Any Reorganized Debtor may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Reorganized Debtor deems appropriate, including on a contingency fee basis.

**No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor, or the Reorganized Debtor will not pursue any and all available Causes of Action against them. The Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan**. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order such that the Debtor hold no right or interest in such Cause of Action as of the Effective Date, the Debtor and the Reorganized Debtor expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. The Reorganized Debtor reserve and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

P.      *Avoidance Actions.*

As of the Effective Date, the Debtor waives all rights to commence or otherwise pursue any and all Avoidance Actions arising under section 547 of the Bankruptcy Code or any comparable "preference" action arising under applicable non-bankruptcy law, *provided that*, (i) neither the Debtor nor the Reorganized Debtor waive any rights to commence or pursue any Avoidance Actions against the TRU Retail Debtors or any Former Debtors; and (ii) except as expressly provided in the Plan, the Reorganized Debtor shall retain the right to assert any Causes of Action assertable in any Avoidance Action as defenses or counterclaims in any Cause of Action brought by any Entity.

Q.    *Regulatory Requirements*

All parties shall abide by, and use their reasonable best efforts to obtain, any regulatory and licensing requirements or approvals as promptly as practicable to achieve Consummation.

R.    *Insurance Contracts.*

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court in the Chapter 11 Cases (including any other provision that purports to be preemptory or supervening, grants an injunction or release, or requires a party to opt out of any releases): (i) on and after the Effective Date, nothing shall alter, amend or otherwise modify the terms and conditions of (or the coverage provided by) any of the Insurance Contracts except that the Reorganized Debtor shall be liable in full for all of its and the Debtor's obligations thereunder regardless of whether such obligations arise before or after the Effective Date, without the requirement or need for the Insurer to file a proof of claim, an Administrative Claim, a Cure Claim or object to any cure amount, *provided* that any and all rights of the Debtor to dispute such payments or reimbursements are expressly reserved; (ii) nothing shall permit or otherwise effect a sale, an assignment or any other transfer of any Insurance Contract that has been issued by ACE American Insurance Company, Federal Insurance Company, or any of their affiliates or successors (together, "Chubb Companies") at any time to (or which provide coverage to) ~~any of~~ the Debtor (or any of ~~their~~its Affiliates or any of ~~their~~its predecessors), and all agreements, documents or instruments relating thereto (collectively, the "Chubb Insurance Contracts") and/or any rights, benefits, claims, rights to payments, or recoveries under or relating to the Chubb Insurance Contracts without the express written consent of the Chubb Companies; and (iii) nothing shall permit or otherwise effect a sale, an assignment or any other transfer of any Insurance Contract that has been issued by Zurich American Insurance Company, American Zurich Insurance Company, Steadfast Insurance Company, or any of their affiliates or successors (together, "Zurich") at any time to (or which provide coverage to) the Debtor (or any of ~~their~~its Affiliates or any of ~~their~~its predecessors), and all agreements, documents or instruments relating thereto (collectively, the "Zurich Insurance Contracts") and/or any rights, benefits, claims, rights to payments, or recoveries under or relating to the Zurich Insurance Contracts without the express written consent of Zurich. For the avoidance of doubt, any such rights and obligations shall be determined under the Insurance Contracts and applicable non-bankruptcy law.[3]

**ARTICLE V**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including, without limitation, any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection with Confirmation of the

---

[3]    For the avoidance of doubt, nothing herein shall prohibit or require the consent of the Chubb Companies and/or Zurich to transfer any rights, benefits, claims, rights to payment, proceeds, or recoveries related to any Non-Released Claims held by any Successor Entity or the Non-Released Claims Trust (as those terms are defined in the Toys Delaware Plan), in accordance with the Toys Delaware Plan.

For the avoidance of doubt, (i) nothing in this paragraph shall in any way affect the Non-Released Claims Trust's, or, as applicable, the Successor Entities' (as those terms are defined in the Toys Delaware Plan), ability to assert the Non-Released Claims or any other applicable claims that are not otherwise released pursuant to the Toys Delaware Plan and are properly asserted against the D&O Liability Insurance Policies, or access the proceeds of the D&O Liability Insurance Policies for any losses on account of such Non-Released Claims or such other claims, and (ii) no consent shall be necessary for the the Non-Released Claims Trust, or as applicable, the Successor Entities, to transfer such proceeds, once received from the insurer, provided, however, that the Non-Released Claims Trust and the Successor Entities shall not be insureds or otherwise covered under the Chubb Insurance Contracts.

Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed or assumed and assigned to a third party, as applicable, in connection with any Sale Transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (5) is an Insurance Contract.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date.

B.      *Claims Based on Rejection of Executory Contracts and Unexpired Leases.*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court by the later of:  (1) the Claims Bar Date, Administrative Claims Bar Date, or the Governmental Bar Date, as applicable; and (2) 4:00 p.m., prevailing Eastern Time, on the date that is thirty (30) days following the entry of an Order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtor, its Estate, the Reorganized Debtor, or property of the foregoing parties, without the need for any objection by the Debtor, its Estate, the Reorganized Debtor and without the need for any further notice to, or action, order, or approval of the Bankruptcy Court.  Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan, as applicable.

C.      *Cure of Defaults for Assumed and Assigned Executory Contracts and Unexpired Leases.*

Any Cure Claims under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, by the Debtor as an Administrative Claim, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of the Cure Claim, (2) the ability of the Debtor's Estate or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Claims required by section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or Orders resolving the dispute and approving the assumption.

Unless otherwise provided by an Order of the Bankruptcy Court, at least seven (7) days before the Voting Deadline, the Debtor shall cause notice of proposed assumption and proposed Cure Claims to be sent to applicable counterparties.  Any objection by such counterparty must be Filed, served, and actually received by the Debtor not later than seven days after service of notice of the Debtor's proposed assumption and associated Cure Claims.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or Cure Claim.

Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Claims, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition, restricting use or tenant mix, or other bankruptcy-related defaults, including, without limitation, violation of go-dark or cessation of operation provisions or other provisions which seek to condition or restrict the use or assignment of an Unexpired Lease, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment.  Any provisions in any lease or other conveyance document that prohibits or conditions the assignment of an Unexpired Lease or allows the landlord or other counterparty, as applicable, to terminate, recapture, or impose any penalty upon assignment of any such Unexpired Lease, or as a result of a closure or failure to operate in the premises, are deemed by this Plan to be unenforceable anti-assignment provisions that are void and of no force and effect.  **Any liabilities reflected in the**

22

**Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.**

    D.       *Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Leases.*

        Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor under such contracts or leases as modified, amended, supplemented, or restated.  In particular, notwithstanding any non-bankruptcy law to the contrary, to the extent applicable, the Reorganized Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Debtors from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

    E.       *D&O Liability Insurance Policies.*

        On the Effective Date, the Debtor shall assume all of the D&O Liability Insurance Policies pursuant to section 365 of the Bankruptcy Code or otherwise, subject to the Debtor's rights to seek amendment to such D&O Liability Insurance Policies.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption of each of the D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, Confirmation shall not discharge, impair, or otherwise modify any obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan as to which no Proof of Claim need be Filed.

    F.       *Indemnification Obligations.*

        To the extent applicable, the Debtor and Reorganized Debtor shall assume the Indemnification Obligations for the Debtor's current and former directors, officers, managers, and employees, and current attorneys, accountants, investment bankers, and other professionals of the Debtor, to the extent consistent with applicable law, and such Indemnification Obligations shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

    G.       *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

        Unless otherwise provided in the Plan, each assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or is rejected or repudiated under the Plan.

        Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, unless such Executory Contract or Unexpired Lease was assumed by the Debtor and approved by the Bankruptcy Court.

    H.       *Reservation of Rights.*

        Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the list of Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan contained in the Plan Supplement, nor anything else in the Plan shall constitute an admission by the Debtor or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor or any other Entity, as applicable, has any liability thereunder.

I.       *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

A.       *Timing and Calculation of Amounts to Be Distributed.*

Except as otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such a Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against or Allowed Interest in the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class as applicable; *provided* that the Debtor or Reorganized Debtor, as applicable, will use reasonable commercial efforts to make distributions to holders of General Unsecured Claims that are Allowed as of the Effective Date within sixty (60) days of the Effective Date.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII of the Plan.  Except as otherwise provided in the Plan, holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim or Allowed Interest shall, on account of such Allowed Claim or Allowed Interest, receive a distribution in excess of the Allowed amount of such Claim or Interest payable in accordance with the Plan or other Final Order of the Bankruptcy Court.

B.       *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Disbursing Agent.

Subject to the terms of the Plan, the Disbursing Agent shall be empowered to:  (1) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (2) make all distributions contemplated under the Plan; (3) employ professionals to represent it with respect to its responsibilities; (4) object to or otherwise resolve any General Unsecured Claim, Priority Claim, or Other Secured Claim, subject to the terms hereof; and (5) exercise such other powers as may be vested in the Reorganized Debtor by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

C.       *Distributions on Account of Claims Allowed After the Effective Date.*

1.       **Payments and Distributions on Disputed Claims.**

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.       **Special Rules for Distributions to Holders of Disputed Claims.**

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtor or the Reorganized Debtor, on the one hand, and the holder of a Disputed Claim, on the other hand, no partial payments and

no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.      **Record Date for Distribution.**

On the Distribution Record Date, the Claims Register shall be closed and the Debtor, the Reorganized Debtor, or any other party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register (or with respect to Holders of Secured Term Loan B-4 Facility Claims, those Holders of Secured Term Loan B-4 Facility Claims as reflected on the Secured Term Loan B Credit Facility Agent's books and records) as of the close of business on the Distribution Record Date.

2.      **Delivery of Distributions in General.**

Except as otherwise provided herein, the Debtor shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtor's records (or in the case of Holders of Secured Term Loan B-4 Facility Claims, as reflected on the Secured Term Loan B Credit Facility Agent's books and records) as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtor; *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder (other than with respect to Holders of Secured Term Loan B-4 Facility Claims as set forth above). If a Holder holds more than one Claim in any one Class, all Claims of the Holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

3.      **Minimum; De Minimis Distributions.**

No Cash payment of less than $50.00, in the reasonable discretion of the Debtor or Reorganized Debtor, as applicable, shall be made to a Holder of an Allowed Claim or Allowed Interest on account of such Allowed Claim or Allowed Interest.

4.      **Undeliverable Distributions and Unclaimed Property.**

In the event that any notice or distribution to any holder is returned as undeliverable, no such notice or distribution to such holder shall be made unless and until the Reorganized Debtor have determined the then current address of such holder, at which time such notice or distribution shall be made to such holder without interest; *provided* that such notice or distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date of the attempted distribution to the holder. After such date, all unclaimed property or interests in property shall revert to the Debtor or Reorganized Debtor for the benefit of other Allowed Claims in accordance with the terms of the Plan, and the Claim of any holder to such property or interest in property shall be released, settled, compromised, and forever barred.

5.      **Manner of Payment Pursuant to the Plan.**

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Debtor or Reorganized Debtor by check or by wire transfer, at the sole and exclusive discretion of the Debtor or Reorganized Debtor

E.      *Compliance with Tax Requirements/Allocations.*

In connection with the Plan, to the extent applicable, the Debtor, Reorganized Debtor, and other withholding agents shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtor, Reorganized Debtor, and other withholding agents shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements,

including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

To the extent any subrogation claim is deemed to arise against Toys "R" Us Delaware Inc. or any of its direct or indirect subsidiaries as a result of any distribution made under the Plan, such subrogation claim will be treated as having been immediately cancelled for no consideration, rather than being distributed to Toys "R" Us, Inc. and then contributed to Toys "R" Us Delaware Inc. or any of its direct or indirect subsidiaries.

F.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, the Confirmation Order, or documents executed as required by this Plan, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim.

G.      *Setoffs and Recoupment.*

Except as otherwise expressly provided herein, the Debtor may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against any Holder, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim, Cause of Action, or legal or equitable defense it may have against the Holder.

H.      *Claims Paid or Payable by Third Parties.*

1.      **Claims Paid by Third Parties.**

The Debtor or Reorganized Debtor, as applicable, shall be authorized to reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, as applicable, including on account of recourse to collateral held by third parties that secure such Claim.  To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such holder shall, within 14 days of receipt thereof, repay or return the distribution to the Debtor or Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.      **Claims Payable by Third Parties.**

No distributions under the Plan shall be made on account of a Claim that is payable pursuant to one of the Debtor's Insurance Contracts, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the holder of such Claim has exhausted all remedies with respect to such Insurance Contract, surety agreement, other non-Debtor payment agreement, or collateral, as applicable.  To the extent that one or more of the Debtor's Insurers, sureties, or non-Debtor payors pays or satisfies a Claim in full or in part (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such satisfaction, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court.

3.        **Applicability of Insurance Contracts.**

Except as otherwise provided in the Plan, distributions to holders of Claims covered by an Insurance Contract shall be in accordance with the provisions of any applicable Insurance Contract. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including Insurers under any Insurance Contract, nor shall anything contained herein constitute or be deemed a waiver by Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

I.        *Indefeasible Distributions.*

Any and all distributions made under the Plan shall be indefeasible and not subject to clawback.

J.        *Distributions on Account of Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions on account thereof take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto. Notwithstanding the foregoing, the Plan shall be without prejudice to the contractual, legal, or equitable subordination rights (if any) in favor of any holder of any Allowed Claim, and any holder of any Allowed Claim (if any) subject to any such contractual, legal, or equitable subordination shall remit any distribution on account of such Claim to which such holder's Claim is subordinated in accordance with and to the extent required under any applicable contractual, legal, or equitable subordination obligation

# ARTICLE VII
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

A.        *Allowance of Claims and Interests.*

The Debtor and the Reorganized Debtor, as applicable, shall have and shall retain any and all rights and legal or equitable defenses that the Debtor had with respect to any Claim or Interest immediately before the Effective Date. Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed pursuant to the Plan or the Bankruptcy Code or a Final Order, including the Confirmation Order (when it becomes a Final Order), allowing such Claim.

B.        *Claims and Interests Administration Responsibilities.*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Reorganized Debtor shall have the sole authority (subject to any party in interest's right to object to a Claim or Interest under section 502(a) of the Bankruptcy Code): (1) to File, withdraw, or litigate to judgment objections to Disputed Claims or Disputed Interests; (2) to settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, Order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, Order, or approval by the Bankruptcy Court.

C.        *Estimation of Claims and Interests.*

Prior to and on the Effective Date, the Debtor, and, after the Effective Date, the Reorganized Debtor, may (but are not required to), at any time, request that the Bankruptcy Court estimate: (1) any Disputed Claim or Disputed Interest pursuant to applicable law; and (2) any Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or Interest, or

whether the Bankruptcy Court has ruled on any such objection, the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim or Interest, that estimated amount shall constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest for all purposes under the Plan, including for purposes of distributions, and the Debtor or the Reorganized Debtor, as applicable, may elect to pursue additional objections to the ultimate distribution on such Claim or Interest.  If the estimated amount constitutes a maximum limitation on such Claim or Interest, the Debtor or the Reorganized Debtor, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim or Interest.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated.  All of the aforementioned Claims and Interests and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims and Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Adjustment to Claims or Interests without Objection.*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtor without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims.*

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

F.      *Disallowance of Claims.*

Any Claims or Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Debtor or the Reorganized Debtor, as applicable, by that Entity have been turned over or paid to the Debtor or the Reorganized Debtor.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.**

G.      *Amendments to Claims.*

On or after the Effective Date, except as otherwise provided herein, a Claim or Interest may not be Filed or amended without the prior authorization of the Debtor or the Reorganized Debtor, as applicable, and any such new or amended Claim or Interest Filed shall be deemed Disallowed and expunged without any further notice to or action, Order, or approval of the Bankruptcy Court.

H.      *No Distributions Pending Allowance.*

If an objection to a Claim or Interest or portion thereof is Filed as set forth in <u>Article VII</u> of the Plan, or if such Claim or Interest is scheduled as Disputed, no payment or distribution provided under the Plan shall be made on

account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest; however, at the sole discretion of the Debtor or the Reorganized Debtor, as applicable, payment may be made on any undisputed portion of such Claim or Interest.

I.     *Distributions After Allowance.*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan.  As soon as practicable after the date that the Order of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Reorganized Debtor shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law or as otherwise provided in Article III.B of the Plan.

J.     *Single Satisfaction of Claims.*

Holders of Allowed Claims and Allowed Interests may assert such Claims against or Interests in the Debtor(s) obligated with respect to such Claims or Interests, and such Claims or Interests shall be entitled to share in the recovery provided for the applicable Class of Claims or Interests against the Debtor based upon the full Allowed amount of such Claims or Interests.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim or Allowed Interest exceed 100 percent (100%) of the underlying Allowed Claim or Allowed Interest plus applicable interest, if any.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.     *Settlement, Compromise, and Release of Claims and Interests.*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distribution, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtor), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on such Claims, Interests, or Causes of Action from and after the Petition Date, whether known or unknown, against, liabilities, of Liens on, obligations of, rights, or Causes of Action against, and Interests in, the Debtor or any of their assets or properties, regardless of whether any property shall have been assumed, assumed and assigned, distributed, or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose or accrued before the Effective Date, any liability (including withdrawal liability) to the extent such Causes of Action, Claims, or Interests related to service performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representation or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such Cause of Action, Claim, debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Cause of Action, Claim, or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such Cause of Action, Claim, or Interest has accepted the Plan.  Any default by the Debtor or their Affiliates with respect to any Cause of Action, Claim, or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Causes of Action, Claims, and Interests subject to the Effective Date occurring.

B.     *Discharge of Claims and Termination of Equity Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtor), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on such Claims, Interests, or Causes of Action from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of their assets or properties, regardless of whether any property shall have been assumed, assumed and assigned, distributed, or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose or accrued before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtor or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to Consummation.

C.    **Release of Liens.**

**Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall revert to the Debtor or Reorganized Debtor, as applicable.**

**Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Debtor.**

D.    **Releases by the Debtor.**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtor and the Debtor's Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, including any derivative Cause of Action asserted on behalf of the Debtor, that the Debtor or the Debtor's Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Cause of Action against, or Interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that notwithstanding anything to the contrary herein, nothing in this Article or this Plan shall release (a) any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and the Restructuring Transactions; (b) any Administrative**

Claims held by the Debtor against the TRU Retail Debtor Parties or any Former Debtor, including any Administrative Claims pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code; (c) any Non-Released Claims; or (d) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any Entity.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.D by the Debtor, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Article VIII.D is: (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Causes of Action; (2) in the best interest of the Debtor and all Holders of Interests and Causes of Action; (3) fair, equitable, and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) subject to the terms and provisions herein, a bar to the Debtor asserting any Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Debtor.

E.    *Releases by Holders of Claims and Interests.*

As of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtor and each Released Party from any and all Causes of Action, whether known or unknown, including any derivative Causes of Action asserted on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, or the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that notwithstanding anything to the contrary herein, nothing in this Article or this Plan shall release (a) any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and the Restructuring Transactions; (b) any Administrative Claims held by the Debtor against the TRU Retail Debtor Parties or any Former Debtor, including any Administrative Claims pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code; (c) any Non-Released Claims; or (d) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any Entity.

For the avoidance of doubt, nothing contained herein shall affect any rights of any parties to the Settlement Agreement preserved under the Settlement Agreement.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.E, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Article VIII.E is: (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Causes of Action; (2) in the best interests of the Debtor and all Holders of Interests and Causes of Action; (3) fair, equitable, and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) subject to the terms and provisions herein, a bar to any of the Releasing Parties asserting any Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Debtor.

F.    **Exculpation.**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur any liability with respect to, and each Exculpated Party is released and exculpated from, any Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for Causes of Action related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan; <u>provided</u>, <u>however</u>, notwithstanding anything to the contrary herein, the following shall not release or exculpate: (i) any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and the Restructuring Transactions; (ii) any Administrative Claims held by the Debtor against the TRU Retail Debtor Parties or any Former Debtor, including any Administrative Claims pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code; (iii) any Non-Released Claims; or (iv) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any Entity.

Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Plan Debtor.

G.    **Injunction.**

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan, or the Confirmation Order, all Entities who have held, hold, or may hold Causes of Action, Claims, or Interests that have been compromised, settled, or released, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any and all Causes of Action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor, the Exculpated Parties, or the Released Parties on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Exculpated Parties, or the Released Parties or the property or the estate of the Debtor, the Exculpated Parties, or the Released Parties on account of or in connection with or with respect to any such Causes of Action, Claims, or Interests; (4) asserting any right of setoff, subrogation, recoupment, or other similar legal or equitable right of any kind against any obligation due from the Debtor, the Exculpated Parties, or the Released Parties or against the property of the Debtor, the Exculpated Parties, or the Released Parties on account of or in connection with or with respect to any such Causes of Action, Claims, or Interests unless such Holder has Filed a motion requesting the right to perform such legal or equitable right on or before the Effective Date, and notwithstanding an indication of any Cause of Action, Claim, or Interest or otherwise that such Holder asserts, has, or intends to preserve pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any and all Causes of Action or other proceeding of any kind on account of or in connection with or with respect to any such Causes of Action, Claims, or Interests released or settled pursuant to the Plan; <u>provided</u>, <u>however</u>, that, notwithstanding anything to the contrary herein, nothing in this Article or this Plan shall enjoin: (i) any Entity from taking the

preceding actions with respect to any post-Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and the Restructuring Transactions; (ii) any Administrative Claims held by the Debtor against the TRU Retail Debtor Parties or any Former Debtor, including any Administrative Claims pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code; (iii) any Non-Released Claims; or (iv) any and all setoff, subrogation, recoupment, or other similar legal or equitable right held by the Debtor against any Entity.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.G of the Plan.

Notwithstanding anything to the contrary in the Toys Inc. Plan, the Toys Delaware Plan, or the Propco II Plan, the releases described herein are binding on all Releasing Parties with respect to the Plan Debtor.

H.      Protections Against Discriminatory Treatment.

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtor, or another Entity with whom the Debtor have been associated, solely because Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtor are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.      Setoffs.

Except as otherwise expressly provided for in the Plan, Debtor, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or before the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor of any such Claims, rights, Causes of Action, and legal or equitable defenses that such Debtor may possess against such Holder. In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of a Debtor, unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff *provided*, that the foregoing shall not prevent any Holder of Claims or Interests from asserting setoff rights as an affirmative defense to the extent provided by applicable law.

J.      Recoupment.

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtor unless such Holder actually has timely Filed a Proof of Claim with the Bankruptcy Court preserving such recoupment, *provided*, that the foregoing shall not prevent any Holder of Claims or Interests from asserting recoupment as an affirmative defense to the extent provided by applicable law.

K.      Subordination Rights.

The classification and treatment of all Claims and Interests under the Plan shall conform to and with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and any such rights shall be settled, compromised, and released pursuant to the Plan.

*L.*     *Document Retention.*

On and after the Effective Date, the Debtor or Reorganized Debtor, as applicable, may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtor.

*M.*     *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

# ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

*A.*     *Conditions Precedent to Confirmation.*

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C:

    1.    the Bankruptcy Court shall have entered the Disclosure Statement Order;

    2.    the Plan shall have been Filed;

    3.    the Bankruptcy Court shall have entered the Confirmation Order;  and

    4.    the Plan Supplement shall have been Filed.

*B.*     *Conditions Precedent to the Effective Date.*

It shall be a condition to Consummation that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C:

    1.    the Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order; *provided*, *however*, that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

    2.    all documents and agreements necessary to implement the Plan shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

    3.    all governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

    4.    the Professional Fee Escrow Account shall have been funded with Cash, as applicable, in the amount of the aggregate Professional Fee Escrow Amount; and

5.      all actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units as provided for in the Plan.

*C.      Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in this <u>Article IX</u> may be waived by the Debtor only by consent of the Creditors' Committee in its sole discretion, and without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

## ARTICLE X
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.      Modification and Amendments.*

Subject to the limitations contained in the Plan, the Debtor or the Reorganized Debtor, as applicable, reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor and the Reorganized Debtor, as applicable, expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with <u>Article X</u> hereof.

*B.      Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.      Revocation or Withdrawal of the Plan.*

The Debtor reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor or any other Entity, including the holders of Claims or the non-Debtor subsidiaries; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Obligations pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtor or Reorganized Debtor amending, modifying, or supplementing, after the Effective Date, pursuant to <u>Article V</u>, any Executory Contracts or Unexpired Leases to the set forth on the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in <u>Article VIII</u> and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

13.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.      adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19.     hear, determine, and resolve matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.     hear and determine matters concerning section 1145 of the Bankruptcy Code;

21.     hear and determine all disputes involving the existence, nature, or scope of the Debtor's release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

22.     enforce all orders previously entered by the Bankruptcy Court;

23.     resolve any disputes arising in connection with any Sale Transaction, including the interpretation, implementation, modification, of any Sale Transaction Documents;

24.     hear any other matter not inconsistent with the Bankruptcy Code;

25.     enter an order concluding or closing the Chapter 11 Cases; and

26.     enforce the injunction, release, and exculpation provisions set forth in <u>Article VIII</u>.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect.*

Subject to the terms hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, the Debtor's Estate, the Reorganized Debtor, and any and all holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, or injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

B.     *Additional Documents.*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, with the consent of the Creditors' Committee in their sole discretion.  The Debtor and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute,

and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan, in consultation with the Creditors' Committee.

C.      *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtor for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. For the avoidance of doubt, the Debtor shall pay any outstanding U.S. Trustee fees in full on the Effective Date and the Debtor or Reorganized Debtor shall continue to pay such fees until the Chapter 11 cases are converted, dismissed, or closed, whichever occurs first.

D.      *Dissolution of Committees.*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases on the Effective Date.  The Debtor and the Reorganized Debtor shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee after the Effective Date.  Upon the dissolution of the Creditors' Committee, the current and former members of the Creditors' Committee, and their officers, employees, counsel, advisors, and agents, shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's respective attorneys, accountants, and other agents shall terminate, except that the Creditors' Committee and its professionals shall have the right to pursue, review, and object to any applications for compensation and reimbursement of expenses filed in accordance with Article II.B hereof.

E.      *Reservation of Rights.*

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests before the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Service of Documents.*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor shall be served on:

1.      **the Debtor:**

Wayne Real Estate Parent Company, LLC
One Geoffrey Way,
Wayne, New Jersey 07470
Attention:  Jamie Young

with copies to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022-4611
Facsimile:  (212) 446-4900

Attention: Joshua A. Sussberg, Emily E. Geier
E-mail addresses: joshua.sussberg@kirkland.com,
           emily.geier@kirkland.com

and

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654-3406
Facsimile: (312) 862-2200
Attention: Chad J. Husnick
E-mail address: chad.husnick@kirkland.com

2.     **Counsel for the Independent Directors of Wayne Parent.**

Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Attention: Morton R. Branzburg
Telephone: (215) 569-3007
Facsimile: (215) 568-6603
E-mail address: mbranzburg@klehr.com

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtor or, *after the Effective Date*, the Debtor, shall be served on the Reorganized Debtor, as set forth in the Plan Supplement.

After the Effective Date, the Debtor or Reorganized Debtor, as applicable, have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtor are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed request

H.     *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order (including the Injunction) shall remain in full force and effect in accordance with their terms.

I.     *Entire Agreement.*

Except as otherwise indicated, the Plan, the Confirmation Order, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.     *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Debtor's restructuring website at https://cases.primeclerk.com/toyspropcoI or the Bankruptcy Court's website at www.vaeb.uscourts.gov.

K.    *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable; *provided* that at the request of the Debtor (in their sole discretion), the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted *provided* that any such alteration or interpretation shall be reasonably acceptable to the Creditors' Committee.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified absent consultation with the Creditors' Committee; and (3) nonseverable and mutually dependent.

L.    *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtor or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

M.    *Enforcement of the Confirmation Order.*

On and after the Effective Date, the Debtor and Reorganized Debtor, as applicable, shall be entitled to enforce the terms of the Confirmation Order and the Plan.

N.    *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

O.    *Creditor Default.*

An act or omission by a holder of a Claim or an Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Debtor or Reorganized Debtor, as applicable, may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Debtor or Reorganized Debtor in remedying such default.  Upon the finding of such a default by a creditor, the Bankruptcy Court may:  (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award judgment against such defaulting creditor in favor of the Debtor in an amount, including interest, to compensate the Debtor for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

*[Remainder of page intentionally left blank.]*

Respectfully submitted, as of the date first set forth above,

Dated:  ~~December 31, 2018~~January 23, 2019

Wayne Real Estate Parent Company, LLC

By:      /s/ Matthew Finigan
Name:    Matthew Finigan
Title:   Executive Vice President - Chief Financial Officer and
         Treasurer

Prepared by:

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

*Co-Counsel to the Debtors and Debtors in Possession*

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200

## **Exhibit B**

**Form of Notice of Confirmation**

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200

*Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| TOYS "R" US, INC., *et al.*,[4] | ) | Case No. 17-34665 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF (I) ENTRY OF
## ORDER CONFIRMING THE DEBTOR'S AMENDED
## CHAPTER 11 PLAN AND (II) OCCURRENCE OF EFFECTIVE DATE

## TO ALL CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST:

**PLEASE TAKE NOTICE** that the Honorable Keith L. Phillips, United States Bankruptcy Judge, entered an order confirming the *First Amended Chapter 11 Plan of Wayne Real Estate Parent Company, LLC* (as may be modified, the "<u>Plan</u>") [Docket No. ●] (the "<u>Confirmation</u>

---

[4]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 78].  The location of the Debtors' service address is One Geoffrey Way, Wayne, New Jersey 07470.

Order"), which the Clerk of the United States Bankruptcy Court for the Eastern District of Virginia (Richmond Division) (the "Bankruptcy Court") docketed on January [●], 2019.[5]

       **PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order, the Plan, and the related documents are available on the Bankruptcy Court's website at https://www.vaeb.uscourts.gov. To access the Bankruptcy Court's website, you will need a PACER password and login, which can be obtained at http://www.pacer.psc.uscourts.gov.

       **PLEASE TAKE FURTHER NOTICE** that the Effective Date occurred on January [●], 2019.

       **PLEASE TAKE FURTHER NOTICE** that, unless otherwise provided in the Plan, the Confirmation Order, or any other applicable order of the Bankruptcy Court or Holders of an Allowed Administrative Claim and the Debtor has agreed otherwise, all requests for payment of Administrative Claims must be Filed and served on the Debtor on or before the Administrative Claims Bar Date: except for Accrued Professional Compensation Claims, **the first Business Day that is 30 days following the Effective Date**. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of (or Proofs of Claim for) such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or their property and such Administrative Claims shall be deemed discharged, compromised, settled, and released as of the Effective Date.[6] Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

       **PLEASE TAKE FURTHER NOTICE** that, unless otherwise provided by a Final Order of the Bankruptcy Court, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court by the later of: (1) the Claims Bar Date, Administrative Claims Bar Date, or the Governmental Bar Date, as applicable; and (2) 4:00 p.m., prevailing Eastern Time, on the date that is thirty (30) days following the entry of an Order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

*[Remainder of page intentionally left blank]*

---

[5]   Capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

[6]   For the avoidance of doubt, administrative Intercompany Claims between Debtors will be treated separately than all other Administrative Claims or prepetition Intercompany Claims and will receive Treatment as agreed to by and among the applicable Debtors or as determined by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtor, the Reorganized Debtor, any Holder of a Claim against, or Interest in, the Debtor and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder or Entity voted to accept the Plan.

Richmond, Virginia
Dated: January 28, 2019

/s/ *Jeremy S. Williams*

**KUTAK ROCK LLP**
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219
Telephone:    (804) 644-1700
Facsimile:    (804) 783-6192
Email:    Michael.Condyles@KutakRock.com
       Peter.Barrett@KutakRock.com
       Jeremy.Williams@KutakRock.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
       joshua.sussberg@kirkland.com
       emily.geier@kirkland.com

-and-

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
       anup.sathy@kirkland.com
       chad.husnick@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*